

1  Garrison Jones
2  Plaintiff (Pro Se)
   P.O. Box 188911
3  Sacramento, California 95818
   garrison.jones@outlook.com
4

5

6              **U.S. DISTRICT COURT**

7        **EASTERN DISTRICT OF CALIFORNIA**

8

9   **GARRISON JONES**              **Case No.: 2:19-cv-02374 KJM-**
                                    **EFB**
10           **Plaintiff,**
       v.
11                                  **PLAINTIFF REPLY TO**
    **VELOCITY TECHNOLOGY**          **DEFENDANTS OBJECTION**
12  **SOLUTIONS LLC et al**            **OF MAGISTRATE**
                                       **FINDINGS AND**
13           **Defendants.**        **RECOMMENDATIONS –**
                                       **TWO AMENDED**
14
                                    **JURY TRIAL DEMANDED**
15
                                    Judge: The Honorable Thomas
16                                  Brennan

17                                  Date Action filed:  Nov 25, 2019

18                                  Date set for trial: NONE

19

20

21                  **I. INTRODUCTION**

22      1.     . Defendant counsel is apparently so confused that he is repeating

23  issues that have no litigation value whatsoever.  What exist is a striking and

24  troubling pattern of manipulation of facts and evidence that ca not be disputed by

25  the defendants and or their counsel.

26

27

28

          **PLAINTIFF REPLY TO DEFENDANTS OBJECTION OF MAGISTRATE FINDINGS AND**
                    **RECOMMENDATIONS – TWO AMENDED**
                              **- 1 -**

It is unlawful  for an employer to interfere with restrain, or deny the exercise or the attempt to exercise, any right provided by FMLA,  to discharge or in any other manner discriminate against any individual for opposing any  practice or acts that are  unlawful *( Stolen intellectual property and misappropriation of trade secrets)* by FMLA.

An employer violates FMLA interference if it fails to provide its employee his FMLA entitlements or interferes with an FMLA created right, regardless of the employer intent.  Arban v Wesr Publ'g Corp 345 f.3d 390 ,401 (6th Circ. 2003.

It is clear that the plaintiff was and eligible FMLA employee as Velocity approved him for FMLA leave on February 20, 2018 and thus he obtained all available protection of FMLA.  Counsel attempt to claim criteria not met is immaterial and irrelevant.


Essentially, Velocity made the plaintiff, AZDES, and the Arizona court of Appeals all believe he was on approved unpaid FMLA Leave from February 20, 2018 thru May 15, 2018.

It is also clear that their intent was to use FMLA for or against the plaintiff as they saw fit, as long as it was to their advantage to use it as the main interference tool they had available to them.

The record shows that they used it multiple times and now attempting to claim it was an "error" on the part of Velocity.

They terminated him while on FMLA.  If counsel believes that, all the communication and events between these dates do not exist.  There is a bigger problem.

By attempting to expand the timeline as he now claims that the end date of employment was August 16, 2018 is incorrect.  He is making the appearance that no events occurred between March 2018 and August 2018 of any value, including

the termination of the plaintiff, completely oblivious of multiple documented events.

The fact of the matter is that by adding the statement where counsel names **the state of Indiana** proves that Velocity knew the Organization and location of where the plaintiff was employed.

Velocity immediately created another internal conspiracy to retaliate and interfere with the plaintiff by contacting AZDES for the fourth time in less than 90 days and did so to file a false claim allegation that he was committing fraud by working and collecting unemployment benefits at the same time.  AZDES made a determination of fraud based only of Velocity notification.

Typical of all such acts by Velocity, it was done behind the plaintiffs back. This event confirms that Velocity knew he was actively employed at another organization.  There is no way he could still be employed at Velocity between June 25, 2018 and August 16, 2018 as suggested by counsel.  However, the filing of the fraud charge by Velocity does prove his employment had ended, whether they updated their HR system is irrelevant, the plaintiff planned to move on from Velocity.  However, as their vindictive nature is, they again wanted to stab him in the back again.

**Exhibits 99 -1, 99-2, 992a and 99-3, 99-4** illustrate Velocity filed a false claim of fraud, it was appealed by the plaintiff and the AZDES decision of fraud was overturned.

By making a fraud claim, Velocity acknowledges t they had obtained other employment and was no longer an employee of Velocity, thus they filed this claim.

Included with this response

**Exhibit 99-1** determination of fraud by AZDES made by Velocity that he was working and collecting unemployment that they were charged from previous

appeal hearing where the Arizona Court of Appeals overturned another decision by AZDES, which ruled that the plaintiff had in fact been terminated.

**Exhibit 99-2 Also** included offer letter from his employment dated June 14, 2018 an offer he accepted.

**Exhibit 99-3**   complete appeal decision from Arizona court of Appeals on Fraud determination that was overturned and changed.

All these exhibits prove plaintiff had moved on from Velocity and that Velocity knew he had gained other employment.  It also proves the claim that he was still employed at Velocity until August 16, 2018 is a complete lie on behalf of Velocity and their counsel.

Plaintiff after he was approved by his physician on March 22, 2018

These facts coupled with the fact that he received an email on March 15, 2018 that confirmed he was no longer an employee of Velocity he began to field offers from other organizations.

Velocity was at that time in denial and involved in cover-up mode in connection with his termination.

Let the record reflect that it was Velocity who filed the fraud charge between June 25, 2018 and July 14, 2018, after they failed to attend and lost the appeal hearing of June 22, 2018.

The entire pleading filed by defendants counsel should be stricken from the record unless they have any form of documentation other than forged documents to prove otherwise.  The record clearly show other employment.

Now keep in mind, this is the same organization going forward 3 weeks from this date, contacted AZDES claiming fraud, and inducing ADES to contact law enforcement and charge him with a felony.

Counsel is oblivious to the fact that the other claims were dismissed "without prejudice" as if he somehow was victorious.

He is making a false assumption that he has "somehow escaped "the other allegations but failed to realize it is just simply "a moment of pause".  It is the intent of the plaintiff to refile these allegations and claims as well as report the violations of fraud, and forgery of legal FMLA documents to the Department of Labor.

It in no way is a victory or cause for celebration.  The plot simply thickens.

The plaintiff again state that this so called discrepancy is a main issue  just as the **time of death is a significant factor in a homicide investigation**  If it was as counsel claims not relevant, then why did he bring it up ?

Why waste time on issues that are insignificant and would have no bearing on the case.  The time line or dates of employment are crucial to this case, if counsel has anything other than altered; forged human resource documents then produced them.  Is crunch time, put up or shut up.

It is clear that defense counsel and Velocity are frantic, desperate in fabricating evidence to deceive the court, even if it means forgery and changing records in their HR system to reflect a timeline they NEED to have in order to escape the ramifications of their terminating the plaintiff while on FMLA for no other reason but for him engaging and exercising his rights given to him and refusing to participate in criminal illegal activity by Velocity executives and employees, that would have if he did not refuse make him the scape goat and a participant in the federal crime of theft of intellectual property and misappropriation of trade secrets stolen from Infor   This date/time creates a time line of events and as such, if the

defendants want to know claim that the date of August 16, 2018 is to be used as the "TIMELINE, then the court is obligated to include all other verifiable and cognizable claims by the plaintiff that occurred during this timeline.

Counsel is admitting that the time line of the crime needs to be extended.  This means that the confidential FMLA document submitted to FMLA and the Arizona Court of Appeals by Velocity on or about April, 24, 2018 that was used by AZDES as supporting documentation of the false claim by Velocity that not only was the plaintiff still employed as they claimed on April 23, 2018 but he was also physically unable to work, based on that document and the fact that they had approved his FMLA on February 20, 2018.  We already know that both these allegations/claims were false and that the Arizona Court of Appeals ruled based on the evidence that the plaintiff was able to work on 3/22/2018, supported by evidence of physician statements and documents that clearly indicate this, as well as multiple job offers he had received after 3/22/2018 from at least two separate organizations.

In addition, if counsel had an ounce of knowledge about  the level of interaction required by a Lawson/Infor Supply Chain consultant, it is impossible to hold two full time positions at the same time.

In addition, the court must consider how Ludacris this attempt is.  Given that Velocity found out that the plaintiff had returned to work, they retaliated against him once again by contacting AZDES yet for the third time in a 90-day span, now claiming he was working and collecting unemployment benefits at the same time. Therefore, in their eyes the unbelievable is occurring.

1. Plaintiff is employed at one organization full time and at the same time is an active employee at Velocity?

2. He is not eligible for FMLA even though it was approved by Velocity

2. He is employed at Velocity but on FMLA

1  2He is employed and collecting unemployment benefits at the same time

2  Excuse me, did I miss something?

3

4  ### II ISETTLEMENT AGREEMENT

5  2. Defense counsel repeatedly keeps referencing what he calls "settlement

6  agreement but in actuality is a manifesto where a criminal is bragging and

7  identifying/ admitting to all of the criminal acts they have committed.  What

8  counsel is intentionally neglecting to inform the court is that the plaintiff was

9  induced into the manifesto by fraud, intentional misrepresentation of the facts and

10  the intent the  plaintiffs' contacted him to  imitate " settlement discussions"  In

11  addition, counsel is neglecting to inform the court that 3 days after said agreement,

12  the defendants at the request of counsel, filed an appeal to a ruling that was

13  immediately dismissed by the Arizona Court of Appeals, directly related to the

14  cognizant claim of termination of the plaintiff while he was on FMLA with special

15  notation and stipulation by the court that they ( defendants) have no right to appeal

16  the court's decision.  This if counsel agrees or not this case has already been

17  adjudicated and the ruling has been upheld and affirmed/ by the Arizona court of

18  Appeals.  If counsel wanted to raise the issues he or another attorney from his law

19  firm should have showed up to be heard at the original hearing on June 22, 2018

20  where they had the opportunity to go on the record to make these outrageous

21  claims.  If counsel can remember, it **was Arizona Appeal number**

22

23  **U-1595392-001 June 22, 2018** and the dismissal of Appeal August **the** dismissal

24  of appeal August 20, 2018 highlights below.  Please make special attention that the

25  court clearly **indicates, "the tribunal decision issued on 6/22/2018 remains in**

26  **full force and effect "**

27

28

1

2

3

---

```
***
YOUR APPEAL HAS BEEN DISMISSED BECAUSE  THE EMPLOYER  DID NOT ESTABLISH GOOD
CAUSE FOR FAILING TO APPEAR AT THE PREVIOUS HEARING.
***
```

4

5

```
**
'oday, I made a separate decision that found the employer did not have good cause for failing to appear at the hearing
scheduled for 6/22/2018  and that the hearing  would not be reopened.   I am dismissing  your appeal  because the
'ribunal decision issued 6/22/2018 remains in full force and effect.
```

6

7

```
'ou have no right to appeal this dismissal  However, you may request further review of my other decision that you did
ot have good cause for failing to appear at the scheduled hearing.
**
```

8                                    **Richard Ebert**
                                     Administrative Law Judge

9

10

11

12  It has a "bi-partisan affect because it also confirms that is clearly identified in the

13  courts ruling that he was on approved FMLA leave at the time he was terminated.

14  Counsel would know this if he and his client were man enough to attend the

15  original hearing and the appeal hearing.

16  As to their confession and stipulation  that  he now claims the plaintiffs

17  employment did not end until  August 16, 2018, what he has done is widened the

18  scope and timeline to include additional acts of interference by the defendants  in

19  his rights under FMLA.

20  In addition, the plaintiff does not agree and has not agreed to any of the alleged

21  agreements counsel continues to claim in relation to a "imaginary claim of FMLA

22  that does not exist in the complaint in Northern Illinois, nor does the plaintiff agree

23  of any alleged "recovery" stipulation he made to anyone, especially to any of the

24  defendants and their counsel.

25  The plaintiff does herby challenge counsel to produce this manifesto/agreement

26  and cease making comments of the elements contained in it so that the court can

27

28

1    see for itself and make its own determination on the evidence.  If he does not want

2    to produce this document, it is recommended that he move on.

3    It is obvious the desperation being displayed.  The phrase "recovery" is associated

4    to monetary awards and counsel is again setting a trap so that he can again at the

5    last moment produce this document to ward off any monetary award by the court.

6    However, again what he is not claiming and given recognition to the fact, no

7    agreement can pre-set or predetermine any monetary word or damages of any

8    litigation by means of any contract or agreement.  Only the court can administer

9    such matters.

10   As previously mentioned, there is no such claim related to FMLA in the complaint

11   but if counsel produces this document, the court will see that there are many and

12   multiple items in this manifesto that are not in the claim as well.  They seek to

13   indemnify themselves, business partners etc. for everything, from retaliation,

14   intimidation, harassment and the intentionally drowning of "Flipper".  At the same

15   time, they claim no wrongdoing but the evidence indicates otherwise.  As well

16   there are multiple attempts to claim indemnification for that no federal, state or

17   local judicial system or law enforcement **that would ever not consider**

18   indictment, prosecution and imprisonment for these intentional violations of the

19   law.  They even wadded "training" as an item for indemnification.  The mere

20   mention of "**training**"  signify that they are trying to escape the main harsh penalty

21   of the theft of Intellectual Property and Trade Secrets, where they stole this

22   intellectual property and used it as a tool , means and instrument of racial

23   discrimination against the plaintiff.

24    The plaintiff has in his possession sent to him by Ogltree Deakins attorney

25   Christopher Meister on May 21, 2018 his Personnel Records and Confidential

26   Medical

27   Records.

garrison.jones@outlook.com

| From: | Meister, Christopher J. <Christopher.Meister@ogletree.com> |
| Sent: | Monday, May 21, 2018 2:15 PM |
| To: | Garrison Jones |
| Attachments: | Jones Confidential Medical Records.pdf; 20180518155027747.pdf |

Mr. Jones attached please find your personnel and confidential medical records files. Thank you.

**Christopher J. Meister | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax 778-3750
christopher.meister@ogletree.com | www.ogletree.com | Bio

In those personnel records, there is not a single document or mention to any **training by Velocity that was attempted or taken by the plaintiff during his entire employment period.**

In addition, there is no reference to any training request or this document

## Exhibit 52

Velocity Training Course Exam Request Form

This form is mandatory for all employees to be completed for internal or external training attended, taken, and or completed, yet these is no such document in his file.  Unlike the white employees, this was completed and shows up in their personnel files as the two white employees Velocity paid to attend Infor Certification classes, where they received certification.

Could it be and I am going out on a limb here, could it be that there was no "Official Training of Cloud suite and this is part of the cover-up.  But this does not make any logical sense as also in his personnel file was what they called, his **"performance review"**  In actuality this was the way his manager made sure that he did not meet the requirements of a bonus like the white employees so he intentionally gave him an extreme/unjust review so that his share would be divided amongst the white employees so their bonuses were much larger than expected.

However, in his " performance review, there is a reference to training  where  his manger is now attempting to disguise the stolen intellectual property as " self-Study" but does mentioned training.

**Mid Year Semi-Annual Review 2017 July 26, 2017**

**Garrison Jones**

PSC04-Infor Professional Services - Lead
000041-PS - Infor

Reviewed by Michael Baldwin

| Goal 5 of 5 | Skills | 0% Complete | Weighted at 0% |
|---|---|---|---|

**Education / Skills Development**

**2 - Below Expectations**

Garrison hasn't been busy and has had opportunities to do some self-study, but has not taken advantage of it.  He also had a chance to sit in on some of the first week of version 11 training, but only made it for one session.  His counterpart tried to reach out to him a couple of times.

So how and why is this not notated in his personnel file as "training " and equally how is it an indemnification item/element in the manifesto ?  Cover-up to the highest power.

This again was intentional because the only alleged training is tied to the stolen intellectual property and trade secrets.  It is obvious the intent is to distance and omit any reference to these illegal acts but at the same time, seek indemnification from the consequences of their illegal criminal acts at the same time.  Makes no logical sense to get a shot for rabies if you have not been bitten by a dog or been

1   cut by a piece of metal. This is the theme throughout this manifesto. You will find
2   tons of items that they acknowledge or seek indemnification from that has no
3   connect to the complaint. However, they were added because at the time of the
4   manifesto, the plaintiff was unaware the defendants had committed any of those
5   violations. As such, this is the normal mode of conduct by the defendants,
6   misrepresentation, deception, and fraud. Then after being caught, the first thing
7   they do is LIE, then deception and attempts to misdirect attention to something
8   else. This pattern has been seen time after time. As previously mentioned the
9   doctrine of clean hands simply does not exist for any of the defendants, nor their
10  counsel.
11
12
13  They had the keys to their own freedom, threw those away three (3) days after the
    signing of the manifesto, and jumped right back on the horse of hatred,
14  intimidation, and racial harassment of the plaintiff and his family. They displayed
15  the vindictive nature and hostility they displayed throughout his employment and
16  while his back was turned and attempting to walk away, they lashed out again in
17  direct retaliation for exposing their illegal criminal activities and filed an appeal of
18  a case they had already lost, failed to attend any of the proceedings because they
19  knew the ramifications and consequences of offering testimony as they knew
20  perjury was sin their future if they did. Therefore, they skipped the hearings.
21  The court must see the pattern and if allowed to continue, they will for the fourth
22  (4th) time submit more false pleadings to the court in their feverish attempt to avoid
23  the inevitable. They can only blame themselves; here is an organization that has a
24  single mission, GREED. They have shown that they are motivated by greed will
25  commit mail fraud, wire fraud, over billing, fraud beg, borrow and steal anything
26  or asset to obtain this greed, including violate any law of this country to obtain it.
27  If counsel won't cease making mention of this manifesto/agreement
28

While the plaintiff disagrees, he also notes that if counsel wants to proceed with this claim as an undisputed fact/issue.

## Conclusion

The court should dismiss all objections by the defendants as another fraudulent attempt of the court, to change the timeline and dates of employment to totally make the termination disappear.

The court has to see that there are multiple serious issues going on in the defendants' camp between the client and the defendants.  Despite the fact that this the fourth (4th) such "pleading" if you will filed by defendants and their counsel for no other propose but to obstruct these proceedings with all kinds of lies, fabrication of evidence and not a shred of evidence to support any of these allegations/claims.  It appears to be a visible, internal battle where counsel now may be attempting to distance themselves from their client by throwing out there issues that will lead to their indictments.  Who would agree to file a document that further implicates them and serves no logical purpose?  The only thing the pleading filed on August 14, 2020 is pull the defendants further and further into the deep abyss in which they have flung themselves into.

It also appears that internally within Ogltree Deakins, their client has openly complained in regards to the string of failures and losses they have suffered at the hands of Ogltree Deakins and the attorneys assigned, now to include a "managing partner" who also is losing a case before yet another court.  They all have degenerated to the point where

they will continue to do anything illegal to get their clients' off the hook
for the serious damages of their actions.  However, the evidence shows
that they have committed heinous / calculate acts of racism, retaliation,
fraud, misrepresentation among other hideous acts and these trivial
attempts by counsel to put multiple obstacles and obstruction of justice
should be duly noted by the court along with a formal warning that if it
is done again, the court will render harsh sanctions against counsel and
the defendants.

 They are now not so much interested in billable hours and revenue and
at some point in the near future, they will dump this client.  The
apparently see that there is no pot of gold or redemption for his client.
Why else would they throw them under the bus or even do they even
know their counsel filed such a pleading.

Dated: August 21, 2020          GARRISON JONES

                                _____,
                                Garrison Jones
                                Plaintiff (Pro Se)
                                P.O. Box 188911
                                Sacramento, California 95818.
                                garrison.jones@outlook.com

**PLAINTIFF REPLY TO DEFENDANTS OBJECTION OF MAGISTRATE FINDINGS AND
RECOMMENDATIONS – TWO AMENDED**
- 14 -

**Designation Notice**
**(Family and Medical Leave Act)**

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
OMB Control Number: 1235-0003
Expires: 5/31/2018

Leave covered under the Family and Medical Leave Act (FMLA) must be designated as FMLA-protected and the employer must inform the employee of the amount of leave that will be counted against the employee's FMLA leave entitlement. In order to determine whether leave is covered under the FMLA, the employer may request that the leave be supported by a certification. If the certification is incomplete or insufficient, the employer must state in writing what additional information is necessary to make the certification complete and sufficient. While use of this form by employers is optional, a fully completed Form WH-382 provides an easy method of providing employees with the written information required by 29 C.F.R. §§ 825.300(e), 825.301, and 825.305(c).

To: Garrison Jones

Date: 02/14/2018

We have reviewed your request for leave under the FMLA and any supporting documentation that you have provided.
We received your most recent information on February 2018 _____ and decided:

____✓____  Your FMLA leave request is approved. All leave taken for this reason will be designated as FMLA leave.

**The FMLA requires that you notify us as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown.** Based on the information you have provided to date, we are providing the following information about the amount of time that will be counted against your leave entitlement:

____✓____  Provided there is no deviation from your anticipated leave schedule, the following number of hours, days, or weeks will be counted against your leave entitlement: 12 weeks

_____  Because the leave you will need will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period (if leave was taken in the 30-day period).

**Please be advised (check if applicable):**
_____  You have requested to use paid leave during your FMLA leave. Any paid leave taken for this reason will count against your FMLA leave entitlement.

_____  We are requiring you to substitute or use paid leave during your FMLA leave.

____✓____  You will be required to present a fitness-for-duty certificate to be restored to employment. If such certification is not timely received, your return to work may be delayed until certification is provided. A list of the essential functions of your position _____ is __✓__ is not attached. If attached, the fitness-for-duty certification must address your ability to perform these functions.

_____  **Additional information is needed to determine if your FMLA leave request can be approved:**

_____  The certification you have provided is not complete and sufficient to determine whether the FMLA applies to your leave request. You must provide the following information no later than _____, unless it is not
                                                                                                 (Provide at least seven calendar days)
practicable under the particular circumstances despite your diligent good faith efforts, or your leave may be denied.

_____
(Specify information needed to make the certification complete and sufficient)

_____

_____  We are exercising our right to have you obtain a second or third opinion medical certification at our expense, and we will provide further details at a later time.

_____  Your FMLA Leave request is Not Approved.
_____  The FMLA does not apply to your leave request.
_____  You have exhausted your FMLA leave entitlement in the applicable 12-month period.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
It is mandatory for employers to inform employees in writing whether leave requested under the FMLA has been determined to be covered under the FMLA. 29 U.S.C. § 2617; 29 C.F.R. §§ 825.300(d), (e). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 – 30 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

Form WH-382 January 2009

1  ANTHONY J. DECRISTOFORO SBN 166171
   anthony.decristoforo@ogletree.com
2  PAUL M. SMITH SBN 306644
   paul.smith@ogletree.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  500 Capitol Mall, Suite 2500
   Sacramento, CA 95814
5  Telephone:   916-840-3150
   Facsimile:    916-840-3159
6
   Attorneys for Specially Appearing Defendant
7  VELOCITY TECHNOLOGY SOLUTIONS,
   INC.
8

9                  UNITED STATES DISTRICT COURT

10                 EASTERN DISTRICT OF CALIFORNIA

11  GARRISON JONES                      Case No. 2:19-cv-02374-KJM-EFB

12              Plaintiff,              DEFENDANT'S OBJECTIONS TO
                                        MAGISTRATE JUDGE'S FINDINGS AND
13       v.                             RECOMMENDATIONS

14  VELOCITY TECHNOLOGY SOLUTIONS,      Complaint Filed: November 25, 2019
    INC.; SHAUNA COLEMAN, individually  Trial Date:      None Set
15  and as H.R. Director of Velocity Technology   Magistrate Judge: Hon. Edmund F. Brennan
    Solutions; CHRIS HELLER, individually and   District Judge:  Hon. Kimberly J. Mueller
16  as General Counsel of Velocity Technology
    Solutions; STEVEN KLOEBLEN,
17  individually and as CEO of Velocity
    Technology Solutions; MICHAEL
18  BALDWIN, individually and as an employee
    of Velocity Technology Solutions.
19
                Defendants.
20

21  **I.    INTRODUCTION**

22          The Magistrate Judge's Order and Findings and Recommendations ("Order & FAR") (Dkt.

23  29) efficiently synthesizes allegations in Plaintiff's complaint "that are poorly organized and

24  difficult to follow." Dkt. 29 at 4. The Order & FAR correctly dismisses most of Plaintiff's claims.

25  However, the Order & FAR does not go quite far enough. The District Court should dismiss the

26  Complaint (Dkt. 1) in its entirety. Plaintiff does not allege a cognizable interference claim under

27  the Family Medical Leave Act ("FMLA") because he fails to allege facts sufficient to show

28  coverage under the Act's protections. Additionally, Plaintiff acknowledges that he previously filed

Exhibit 99-1

Unemployment Insurance Program
Benefit Payment Control, Mail Drop 5893
P.O. Box 29225, Phoenix, Arizona 85038-9225
Telephone: 602-364-4300
Fax: 602-364-1211 or 602-364-1213

602—

UIB-1088AFORPO (12-18)

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY**
Workforce Administration

## DETERMINATION OF OVERPAYMENT
### FRAUDULENT

Esto es un documento importante relacionado a sus beneficios
de Seguro por Desempleo. Si no lee usted Inglés,
llame al número a la cabeza del formulario.

GARRISON JONES
PO BOX 1751
Attn: BIRTE
SACRAMENTO, CA 95812-1751

Appeal Request

Not Fraud

Date: 10/01/2019
Claimant ID:  0014164237

Our records show that you have been overpaid benefits (or had benefit entitlements applied as offsets to a prior overpayment reduced or totally voided) as shown on the reverse of this Determination. This overpayment is a result of unreported or underreported earnings and is classified as fraudulent. The amount of the overpayment is $960.00 (this amount may include money withheld for child support and/or federal and state income tax withholding) and the total offset amount voided is $0.00.

Re-mailed determination of overpayment to updated address.

The evidence indicates that you received benefits as a result of a false statement or representation of a material fact in an effort to obtain benefits you were not entitled to receive.

Under Section 23-787, B and E of the Employment Security Law:

- A fifteen percent penalty will be assessed to the amount of the erroneous payment. This applies to any fraud overpayments established on or after October 21, 2013. You are not eligible to receive any benefits until all overpayment principal, penalties, and interest have been paid.

- Appropriate court proceedings may be instituted by the attorney general or the appropriate county attorney to recover in the name of the department any amount for which an individual is liable to the department.

In addition, your case will be considered under Section 23-778 of the Employment Security Law:

An individual may, within twenty-four calendar months immediately preceding a week in which a valid claim for benefits has been filed, be disqualified for the week the claim was filed and for not more than fifty-one weeks when the individual made a false statement or misrepresentation of a material fact knowing it to be false, or knowingly failed to disclose a material fact with intent to obtain benefits.

Interest will be computed on the unpaid principal balance, at the annual rate of 10%, beginning the month following the overpayment establishment date. Interest will accrue on overpayments even though they may be under appeal.

Your check or money order for this amount should be made payable to: The Arizona Department of Economic Security Office of Accounts Receivable and Collections, P.O Box 804097, St. Louis, MO 83150-4097. For payment arrangements, contact the Office of Accounts Receivable and Collections at (602) 252-0024. For proper credit if you are paying by check or money order, please write your Social Security Number on your payment. Online payments can be made at https://efilaz.gov/app/desops/index.xhtml.

APPEAL RIGHTS: This determination becomes final 15 calendar days after the mailing date shown at the top of this determination unless you file an appeal. You can file by fax, mail, or in person. The address and fax number are listed above. Your nearest Employment Service office will accept in person appeals and have fax machines available. For the appeal to be timely, you must file it within 15 calendar days of the mailing date shown at the top of this determination. If the last day of the appeal period falls on a Saturday, Sunday, or holiday the appeal period will be extended to the next working day. This 15 day appeal period may also be extended if you can establish that failure to file within the specified period was due to delay or other action by the U.S. Postal service, or was due to misinformation or error on the part of the Department of Economic Security. Your appeal must include the reason(s) you believe the determination is in error, your Social Security number, and your signature (if filed by mail). If an appeal is filed by mail, the postmark date is considered the date of the appeal. Offset amounts that were reduced or totally voided as a result of under or unreported earnings will be restored to your prior overpayment balance(s). Any appeal filed to this Determination of Overpayment will relate only to the issue of the earnings reported by the employer(s) shown on the reverse of this determination and not to the previous overpayment.

You may have someone represent you. If you pay your representative, that person must be a licensed Arizona attorney or must be supervised by a licensed Arizona attorney. An employer may also use any employee of the business as its representative. The Department does not provide representatives. If you want the Administrative Law Judge (ALJ) to consider documents not already in the file in deciding your case, you must bring a legible copy of them to the hearing. If your evidence is not paper, call the number at the top of the Notice of Hearing to make arrangements to have it considered at the hearing. If your hearing is by telephone, you must immediately mail or fax copies of any documents you want considered to the ALJ and the other party. In addition to attending the hearing yourself, you should bring with you any witnesses whose testimony you want the ALJ to hear. You can make a written request for a subpoena to require someone to bring something to the hearing or a subpoena for a witness. You must make a written request at least five calendar days before the hearing. The request must describe the item, identify the owner or custodian, list that person's address, and describe why the ALJ must consider that item in order to make a proper decision.

If you are the party who filed the appeal and do not attend, the ALJ will decide the matter without you. If you are not the party who appealed and you do not attend, the hearing will proceed without you and you may be required to repay to the Department any benefits you have received. If you miss the hearing, the ALJ's decision will explain how to request a reopening of that hearing.





**Monroe Hospital**

June 14, 2018

Garrison Jones
16152 W Durango St
Goodyear, AZ 85338

Re:   Offer of Employment

Dear Mr. Jones,

We are pleased to extend this offer to you to join Monroe Hospital as IT Application Analyst – Supply Chain Management.

Your starting compensation will be $████████ on an annualized basis, payable bi-weekly. As an employee of Monroe Hospital, you will be eligible for benefits we offer generally to our employees, which currently include: Paid Time Off, 401(k), Medical, Dental and Vision for you and your dependents. All compensation and benefits are, of course, subject to change at any time, upon appropriate notice.

By signing below, you acknowledge that you are not relying on any promises that are not set out in this offer letter in deciding to accept this offer of employment.

It is a condition of this offer that, before commencing employment, you sign a Mutual Agreement to Arbitrate that contains additional requirements for the protection of Monroe Hospital, a copy of which is enclosed.

We wish to emphasize the importance we place on the proper treatment of any confidential information with which you may have come into contact in the past. We are offering you this job based on your skills and abilities and not your possession of any trade secret, confidential or proprietary information. We require that you not obtain, keep, use for our benefit or disclose to us any confidential, proprietary or trade secret information that belongs to others, unless the party who has the rights to the information expressly consents in writing in advance. Also, by signing below you affirm that you are not a party to any agreements, such as noncompetition agreements, that would limit your ability to perform your duties for Monroe Hospital.

Your employment with Monroe Hospital in both the position for which you are being hired, and any position that you hold thereafter (e.g., due to a transfer or promotion), is at will. This means that either Monroe Hospital or you can terminate the employment relationship at any time, with or without cause, and for any reason or for no reason, at any time. Any statements which are contrary to the at-will status of your employment are not authorized, and may not be relied upon by you. No provisions set forth in any employee handbook or any other type of policy can be relied on as modifying in any way, the at-will nature of your employment with Monroe Hospital. No one except Monroe Hospital's CEO has authority to enter into an agreement for any type of employment other than at-will

JAMARA Hospital 992 A
4/9/18

**To:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Date:** 4/9/2018 8:42 PM

**Subject:** Re[2]: Garrison Jones Offer  Letter

I need a couple days to go over this with family
Monday, 09 April 2018, 11:25AM -05:00 from ▓▓▓▓▓▓▓▓▓▓6_6i2@indeedemail.com:

Garrison,

I sent you an email on Friday that we did get approval from my CFO to extend your the offer at
160k. Any word?

Please let me know

160K

Vi▓▓▓▓▓

**99-3**

**Arizona Department of
Economic Security**



**Office Of Appeals**

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
IN CARE OF BIRTE
PO BOX 1751
SACRAMENTO, CA  95812-1751

Arizona Appeal No. U-1642697-001          Date of Mailing:          10/29/2019

Social Security No. 

---

### DECISION OF APPEAL TRIBUNAL

## CLAIMANT WAS OVERPAID BENEFITS
## HOWEVER, CLASSIFICATION OF OVERPAYMENT IS
## CHANGED

---

**The last day to file an appeal is ___November 29, 2019___ . Instructions for filing an
appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR
UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge.
For assistance in your preferred language, please call our Office of Appeals (602) 771-
9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE
SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis.  Para
recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de
apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Was the Claimant overpaid benefits?  If yes, what is the amount and classification of the
overpayment?

If the overpayment classification in the Determination of Overpayment is fraud, what is the amount of the penalty?

## DECISION:

I affirm but modify the Determination of Overpayment dated 10/1/2019.  The Claimant was overpaid benefits in the amount of $960.00. The overpayment is classified as non-fraud. No penalty is due.

## FINDINGS OF FACT:

The Claimant received benefits in the amount of $240.00 for each of the weeks ending 7/7/2018 through 7/28/2019 for a total of $960.00.

The claimant had previously been disqualified from receiving benefits based upon his separation from his last employment. Upon appeal, the Determination of Deputy that disqualified him was reversed in a Decision of Appeals Tribunal dated 6/22/2018.

Prior the Decision  that found him eligible  to receive benefits,  the claimant  had not received any benefit payments on his claim. He was advised by the Program to fill out his weekly benefit claims as he did in the past.

The claimant became reemployed on 6/27/2019. He worked and earned wages during the benefit weeks ending 7/7/2019 through 7/28/2019. When he filed his claims for each of those benefit weeks,  he answered "no" to the question of whether  he worked or earned  any money during  those benefit  weeks. He answered "no" because  he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible,  to reflect what his situation was for those previously unpaid weeks when he was not, in fact, employed.

He did  not intend  to intentionally  give  false  or incorrect  information  to the Program  in order to receive benefits to which he was not entitled.

## REASONING AND CONCLUSIONS OF LAW:

The issues  are (1) whether  the Claimant  has been overpaid benefits,  (2) the amount and the classification  of any such overpayment,  and (3) if applicable,  the amount  of fraud penalty due.

Arizona Revised Statutes, Section 23-787, provide in pertinent part as follows:

> A.   A person who receives any amount as benefits under this chapter to which  the person  is not entitled  is liable  to repay  the overpaid amount to the department.   The department  may deduct  all or a portion  of the overpayment   from  future  benefits payable  to the person under this chapter.

B.    If benefits to which a person is not entitled are received by reason of fraud committed by the person as determined by the department, the department shall assess a penalty on the person equal to fifteen per cent of the amount of the erroneous payment and the person is not eligible to receive any benefits under this chapter until the total amount of the overpayment and all penalties and interest have been recovered or otherwise satisfied in compliance with a civil judgment. The department shall immediately deposit all assessments paid pursuant to this subsection in the unemployment compensation fund established by section 23-701.

C.    If benefits to which a person is not entitled are received without any fault on the person's part and if repayment or deduction from future benefits would be against equity and good conscience, the department may waive all or a portion of the amount overpaid.

D.    If benefits to which a person is not entitled are received without any fault on the person's part, deductions made by the department pursuant to subsection A of this section from benefits payable to an individual for any week shall not exceed twenty-five per cent of the individual's weekly benefit amount unless required by federal law, except that the amount recouped from benefits payable may be fifty per cent of the weekly benefit amount if the individual has previously received benefits but has not received benefits for at least twelve consecutive months before the most recent receipt of benefits and there has been no reasonable attempt to repay the indebtedness during that period. The fifty per cent recoupment rate may not be put in effect before one year after the establishment of the overpayment.

E.    The department shall adopt rules to implement subsection D of this section.

F.    The attorney general or the appropriate county attorney may institute appropriate court proceedings to recover in the name of the department any amount for which a person is liable to the department.

The Arizona Administrative Code, in Section R6-3-1301, provides in pertinent part as follows:

5.    "Benefit overpayment caused by Department error" means an overpayment which resulted from an error committed by Department personnel.

Page 3—Arizona Appeal No. U-1642697-001

6.      "Benefit overpayment classified administrative" means an overpayment which occurred without fault on the part of the claimant.

7.      "Benefit overpayment classified fraud" means an overpayment occurred because a claimant knowingly misrepresented or concealed material facts in order to obtain benefits to which the claimant was not entitled.

8.      "Benefit overpayment classified non-fraud" means an overpayment created because the claimant unintentionally gave incorrect or incomplete information.

Although the claimant testified that he was not sure whether he received benefits for each of the four weeks in issue here, he did not present any evidence to contradict the Program's record  (Exhibit "2") that reflect that payments were made to him for each of the benefit weeks ending 7/7/2018 through 7/28/2018, nor did he deny that he did, in fact, work and earn money during those weeks.

Accordingly, I find that the claimant received benefits in the total amount of $960.00 for the weeks in question

Although the claimant had indicated that he did not work or earn any money during the weeks in question when he filed claims during those benefit weeks, he answered "no" because he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible, to reflect what his situation  was for those previously unpaid weeks  when he was not, in fact, employed.

Although the claimant  argues  that the classification  of the overpayment  should be administrative because the Program created the overpayment due to its failure to timely resolve an eligibility issue based upon a question concerning his ability to work,  it was the *claimant,* and not the Program  who filed each of the weekly benefit claims in question, and it was the *claimant,* and not the Program who supplied the answers to the questions on the claim forms. Accordingly, I cannot hold that the overpayment occurred without fault on the part of the claimant.

Due to the circumstances of this case, however and the claimant's explanation as to why he filed the claims the way he did, I find that the claimant did not intentionally give incorrect or incomplete information to the Program.   Accordingly, I find the overpayment to be non -fraud.

Therefore, I conclude that the claimant was overpaid benefits, but that the overpayment must be modified with regard to classification.  The claimant was overpaid benefits in the amount of $960.00 and the overpayment is classified non-fraud.

Page 4—Arizona Appeal No. U-1642697-001

.

**S. Rosen**
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 8/25/2019          Issue Code: OV, OV01
Date of Determination: 10/1/2019
Appealed By: Claimant
Date of Hearing: 10/29/2019
Place of Hearing: Teleconferencing from Tucson, Arizona
Appearances: Claimant

### Distribution:
Claimant
BPC PHOENIX Site Code 918-B2

### Electronic Distribution:
Claimant: garrison.jones@outlook.com
BUnit@azdes.gov

File


SR


# APPEAL/REOPENING DEADLINE:  NOVEMBER 29, 2019


### APPEAL RIGHTS

**THIS DECISION  WILL BECOME  FINAL  UNLESS  YOU  FILE A  SIGNED  WRITTEN
PETITION FOR REVIEW BY THE APPEAL DEADLINE DATE.**

**IF YOU WISH TO APPEAL THIS DECISION:**

    1. File your Petition for Review by Internet by going to www.azui.com and then
       clicking "Appeal a UI Decision."  (The option of filing an appeal by Internet is
       only available to claimants at this time.)


Page 5—Arizona Appeal No. U-1642697-001

**OR, SUBMIT THE ENCLOSED FORM OR WRITE A LETTER USING ONE OF THE OPTIONS BELOW:**

    2. Fax the Petition for Review to (602) 257-7056.

    3. Mail or hand deliver the Petition for Review to:

        ARIZONA DEPARTMENT OF ECONOMIC SECURITY
           Office of Appeals
           1990 W. Camelback Road, Suite 200
           Phoenix, AZ  85015

    4. Mail, hand deliver or fax the Petition for Review to any unemployment office in the United States or Canada.

The appeal is considered filed on the date: (A) postmarked by the United States Postal Service; (B) received by fax at the above number; or (C) received via the Internet or hand delivery.

You or your authorized agent must sign the appeal.  Your appeal may be based on:

    a. Irregularity on part of presiding officer or other party to proceedings;
    b. Abuse of discretion on part of hearing officer whereby petitioner was deprived of a fair hearing;
    c. Newly discovered evidence which could not with reasonable diligence have been discovered and produced at time of original hearing;
    d. Error in admission or exclusion of evidence in Tribunal hearing;
    e. Error in law in Tribunal hearing; and/or
    f. Other good and sufficient grounds.

**The Appeals Board Chairman will refer your appeal to a single member for review. If you or the other party objects <u>in writing</u> to review by one member, three members of the Appeals Board will review the appeal.**

**AUDIO RECORDING OF YOUR HEARING:** To request an audio recording of the hearing, you may either:

    1. Call (602) 771-9019, or

    2. Fax your request to (602) 257-7056, or

    3. Mail or hand deliver your request in writing to:

           ARIZONA DEPARTMENT OF ECONOMIC SECURITY
           Office of Appeals

1990 W. Camelback Road, Suite 200
Phoenix, AZ 85015

**CLAIM FILING:** If you are a claimant who remains unemployed, you should continue to file your weekly claims while any appeal of this case is pending. If you have questions regarding the filing or payment of claims, you should contact the unemployment insurance claims office.

**RIGHT TO BE REPRESENTED:** You may have someone represent you. If you pay your representative, that person must be a licensed Arizona attorney or must be supervised by a licensed Arizona attorney. An employer may also use any employee of the business as its representative. The Department does not provide representatives.

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1-877-528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

If your leave does qualify as FMLA leave you will have the following **responsibilities** while on FMLA leave (only checked blanks apply):

✓    Contact Shauna Coleman at ~~~~~~~~~~~~~~~~~~~~~ to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave. You have a minimum 30-day (or, indicate longer period, if applicable) grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

_____  You will be required to use your available paid _____ sick, _____ vacation, and/or _____ other leave during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

_____  Due to your status within the company, you are considered a "key employee" as defined in the FMLA. As a "key employee," restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us. We ____ have/____ have not determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

_____  While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every _____ (Indicate interval of periodic reports, as appropriate for the particular leave situation).

**If the circumstances of your leave change, and you are able to return to work earlier than the date indicated on the this form, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

If your leave does qualify as FMLA leave you will have the following **rights** while on FMLA leave:

- You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as:

    _____  the calendar year (January – December).

    _____  a fixed leave year based on _____

    _____  the 12-month period measured forward from the date of your first FMLA leave usage.

    ✓  a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered servicemember with a serious injury or illness. This single 12-month period commenced on _____

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA.)
- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.
- If we have not informed you above that you must use accrued paid leave while taking your unpaid FMLA leave entitlement, you have the right to have ____ sick, ____vacation, and/or ___ other leave run concurrently with your unpaid leave entitlement, provided you meet any applicable requirements of the leave policy. Applicable conditions related to the substitution of paid leave are referenced or set forth below. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid FMLA leave.

____For a copy of conditions applicable to sick/vacation/other leave usage please refer to _____ available at: _____

____ Applicable conditions for use of paid leave:

FMLA leave will begin on February 20, 2018.

12 Weeks of FMLA extends through May 15, 2018.

A recertification is required by the employee prior to May 15, 2018.

**Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement.** If you have any questions, please do not hesitate to contact:

_____ at _____.

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT
It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

Page 2                                       Form WH-381 Revised February 2013

Exhibit # 05

**garrison.courtdocs@outlook.com**

| | |
|---|---|
| **From:** | Garrison Jones <garrison.jones@outlook.com> |
| **Sent:** | Monday, August 10, 2020 7:55 AM |
| **To:** | Garrison Jones -Court-Docs |
| **Cc:** | Garrison Jones |
| **Subject:** | Fmla date |

Get Outlook for iOS

**From:** garrison jones <garrison.jones1724@outlook.com>
**Sent:** Thursday, May 10, 2018 6:35:13 PM
**To:** Garrison Jones <garrison.jones@outlook.com>
**Subject:** Did not request FMLA

Sent from myMail for iOS

-------- Forwarded message --------
From: Garrison Jones <garrison.jones@outlook.com>
To: Shauna Coleman <shauna.coleman@velocitycloud.com>, garrison.jones1724@outlook.com <garrison.jones1724@outlook.com>
Cc: "garrison.jones1724@outlook.com" <garrison.jones1724@outlook.com>
Date: Monday, January 29, 2018, 4:00 PM -0600
Subject: Re: FMLA - Garrison Jones

What is my anniversary date or hire date?

Get Outlook for iOS

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Monday, January 29, 2018 2:58:52 PM
**To:** Garrison Jones
**Cc:** garrison.jones1724@outlook.com
**Subject:** Re: FMLA - Garrison Jones

Hello Mr. Jones,

Thank you for your correspondence. As I stated in my prior e-mail, you have not met the eligibility requirements to be eligible for FMLA because at the time your leave began you had only been employed for 8 months. We are now coming up on your one year anniversary, and we are providing these documents to assist in determining eligibility for FMLA or other reasonable accommodations. Please have these

1