FILED
OCT 16 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| , Plaintiff, Garrison Jones v. , Defendant. Velocity Technology Solutions et al | **No. 2:19-cv-02374 KJM-JDP** **PLAINIFF REPLY TO DEFENDANTS MOTION TO DENY MOTION TO COMPEL (dkt 53)** |

# PLAINIFF REPLY TO DEFENDANTS MOTION TO DENY MOTION TO COMPEL (dkt 53)

## INTRODUCTION

Defendant's motion was anticipated and expected. As it moved closer to the date of the hearing, he was going to find some way of **<u>weaseling out</u>** of producing the FMLA claim that he has made on multiple occasion for the very reason that it does not exist, that he has again been caught lying to the court in misleading the court into believing that the case before the court is a duplicate claim that has already been resolved when he Knowing knew it had not.

deceive the court into believing duplicity of an FMLA claim and was visible in this Motion to Dismiss (dkt 5) **Exhibit A**

Exhibit shows that counsel is lying to the court saying that the case before the court was "identical to the claim in the Northern District of Illinois case number 1:18—cv-02388

When he was caught lying his response was where he obviously was frustrated after being caught in a lie and proceeds to claim that the mysterious FMLA claim is as he put it "is irrelevant and immaterial. The question is if you used it as ground for dismissal then why after you have been caught lying is it immaterial. Apparently you thought it was material enough to add to his Motion for Dismissal.

In his latest motion, he claims that the Motion to compel is pre-mature and somehow violates FRCP rule when the real reason is that he knew he was again caught in a lie and if he did not produce the FMLA claim he has claimed, it would add to the string of lies and fraud he has committed upon the court in this case. So he files a merit –less motion to deny but still wants his Motion to Dismiss to move forward, despite his lies.

The plaintiff respectfully ask the court not to cancel the hearing so that the plaintiff can demonstrate to the court the false allegation that a FMLA claim existed in case number 1:18-cv-02388 in the Northern District of Illinois never existed.

Then request the court to take some form of action against defendants and their counsel from Ogltree Deakins.

It is getting extremely tiresome to continue to produce time and time

again, facts that are readily available to counter all the lies told by counsel. It is simply un-needed and prejudicial that this conduct continues.

The plaintiff included with this response, is the letter sent to defendants on September 8, 2020 and the filing of notice with the court (dkt 46) that after 2 ½ weeks and 21 days had elapsed, the plaintiff knew the defendants were not going to respond.

In addition the plaintiff contacted the US marshal and learned that due to Void pandemic, the defendants were served with a Waiver on September 14, 2020 and as if the 29th of September, they also had not responded.

In direct anticipation of no response and to move this case forward, the plaintiff again was forced to incur expense to server the defendants to again move this case forward. They had no intention to respond to the waiver elected instead of prolonging this case, even if the documents came from the US Marshall.

The docket will reflect that the defendants were properly served on October 6, 2020 at 2:53 pm EST

///

He makes yet another false claim that the plaintiff accusing the plaintiff

of falling to adhere to the courts rulings yet, the plaintiff did in fact reach out to the defendants a letter dated September 8, 2020. After 3 weeks that had elapsed with no response, which was also expected, the plaintiff filed with the court **(dkt 46)** Notice to the court that was accompanied by the letter sent to the defendants to inform the court that the defendants are intentionally obtruding the administration of this case at every opportunity they get.

The fact of the matter is that he knows that the FMLA claim does not exist and he wants to leapfrog over this issue and have his baseless lies in his Motion to Dismiss to be heard and have the court dismiss this case as they have to grounds to sustain a dismissal.
This his second filing is directly attributed to the fact that he knows that on the day of the hearing he was not going to be able to produce the mysterious allegation which is an essential crucial factor in this case. He is lying and he knows it. The desperation is apparent and obvious. He wants to be able to brag to his lawyer buddies to appear that he is some form of in his mind "super attorney and brag that he had a case dismissed without calling a single witness or exhibit. He is mistaken. His tactic are simply dilatory in nature as he is way over his head trying to defend a client that he himself has implicated them in fabricating and forging legal federal government documents.

Couple with the additional facts that the marshals' office sent directly to the local office of Ogltree Deakins, directly to the alleged Managing Partner, Anthony Decristoforo, who is also lead attorney in this case on September 14, 2020. The attorneys who have an obligation to respond to the waiver, has refused to accept it and or respond to the waiver even

when it was officially sent to them by the US Marshall. This should show the court that they have no intention to comply with any of the courts rules and the main reason is that the plaintiff is black and they will not **stoop down to niggers**".

That has been the issue with Velocity and Ogltree Deakins as they have been and still are being beaten by a nigger in their eyes and simply will not stop the obstruction.

Once gain fabricating and out right lying to the court.

In Garrison Jones the plaintiff in the above captioned does hereby add the attached exhibits to his Motion to Compel **(dkt 42)** filed on September 10, 2020.

The exhibits show a documented pattern of lying on behalf of Ogltree Deakins Alleged Managing Partner, Anthony DeCristoforo that has been going on since, he has filed his appearance and with every single pleading he has filed with the court.

He is quick to allege violations aimed at the Plaintiff where they do not exist and at the same time, has openly lied, made multiple misrepresentations, half-truths and with deception intent in each pleading filed with the court.

At the same time of their avoidance, they at all times attempt to turn the table on the plaintiff to make it appear that he is the issue. A very innovative legal strategy that has from the beginning failed.

Plain and simple he does not have a defense. The court should ignore his motion to deny to compel the document he has claimed the FMLA exist.

The court also can accept with this motion from the plaintiff prior to the date of October 29, 2020 to see for itself that defense counsel has intentionally lied to the court by reviewing the complaint for itself to see that no FMLA complaint exist and take the appropriate sanctions against counsel for committing perjury and obstruction upon the court where he has lied about duplicity of an FMLA claim, that it existed in another claim and that it was resolved. All lies.

My apologies to the court for being direct but it is warranted as if no one else will step up and call a liar, a liar, I have no problem doing so, because it is warranted.

Attach is the entire complaint from Northern Illinois case number 1: cv-02388 where counsel claims there is a FMLA claim.

Moving the court to not cancel the hearing, where the plaintiff can in less than 30 seconds in open court and on the record no FMLA allegation or claim was made in this complaint.

He is basically taking an arrogant **white privilege** stance it is visible. His acts are no more than those of a drama queen, where at every turn he is complaining, that somehow he and Velocity are being prejudice when all they have been doing is lying and practicing avoidance, a practice he and Velocity have been doing for over 3 years.

You would expect more from someone who claims to be a leader, but he is worse than any of his proceeding attorneys assigned where all of them failed and lied, however the level of lies here is getting tiresome. It's as

if I have to present stratospheric evidence every single time to show the truth and show that the defendants and counsel are liars and are lying to the court.

The prejudice is upon the plaintiff when no one has acted upon these lies and applied the appropriate sanctions. As such, since it has not been done is the main reason why they have not stopped as they have no deterrent to do so.

If no deterrent is administered he will continue to believe he and his client will not be held accountable for their actions in the face of insurmountable evidence of their guilt. They will believe they are as he alluded to has "**knighted himself and his client "an immune defendant" as he has in (dkt 29 pg 4**

(DKT 29 if the court does not take any action.

It only adds fuel to the fire and open the door for others to see this and do the same illegal dilatory tactics saying that Ogltree Deakins got away with it so can we can move forward.

**Conclusion**

Included with this replay is the complete case number 1:18-cv-02388

Dkt 46 Notice of no Response from Defendants

Dkt 52 Notice to court of avoidance of being served by US Marshall

\\

Notification to court of pending equivocal clear and convincing evidence of fraud upon the court by defendants and their counsel from Ogltree Deakins to be filed no later than Monday October 19, 2020

GARRISON JØNES

______________________,

Date 10/16/20

**Garrison Jones**
**Plaintiff (Pro Se)**
**P.O. Box 188911**
**Sacramento, California 95818.**
**garrison.jones@outlook.com**

**Exhibit A**

## II. STATEMENT OF RELEVANT FACTS

Plaintiff filed this action in the United States District Court for the Eastern District of California on November 25, 2019. [Dkt. 1.] Plaintiff named Velocity Technology Solutions, Inc. as a defendant. *Id.* Approximately 140 days later on April 13, 2020, Plaintiff used a process server to

---

[1] Among the multiple grounds for early dismissal of this case is that Plaintiff previously filed and dismissed with prejudice a virtually identical action involving the same parties and claims in the United States District Court for the Northern District of Illinois. Plaintiff filed that case in May 2018, the parties settled the case, and Plaintiff signed a general release. Plaintiff dismissed that case with prejudice on August 16, 2018. *Jones v. Velocity Technology Solutions, et al.* (N.D.Ill.), No. 1:18-cv-03288.

Case: 1:18-cv-03288 Document #: 1 Filed: 05/08/18 Page 1 of 27 PageID #:1

FW

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**NORTHERN DISTRICT**

RECEIVED

MAY 0 8 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**GARRISON JONES**

Plaintiff
Case No.

V.)
).

**1:18-cv-03288**
**Judge Ruben Castillo**
**Magistrate Judge Young B. Kim**

1:18-cv-02388

**Velocity Technology Solutions, Velocity Technology solutions Employees, Solutions, Chad Carlson JC Odom , Velocity Support, Velocity Technology Solutions, Executives, Keith Angell CEO, Chance Veasey SVP, Infor Practice, Velocity Technology Solutions, Management Michael Baldwin, Senior Resource Manager, Shauna Coleman Human Resource Director, Steve Kennedy Velocity Controller**

Defendants. )

) **JURY DEMAND**

**COMPLAINT**

1. Plaintiff Garrison Jones ("Plaintiff" or "Mr. Jones"), by and through for his Complaint in this action against Defendants Velocity Technology Solutions ("Velocity) and Velocity Technology Solutions Employees (Velocity Employees) , Velocity Technology Solutions Management ("Velocity Management, Employees"), Velocity Technology Solutions Executives ("Velocity Executives")hereby alleges as follows

2. Mr. Jones at all times pertinent hereto Garrison Jones (Mr. Jones ) was a person protected by the provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*

3. The Velocity Technology Solutions Defendants, and Velocity Technology Solutions Executives, Velocity Technology Solutions Management all times relevant hereto, were employers as defined

   by 42 U.S.C. § 2000e (b).

4. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful racial discrimination, sexual harassment by a homosexual male Velocity employee , harassment , volatile and hostile work environment, retaliation by Velocity Technology Solutions management for reporting discrimination, unfair labor practices, refusing to be included and participate in illegal activities, and retaliations by Velocity Technology Solutions management and executives against Plaintiff because of his race/color, national origin and/or disabilities. Velocity Technology Solutions employees Retaliated against Mr. Jones for engaging in a protected act of

reporting his manager Michael Baldwin and Velocity Technology Solutions Controller Steve Kennedy for violations of company expense approval and reimbursement policy. Because of his repeated complaints about such unlawful discrimination, harassment and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§, The Age Discrimination in Employment Act of 1967 (ADEA), 2000e et seq. ("Title [*2] VII"); the Americans with Disabilities Act, as amended42 U.S.C. §§ 12101 et 28

5. U.S.C 1332

**PARTIES**

, Plaintiff Garrison Jones I a 59 year old African- American born and raised in Illinois. He has for the past 28 years been a successful Independent contractor successful Infor/Lawson Supply Chain consultant. He is regarded part of the top 10 percent of Infor/Lawson supply Chain consultants in the country. He has worked in this field as a single parent to his first-born daughter and to support his family.

Mr. Jones has implemented this software in over 209 healthcare facilities across this nation. As well, he has worked for some of the major healthcare organizations, Moffit Cancer Center, NY Presbyterian, MD Anderson, Cook County Hospital, and Cancer Treatment of America, in applying his experience skillset as it relates to patient care to support him and his family.
Plaintiff Garrison Jones ("Mr. Jones") resides in Illinois.

Defendants Velocity Technology Solutions ("Velocity") is a Technology based organization, with corporate headquarters located in Charlotte, North Carolina, at 1901 Roxborough Rd, Charlotte, North Carolina, 28211. Velocity Technology Solutions Employee Defendants are located in locations throughout the United States, where 90 percent of Velocity Technology Solutions employees including Mr. Jones work out of their respective home offices. Some of the Velocity Technology Solutions Employee Defendants work of Velocity Minneapolis office located at 1200 S Washington Ave #200, Minneapolis, MN 55415. 80 Percent of Velocity Technology Solutions employees work out of their home offices.

**INTRODUCTION**

On February 23, 2018, Mr. Jones filed charges of discrimination, with the EEOC, against the Velocity Technology Solutions and Velocity Technology Solutions employee Defendants based on the same or similar set of facts alleged in the charges of discrimination filed against the named Defendants. Mr. Jones on March 12 2018 received from the EEOC, Dismissal and Notice Of Rights letter dated March 7, 2018, authorizing Mr. Jones to pursue his claims of unlawful retaliation in another judicial forum issued Mr. Jones a notice of right to bring suit in federal district court based on the allegations of unlawful retaliation set forth in the February 23, 2018 Complaint.

13. This action has been filed within 90 days of Plaintiff's receipt of his right-to-sue letters from the EEOC

**EXHIBIT - 1**

Case 2:18-cv-02328 Document #: 1 Filed: 05/08/18 Page 3 of 27 PageID #:3

6. Mr. Jones contends and has documented proof, that this organization has committed multiple discriminatory acts in the past year directly against him, in addition other acts he may have not yet been uncovered or exposed.
7.
8. He feels the continuity –and relationships, as done similar to the RICO act needs to be applied to this organization to deter them from committing these acts in the future. Thus far, their crimes and violation of the civil rights of individuals have not been unpunished

9. Mr. Jones contends this firm has committed multiple focal, multi-state, and federal offenses that warrant federal intervention in to the violation protected of Civil rights as to Mr. Jones an African American citizen. This action will begin the process.

10. Their acts show without a doubt similar purposes results, participants, methods of omission are interrelated and not isolated. Mr. Jones is the first to openly object to their prejudicial methods. MR. JONES in his unfair and discriminatory harsh racial treatment uncovered vast layers of corruption, violation of the law, discrimination that exists within the organization related to racial discrimination. Mr. Jones was treated like a salve, like a piece of property, until Mr. Jones stood up for his constitutional rights.
11. The distinguishing characteristics puts us back in a period where blacks were branded, hung from trees and burned alive

12. Their continuity if the court allows them to escape, will do further harm and damage to Mr. Jones his civil rights, Mr. Jones's family, and his 28-year career. As it has already done. Mr. Jones has been irreparably harmed, emotionally, mentally and physically and suffered adverse actions, repercussions, and lifelong affects because of the multitude of episodes.

13. The continuity must be stopped for continuity as it relates to racial discrimination on this scale, is both a closed and open-ended concept. This is in referring to past conduct hidden from the reach of the law by the acts committed by this firm has shown they want nothing but to continue these acts and bury the truth.

14. Velocity Technology Solutions has issued a company- wide "do not talk to Mr. Jones order" It has been communicate to all employees to report any interaction with Mr. Jones to Human Resources. Incoming and outgoing email is being monitored for any evidence that Velocity Technology Solutions employees are in anyway communicating with Mr. Jones. Mr. Jones has concrete undisputable information in regards to his disparate Treatment by Velocity Technology Solutions employees, management and executives that are so damaging that it could cause the company to fold or cause a deep drop in revenue if this information was to become public it would seriously damage, Velocity Technology Solutions business.

15. The facts of the matter is, it is all true and Velocity Technology Solutions has shown they will do any say anything to put obstacles in his way and stop him any way they can.

16. They have done this same thing since Mr. Jones's employment at Velocity Technology Solutions Mr. Jones was never going to achieve any success as a Velocity Technology Solutions employee. They did so for no other reason but the color of his skin and the fact he is black.

17. They did not intend to retain Mr. Jones as an employee, they simply wanted to suck him dry of his knowledge and experience, had him document things that they had failed on. Use him to test out an illegal process and then kick him out,

18. For his part Mr. Jones sought to reach an out of court settlement in the matter, however Velocity Technology Solutions with its arrogant attitude and narcissistic demeanor with the assumption "they could not be touched, refused, totally ignoring Mr. Jones's efforts until Mr. Jones began to exercise his rights under the Federal, Illinois and Arizona, Whistle Blower Protection Acts, where he is protected from retaliation from exercising a legal right or complaining about illegal activities, crimes or suspected crimes as well as illegal workplace behavior. Many workplace protection laws

19. Mr. Jones alerted and inquired with federal law enforcement officials as well as those in Illinois, Minnesota, and Arizona of the Illegal activities. He also alerted business partners, class attendees and competitors to warn them of the unethical, lawful and illegal activity that is still occurring at Velocity Technology Solutions till this day

20. Mr. Jones sent 124 since January 2018 emails, audio, video, phone records, customer surveys; customer compliments to Velocity Technology Solutions all went unanswered.

21. They have attempted to cover-up their acts of discrimination and related activities, by deleting emails, videos, and, lying to and misdirecting state and federal government agencies their officials in an attempt to retaliate and cripple Mr. Jones efforts to show patterns of deception. What they have done is once again put them in a position that warrants a government Civil Rights investigation, starting with this case in front of the court today.

22. Their past conduct projects into the future with a threat of repetition that will certainly occur if Velocity Technology solutions and its employees are allowed to escape this injustice and not punished for, violating Mr. Jones is civil rights, racial, and sexual discrimination, he endured during his employment as well as the rights of others currently and in the future.

23. Here the whites in this organization were "rewarded by committing a federal crime in the form of higher year-end bonuses, the management did not give a second thought to Mr. Jones and the direct discrimination. They felt that it would be business as usual until Mr. Jones stood up for his rights.

24. Mr. Jones also was directly discriminated against in reference to education and training because of his race, a direct violation of EEOC, Training & Apprenticeship programs or other training/ retraining programs, including an on-the-job training program. Where it t is unlawful to discriminate against any individual because of his race, color, religion, sex, national origin, age (age 40) or disability. Mr. Jones was not even told of the training. He only found out on a team call, by this time, Chad Carlson was well on his way to St. Paul Minnesota for training. Mr. Jones as the only Lead Supply Chain consultant should have went, yet Velocity Technology Solutions, openly discriminated against Mr. Jones by sending another white employee.

25. Mr. Jones was subjected to disparate treatment, frequent verbal tirades and spoke to at all times in a condescending tone by his direct manager Michael Baldwin and by Michael Baldwin's' superior Susan Haltopp Sr Director, Infor Practice for no apparent reason, They attempted to drain Mr. Jones of his knowledge in regards to procurement, asking him to put in writing, setup configurations, diagrams and steps to implement procurement, because they had none to speak of.

26. Mr. Jones began his relationship with Velocity Technology Solutions as an independent contractor, after 6 months when work began to slow down; Mr. Jones was only been able to work less than 9 hours per week. Mr. Jones threaten to leave if Velocity Technology Solutions did not have enough volume to sustain him as he had for over seven consecutive weeks gas less than 20 hours each week. When Mr. Jones threatened to leave, Velocity Technology Solutions offered Mr. Jones a full time position as Lead Supply Chain Consultant at an annual pay of $140,000.00per year. Mr. Jones accepted with the understanding that he would only stay for five 4-5 years and he would retire.

27. Soon after Mr. Jones was hired, he began to feel uncomfortable in the work environment at Velocity he felt resentment towards him being hired. As he obtained access to and contact with other employees and other business units, he began to see and hear unethical and illegal business practices being done by Velocity management.

28. As he attended the team meetings, he noticed more and more that Velocity had no diversity to speak of in its organization. There were no Black women, no Black men on any of the calls after looking at an organization, chart during the meeting; these was not one black consultants on the call.

29. Mr. Jones was given antiquated laptop equipment that was three generations behind the laptop given to all other employees, frequently broke down. Mr. Jones also had multiple issues with his network credential where his password and access would expire every thirty days. This prevented Mr. Jones from working on a regular basis, only to find out the reason for the expiration of password was because his immediate manager Michael Baldwin failed to inform the network team Mr. Jones was no longer a contractor, but a regular employee.

30. In addition after months of having issues with a second laptop given to Mr. Jones and complaining about it to his manager and network team on several occasions. Finally after 5 months of dealing with this unnecessary equipment, in August of 2017, Mr. Jones was forced to purchase his own laptop, from Office Depot, using the same brand and specifications of Velocity Technology Solutions equipment, Mr. Jones returned the equipment sent to him by Velocity Technology Solutions in order to perform his job.

31. Immediately after his hire Velocity Technology Solutions resource Manager Michael Baldwin began to pressure Mr. Jones in solving multiple Supply Chain customer issues that Velocity Technology Solutions was unable to resolve, as they had no qualified supply chain individuals in the organization. Mr. Jones proceeded to work on as many issues as possible given the gravity of the situations.

32. In particular was an issue with NuHealth Medical Center in Long Island, NY. The customer was threatening to cancel the contact with Velocity Technology Solutions as for months they were unable to

begin to use the requisition module as designed and required. His manager Michael Baldwin specifically told Mr. Jones "you have to save us from having this customer cancel this contract. "

33. Mr. Jones applied the same principles he had done at all previous engagements. He informed the customer that he is not here to point fingers, simply here to help solve all the issues surrounding the issues preventing Nu Health from properly implementing the requisitions module.

34. The customer was happy with Mr. Jones's visit. Mr. Jones received several thank you messages from Velocity Technology Solutions executive, yet Mr. Jones' never received recognition of this on his review in July 2017.

**Exhibit 4, which is attached hereto and incorporated herein by reference**
**Review Garrison Jones**

35. Mr. Jones was not told the full story in regards to the issue. Mr. Jones later found out that the reason they wanted to cancel the contact as told by the VP in charge, was that Michael Baldwin Mr. Jones's manager sent the Finance Lead, Eric Libinsky to implement Requisitions knowingly that Eric Libinsky had no or limited knowledge and experience as a procurement consultant, sent him out there for the sake of revenue, and was totally unqualified. Frank the VP told Mr. Jones that they had been billed for thousands of dollars for Eric Lewinsky's trips to the facility for months and he and Velocity Technology Solutions failed to deliver, thus the reason he was going to cancel.
36. Unknown to Mr. Jones, the cancellation was in jeopardy based on his evaluation and performance. Velocity Technology Solutions failed to tell Mr. Jones this prior to the engagement.

**April 2017**

37. Less than six weeks into his employment and during a teleconference team, meeting Mr. Jones learned that Marci Graham, a support employee who performed go –live quality assurance had been laid off. This left Mr. Jones as the only person in the organization to take on these tasks. He confirmed this with an Instant message during the call with his manager, Michael Baldwin.

38. As in all previous engagements when Mr. Jones was an independent contractor or employee in the past 20 years, he was the project manager or Lead Supply Chain consultant role on all engagements. He has never in his career, had another Supply Chain consultant that he "reported to ". This was the same situation at Velocity Technology Solutions. Mr. Jones had no counterpart or peer anywhere in the organization. When support could not address a procurement customer issue, Mr. Jones was called to assist and or consult on the calls. While all consultants made contributions on support issues if needed.

39. Support personnel in regards to "how to" contacted Mr. Jones on a regular basis and assistance on support calls. Many times support would "go around Michael Baldwin, and went directly to Mr. Jones, as his involvement was viewed as a "bottle neck" when it came to resolving customer issues. Support would contact Mr. Jones directly to get the issue resolved. This angered Michael Baldwin as he wanted to control all aspects of what Mr. Jones did not allowing others to take advantage of his experience. Michael Baldwin treated Mr. Jones like a piece of property / slave that only he could control and use any

way he saw fit. Upon learning of this, Michael Baldwin was more interested in "charging/ Chargeback" to support so that his forecasted numbers and utilization accounts for the time Mr. Jones is helping support. Basically making others, pay for using "my nigger" is how Mr. Jones felt about the ordeal. Michael Baldwin did not care one bit about helping the customer, he only cared about micro- managing Mr. Jones and controlling everything he did.

40. At all times Mr. Jones's manager on multiple occasions began to make Mr. Jones appear/feel inferior, and irresponsible by minimizing his role, participation , contributions and position as an employee and as Lead Supply Chain consultant at every opportunity he got.

**June 2017**

41. Mr. Jones had been employed at Velocity Technology Solutions for a period of less than 4 months, in June Mr. Jones received a below expectations from his manager Michael Baldwin, on all of his performance review items,, despite the fact that he had solved all of the supply chain issues in professional services, had Lead every supply Chain initiative in PS since his arrival at Velocity Technology Solutions.

**July 2017**

42. In July 2017 Mr. Jones received a mid-year review by his manager Michael Baldwin that was completely false, full of lies and half-truths, and was graded "below expectation" in all categories. The review was the worse Mr. Jones had ever received in his entire life. Michael Baldwin intentionally did this despite the accomplishments Mr. Jones had received since from customers and executive employees, since he joined the company.

43. Mr. Jones disputed multiple items but they were not changed. In particular, Michael Baldwin said "base on Mr. Jones's pay grade" and based on his position as a Lead" to insinuate based on what velocity Technology solutions was paying Mr. Jones or based on his title as a lead.

**Exhibit 5, which is attached hereto and incorporated herein by reference**

44. In one instance Michael Baldwin mentioned, "Garrison has worked in a **minor** capacity on a couple of projects" Michael Baldwin did this to minimize Mr. Jones's role, position in the organization and on the projects, he was assigned. Given the fact that Mr. Jones was the only supply chain consultant in PS, the only Infor Supply Chain Consultant in the entire company who had taken the Lead or Major role on these projects if Mr. Jones had minor roles The answer, no one. On every supply chain project Mr. Jones was assigned, he was the only supply chain person and he led all supply chain initiatives. In addition, was not in a minor role.

45. **Exhibit 5, which is attached hereto and incorporated herein by reference**

46. Mr. Jones in his 28 years of being a consultant for the past 25 years he was either the Project Manager or the Lead Supply Chain consultant on every single project he was engaged in. This was only done to make Mr. Jones look and feel inferior.

47. In the same Michael Baldwin wrote "but has had difficulties with Feld, but again, as a Lead, he should have been able to work through this "again, insinuating that a Lead is supposed to solve all issues regardless of the situation. The truth of the matter is this issue is due to inexperience of the resource at the customer site and had nothing to do with the position, experience, and skill set of Mr. Jones.

The incident

48. Company: Feld Entertainment, as illustrated below, as of March 7, 2018 is still open in the velocity Technology solutions support ticket system

**Exhibit 6, which is below hereto and incorporated herein by reference**

a. **Incident Number: INC1618259**
b. **Company: Feld Entertainment, Inc.**
c. **Short description: PO Upload Process - Failure on PO520 - Fatal Error**
d. Customer Ticket:
e. Click here to view INC1618259

49.
a. Comments:
b.
c. **2018-03-07 14:40:44 CST - Dawn Adams** Additional Comments
d. Steven, Per our conversation yesterday you are more focused on the PO536 issue and this can wait until that incident is resolved. I will push out the committed date to the end of March - Dawn

50. More than 10 other velocity employees from April of 2017 until March of 2018, and Infor the software vendor has worked and unable to resolve this issue, it is 1 year later and the issue has still not been resolved. If Mr. Jones could not resolve it, why has it been opened for over a year? Yet Mr. Jones is the only person/ employee in the entire organization who contributed to or consulted on had this one incident on their performance review. Mr. Jones is only employee, where this incident made it to his review as a negative aspect of his job performance. Why? Because Michael Baldwin views Mr. Jones as inferior, as a scapegoat, dumping ground for all things that he and others are unable to handle or accept responsibility for.

51. There is no mention of any accomplishments by Mr. Jones anywhere in his review despite multiple ones provided and given to velocity about Mr. Jones's work and work ethic. This was intentionally done, with malice directly towards Mr. Jones because he is black.

52. On or about June 10 2017Mr. Jones while at a client site with Senior Director, Susan Holtapp received unfair disparate Treatment related to an assessment document that Susan Holtapp was attempting to develop for the Infor Practice. She as well had no Supply Chain / Procurement knowledge. She relied heavily on the experience of Mr. Jones for content but did not have a design model to help quide her.

53. After Mr. Jones had worked at the client hospital for over 11 hours and before he was able to reach his hotel room, Susan Holtapp grabbed him in the lobby of the hotel and forced him to help his work on this document until 11:30 pm. Susan Holtapp knew Mr. Jones was diabetic, ignored this, did not allow Mr. Jones to have dinner for the entire evening. Mr. Jones was forced to have dinner in his room, while the other employees left and had dinner elsewhere.

54. The next morning at approximately 6:30 am, Mr. Jones went to the lobby for orange juice prior to leaving for the hospital for work scheduled for 9:30 am. Susan Holtapp who was already in the lobby and again forced to work on the night before grabbed Mr. Jones again. Mr. Jones was not dress for work but was held down in the lobby until 9:00 am, forcing him to scramble to take his medication, and prepare for work. In addition, Mr. Jones suffered a mild diabetic episode because he was unable to take his medication as scheduled.

55. After the engagement, Mr. Jones contacted his manager, Michael Baldwin and explained the unfair disparate Treatment Michael Baldwin asked Mr. Jones to write down word for word the chain of events and send it to him in an email and that he would send it directly over to HR. Mr. Jones did exactly what he was told and sent a 3-page email to Michael Baldwin the next day.

56. Mr. Jones asked Michael Baldwin 2 weeks later what happened when he sent this to HR, as he has not heard anything nor has anyone contacted him. Michael Baldwin totally disregarded the question and refused to respond to Mr. Jones.

57. Mr. Jones later found out in December of 2017 when speaking with Shauna Coleman, Human Resource Director, that Michael Baldwin never forwarded the email nor did he have any discussions with HR in regards to the incident. Shauna Coleman contacted Michael Baldwin relayed the conversation and received a copy of the email, but even HR failed to do anything about the situation. It was sweep under the rug.

**JULY 2017**

58. Ninety percent of all Velocity Technology Solutions employees work from home, as did Mr. Jones. When hired Mr. Jones specifically to Velocity Technology Solutions management what one of the reasons why they had failed implementing Infor/Lawson procurement is that Procurement is unlike other modules, a consultant has to be onsite and it does not fit the model of remote/work from home as these are things that need to be addressed by physically being at the customer site. U like fiancé and HR, Procurement is more dynamic as it relates directly to patient care. This insight was ignored.

59. Later in the month, Mr. Jones submitted two expense reports for reimbursement for Velocity business travel. They were not paid as the normally were paid in the allotted time.

60. Mr. Jones sent Michael Baldwin an email message, he received no response. Mr. Jones submitted two additional expense reports ad had the same result. Michael Baldwin directed Mr. Jones to Steve Kennedy, Velocity Controller.

61. Mr. Jones sent Steve Kennedy and email message inquiring why hi expense reports had not been paid and for 3 weeks, he received no response. Mr. Jones was still engaged and with clients and travelled on a weekly basis, to Seattle, New York, Minneapolis, and Louisville on company business.

62. Mr. Jones began to get frustrated as he was continued to be assign client trips, yet he was not getting normal reimbursement. He contacted his manager Michael Baldwin again and Michael Baldwin began to degrade Mr. Jones and in a condescending tone said, "**That is your problem, you do not listen**" Michael Baldwin followed it up with an email stating the same thing via email.

**Exhibit 7, which is attached hereto and incorporated herein by reference**

63. This began a period of three consecutive months where Mr. Jones despite turning in expense reports on a regular basis was not reimbursed for none of them. It forced Mr. Jones to use payroll funds to travel on company business.

64. Mr. Jones complained openly to Michael Baldwin and Michael Baldwin failed to act. Michael Baldwin after 2 ½ months replied the reason why Mr. Jones had not been reimbursed was because no receipts were attached to the expense reports. Mr. Jones replied that since his employment at Velocity Technology Solutions 7 months ago, that Michael Baldwin approved all of his expense reports despite having no receipts and paid by Steve Kennedy I accounting.

65. Michael Baldwin said things have changed. Mr. Jones asked, "I had a hotel bill for a trip to NY for well over $1,200 just for the hotel and it was paid, isn't that against company policy? Mr. Jones received no response to his question. He posed the same to Steve Kennedy on a conference call and he was deflected saying, "That does not matter you as a consultant know you need receipts for everything. Mr. Jones asked well you folks billed the customer based on my expense reports with no receipts attached and I bet you received your money from them, why am I not. I am the only person in the organization for over 3 months that has not received an expense reimbursement MR. JONES asked about getting his money back. No response. Both Steve Kennedy and Michael Baldwin that he had to prove he incurred told Mr. Jones

66. Mr. Jones was told if he was to be reimbursed that he would have to produce bank statements to prove he paid for expense, or else he would not get his money back. Mr. Jones complied but still did not get reimbursed

**Exhibit 6, which is attached hereto and incorporated herein by reference**

Case: 1:18-cv-03288 Document #: 1 Filed: 05/08/18 Page 11 of 27 PageID #:11

**AUGUST 2017**

67. Mr. Jones still while not being reimbursed for travel expenses assigned to customer Valley Medical Center, forced to use his own funds for travel.

**September 2017**

68. Mr. Jones still while not being reimbursed for travel expenses. On or about September 09, 2017 Mr. Jones received his "alternate certification plan "from his manager Michael Baldwin. He copies Velocity Technology Solutions Management SH, and Velocity Technology Solutions executive Chance Veasey, SVP on the message. This message demonstrated that each had knowledge of the

**Exhibit 10, which is below hereto and incorporated hereto by reference.**
**Exhibit10 supporting email documentation from Michael Baldwin dated Sept 9, 2017 Illustrating Mr. Jones is the "TEST BED" for this illegal activity also reveal illegal plan to used illegal videos "We Plan on using this model to certify other Velocity employees**

69. Illegally recorded videos and participated in the entire scheme. For his participation and contribution in this illegal act, Mr. Jones was going to be the guinea pig for the prelude of Velocity Technology Solutions' plan to use these illegally recorded videos to certify other white employees at Velocity Technology Solutions.

70. First Mr. Jones was to "**TEST IT OUT**". Mr. Jones felt that this was the same way Blacks were given experimental drugs to "see the affect it and made to taste and test things to see what happens to them before the drugs were given to whites. The theory was then and in this case. When he asked why, a Lead has to do. He received no response.





Velocity Technology Solutions was using Mr. Jones as the only Black available at the time. He was treated as if he was expendable, and if he somehow because he was inferior, and passed the test and obtained certification, then it was then safe for the white employees to do the same. Thinking that if he can do it anybody can. Mr. Jones felt that he was given this task so that Velocity Technology Solutions could say and show "if a black man who is inferior could pass the certification can, any white consultant should have no problem passing the exam.

Instead of using a "junior" consultant, again the pick a Lead Consultant to test this out because he was Black. What other reason why he was not sent to class/ Training. This was all part of the "master plan "hatched up by Velocity Technology Solutions Management and VelocityTechnology Solutions Executives.

71. Also in September, Mr. Jones was sexually harassed and assaulted by a male homosexual employee, J.C. Odom at a so-called "business Dinner. Mr. Jones was known not to go out to dinner with any of his co-workers; he was instead after working at the hospital for over 12 hours more inclined to go back to his

hotel rest. Mr. Jones was at this particular customer, University of Louisville with three known male homosexual employees from Velocity. For the record, Mr. Jones is not gay or homosexual.

72. Mr. Jones originally declined this dinner invite, but after calls and coaxing, he decided to show up late.

When he arrived the three homosexual employees were already at the location standing in the middle of the floor waiting for a table, drinking. Also for the record, Mr. Jones does not drink or smoke. The three employees, Mark Hayes, Project Manager, Andy Paige, Finance Consultant and J.C. Odom, velocity support, each had several drinks before Mr. Jones arrived and drank heavily the entire evening.

73. While Mr. Jones was standing close to a rail, J.C. Odom pretending that he did not have enough room to get around Mr. Jones grabbed him by the waist, rubbed his erect penis on Mr. Jones's buttocks, and did a pumping motion, simulating sexual intercourse. Mr. Jones snap pushed back and J.C. Odom gave him a sexual look. Mr. Jones kept his distance from Mr. Odom the entire evening. IN fact when seated all three of the male homosexuals sat next to each other and Mr. Jones sat on the outside of the booth to avoid contact with all three.

74. The next day Mr. Jones was hesitant to go to work, he contemplated calling his manager Michael Baldwin, but recalled that Michael Baldwin failed to address a past human resources issue. Intentionally and felt he would do the same in regards to this instance.

75. When Mr. Jones returned home he planned to report this issue directly to HR himself but he was immediately required to travel to Seattle.

**October 2017**

76. Mr. Jones began to experience first-hand the unethical business practices of Velocity Technology Solutions. He already experience Velocity Technology Solutions sending unqualified consultants to client's sites. He himself was sent to a client site for the sake of revenue, with no experience in implementing Infor Cloud Suite.

**Exhibit 11, which is attached hereto and incorporated herein by reference**

77. On October 10, 2017, Mr. Jones received and email from his manager Michael Baldwin titled Forecast vs Actual. In that message Mr. Jones was encouraged to bill two separate customers for hours he did not work, to satisfy Michael Baldwin in his efforts to make the actual hours worked match forecasted hours as this was tied to year-end bonuses.

78. In that email Michael Baldwin was questioning the hours Mr. Jones had billed to two clients, Valley Medical and UMC (University of Louisville) and I quote

**Exhibit 12, which is attached hereto and incorporated herein by reference**

Supporting documentation email from Michael Baldwin dated

"Garrison,

I am working on matching up hours booked vs hours forecasted and I was looking at your time for last week. Please help me understand why out of forecast of 24 hrs for UMC, you only booked 5?
Mr. Jones replied,

79. "Mike not sure what you're talking about here. I never said I did not have enough hours I was speaking in regards to when I was a contractor back in February. The hours for UFC are now being divided between Amanda and myself if you guys recall. I know exactly what I should be doing on each project and I get that direction from the PMs. **I am not going to do any false billing**. The hours reflect the exact amount of time. I am sorry but both projections are not always actuals.

80. Mr. Jones refused to bow down to unethical activity and refused to bill hours to customer he did not work just so Michael Baldwin could reach his "quota of bricks" Michael Baldwin thought he could bully NJ into falsely billing the customer and changing the hours worked his time sheet.
Your forecast for last week was: Valley 18 hrs and UMC 24 hrs.
Your hours booked were: Valley 14 hrs and UMC 5 hrs.
81. Knowing that we are behind on UMC and that you have been concerned about not having enough work, I'm **surprised that you missed the mark on UMC.**
You're forecasted for 20 hrs this week at UMC and 18 again for Valley. Do you know what you need to be doing for both of these projects this week? **I'm looking to make sure we hits at a minimum the 20 hrs for UMC and the 18 for Valley this week.**
Please let me know if this will be an issue or if you don't know what you need to be doing this week."
Michael Baldwin apparently is or was confused on Mr. Jones's employment status, forgetting that Mr. Jones was had been a full time employee since February of 2018. His reference related to hours was back in January 2018, when Mr. Jones was an independent contractor and on a weekly basis, he was only able to bill Velocity Technology Solutions for approx. 9 hours per week.

82. As salaried employees, Mr. Jones did not have to concern himself about that. If he worked 3 hours or 300 hours, he would be paid the same sum. In addition Michael Baldwin failed to remember that they had hired an independent consultant to help Mr. Jones on the University of Louisville Project and that, the hours were being split between the two of them. Mr. Jones had to remind Michael Baldwin of this. Michael Baldwin was again only concerned with apply more and more scrutiny to Mr. Jones and what he was doing. Again, Michael Baldwin wanted to control every action Mr. Jones took but in his haste in doing so, he miscommunicated Mr. Jones's employment status and the hiring of an outside consultant in his equation to confront Mr. Jones.

Please let me know if this will be an issue or if you don't know what you need to be doing this week.

83. Thanks,
84. Michael

**Michael Baldwin** | **Senior Manager, Professional Services** | Velocity Technology Solutions, Inc.

- 612-333-9859| m 760 716 6613 | www.VelocityCloud.com

**Exhibit 13, which is attached hereto and incorporated herein by reference**

85. After three months of not being reimburse for business travel Mr. Jones contacted Shauna Coleman Director of Human resources and outlined all the facts surrounding the situation. He relayed to her that Michael Baldwin never look at expense reports, he simply approved them. Controller Steve Kennedy, paid the same invoices for months with no receipts and that both Michael Baldwin and Steve Kennedy, violated company policy for months doing so. Mr. Jones also said that they both had him go thru his bank account to "triple" prove he incurred this expense or else he was not going to get the money.

86. Shauna Coleman reviewed the basic issues and sent an email to all parties, with the policy for receipts, which said, "Receipts for expenses, under $25.00 a receipt is not required." The fact of the matter was that Michael Baldwin and Steve Kennedy were telling Mr. Jones that all items needed a receipt when they did not have to. These two men had been with the company for over 5 years and knew of this policy, yet they had needlessly go through months of bank statement for nothing. It was done only to retaliate against Mr. Jones for engaging in a protected activity and properly reporting and escalating the issue to HR. Mr. Jones at the next payroll date finally received a reimbursement for over $10,000 he had incurred for business travel.

**Exhibit 14, which is attached hereto and incorporated herein by reference November 2017**

87. On or about November 13, 2017 Mr. Jones had a conference call with Shauna Coleman, Director, and his Manager Michael Baldwin. Michael Baldwin was still angry with Mr. Jones for reporting him to HR. Mr. Jones had been out on PTO due to sever swelling in his foot. Michael Baldwin went over project items and promised to call Mr. Jones at the end of the day to go over them, he failed to do so. Michael Baldwin did not call and did not call for 2 days. When he did call, it was after work hours after Mr. Jones had finished for the day, Thursday November 17, 2018. Michael Baldwin finally, was looking at Mr. Jones's calendar, it had an appoint on it for Bebe health care where Mr. Jones had been working with them on an inventory control issue. Michael Baldwin seeing that and had scheduled a meeting with another customer, before and without consulting with Mr. Jones that conflicted with his meeting. Mr. Jones had no idea Michael Baldwin had scheduled the meeting and went on to assist Bebe healthcare.

88. Michael Baldwin had to be on the call alone. Later that day, Mr. Jones received an email from HR stating that Michael Baldwin said he missed a meeting. Mr. Jones told her that was a complete lie, sent her his entire calendar, and showed Michael Baldwin had scheduled a meeting at the same time, knowing that Mr. Jones had a meeting already schedule. He even sent her the email from Michael Baldwin asking what was his meeting about, where Mr. Jones had replied that morning showing the meeting was scheduled over a week ago.

89. Mr. Jones asked why is it that if someone misses a meeting that he or she gets a call from HR. Shauna Coleman replied they normally do not get calls like that. Mr. Jones explained this is the intense scrutiny he has been under since he was employed. Michael Baldwin would do and say anything to make Mr. Jones look bad and in this case Mr. Jones had all of the emails and Voice mails to prove Michael Baldwin was did this intentionally to hurt Mr. Jones.

**Exhibit 18, which is attached hereto and incorporated herein by reference**

90. Mr. Jones is not expected to be available after hours like all the other consultants. Michael Baldwin felt yet again if Mr. Jones were not at his disposal, he would make trouble for him any way he could.

91. On November 17, 2017, Mr. Jones directly related to the stress hostile work environment of his employment suffered a major stroke on November 17, 2017 while on the phone working with a customer. He lost 37 percent of his peripheral vision in his left eye and 10 percent in his right eye, loss of depth perception, he is unable to drive a motor vehicle, and he has suffered permanent physical and visual cognizant impairment, due to the hostile working conditions at Velocity Technology Solutions. Physically his body could no longer withstand the crippling treatment, fear, and anxiety he experienced having to work with Velocity Technology Solutions

**December 2017**

92. Mr. Jones was released from the hospital on December 5, 2017. On December, Mr. Jones reached out to Velocity Technology Solutions to inquire about his health benefits. On December 22, 2017, h received a response from Shauna Coleman Velocity Technology Solutions Human Resources Director, that aid do not worry about that Velocity will collect the premiums when you return to work. At that time, Velocity Technology Solutions did not know when Mr. Jones was able to return to work.

After the New Year, Mr. Jones began to recap all of the chain of events from the previous year at Velocity Technology Solutions, the discrediting, harassment, sexual harassment, the hostile work environment, and especially the blatant racial discrimination he had endured the entire year at the hands of Michael Baldwin.

**January 2018**

93. The court should know that after Mr. Jones on January 7, 2018 submitted an 11 (eleven) page discrimination, retaliation complaint to Human resources on or about January 7, 2018 containing over 28 acts of discrimination he had endured since February2017 to Shauna Coleman, Director Human Resources.

**Exhibit 19, which is attached hereto and incorporated herein by reference**

94. Among these allegations were recaps of the sexual abuse/harassment that occurred in September 2017. Shauna Coleman asked why he had not reported this before. He told her 6 months ago, Michael Baldwin was supposed to present and email of unfair disparate Treatment to HR and he did not. Mr. Jones said he no longer had any faith or trust in Michael Baldwin as he would not have reported these events as he should. Mr. Jones informed Shauna Coleman about the email from June 2017, she contacted Michael Baldwin, and he sent her a copy of it, but also relayed the fact that he never sent it to HR. The illegally recorded videos and the training were also part of this complaint, which he was to use to obtain certification, these videos as an act of blatant discrimination.

95. Shauna Coleman responded via email saying that Velocity Technology Solutions takes these issues serious a promised to do a thorough unbiased investigation. She then asked Mr. Jones for any/all supporting documentation on the allegations.

96. Mr. Jones began to send Shauna Coleman copies of emails from his company email outlining the allegations and providing proof of all the items in his documentation. Most of the information was accurate as he has dates, times etc., he even had screenshots of the location of the illegal videos that were recorded and the names of Michael Baldwin and CC as the individuals who put them on the Velocity google drive. Mr. Jones had spreadsheets of the "certification Plan he was told to follow and much more to support his allegations.

97. On or about January 17, 2018 Mr. Jones received an email from Shauna Coleman stating that his email access had been removed as he was supposed to be concentrating on his recovery and nor "working" She sent a copy of an email dated November 9, prior to Mr. Jones's stroke to justify t. Mr. Jones answered back that he was not working but doing exactly what he was asked to do and provide supporting documentation. Mr. Jones then realized that the information he was providing was too damaging to Velocity Technology Solutions and the had to retaliate somehow to prevent him from providing this information and make his allegations "unfounded.

98. He demonstrated and asked, "How can you used an email from a previous PTO November 9, 2017 to justify removing access when I was complying with your request and not working? Mr. Jones never received a response. Mr. Jones knew they were controlling access to the one area (Email) that could prove his case against Velocity Technology Solutions. He asked, "How can I give you what you are asking me for when you hold the key to the gate I need to get in to give it to you? " Velocity Technology Solutions never responded

**which is attached hereto and incorporated herein by reference** **Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

- 704 357 7721 | m 845.282.6955 | f 703.935 1269 | velocitycloud.com

99. Mr. Jones was told any future communication would be to his personal email on file. Mr. Jones knew then that Velocity Technology Solutions was beginning a path of non-compliance and would begin to do everything they could to stop him from succeeding with these allegations.

100. Mr. Jones sensed that Velocity Technology Solutions would do this prior to sending the allegations, so on December 28, 2017 he forwarded over 800 email to his personal email address in preparation and to protect himself from the dishonest acts and crimes he knew Velocity Technology Solutions had committed.

101. Velocity Technology Solutions began to harass Mr. Jones while he was still recovering from his stroke. On January 23, 2018, Mr. Jones received another email from Shauna Coleman, Velocity Technology Solutions Human Resource Director, this time Velocity Technology Solutions is demanding Mr. Jones repay health premiums, reneging on previous promise and commitment in December 2017 t to recoup premiums when Mr. Jones returned to work. They demanded repayment on certain date and provided Mr. Jones with the address and who to send it to.

102. Mr. Jones replied with copy of previous message from December and informed Velocity Technology Solutions if his health is remotely affected because Velocity Technology Solutions reneged on their prior commitment and his benefits are dropped or interrupted that he would file suit against them for doing so. Velocity Technology Solutions never responded, but Mr. Jones's Vision coverage was interrupted. Mr. Jones was too ill to enroll in benefits and Shauna Coleman with received his authorization to enroll for him. Mr. Jones again threatened to sue Velocity Technology Solutions if this was not corrected.

**Exhibit 20, which is attached hereto and incorporated herein by reference**

103. Velocity Technology Solutions began to harass Mr. Jones more in during Jan February of 2018. Mr. Jones sent a scolding email informing Velocity Technology Solutions to only contact home during business hours, as he was not working and nothing that they needed to confer with him about could not wait until normal business hours. Velocity Technology Solutions began to abuse Mr. Jones's personal email address. On two separate occasions, Mr. Jones received email messages to his personal from Shauna Coleman at 9:30 pm and 1:30 am from Shauna Coleman that was intended to annoy and harass Mr. Jones yet again, with full knowledge that that he was still recovering and had no contact with any customer that needed his assistance. Velocity simply wanted to alarm and harasses Mr. Jones, they did not care when, or how they could do it.

104. Mr. Jones threatened to call the police and file a report as they began to use another email address of Mr. Jones to send email to without his authorization as Mr. Jones had put a restriction on his personal email to reject emails after business hours. Velocity Technology Solutions went around this and sent emails to both addresses anyway.

105. On Jan 24, Mr. Jones to prove a point in regards to illegal recording of conversations, Mr. Jones sent an email to Velocity Technology Solutions from his source at Infor to validate that video/ audio recording was not permitted at Infor training sessions. Mr. Jones never mentioned Velocity Technology Solutions by name in his inquiries, the did not know what vendor he as talking about, they simple verified that it was not permitted.

**Exhibit 21, which is attached hereto and incorporated herein by reference**

106. Within 30 mins of receiving that message, Velocity Technology Solutions General Counsel, Chris Heller responded to Mr. Jones saying that Velocity Technology Solutions reached out to their contacts at Infor in regards to the recordings. They included in the email the names of the two sources Mr. Jones had been in contact with.

107. Velocity Technology Solutions was not aware that Mr. Jones had not mentioned Velocity Technology Solutions by name, basically what they had done was "outed" themselves in an attempt to beat Mr. Jones to the punch, they identified, themselves as the firm and the Velocity Technology Solutions employees that did the illegal recording, Eric Libinsky and Chad Carlson.

108. Mr. Jones sent an email to Velocity Technology Solutions Shauna Coleman director of HR, and Keith Angell, CEO stating that as well. Velocity Technology Solutions showed they are a corrupt organization that would do or say anything to get out of a situation. Mr. Jones later found out that this was not the first time, Velocity Technology Solutions had illegally recorded a partners training session and at that point, Mr. Jones felt he had made the worse career choice in his life

**FEBURARY 2018**

Case: 1:18-cv-03288 Document #: 1 Filed: 05/08/18 Page 19 of 27 PageID #:19

109. On February 23,018 Mr. Jones filed a complaint with the EEOC, Mr. Jones began to get more harassment from Velocity Technology Solutions. In 3 months from January 2018 until March 2018 Velocity Technology Solutions claimed that it was conducting an "investigation. Mr. Jones did not believe this as from other sources within Velocity Technology Solutions, no one had been fired, or reprimanded in any way.

**MARCH 2018**

110. he court should know that after Mr. Jones submitted an 11 (eleven) page complaint listing the illegally recorded videos, which he was to use to obtain certification, these videos as an act of blatant discrimination.

**Exhibit 22, which is incorporated hereto-supporting email documentation**

111. After filing, this written complaint with Velocity Technology Solutions Human Resources the files and videos mysteriously disappeared. Later Mr. Jones found out they were deleted by Velocity Technology Solutions in an attempt to cover-up the fact that the videos ever existed. They were caught red-handed in this criminal scheme. Mr. Jones also learned this was not the first time; Velocity Technology Solutions had done illegal acts. Show that this was a well thought out plan by Velocity Technology Solutions Management and Velocity Technology Solutions executives

112. In addition, Velocity Technology Solutions and Velocity Technology Solutions Employees violated both Federal and the State of Minnesota Laws, which all are considered illegal.

The **Minnesota Privacy of Communications Act Minn. Stat. 626A.01,**

113. It generally unlawful for any person to intentionally intercept record, disclose or use any oral or wire communications made by persons who would have an expectation of privacy reasonably justified by the surrounding circumstances.

Specifically provided in sections **626A.01** to 626A.23 any person who. (a) Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication; (b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any **electronic**, ...

**DEFINITIONS. 626A.02, INTERCEPTION and DISLOSURE OF WIRE, ELECTRONIC, OR ORAL COMMUNICATIONS PROHIBITED. 626A.03, MANUFACTURE, DISTRIBUTION, POSSESSION, AND ADVERTISING OF WIRE, ELECTRONIC, OR ORAL COMMUNICATION INTERCEPTING DEVICES**

**PROHIBITED.**

626A.02 INTERCEPTION AND DISLOSURE OF WIRE, ELECTRONIC, OR ORAL COMMUNICATIONS PROHIBITED.

Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, electronic, or oral communication;

intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, electronic, or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic, or oral communication in violation of this subdivision

Except as provided in paragraph (b) or in subdivision 5, whoever violates subdivision one shall be fined not more than $20,000 or imprisoned not more than five years, or both.

If the offense is a first offense under paragraph (a) and is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or **private_commercial gain**, and the wire or electronic communication with respect to which the offense under paragraph.

114. In this case, the intent by Velocity Technology Solutions and the employees are not and were not acting under the color of law enforcement. They performed the illegal recording to obtain "**commercial gain and commercial advantage** was to illegally record these infor sessions and used them to certify Mr. Jones instead of sending him to formal training, in the process of this illegal act they directly discriminated against Mr. Jones, who later was told by a fellow employee, "the reason why they did not send you to class is because, you are Black

Velocity does not invest monies in Black employees" "they think you are too old and might leave after you get certified.

**Federal Electronic Wiretap Act Title 1**

Tuttle Wiretap Act, prohibits the intentional actual or attempted interception, use, disclosure, or "procurement] [of] any other person to intercept or endeavor to intercept any wire, oral, or electronic communication." Title I also prohibits the use of illegally obtained communications. 18 U.S.C. § 2515

115. In this instance in June of 2017, Velocity Technology Solutions employees Chad Carlson and Lead Finance Consultant, without consent of any of the attendees at the training session, illegally records over 6 weeks of Finance and Supply Chain classes at Infor, under the direction of Michael Baldwin and Velocity Technology Solutions executives, who planned to use the illegally recorded videos to gain certification for other Velocity Technology Solutions employees without the benefit or paying for the classes like other companies.

116. Neither Chad Carlson nor Eric Libinsky get consent for any of the participants, nor were they part of a continues conversation for over 6 weeks that allowed them to record these sessions. They were done secretly for hours at a time. Mr. Jones learned this was a planned activity, involving Velocity Technology Solutions management. Mr. Jones knew they had done this before. Mr. Jones also learned that Velocity Technology Solutions employees Chad Carlson and Eric Libinsky received "inflated Performance reviews for carrying out this illegal activity, at year end as payment in the form of higher bonuses than other employees.

Mr. Jones was used as a Guinea pig to test out this process as Velocity Technology Solutions planned to illegally certify other Velocity Technology Solutions employees by watching these videos, without paying for or attending class. The reason was to be able to bill the customer at a higher rate as the consultant would or is certified.

117. Mr. Jones was told by Michael Baldwin, in order for Velocity Technology Solutions to be able to sell consulting and or technical services, Infor/Lawson, made it mandatory that the firm must have certified consultants in Finance and Procurement before their sales staff could sell consulting services.

118. Velocity Technology Solutions did this while illegally recording training sessions. It is the same as if a student cheated on the final exam but is still allowed to graduate, despite the fact that everybody knows he cheated.

1. This is illegal and unethical for r Eric Libinsky or Chad Carlson to benefit of having "Infor/Lawson verification on their resume as it was predicated and preceded, while they were both violating federal and Minnesota law.

119.The discrimination of Mr. Jones continued when Mr. Jones and Eric Libinsky were assigned to a new customer, Valley Medical Center as Leads consultants for Supply Chain and Finance.

120.In August of 2017, this customer implementing Infor/Lawson Version 11.
This took the blatant discrimination to another level. Not only was Mr. Jones discriminated against by not sending him to class , like other white employees, he was made to take a difficult route to achieve the same certification, but before he could view one of the illegal videos, he was assigned to a customer as the lead supply chain consultant with zero experience to do so. This was a malicious path undertaken BY Velocity Technology Solutions, Velocity Technology Solutions management and Velocity Technology Solutions executives. This is the level of retaliation and humiliation Mr. Jones was subjected to repeatedly at the hands of Velocity Technology Solutions.

121.Mr. Jones was assigned to this customer by Michael Baldwin knowing of the circumstances, that he had not even seen the software, was unqualified to do so. In effect, the white Finance Lead who went to 6 weeks of class was setup for success and the Black Supply Chain Lead Mr. Jones was setup failure. How can you assign anyone to successfully implement a software package he has never seen?

122.This is just one of many examples of the discrimination Mr. Jones endure at the hands of Velocity Technology Solutions and its employees.

123.Mr. Jones knew that this was illegal and reached out to individuals at Infor to confirm. Members of the education department confirmed that Audio and Video recording of Infor training sessions is not permitted.

124.Instead of sending Mr. Jones to class Velocity Technology Solutions sent a white support person who was not in a revenue generating capacity to class instead of Mr. Jones the only revenue Supply Chain Consultant in the entire organization. They also sent the white Finance Lead to class.

125.In order to achieve the same certification as the whites, Mr. Jones was to watch the illegally recorded videos and to achieve the same certification, that took 6 weeks on dedicated classroom time, while Mr. Jones was to watch these videos after while working on 2 major new clients, working 10-12 hours at the client site, and traveling at the same time.

126.Velocity Technology Solutions cleared off the schedule for over 6 weeks for the two white employees that attended class, but did not do the same for Mr. Jones.

127.Mr. Jones even had to back fill for Chad Carlson in support beginning the same week he was to be in Minneapolis for pre-engagement meetings for a new project/client.

128.Mr. Jones was actually in Minneapolis at the same time of the training, while Chad Carlson was across the bridge, illegally recording class sessions. When asked why did they not send him to class, he was told by his manager Michael Baldwin "the software did not change that much, you will figure it out" Which was totally un-true. Michael Baldwin had bot even seen the software himself. If anyone had worked with Infor Software in the past 10 years, Version 11 "cloud Suite is radically different from any of the previous versions. Furthermore, the class was for consultants and implementers, not Support Personnel, which is what Chad Carlson does, he has never implemented a full cycle Infor/Lawson Supply chain system. While Mr. Jones prior to joining Velocity Technology Solutions had implemented every module in more than 209 healthcare facilities.

129.The statement Mr. Jones had heard from his fellow employees after learning of this blatant act of discrimination, was Velocity does not invest in Black people time employee since February 20, 2017, yet in perspective, he saw that he was the only black consultant in Professional Services, there were no black women, no black managers, directors, Senior Vice Presidents and the CEO is white. There was no diversity to speak of in the organization make up of velocity that still is the case today.

**VENUE AND JURISDICTION**

130.Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because claims arise out of incidents that occurred within the Northern District of Illinois. The events or omissions giving rise to this action, including the unlawful employment practices, sexual discrimination, racial discrimination, volatile and hostile work environment retaliation alleged hereto occurred in this district. Mr. Jones is a U.S. Citizen and resides in the state Illinois.

This Court has jurisdiction over all counts pursuant to, among others, 28 U.S.C. §§ 1331 and 1343.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arise out of incidents that occurred within the Northern District of Illinois.

131.as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, Section 1981, and the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

132.Over the course of Plaintiff's nearly one -year employment history at the Velocity Technology Solutions, Defendant repeatedly subjected Plaintiff to unlawful discrimination and harassment because of his race/color, and disabilities, as well as to unlawful retaliation. The blatant abusive, racially charged hostile work environment at Velocity Technology Solutions includes the frequent use by Plaintiff's co-workers and direct supervisors of speaking to Mr. Jones in a condescending tone at all times, despite having any working knowledge and or experience in Infor/Lawson Supply Chain. Mr. Jones's work was at all times under constant intense scrutiny. He ultimately found out that no one in the organization knew anything regarding procurement and that Velocity Technology Solutions had failed to properly implement procurement modules/projects for multiple customers.

133.Mr. Jones was objectively and subjectively severe and pervasive to unreasonably interfere with Mr. Jones's health, and work performance to create an intimidating, hostile, and offensive working environment. His Physician noticed the change in Mr. Jones's blood pressure readings and on multiple occasions prescribed additional medications to combat the rise. Mr. Jones who already suffered from hypertension that was escalated to the point he had to have intravenous therapy to lower his blood pressure.

134.Mr. Jones's physician strictly warned him whatever "trigger" is causing this rise; he needs to address head on, before he suffers serious repercussions.

135.Mr. Jones was also prescribed trazadone; a medication is used to treat **depression**. It may help to improve your mood, appetite, and energy level as well as decrease **anxiety** and **insomnia** related to depression. Trazodone works by helping to restore the balance of a certain **natural** chemical in the brain. Mr. Jones's physician informed him that if he did not or was not able to control the triggers that are causing his blood pressure to reach dangerous levels, that he would be in jeopardy for a heart attack.

136.Mr. Jones was the only black in Professional services Practice; he was the only Infor/Lawson Supply Chain Consultant in Professional Services Practice. To make matters even worse Mr. Jones was the only Infor/Lawson Supply chain consultant in the entire organization.

Case: 1:18-cv-03228 Document #: 1 Filed: 05/08/18 Page 24 of 27 PageID #:24

137.Mr. Jones as the Lead Supply Chain Consultant had no "junior consultants" under him. Unlike the white Lead Finance Consultant, Eric Libinsky, who had more than six "junior consultants under him. To Mr. Jones it appeared that they did not want to have a black man or person to have supervision over white any employees telling them what to do. It is obvious here in this case.

138.Mr. Jones's manager, Michael Baldwin, had access to Mr. Jones's calendar, he would schedule calls with customers knowing that Mr. Jones had an appointment or conflict on his calendar that conflicted with the time he wanted to schedule a call. Michael Baldwin would make his call a priority despite the conflict and question Mr. Jones about the commitment already made to the customer Mr. Jones was working with, totally disrespecting Mr. Jones ability to manage his daily schedule.

139.Mr. Jones is as most other consultants in the practice, had work hours from 8:00 am to 5:00 pm, yet Michael Baldwin would call, send, Instant Message, and or email Mr. Jones before 7:00 am and after 5:00 pm and expect Mr. Jones to respond. When Mr. Jones did not respond Mr. Jones made multiple false claims that Mr. Jones was not available for work. If Mr. Jones went out to lunch and came, back Mr. Jones would again label him as unavailable for work.

140.Mr. Jones informed Michael Baldwin the day before he was to attend a funeral, while at the burial Michael Baldwin called Mr. Jones, Mr. Jones informed him that he could not talk, yet Michael Baldwin refused to let Mr. Jones off the phone. He deemed his issue more important. Mr. Jones was forced to leave the burial, went to his car while at the burial to take the call.

141.In reference to, education and training discrimination Velocity Technology Solutions committed a major violation of EEOC Training & Apprenticeship Programs where it is s illegal for a training or apprenticeship education program for the employer to discriminate on the bases of race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, age (40 or older), disability or genetic information. In this case, the employer openly discriminated against Mr. Jones on multiple counts, his race, age, and disability. An employer may not deny training opportunities to African-American employees because of their race.

142.Velocity Technology Solutions resource manager Michael Baldwin exploited Mr. Jones's disability. Each time Mr. Jones would have an episode when his diabetes or chronic hypertension was elevated; Michael Baldwin would ask Mr. Jones personal medical questions. Mr. Jones later found that Michael Baldwin was doing this was attempting to find "weak points" that he could pressure to cause Mr. Jones to experience another health episode.

143.Mr. Jones finally realized the pattern and after months of these types of questions, Mr. Jones refused to provide Michael Baldwin with any personal medical questions. Mr. Jones then reported this to Human Resource Director, Shauna Coleman, who told Mr. Jones that he did not have to answer these questions any longer, as they should only be for Human Resources purposes.

144.Defendant's conduct especially those of Michael Baldwin was done with , malicious intent towards Mr. Jones [*3] willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputation, severe mental physical anguish and emotional distress.

145.Mr. Jones firmly believes Velocity Technology solutions is engaged in illegal activities and have done so for years based on reviews online from current and former employees who have voiced their comments online. These comments are filled with statements dating back to 2011 "smoke and mirrors", be afraid", friends don't let friends work at Velocity. Illegal business practice. The list goes on and on about the ethics they have seen.

146.The Velocity Technology Solutions Defendants retaliated against Mr. Jones for asserting his protected rights to be free from unlawful harassment, questionable and unethical business environment and a sexually hostile work environment by, among other ways.

147.VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.In addition Velocity Technology Solutions retaliated fiercely against Mr. Jones for refusing to participate in the illegal activity related to the illegal recording of Infor education sessions and for Mr. Jones exercising his rights related to the Illinois Whistle Blower Act by informing law enforcement of these activities.
that protects employees who disclose illegal conduct to government officials or refuse to participate in illegal activities.

148.Velocity Technology Solutions is in direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*...

149.Velocity Technology Solutions Defendants engaged in criminal activity and has been for some time, heightened discriminatory acts and retaliatory acts described in the charges of discrimination attached her to. The Velocity Technology Solutions Defendants' discriminatory and retaliatory conduct, as previously mentioned, was done with malice and/or with reckless indifference to Mr. Jones rights.

150.As a result of the Velocity Technology Solutions and Mr. Jones Velocity Technology Solutions Defendants' discriminatory and retaliatory conduct, Mr. Jones has suffered injury to his career as well as other injuries for which he is entitled to actual, compensatory and punitive damages, as well as equitable relief pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

Case: 1:18-cv-03288 Document #: 1 Filed: 05/08/18 Page 26 of 27 PageID #:26

151.unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination, harassment and retaliation against Plaintiff because of his race/color, and/or disabilities, and because of his repeated complaints about such unlawful discrimination, harassment and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title [*2] VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA")

152.On February 23, 2018, Mr. Jones filed charges of discrimination, with the EEOC, against the Velocity Technology Solutions and Velocity Technology Solutions employee Defendants based on the same or similar set of facts alleged in the charges of discrimination filed against the named Defendants. Mr. Jones on March 12 2018 received from the EEOC, Dismissal and Notice Of Rights letter dated March 7, 2018, authorizing Mr. Jones to pursue his claims of unlawful discrimination, sexual harassment and retaliation in another judicial forum, issued Mr. Jones a notice of Right to Sue in a federal district court based on the allegations of unlawful retaliation set forth in the February 23, 2018 Complaint.

153.This action has been filed within 90 days of Plaintiff's receipt of his right-to-sue letters from the EEOC

**Exhibit** 8, which is attached hereto and incorporated by reference. Right TO SUE EEOC

154.Upon information and belief, the Velocity Technology Solutions Defendants, Velocity Technology Solutions Management, and Velocity Technology Solutions Executives

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e *et seq.***
(*Retaliation*)

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. §§ 2000e *et seq.***
(*Racial discrimination*)

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. §§ 2000e-2**
(Sexual Harassment)

**VIOLATION OF AAMERICAN WITH DISABIITIES ACT OF 1990 42 U.S.C. § 12101, et seq**

**VIOLATION OF SECTION 1981 (42 U.S.C.C. § 1981**

**The Age Discrimination in Employment Act of 1967 (ADEA)**

Mr. Jones repeats, realleges and incorporates by reference paragraphs 1- 75 as fully stated hereto.

Mr. Jones at all times pertinent hereto was a person protected by the provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

The Velocity Technology Solutions Defendants at all times relevant hereto, were employers as defined by 42 U.S.C. § 2000e(b).

By, among these ways, failing to provide proper and just training as given to the white employees related to Infor/Lawson Cloud Suite Training and put major obstacles in the way of Mr. Jones in achieving the same certification. Leaving him in a diminished capacity, ill prepared to carry out the duties of his position, without the proper knowledge and skills to do his job as defined and deprived of the same opportunities given to white employees in the organization despite Mr. Jones's Lead position and status, that he was just and rightful to receive.

The Velocity Technology Solutions Defendants' discriminatory and retaliatory conduct, as alleged hereto, was done with malice, intent and done with reckless indifference to Mr. Jones rights. As a result of the Velocity Technology Solutions Defendants' discriminatory and retaliatory conduct, Mr. Jones has suffered injury to his career, physical health, reputation, as well as injuries for which he is entitled to actual, compensatory, and punitive damages, as well as equitable relief, pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e *et seq*.

Wherefore, Plaintiff, Garrison Jones, respectfully prays for judgment against Velocity Technology Solutions , Order Velocity Technology Solutions Defendants Velocity Technology Solutions "Velocity) and Velocity Technology Solutions Employees (Velocity Employees) , Velocity Technology Solutions Management ("Velocity Management, Employees"), Velocity Technology Solutions Executives ("Velocity Executives")defendants to make Plaintiff Garrison Jones whole by entering an order awarding Plaintiff appropriate actual, compensatory and punitive damages as determined by the fair and enlightened conscience of a jury as well as any affirmative relief necessary to eradicate the effects of Velocity Technology Solutions, Velocity Technology Solutions Defendants 'unlawful employment practices; racial discrimination, sexual harassment and failure to conduct a proper and unbiased investigation applying company policy for violations for same.

Award Plaintiff Garrison Jones, for the loss of current and future earnings that has affected his health, prospects for advancement, and the length of time he would have reasonably been expected to work/be employed by Velocity Technology Solutions. Mr. Jones original plan as agreed upon when he was hired, was to work for Velocity Technology Solutions for a period not more than 5 years, had not for the actions undertaken by Velocity Technology Solutions he would have reached the goal/plateau.

In addition, award Mr. Jones reasonable costs and attorney's fees. and Expenses incurred, to include pre-judgment and post-judgment interest in an amount to be determined at the time of trial; and In connection with this action; and grant any other relief provided for by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. and/or any other relief as this Court deems just, necessary and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted,

Garrison Jones

FILED
SEP 2 9 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**

**FOR EASTERN DISTRICT OF CALIFORNIA**

GARRISON JONES
**Plaintiff**

v.
VELOCITY TECHNOLOGY SOLUTIONS LLC

**No: 2:19-CV-02374 KJM-EFB**

DKt 46

**NOTICE TO COURT**

**NO REPONSE FROM DEFENDANTS**

Plaintiff Garrison Jones does hereby notify the court that on September 8, 2020 he sent a letter via USPS first class mail to defendants to initiate and comply with the courts order of August 31, 2020.

It is apparent based on recent past history that the defendants do not plan or having any intention on complying with the courts order but is seeking alternate ways/methods of avoiding litigation by frivolously attacking everything except the facts that surround the violation of the law and FMLA by their clients..

**Date September 24, , 2020**

[signature]

Garrison Jones (Plaintiff Pro Se)

**P.O. Box 188911**
**Sacramento, California 95818**
Garrison.jones@outlook.com

**September 8, 2020**

**Velocity Technology Solutions**
**1901 Roxborough Rd**
**Charlotte, North Carolina 28211**

**Re: Compliance with court order**

I am contacting your organization to begin compliance with the enclosed court order from case number 2:19-cv-02374 KJM-EFB.

Please contact me via email at garrison.jones@outlook.com upon receipt of this letter to begin to complete the court-mandated tasks.

Regards

Garrison Jones

, I mailed first class USPS to Defendants Velocity Technology Solutions et al at 1901 RoxBorough Road Charlotte, North Carolina   28211 served the following document(s) on the attached service list:

**Motion for  for Appointment of counsel**
**Notice of Motion to Dismiss Intent to respond**
**Notice to court No response from Defendants**

Date September 29, 2020

I am the plaintiff in the above case appearing Pro Se.
I do hereby affirm that I am the plaintiff in the above-mentioned case appearing Pro Se and that on September 29, 2020 I sent via USPS first class mail l a copy of said motion to defendants Velocity Technology Solutions et al at 1901 Roxborough Road Charlotte, North Carolina 28211


**DATE** September 29, 2020

Case 2:19-cv-02374-KJM-JDP Document 52 Filed 10/07/20 Page 1 of 4

FILED
OCT 07 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**

**FOR EASTERN DISTRICT OF CALIFORNIA**

GARRISON JONES
**Plaintiff**

v.
VELOCITY TECHNOLOGY SOLUTIONS LLC

**No: 2:19-CV-02374 KJM-JDP**

Dkt 52

## NOTICE TO COURT DEFENDANTS AVOIDING BEING SERVED BY UNITED STATES MARSHALL

Plaintiff Garrison Jones does hereby notify the court that on August 24, 2020 the plaintiff sent per the courts order of August 14, 2020 a copy of the complaint, summons, and court order (dkt 32) to the United States Marshall. In addition, per the court order he filed notice with the court that he had completed this task.
(dkt 38) Notice of submitting Service documents to USM.

Om September 4, he contacted USM and confirmed receipt of these documents.
On October 5, 2018, USM verified that they per their current procedure a Waiver of Summons Notice of Lawsuit was sent due to the COVID -19 Pandemic.

They did not send the documents to the address on the USM given to them with the documents by the plaintiff, but they sent the documents and the Waiver of Summons

Case 2:19-cv-02374-KJM-JDP Document 52 Filed 10/07/20 Page 2 of 4

Notice of Lawsuit waiver to the local Law office of Ogltree Deakens at 500 Capitol Mall #500, Sacramento, CA 95814 on September 14, 2020.

As of October 05 the date the plaintiff contacted the USM office to check to status of the service, he upon contacting USM found out that none of the documents had not been served.

The plaintiff even on the USM submitted clearly wrote that the defendants will avoid being served. The address on the USM was for the registered agent In Raleigh, North Carolina Corporation Service Company 2626 Glenwood Avenue,

Suite 550 Raleigh, NC 27608. The plaintiff even included the hours of operation of 9:00 am – 3:30 pm in special instructions.

This again is part of the tactics of the defendants and especial Ogltree Deakens who are doing everything they can to obstruct the proceedings at every turn.

They stated that they had until Nov 17, 2020 to return the waiver and as I stated to them, they will not and that this is a repeat of the reason why the service was given to USM because of the original issue of avoidance by the defendants on being served .

The court has to be aware that this was incorrect and that it was Ogltree Deakens who in the past advised Velocity to avoid being served and not to respond and or return any waivers in the above case. As such for over 5 months and over 160 days after plaintiff filed the lawsuit on November 25, 2019, Ogltree and Velocity avoided to be

served and as they stated in the denied motion to dismiss on May 4, 2020, that they had no obligation to return a waiver or respond to the complaint.

This is being repeated, as the documents should have been served on the defendants and not the law firm that is representing them. They do not intend to accept service and again will attempt to take advantage of the limitations of service of 90 days to expire to once again claim they were not served. Yet in their last pleading, they are attacking the plaintiff claiming he is the reason the case has lagged on for 10 months on the court docket.

The plaintiff knows that the defendant counsel not intend to return the waiver and will intentionally do so and will wait and let the 90 limit intentionally expire to, in his mind make another claim that the defendants were not served within the 90 day limit. The court based on the past issues surrounding the same issue, should apply the law to this issue and grant the plaintiff reimbursement of fees associated with for the second time, he has incurred to properly serve the defendants and that it was again the defendants putting unjust, unneeded financial burden upon the plaintiff when the local office of Ogltree is within walking distance of the court house and anyone from that office can simply walk by and drop off the waiver. They again are practicing avoidance.

Knowing this the plaintiff executed alternate service on the defendants that was served October 6, 2020 @ 2:53 pm, that was successfully executed and the certificate of service was filed the day of this notice.

Case 2:19-cv-02374-KJM-JDP Document 52 Filed 10/07/20 Page 4 of 4

The plaintiff respectively ask the court for a ruling to resolve this issues as the defendants are once again In a previous request for reimbursement of fees to serve the defendant, the court denied the motion to do so. It is clear that is the defendants who are intentionally avoiding to be served and return the waiver an adding expense to the plaintiff that is unjust and undeserving. The court has to apply the rules to Rule 4 Summons this is the second occurrence

(2) *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service

Reverting to the dilatory tactics that have continuously interfered with the administration of justice in this case.

**Date October 06,, 2020**

Garrison Jones (Plaintiff Pro Se)

P.O. Box 188911
Sacramento, California 95818
Garrison.jones@outlook.com