Garrison Jones

Plaintiff (Pro Se)

P.O. Box 188911

Sacramento, California 95818

garrison.jones@outlook.com

**FILED**

APR 0 8 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
             DEPUTY CLERK



## U.S. DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARRISON JONES**<br>            **Plaintiff,**<br>    **v.**<br>**VELOCITY TECHNOLOGY**<br>**SOLUTIONS LLC et al**<br>            **Defendants.** | **Case No.: 2:19-cv-02374**<br>**KJM-JDP**<br>**JURY TRIAL**<br>**DEMANDED**<br>Date Action filed:  Nov 25, 2019<br>Date set for trial: NONE |

## VELOCITY TERMINATION

### Introduction

Velocity and Ogltree Deakins are both precluded from Relitigating those issues identified in this proceeding as the identification of matters actually and necessarily determined in prior proceedings (issues) through the application and doctrine of collateral estoppel and res judicitca where the party is precluded from re-litigating the issue again.

It would be very ridiculous for the defendants and their counsel who have a documented history of fraud, forging government documents and also s documented history of fabricating evidence, knowing that law enforcement is looking at this case then would again after they have been caught planting a false fabricated FMLA complaint in the files of the US Department of Labor, now they are making another false claim of "after-acquired evidence" they would again submit to the court more Fabricated evidence in a federal proceeding.

At this point they are shell shocked and extremely apprehensive to submit any such evidence as it has been proven multiple times that they are lying and the evidence is completely false.

All of the affirmative defense items in the defendant's response are all irrelevant and immaterial to the complaint.

The only two affirmative defenses that needed to be responded to are events that are undisputable and both have already been litigated in favor of the plaintiff.

So, there after acquire evidence defense is simply a bunch of words because they have no intent of submitting any evidence to the court in support of this desperate attempt claiming in 21 days after the plaintiff has uncovered and presented a felonious criminal act committed by Velocity and Ogltree Deakins.

It simply is a ploy no more and no less than all the other false claims made that all have been proven to be false.

The **collateral estoppel** doctrine provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future **lawsuit**. ... The first factor is that the issues in the previous and subsequent **litigation** must be identical.

**Res judicata**

The doctrine of *res judicata* bars **claims** that have either been litigated or that could have been litigated from being litigated again.

**Collateral estoppel**

The doctrine of collateral estoppel bars **issues** that have been litigated from being litigated again.

**The first factor** to consider is whether there was previous litigation in which identical claims were raised, or in which identical claims

**The second factor** to be considered is that the parties must be the same parties as those who litigated the original action. The third factor is that the original action must have received final judgment on the merits

**The third factor** is that the original action must have received final judgment on the merits.

All the criteria and requirements for collateral estoppel and res judicata have been met in this case and as such precludes the defendants and their counsel from re-litigating and re-introducing these claims in this court and obtain any such relief or dismissal of this complaint.

It is a highly unlikely that the defendants and their counsel who has not submitted a single exhibit, a single admissible piece of evidence, nor have they offered in open court any testimony or offered a single witness to the court that would or could testify or counter any and all of the claims by the plaintiff.

It is well documented that in each of the prior proceedings, all the claims, statements made to AZDES, Arizona Court of Appeals have all been false, frivolous and all attempts made to reverse and or overturn all of the prior decisions have been denied and dismissed.

## Highly Prejudicial

It would be highly and extremely prejudicial to the plaintiff who painstakingly uncovered all of the false fabricated complaints, charges, allegations made against him by Velocity where the defendants at the time of all prior litigation had a fair legally provided opportunity to litigate these false claims as well as the opportunity to appear offer evidence, exhibits and testimony, that now 3 ½ years he is forced to Re-litigate the same issues with the same parties again.

The plaintiff does hereby submit to the court five (5) decisions/rulings in prior proceedings all I favor of the plaintiff to the court illustrating the fact that all false allegations, accusations, claims, charges and complaints filed by the defendants against him were all reversed, overturned and or changed in his favor.

- 4 -

This includes

Exhibit 1 – Plaintiff termination and done unlawfully and was not done for misconduct. Arizona Appeal U-1595392-001 June 22, 2018

Exhibit 1A – Appeal by Ogltree Deakins – Attorney Christopher Meister
In his appeal he lies to the court claiming that the plaintiff was still employed receiving wages and benefits.  He then acknowledges that they contact the court on June 21, 2018 ex parte knowing that this is prohibited, yet he also does not mentioned that Ogltree Deakins also submitted exparte evidence attempting to influence the court into making a decision in their favor.  Yet despite this unethical contact with the court they still did not appear at the scheduled hearing the next day June 22, 2018. This unethical misconduct is the same that has been from the beginning of all litigation where they have avoided and intentionally failed to appear or go on the official record to offer any testimony, offer any evidence or exhibits.

**Exhibit 1B**
**Dismissal of Appeal Arizona Appeal U-1600605-001 07/23/2018**

**Exhibit 1C**
**Dismissal of Appeal Arizona Appeal u-1600600-001  8/20/2018**

Despite the fact that in the prior dismissal where the court specifically informed the defendants that they had no right to appeal its decision, instead of filing an appeal Ogltree Deakins filed a request to "Reopen the Hearing" That was also denied showing that they have no such respect for the courts rulings and decisions.

**Exhibit 2**

**Dismissal of Appeal Arizona Appeal U-1639659-001  10/23/2019**

**Appeal of Velocity false claim plaintiff physically unable to work as he was on approved FMLA**

**Exhibit 2A**

**Fabricated false claim by Velocity HR director Shauna Coleman May 4, 2018**

**Exhibit 2B**

**First recorded impersonation of plaintiff by Velocity / Ogltree Deakins  May 7, 2018**

The plaintiff was unaware that Velocity had filed this false complaint against him until the next year July 2019.  There is no way he called AZDES on May 7, 2018 and confirmed any of the false allegations made by Velocity 3 days after it was made.  See that they insisted the intake person record the plaintiff cell number in the log to make it appear authentic and connect the plaintiff to the call.  This shows the same pattern on the planted FMLA complaint made to the US department of Labor 2 months later.

**Exhibit 3**

**False claim made by Velocity June 2018**

Plaintiff committing **unemployment fraud collecting unemployment and working at the same time- a felony in the state of Arizona**

- 6 -

**Exhibit 3A**

**Arizona Decision Appeal U-1642697-001  10/29/2019**

Decision by the court changed the original adjudication made by AZDES as Velocity who was actively stalking the plaintiff and his family, learned he had returned to work for another organization working out of a facility in Indiana.  To stop paying unemployment from a previous decision/ruling they immediately contacted AZDES and making the third consecutive false claim in 3 months claiming unemployment fraud.

The court reviewing all of the evidence and changed the false claim to **"non-fraud"**.

Velocity was still required to pay unemployment benefits to the plaintiff as a result of his unlawful termination.

**There was a total of five (5) false complaints made by Velocity / Ogltree Deakins All of these decisions were appealed, reversed, overturned, and or changed in favor of the plaintiff.**

The court needs to be informed that the plaintiff over a period of over 1 year was forced to appeal all false claims, allegations made by Velocity, despite the fact that they made all of these false allegations, both Velocity and Ogltree Deakins failed to appear at any of these hearings and defend any of the false allegations they made against the plaintiff

In addition, their response if you want to call it a response comes after it has been presented to the court that Velocity and Ogltree Deakins planted a false FMLA complaint in the files of the US Department of Labor.

You can see in the response DKT 62, that they did not deny, nor did they mention the planted false FMLA complaint filed on July 19, 2018 because they could not.

The only ones who could have made this false complaint is connected to Velocity / Ogltree Deakins.  They have no defense of this undisputable fact.
As such they as it is their pattern has abandoned it and ignore its existence because it stands alone and implicates both Velocity and Ogltree Deakins attorneys in the conspiracy to create this false fabricated piece of evidence.

It was the original intent to use this fabricated piece of evidence in future litigation.

They specifically knew of its existence but "dared" to use it until they needed to.

However, it was the plaintiff who uncovered it in its entirety and as such also uncovered the fraud criminal ramifications of its intent.

They could not dispute it so they move forward with more false fabricated allegations and now justifications for termination of which they do not have.

The defendants and their counsel were given all of the prior courts decisions and also had the opportunity to appeal these decisions to a higher court
(Arizona Superior Court).

In none of these decisions were the defendants given the opportunity or option to appeal any of these decisions.

All of the decisions made were final and in full force and effect in favor of all parties.

As well, the plaintiff after he appealed and won all of these decisions he was financially/monetarily awarded

Understanding that they were faced with undisputable facts they made the decision not to do so.

However, now that the stakes are extremely higher, does not allow or permit them to Re-litigate final decisions in this court especially now that both Velocity and Ogltree Deakins attorneys also face criminal prosecution in parallel of this proceeding because of undisputed facts/documents that illustrate their criminal involvement in fraud upon this court, against the states of Arizona, California, Illinois, Minnesota and Indiana as well as a slew of federal criminal violations of the law that show they both were complicit in these criminal acts.

The issues related to the termination of the plaintiff, misconduct and his ability to work all have been previously litigated.

The attorneys from Ogltree Deakins are well aware that they advised their client to Velocity / Navisite filed multiple false fabricated allegations/claims/complaints against the plaintiff with the AZDES and the Arizona Court of Appeals, in their effort to obstruct and deny the plaintiff unemployment benefits after he was terminated in March 2018.

They are also well aware of all the decisions in all of the prior litigations related to the plaintiffs termination, appeals to his termination, denials of appeals as well as the decisions related to his ability to return to work and the denial of motions to reopen all hearings and well as a separate decisions denying Velocity and Ogltree Deakins the right to appeal any and all of these decisions.  All the decisions were final.

The court procedures were If a party disagrees with a final administrative decision, that party may file a motion for rehearing or review of the decision. See A.R.S. § 41-1092.09. **Motions for rehearing or review must be filed not later than thirty days after service of the decision (thirty-five days if the decision is served by mail).** See A.R.S. § 41-1092.09(A) (1). Although specific grounds for rehearing or review vary from agency to agency, typical grounds include irregularity in the proceedings, error in the admission or rejection of evidence, newly discovered evidence that could not, with reasonable diligence, have been discovered prior to hearing, accident or surprise that could not have been prevented by ordinary prudence, and excessive or insufficient penalties. Motions for rehearing or review must be in writing, and should be submitted directly to the agency from which the case arose.

From all records obtained Velocity and Ogltree Deakins did not file any such appeal to the Arizona Superior Court.  As such now hence they were denied any rights of appeal. They are now attempting to relitigate the issues of plaintiffs termination and now alleging misconduct via their use of "after-acquired evidence" 3 ½ years later in a different court.

This court is not the proper jurisdiction to overturn the prior courts decision as well the time period has completely expired for the defendants to file an appeal with the Arizona Superior Court.  The same with all of the affirmative defenses related to the

plaintiff's ability to return to work and written statement from his physician as all of these issues

These same attorneys also are aware that each of the negative adjudications and denials the plaintiff Garrison Jones filed three (3) consecutive appeals based on these false allegations.

It is ironic that now in the defense counsel after 3 ½ years of lying and getting caught in lies that in all of the previous hearings they along with their client was adamantly claiming the plaintiff had not been terminated, yet now in this latest filing DKT 62 in their Eight Affirmative Defense they are again changing their story and version of the termination of the plaintiff and using the "after-acquired evidence doctrine" a doctrine that can only be used after the employer has unlawfully terminated and employee.

**EIGHTH AFFIRMATIVE DEFENSE**
Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred by the after-acquired evidence doctrine.

The so called **"after-acquired evidence"** is no more than a fact that has never been able to be disputed despite the efforts of defense counsel.

This on its merit confirms the position of the plaintiff that he has stood upon from day one and the prior final decision that the plaintiff was unlawfully terminated.

In addition, the defendants and Ogltree Deakins filed an appeal to this final decision on July 23, 2018 the last such day they an appeal could be filed that was denied and dismissed with prejudice.

- 11 -

The court in its ruling stated clearly that

*Therefore, I conclude that the claimant was discharged, but not for willful or negligent misconduct connected with the employment*

The employer did not present any evidence to show that the discharge was not for misconduct. Therefore, I conclude that the claimant was discharged, but not for willful or negligent misconduct connected with the employment.

**B. J. Cather**
Administrative Law Judge
**CASE HISTORY:**
Effective Date of Initial Claim: 4/8/2018 Issue Code: 10,20
Date of Separation: 3/24/2018
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 6/22/2018

Page 6

First, it was the termination appeal where Velocity filed an "employer protest claiming the plaintiff was still employed

 The Court is well are that the parties in the prior litigation are bound by all prior decisions.

The court is also aware that in a time period of over 4 years of litigation neither Velocity or Ogltree Deakins has submitted not a single piece of evidence, exhibits or offered any such testimony on the record or in open court in any proceeding including this one with any facts and or undisputed circumstances which would result in the overturning, modifications or revisions, reversal of any of the prior decisions and rulings.  Yet, knowing that the previous court included in their rulings where their

appeal had been denied and dismissed with a special notation that clearly meant **with prejudice.**

Now in the current case knowing that they were barred from filing an appeal of these prior decisions and denied the ability to re-open the hearing, they are now attempting to make a false claim of misconduct to a different court now again making false allegations of misconduct and submitting to the court in their

**EIGHTH AFFIRMATIVE DEFENSE via the after-acquired evidence doctrine**

Now claiming that have miraculously come up with fabricated evidence of misconduct that would justify the termination of the plaintiff.
They are attempting to reopen, relitigate a decision that they know they are precluded to do so after a period of over 3 ½ years have elapsed.

They are specifically doing this first for revenue purposes, next because they have been caught fabricating evidence of an FMLA complaint that Velocity / Ogltree Deakins planted in the files of the US Department of Labor more than 15 months prior to the filing of this complaint, on July 19, 2019.

They used and included by deception and misrepresentation to induce the plaintiff by fraud into an agreement.
In the illegal unenforceable agreement, they added and FMLA complaint to the agreement that they filed and hen by deception also in the shuffle of papers inserted the release amongst legitimate complaints filed by the plaintiff.

Ogltree Deakins then had the release hand delivered to the US Department of Labor because it contained the incorrect address, city and state where the USPS would have never been able to deliver the letter.

The release and the illegal agreement were at all times the intended target of the fraud.

No one puts this much effort in a fraudulent scheme unless there were serious damages associated with the actions of the employer that would result in serious financial damages in litigation if uncovered.

Well the fraud had been uncovered.   To date, neither Velocity nor Ogltree Deakins have denied any of the planted false fabricated FMLA complaint, nor have they issued a denial as to the fraudulent release letter created by Ogltree Deakins on behalf of their client Velocity.

They have been eerily quiet and as the normal pattern of being caught in a lie and caught committing a felony against the US federal government, they cowardly attack the plaintiff and falsely accuse him yet again, now of mysterious misconduct to misdirect the courts attention away from the serious and criminal acts uncovered by the plaintiff that have been verified/confirmed by the US Department of Labor, that the plaintiff did not and could not have filed this false fabricated FMLA complaint with their agency.

Velocity / Ogltree Deakins were the only ones with a vested interest to file such a false complaint as it was in their minds the best illegal method to induce the plaintiff into an illegal agreement and obtain a release in the event of future litigation.

In their wildest dreams they never thought it would be uncovered and expose both Velocity and Ogltree Deakins as the ones who filed this fabricated complaint and also connected them to it via the agreement and fraudulent release letter.

was not filed by the plaintiff.

Now defense counsel is offering and presenting to the court these fabricated elements to the court as means of dismissal, escape from damages and as the means to deny any monetary damages or relief to the plaintiff knowing that all of the documents agreement, release document and the plated false fabricated FMLA complaint are all fraud and fraudulent.

Subsequently, they also in the signing obtained the signature of the plaintiff on a release document where the release was also fraudulent as it claims that the release

- 14 -

was for an FMLA complaint that was made on May 22, 2018 that did not exist, nor was there any record of a complaint made on May 22, 2018 by the plaintiff.

The issues and subject matter adjudicated in the proceeding are identical to the issues and subject matter in prior litigation.

Ogltree Deakins knows that they failed and lost all of the prior litigation related to the termination of the plaintiff, the appeal filed by Velocity / Ogltree Deakins where in their appeal, they revealed that they and Velocity had prohibited ex parte communication and presented what they called ex parte evidence to the Arizona Court of Appeals on June 21, 2018 knowing that such communication is forbidden.

Despite this unethical conduct, and the fact thy both registered for the hearing the next day June 22, 2018 both Velocity and Ogltree Deakins intentionally did not attend the hearing, nor did they answer the phone number they provided to the court to call on the date /time of hearing.

## Collateral Estoppel

The **collateral estoppel** doctrine provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future **lawsuit**. ... The first factor is that the issues in the previous and subsequent **litigation** must be identical.

The issue before this court was already recognized by the court in DKT 29

- 15 -

Case 2:19-cv-02374-KJM-EFB Document 29 Filed 07/31/20 Page 3 at 3

*But as set forth below, the court now screens the complaint and finds that it potentially states a cognizable claim against Velocity.*

As with all cases and specifically with this case and the visual exhibits provided by the plaintiff the court recognized a cognizable claim against Velocity for termination of the plaintiff while on FMLA.

The case only has two (2) issues FMLA and termination.  All other affirmative defenses by the defendants and their outside counsel from Ogltree Deakins

The court has to conclude that the so called affirmative defenses submitted by the defendants and their counsel is "utterly unrealistic" to ignore the criminal misconduct of both the defendants and Ogltree Deakins prior to the filing of this complaint on November 25, 2019 is no more than an effort to extend to the defendants and their counsel from Ogltree Deakins the opportunity to fabricated more false evidence.

In addition, all of the "doctrines in their last pleading DKT 62 filed on November 13, 2020 are no more than designed distractions to draw the courts attention away from the fact that in the year 2018 over a year before the complaint before the court, Velocity / Ogltree Deakins, planted a false fraudulent FMLA complaint in the files of the US Department of Labor, used it to induce the plaintiff into an illegal agreement and release of a fabricated FMLA complaint he did not file.

Both the illegal agreement , the release were part of the conspiracy created by Velocity/Ogltree Deakins knowing that in the future if uncovered would in their minds give them some form of immunity and protection from the severe financial damages associated with the unlawful termination of the plaintiff while on FMLA.

- 16 -

It has already been proven that the plaintiff who had no knowledge of this false fabricated complaint, that it was created by and individual from Velocity and Ogltree Deakins that had intimate specific knowledge of the elements of the case in the US District Court of Illinois case number 1:18-cv-02388 and based on conversations with the defendants recognized that the most serious of all the issues they were facing was the termination of the plaintiff while on FMLA.

The fact that in the midst of a previous complaint they felt that a crucial aspect of what they knew was future litigation, that it was necessary to plant and fabricate a false FMLA complaint in the files of the US Department of Labor does not "reduce" the damages that the plaintiff is entitled to.

On the contrary this premediated criminal act increases, enhances and strengthens his proven fact that Ogltree Deakins was the architect that orchestrated this criminal felonious act because all the documentation associated with this criminal act was created by Ogltree Deakins attorneys i.e. the illegal agreement and the release letter.

They connected themselves to this federal criminal act as part of their representation on behalf of Velocity Technology Solutions.

There is undisputable documented events and documents that illustrate that Ogltree Deakins had counseled/advised the defendants of the most serious of all the issues connected to the plaintiff Garrison Jones was his termination while on FMLA.

They also advised them to create what they felt were strategic acts of communication and events that if needed can be part of their defense when the inevitable date that a future litigation would be filed.

It is the opinion of the plaintiff that Ogltree Deakins fully expected the future litigation and the subsequent revenue/billable hours opportunity it presented.

This similar to a seedy mechanic who intentionally while allegedly fixing one issue with a vehicle but at the same time, sabotaging another part or issue for return business.

It is also of the serious belief that they even in this case was *" telegraphing their punches",* by specifically not going the extra mile and always left a window open for *future billable hours by failing to disclose the finale piece of their defense, delaying their responses up to the last date possible stretching out the statute of limitations to the last possible date for any response,  withholding certain elements but at the same time, they left bread crumbs for the plaintiff to look at other elements that he would uncover guiding him to these elements to continue litigations they will have their "cash cow" still on the hook.*

Both embarked on an extensive conspiracy to cover-up this fact that included the filing of multiple false complaints, allegations and fraudulent claims against the plaintiff where they even extended these illegal efforts to include falsely accusing him of fraud, then inducing a state agency (AZDES) to do their dirty work and weaponize law enforcement in charging the plaintiff with a felony to avoid paying a sum of $240.00 per week in unemployment benefits that he was entitled to after they unlawfully terminated him.

Equally, the court cannot ignore that the defendants and Ogltree Deakins knowingly began to methodically create events, communications etc., that laid the ground work

to the defense of FMLA litigation in the event in the future, if filed would give them in their minds a vial defense i.e. illegal agreement and a release of an FMLA complaint/charge that did not exist.

The fact that after months of ignoring that the complaint even existed, but at the same time they were actively monitoring the case, defense counsel from Ogltree Deakins, immediately went back and retrieved these false fabricated "bread crumbs" other attorneys had laid, then picking them up and presenting them to the court as first claiming "virtually identical" secondly, presenting the illegal agreement of a US Department of Labor claim ( with no charge or complaint number ) then finally presenting what they called a "general release" for a FMLA complaint they claim was dated May 22, 2018, that did not exist in the filing system or records of the US Department of Labor.

Also, in connection to their efforts the fact that in their heinous minds ever expected that the plaintiff would uncover   the false fabricated FMLA complaint filed by  the conspiracy concocted by Velocity and Ogltree Deakins where they used personal identifying information, they thought was current to make it appear the complaint was authentic, however they were unaware that the information they were providing had been changed and thus, they used a combination of HR date in the files of Velocity and also information from the complaint filed by the plaintiff against Velocity in the US District Court of Northern Illinois.

The court cannot ignore that the extensive efforts by the defendants and their counsel in connection to this false complaints that reached a plateau where they used as a pawn and conduit of fraud that included a federal agency of the United States government.

In their Ninth Affirmative Defense they claim *"the plaintiff's damages, if any must be reduced because Velocity exercised reasonable care to prevent and correct alleged discriminatory and retaliatory conduct"*

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred and/or Plaintiff's damages, if any, must be reduced, because Velocity exercised reasonable care to prevent and correct any alleged discriminatory and/or retaliatory conduct, but Plaintiff unreasonably failed to take advantage of such preventive and/or corrective measures provided by Velocity, or to otherwise avoid harm.

The go on to say it was the failure of the plaintiff in not taking "advantage" of such preventive and or corrective measures when the plaintiff has been the intended target for all of the false accusations , allegations and false fabricated complaints and charges filed by the defendants who have been advised to do so by attorneys from Ogltree Deakins.

Now, if what Velocity calls corrective measures is putting the plaintiff in prison and complete denial that it was Velocity at all times who was the aggressor, the stalker, the organization that filed multiple false complaints and charges, because they had repeatedly been caught lying to each and every state and federal court for the past 3 ½ years and been caught and exposed in criminal violations of the law many times, including this case before the court.
It was Velocity who committed multiple state, federal criminal violations of the law.

The plaintiff Garrison Jones is the victim and only victim of all these offenses because he was the only such Velocity employee who refused to become a participant in all of their unethical, illegal and criminal activity.

He has been singled out and horrendous acts of racial hate has been rendered upon him and his family using any and all things available to Velocity and Ogltree Deakins, all at the same time, they have undermined the judicial process in all proceedings and avoided to appear at any such proceedings to validate any of the false claims, allegations, complaints they have fraudulently filed against him.
They have at all times taken the coward way out, so has all the attorneys from Ogltree Deakins.

 The only thing the plaintiff has done is take advantage of the appeal process of the judicial system to reverse, overturn and dismiss all of the fabricated false allegations and complaints that Velocity has filed or lodged against him.

The plaintiff tried to move on past Velocity, however when Velocity found out he had returned to work for another organization, they immediately contacted AZDES less than 1 week after they lost the appeal where they claimed he was still employed, to then file a complaint of fraud against the plaintiff, falsely claiming he was committing unemployment fraud by working and collecting unemployment benefits at the same time.  All this knowing that they had terminated him 3 months before he accepted employment at another organization after he had been cleared to return to work on March 22, 2018.

The plaintiff in this complaint does hereby motion the court to strike the entire response by the defendants Velocity Technology Solutions and their outside counsel and bar further litigation on the issues of misconduct and the ability of the plaintiff to return to work as both these issues have previously been litigated in favor of the plaintiff Garrison Jones.  The plaintiff hereby invokes the doctrine of Collateral Estoppel and Res Judicata.

## Affirmative defense by defendant DKT 62

The defendants counsel in their response that should be struck from the record in its entirety because they are attempting to re-litigate issues that all have been previously litigated where the rulings/decisions were all ruled in favor of the plaintiff.

Equally it was the defendants who filed false fabricated claims that triggered the adverse negative adjudications that were initially made against the plaintiff.

In each negative adjudication, the plaintiff filed appeals with the Arizona Department of Economic Security (AZDES) and appeals with the Arizona Court of Appeals related to the plaintiff termination, misconduct and ability to work.

The defendants Velocity Technology Solutions and their outside counsel after 3 ½ years of cover-up and  lying to the courts in regards to the plaintiffs termination now in a desperate effort to escape and misdirect the courts attention elsewhere after it was discovered via a FOIA request by the plaintiff to the US Department of Labor where it revealed a false fabricated FMLA complaint planted in the records by Velocity and attorneys from

- 22 -

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

After, the plaintiff received these documents, he filed a complaint with the US DOL, stating that he did not and could not have made a complaint with the agency on July 19, 2019 because the personal identifying information in the complaint was not accurate and did not reflect his current information at the time this false complaint was made.

The plaintiff submitted his cell phone bill and a copy of his bank statement along with other documents to US DOL. In addition, the plaintiff pointed out that the intake person who took the complaint indicated that they were speaking with a "female" not a male.

There is a reference to **"she (8) times and her (9) times** in the false complaint. For a total of 17 times referencing a female.

**Cell Phone number changed**

In addition, the cellphone that was listed in the complaint was not the cellphone number of the plaintiff.

After being harassed by Velocity for over 5 months by blocked calls, hang-ups and finally the last straw Velocity entered the plaintiff number into a fax machine where it redialed his cell phone number over 30 times repeatedly.

In June 2018, the plaintiff changed his cell number of 17 years.

- 23 -

**Incorrect address**

The address in the false fabricated complaint was also incorrect as of July 19, 2018 because the plaintiff was working for another organization where he was a corporate employee however, working out a facility in Indiana.

The defendants were not aware of any of these changes and insisted that the intake person record these personal identifying information to make it appear authentic and appear it was the plaintiff making the false complaint.

The plaintiff provided the US DOL a copy of his bank statement from June and July 2018 as proof.

After reviewing this evidence the US DOL made a separate determination that the plaintiff did not and could not have made this false complaint.

**Affirmative Defenses – defendants**

The defendants in their response that needs to be stricken in its entirety made 75 separate denials of facts that have all been previously confirmed as fact and undisputable.

In addition, they also have added affirmative defenses of prior litigations with the same parties where they lost each of the original decision in these cases.

The court needs to be aware of the specific elements contained in the decisions in regards to the termination of the plaintiff.  There were three (3) of them.

- 24 -

The original appeal filed by the plaintiff that disputed the adjudication by AZDES based on the fraudulent reply sent to them in response to the filing of unemployment on April 8, 2018 after he learned he had been terminated.

Velocity filed a false **fabricated "employer protest"** claiming the plaintiff was still employed, the plaintiff received a negative adjudication by AZDES and he appealed that decision.  A hearing was held on June 22, 2018
**Arizona Appeal No. U-1595392-001**

In that decision, the Arizona Court of Appeals ruled in an eleven (11) page decision
*When a discharge has been established, the burden of proof rests on the employer to show that it was for disqualifying reasons. This burden may be discharged by an admission by the claimant, or his failure or refusal to deny the charge when faced with it.*

The employer did not appear at the hearing and presented no evidence to show that the
claimant was not going to be discharged.
The employer is, therefore, considered to be the moving party and I conclude that the claimant did not quit but was discharged.

The employer did not present any evidence to show that the discharge was not for misconduct.

Therefore, I conclude that the claimant was discharged, but not for willful or negligent misconduct connected with the employment.

**B. J. Cather**
Administrative Law Judge

It is clear that based on the evidence the ruling of the termination was **not for misconduct. But for other reasons.**

The reasons for termination by Velocity are many, all were because he was the only employee that refused to "drink the Kool-Aid" of an organization that in every aspect of the organization, he saw fraud, greed and gross unethical acts of criminal activity.

They did not care one bit about the business needs of their customers or clients.

The only thing they were interested in is being able to bill customers for any and all revenue they could muster even if it was unworked or illegal to do so.

The plaintiff was terminated because he refused to be a participant in the unethical, illegal, criminal activity by Velocity executives and employees where he saw, mail fraud, wire fraud, theft of stolen intellectual property and trade secrets, he was encouraged to fraudulently bill customers for unworked hours, he was sexually assaulted at a customer site by a drunk homosexual velocity employee and he was being used as what they called a "testbed" but was actually being set-up for failure in connection with the stolen intellectual property by Velocity.

All of these elements led to a major stroke in November 2017 from all of these job related events where he almost lost his life and suffered lifelong health ramifications from.

Velocity had every single legal opportunity given to them by notices of this and other appeal hearings from AZDES and the Arizona Court of Appeal.

Velocity / Ogltree Deakins had a full and fair opportunity to appear and to litigate their claims and defenses, and to challenge the claims and evidence of the plaintiff Garrison Jones in these proceedings.  They chose not to.

They were also given their rights under due process to legally attend and present testimony and exhibits.  The same was given to their outside counsel from Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

- 26 -

Both Velocity and Ogltree Deakins made conscious decisions each time to intentionally not attend this and all other hearing in support of their false allegations. Again they chose not to attend and be heard.

They lost the appeals where they were denied and dismissed with prejudice and specifically told that they had no right to appeal the court's decision. However, they ignored the courts decision and still filed and made a third unsuccessful attempt. Instead of filing an appeal, they attempted to "**have the hearing "reopened**" that was also denied.

They are again attempting to for the fourth time to re-litigate the issues of misconduct and the plaintiffs' ability to return to work as well they have filed affirmative defenses for issues and documents that all have been previously proven to have been addressed and provided to their client Velocity Technology Solutions and by their own attorneys, yet they have added these meritless defenses as a means of obtaining the ability to bill their client for billable hours in obstructing justice and denial of the due process rights of the plaintiff in this complaint by injecting baseless false accusations at the same time injecting any and all dilatory tactics they can think of to slow its progress.

All of the prior decisions were all final adjudications and both parties Garrison Jones and Velocity Technology Solutions are bound by these decisions. Defense counsel is well aware of all of the outcomes of these decisions because all of the decisions were in favor of the plaintiff.

An affirmative defense is a defense asserted by the defendant that essentially says, "even if all of the facts in the complaint are correct, I'm still not liable for a different reason." Examples of affirmative defenses are res judicata, collateral estoppel, laches and statutes of limitation.

The doctrines of res judicata and collateral estoppel often come into play when a subsequent case, similar to a case already adjudicated, is filed. The rationale behind the doctrines is that an issue or cause of action fully litigated should not be litigated again. Res judicata is often referred to as "claim preclusion". Collateral estoppel is often referred to as "issue preclusion".

Res judicata is raised when a party thinks that a particular claim was already, or could have been, litigated and therefore, should not be litigated again. When addressing a res judicata argument, a court will usually look at three factors. First, the court will consider whether there was previous litigation in which identical claims were raised, or in which identical claims could have been raised. The second factor to be considered is that the parties must be the same parties as those who litigated the original action. The third factor is that the original action must have received final judgment on the merits.

The first factor to consider is whether there was previous litigation in which identical claims were raised, or in which identical claims could have been raised. For example:

Andy brings a cause of action against Mike for injuries Andy sustained when he slipped and fell in Mike's apartment. The one count complaint sounds in negligence. The case goes to trial and a jury determines that Mike was not negligent. A year later,

Andy brings a cause of action against Mike for injuries Andy sustained while a passenger in Mike's car when they were involved in a motor vehicle collision. Mike cannot employ the doctrine of res judicata because, even though they are the same parties and the first action was adjudicated on the merits, the two actions are completely unrelated. Although Andy could have raised the claim against Mike in the first action, the second action is not barred by res judicata. If, however, Andy files a cause of action a year later against Mike for the emotional distress Andy suffered at the time of the slip and fall, the court is likely to bar the claim because Andy should have raised the emotional distress claim in the first case, as it was based on the same incident. Even though the claims are not identical because Andy will have to prove different elements for each claim, they are so closely related that res judicata applies. Most courts use a "transaction or occurrence" test to determine whether claims could have been raised in previous litigation; i.e., if the 2 claims are based on the same transaction or occurrence, they must be brought in the same action.

The second factor to consider is whether the parties in the second action are the same parties that litigated the first action. This can be established either by showing that the parties litigating this action are identical to the parties who litigated the first action or by at least showing that the parties in the second action were in privity with the parties in the first action. For example:

Josh brings an action against Barry for negligence, for injuries Josh sustained when he was a passenger in Barry's car when it was involved in an automobile accident. The action is adjudicated on the merits and Barry is found to be not liable. Mary, who was also a passenger in Barry's car with Josh when it was involved in the accident, files a different suit against Barry for negligence for injuries she sustained during the same accident. Barry asserts the doctrine of res judicata. Even though the two separate

actions arise from the same accident and are against the same defendant, because the plaintiffs differ, the doctrine of res judicata does not apply.

However, for res judicata to apply, the parties do not have to be exactly identical. If a party to the second action is in privity with a party in the first action, res judicata may apply. Privity means that the second party is connected or shares the same interests as the first party. There are many ways in which a party can be in privity with another party. For example, the second party may have succeeded to an interest that the first party had (such as if the second party bought the company that was the plaintiff in the first case). If the second party  somehow controlled the litigation in which the first party was involved, or where the second party and the first party are involved in an agent-principal relationship, the doctrine may also apply. This often occurs in insurance and employment cases. If the first party either did or could have adequately represented the second party's interests, then res judicata may apply. For example:

EXAMPLE (1): Brower, Inc. and Microsoft, Inc. are software manufacturing companies. Brower, Inc. sues Microsoft, Inc., claiming antitrust violations on Macrosoft's part. Microsoft prevails in the action. Later, Browser is acquired by Jetscape, Inc., another computer software company. Jetscape sues Macrosoft for antitrust violations for the same allegedly illegal actions that were the subject of the first claim. Res judicata will apply to bar Jetscape's action.

EXAMPLE (2): Victim is involved in an auto accident when her car is struck by a Malmart, Inc. truck that is driven by Reckless. Victim sues Reckless and recovers an award of $100,000. Subsequently, Victim sues Malmart, trying to hold Malmart liable for the accident as well because Reckless was a Malmart employee performing his employment duties when he got into the accident with victim. Since Reckless and Malmart shared the same interests in the case (Malmart was responsible for Reckless'

- 30 -

conduct), res judicata would bar the action against Malmart because the same action had been litigated in the Victim v. Reckless case.

The third factor to consider is whether the original action was judged on the merits of the case and whether that judgment was a final judgment. Final judgment does not occur when the case is settled by the parties on their own, or where the judge decides a motion or makes some other determination that does not resolve the case based on the facts and evidence of the case. This means that the final judgment must concern the actual facts giving rise to the claim. Dismissal of a case because the court does not have subject matter jurisdiction, because the service of process was improper, because the venue was improper or because a necessary party has not been joined, for example, are not judgments on the merits. Grants of these types of motions to dismiss really have nothing to do with the facts, except that the litigation is precluded by a technicality. As such, subsequent litigation as to whether the defendant is liable would not be barred.

The doctrine of res judicata is not usually raised by motion. Under the federal rules, it must be raised by affirmative defense. In most situations, if a defendant does not raise the defense of res judicata, it is waived. See Rotec Industries, Inc. v. Mitsubishi Corp., 348 F.3d 1116, 1119 (9th Cir. 2003):

"Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings. Moreover, the failure of the defendant to object to the prosecution of dual proceedings while both proceedings are pending also constitutes waiver."

Collateral estoppel arises when the claim (cause of action) at the bar has not been litigated, but the exact issue that is now before the court has been raised and litigated in an earlier action or proceeding. Collateral estoppel is a bit different than res

judicata, although the rationale is the same – it is a tool to prevent re-litigation of issues already litigated. See U.S. v. Wells, 347 F.3d 280, 285 (8th Cir. 2003):

In most cases, the identity of the parties, or those in privity to the original parties, must be the same as in the first action. Some courts, however, will not impose such a requirement.

*See Brockman v. Wyoming Dept. of Family Services, 342 F.3d 1159, 1166 (10th Cir. 2003).*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C are barred from making any defenses in connection to the misconduct of the plaintiff which is a complete fabrication and are barred from re-litigation of the issue surrounding certification, ability to return to work because both of these issues have been resolved an litigated in favor of the plaintiff in previous adjudications.

The defendants and their counsel are well aware of these decisions as the courts sent the decisions/rulings directly to the defendants and their outside counsel

**Based on the doctrines of Collateral Estoppel and Res** judicata the entire response by the defendants must be denied as non-responsive and stricken in its entirety.

**Arizona     Appeal U-1595392-001     June 22, 2018**

Appeal hearing filed by plaintiff after Velocity filed false employer protest claiming plaintiff was still employed beginning the cover-up that he had been terminated while on FMLA.

**Employer protest document** April -23, 2018

Velocity returned a form by fax sent to them by AZDES after the plaintiff applied for unemployment on April 8, 2018.

Respectfully submitted,

**Garrison Jones Plaintiff** (Pro Se
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

- 33 -

# CERTIFICATION

I hereby certify that the statements made in the forgoing Motion to compel the production of documents ns are true and correct, including all statements regarding all efforts by the Plaintiffs to resolve this discovery matter without the need for litigation.

---

**Garrison Jones Plaintiff** (Pro Se
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

# CERTIFICATE OF SERVICE

**I hereby certify** that on this [date] a copy of the forgoing [name of document] was mailed, USPS to defendants

Velocity Technology Solutions
1901 Roxborough Road
Charlotte, North Carolina 28211

---

Garrison Jones **Plaintiff Pro Se**

Dated:  March 12, 2021

*EK* *1*

**Arizona Department of Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330  FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL  60187-4842

VELOCITY TECHNOLOGY
ENTERPRISES INC DBA
DBA VELOCITY TECHNOLOGY
SOLUTIONS
1901 ROXBOROUGH RD FL 4
CHARLOTTE, NC  28211

Arizona Appeal No. U-1595392-001

Date of Mailing:                    6/22/2018

Social Security No. ~~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~~

Employer Acct. No.            7428011000

---

## DECISION OF APPEAL TRIBUNAL

# IN FAVOR OF CLAIMANT
# EMPLOYER'S ACCOUNT IS CHARGED

---

**The last day to file an appeal is    July 23, 2018   .  Instructions for filing an appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM  FOR UNEMPLOYMENT BENEFITS
The Department  of Economic Security provides language assistance  free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department  of Economic Security suministra ayuda  de los idiomas gratis.  Para recibir ayuda en su idioma preferido, por favor comunicarse con  la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Should the claimant  be disqualified from receiving unemployment benefits because  of the reasons for separating from employment?

Should employer's account be charged for benefits paid the claimant as a result of this employment?

## DECISION:

The employer's account is subject to charges for benefits paid the claimant.

I set aside the deputy's ruling that the claimant quit this employment without good cause.

The claimant was discharged from this employment, but not for wilful or negligent misconduct. The claimant qualifies for benefits.

## FINDINGS OF FACT:

The claimant was last employed as a consultant by the employer, a client based technology firm, for approximately 13 months prior to being discharged on 3/24/2018.

The claimant had a stroke in November of 2017 and was absent from work. The employer placed the claimant on FMLA in February of 2018 which would expire in May. The claimant was scheduled for an evaluation with his doctor at the end of March to determine whether he would be released to return to work.

On March 15, 2018 the claimant was copied on an email from the Senior Director over Infor practice to the Senior Vice President indicating that the claimant's name was still showing up in the payroll system and that she understood from their last exchange that the claimant was no longer employed, and asking whether she or the claimant's supervisor could release him from the payroll.

The claimant was also contacted by 4 different individuals, including a head hunter firm, who advised him that the employer was advertising his job.

The claimant emailed the employer's general counsel on 3/24/2018 asking about his employment status. The general counsel replied that the claimant was on FMLA. The claimant responded asking why his job was posted? The general counsel did not answer the claimant's reply.

The claimant has sent 124 messages to the employer to which he has not received a reply.

In January the claimant filed a complaint with the employer's human resources department, alleging discrimination.

In February he filed charges with the EEOC. Charges were dismissed in March and the claimant was given a right to sue letter.

The claimant filed a claim for unemployment insurance in April and filed a lawsuit against the employer in May as well as another EEOC complaint.

## REASONING AND CONCLUSIONS OF LAW:

The claimant has contested a Determination of Deputy which held the claimant left work voluntarily without good cause in connection with the employment. The issue involves the application of Sections 23-775 and 23-727 of the Employment Security Law of Arizona.

Section 23-775 of the Arizona Revised Statutes provides in pertinent part as follows:

An individual shall be disqualified from benefits:

1. For the week in which the individual has left work voluntarily without good cause in connection with the employment, and in addition to the waiting week, for the duration of the individual's unemployment and until the individual has earned wages in an amount equivalent to five times the individual's weekly benefit amount otherwise payable. ...

2. For the week in which the individual has been discharged for wilful or negligent misconduct connected with the employment, and in addition to the waiting week, for the duration of the individual's unemployment and until the individual has earned wages in an amount equivalent to five times the individual's weekly benefit amount otherwise payable.

Arizona Revised Statutes, Section 23-727, provide in pertinent part as follows:

C. Except as otherwise provided in subsections D, E, F and G of this section and sections 23-773 and 23-777, benefits paid to an individual shall be charged against the accounts of the individual's base-period employers. The amount of benefits so chargeable against each base-period employer's account shall bear the same ratio to the total benefits paid to an individual as the base-period wages paid to the individual by the employer bear to the total amount of base-period wages paid to the individual by all the individual's base-period employers.

D. Benefits paid to an individual whose separation from work with any employer occurs under conditions found by the commission to be within those prescribed by section 23-775, paragraph 1 or 2 or for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits, shall not be used as a factor in determining the future contribution

rate of the employer from whose employment the individual so separated, ...

The Arizona Administrative Code, in Section R6-3-50135, provides in pertinent part as follows:

A. Distinguishing Quits and Discharges

    1. Except as otherwise provided in this Chapter, a worker's separation from employment is either a quit or a discharge.

        a. The separation is a quit when the worker acts to end the employment and intends this result.

        b. The separation is a discharge when the employer acts to end the employment and intends this result. A discharge includes:

            i. A layoff for lack of work; and

            ii. A request by the employer for the worker's resignation.

    2. The Department shall determine whether a separation is a quit or discharge by considering all relevant factors, including:

        a. Both parties' remarks and actions;

        b. Who initiated the separation; and

        c. The parties' intentions.

    3. A party's expression of criticism or effort to clarify the position of the other party does not by itself constitute notice of intent to quit or to discharge.

    4. When the worker or the employer gives notice of intent to end an employment relationship, later attempts to withdraw the termination do not change the type of separation, except as otherwise provided in subsection (5).

        a. The type of separation does not change even if:

     i. The party who causes the separation allows the other party to choose the time or type of separation; or

     ii. The parties agree to delay the date of separation.

   b. A separation is a quit when the worker tells the employer the worker is quitting but agrees to work long enough to train a replacement. The separation remains a quit even if the employer later fails to temporarily keep the worker.

 5. A separation is a quit when an employer who previously gave a worker notice of intent to end the employment relationship, on or before the intended termination date offers continued employment under conditions not amounting to new work, and the worker elects to leave as of the original termination date.

...

C. Leaving In Anticipation of Discharge

If a worker, based on information other than the employer's authorized notification of discharge, believes that the employer intends to discharge the worker, the worker shall take steps, prior to leaving, to find out if the worker is, in fact, to be discharged. If the worker fails to do so and was not to be discharged, the worker leaves work voluntarily without good cause in connection with the work.

Arizona Administrative Code, in Section R6-3-51190, provides in pertinent part as follows:

B. Burden of proof and presumption

   1. The burden of proof consists of the requirement to submit evidence of such nature that, taking all other circumstances into account, the facts alleged appear to be true. When this burden has been met, the evidence becomes proof.

   2. The burden of proof rests upon the individual who makes a statement.

a. If a statement is denied by another party, and not supported by other evidence, it cannot be presumed to be true.

b. When a discharge has been established, the burden of proof rests on the employer to show that it was for disqualifying reasons. This burden may be discharged by an admission by the claimant, or his failure or refusal to deny the charge when faced with it.

c. An employer who discharges a worker and charges misconduct but refuses or fails to bring forth any evidence to dispute a denial by the claimant does not discharge the burden of proof. It is important to keep in mind that mere allegations of misconduct are not sufficient to sustain such a charge.

The evidence shows that the claimant believed that he was to be discharged because he was copied on an email that indicated that he was no longer employed and because his job was posted for hire. The claimant contacted the employer's general counsel who failed to answer the claimant's question as to why his job was posted.

 The employer did not appear at the hearing and presented no evidence to show that the claimant was not going to be discharged. The employer is, therefore, considered to be the moving party and I conclude that the claimant did not quit but was discharged.

The employer did not present any evidence to show that the claimant's discharge was for misconduct.

Therefore, I conclude that the claimant was discharged, but not for wilful or negligent misconduct connected with the employment.

**B. J. Cather**
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 4/8/2018                Issue Code: 10,20
Date of Separation: 3/24/2018
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 6/22/2018

Place of Hearing: Teleconferencing from Tucson, Arizona
Appearances: Claimant

**Distribution:**
Claimant
Employer
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Claimant: garrison.jones@outlook.com

File

BC/aj

# APPEAL/REOPENING DEADLINE:  JULY 23, 2018

(ESTE DOCUMENTO AFECTA SU ELIGIBILIDAD PARA SEGURO POR DESEMPLEO. SI USTED NO LEE INGLES, COMUNIQUESE CON SU OFICINA LOCAL O BUSQUE QUIEN LE TRADUZCA)

## APPEAL AND REOPENING RIGHTS

**THIS DECISION WILL BECOME FINAL UNLESS YOU FILE A SIGNED WRITTEN PETITION FOR REVIEW AND/OR A REQUEST TO REOPEN BY THE APPEAL DEADLINE DATE.**

**IF YOU WISH TO APPEAL THIS DECISION OR REQUEST REOPENING:**

1. File your Petition for Review or Request to Reopen by Internet by going to www.azui.com and then clicking "Appeal a UI Decision." (The option of filing an appeal by Internet is only available to claimants at this time.)

**OR, SUBMIT THE ENCLOSED FORM OR WRITE A LETTER USING ONE OF THE OPTIONS BELOW:**

2. Fax the Petition for Review or Request to Reopen to (602) 257-7056.

3. Mail or hand deliver the Petition for Review or Request to Reopen to:

   ARIZONA DEPARTMENT OF ECONOMIC SECURITY
   Office of Appeals

Page 7—Arizona Appeal No. U-1595392-001

Arizona Appeal No. U-1595392-001          Date of Mailing:               6/22/2018

Case 2:19-cv-02374-KJM-JDP   Document 69   Filed 04/08/21   Page 43 of 70
Social Security No. 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          Employer Acct. No.            7428011000

## DECISION OF APPEAL TRIBUNAL

# IN FAVOR OF CLAIMANT
## EMPLOYER'S ACCOUNT IS CHARGED

$\mathcal{E}x\ \underline{1}$

**The last day to file an appeal is   July 23, 2018   .  Instructions for filing an appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis.  Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Should the claimant be disqualified from receiving unemployment benefits because of the reasons for separating from employment?

Should employer's account be charged for benefits paid the claimant as a result of this employment?

## DECISION:

The employer's account is subject to charges for benefits paid the claimant.

I set aside the deputy's ruling that the claimant quit this employment without good cause.

The claimant was discharged from this employment, but not for wilful or negligent misconduct. The claimant qualifies for benefits.

## FINDINGS OF FACT:

The claimant was last employed as a consultant by the employer, a client based technology firm, for approximately 13 months prior to being discharged on 3/24/2018.

The claimant had a stroke in November of 2017 and was absent from work. The employer placed the claimant on FMLA in February of 2018 which would expire in May. The claimant was scheduled for an evaluation with his doctor at the end of March to determine whether he would be released to return to work.

On March 15, 2018 the claimant was copied on an email from the Senior Director over Infor practice to the Senior Vice President indicating that the claimant's name was still showing up in the payroll system and that she understood from their last exchange that the claimant was no longer employed, and asking whether she or the claimant's supervisor could release him from the payroll.

The claimant was also contacted by 4 different individuals, including a head hunter firm, who advised him that the employer was advertising his job.

The claimant emailed the employer's general counsel on 3/24/2018 asking about his employment status. The general counsel replied that the claimant was on FMLA. The claimant responded asking why his job was posted? The general counsel did not answer the claimant's reply.

The claimant has sent 124 messages to the employer to which he has not received a reply.

In January the claimant filed a complaint with the employer's human resources department, alleging discrimination.

In February he filed charges with the EEOC. Charges were dismissed in March and the claimant was given a right to sue letter.

The claimant filed a claim for unemployment insurance in April and filed a lawsuit against the employer in May as well as another EEOC complaint.

## REASONING AND CONCLUSIONS OF LAW:

The claimant has contested a Determination of Deputy which held the claimant left work voluntarily without good cause in connection with the employment. The issue involves the application of Sections 23-775 and 23-727 of the Employment Security Law of Arizona.

Section 23-775 of the Arizona Revised Statutes provides in pertinent part as follows:

An individual shall be disqualified from benefits:

1.    For the week in which the individual has left work voluntarily without good cause in connection with the employment, and in addition to the waiting week, for the duration of the individual's unemployment and until the individual has earned wages in an amount equivalent to five times the individual's weekly benefit amount otherwise payable. ...

2.    For the week in which the individual has been discharged for wilful or negligent misconduct connected with the employment, and in addition to the waiting week, for the duration of the individual's unemployment and until the individual has earned wages in an amount equivalent to five times the individual's weekly benefit amount otherwise payable.

Arizona Revised Statutes, Section 23-727, provide in pertinent part as follows:

C.    Except as otherwise provided in subsections D, E, F and G of this section and sections 23-773 and 23-777, benefits paid to an individual shall be charged against the accounts of the individual's base-period employers. The amount of benefits so chargeable against each base-period employer's account shall bear the same ratio to the total benefits paid to an individual as the base-period wages paid to the individual by the employer bear to the total amount of base-period wages paid to the individual by all the individual's base-period employers.

D.    Benefits paid to an individual whose separation from work with any employer occurs under conditions found by the commission to be within those prescribed by section 23-775, paragraph 1 or 2 or for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits, shall not be used as a factor in determining the future contribution

Page 3—Arizona Appeal No. U-1595392-001

rate of the employer from whose employment the individual so separated, ...

The Arizona Administrative Code, in Section R6-3-50135, provides in pertinent part as follows:

A. Distinguishing Quits and Discharges

    1. Except as otherwise provided in this Chapter, a worker's separation from employment is either a quit or a discharge.

        a. The separation is a quit when the worker acts to end the employment and intends this result.

        b. The separation is a discharge when the employer acts to end the employment and intends this result. A discharge includes:

            i. A layoff for lack of work; and

            ii. A request by the employer for the worker's resignation.

    2. The Department shall determine whether a separation is a quit or discharge by considering all relevant factors, including:

        a. Both parties' remarks and actions;

        b. Who initiated the separation; and

        c. The parties' intentions.

    3. A party's expression of criticism or effort to clarify the position of the other party does not by itself constitute notice of intent to quit or to discharge.

    4. When the worker or the employer gives notice of intent to end an employment relationship, later attempts to withdraw the termination do not change the type of separation, except as otherwise provided in subsection (5).

        a. The type of separation does not change even if:

>> i.  The party who causes the separation allows the other party to choose the time or type of separation; or
>>
>> ii. The parties agree to delay the date of separation.
>
> b. A separation is a quit when the worker tells the employer the worker is quitting but agrees to work long enough to train a replacement.   The separation remains a quit even if the employer later fails to temporarily keep the worker.

> 5. A separation is a quit when an employer who previously gave a worker notice of intent to end the employment relationship, on or before the intended termination date offers continued employment under conditions not amounting to new work, and the worker elects to leave as of the original termination date.

...

C. Leaving In Anticipation of Discharge

If a worker, based on information other than the employer's authorized notification of discharge, believes that the employer intends to discharge the worker, the worker shall take steps, prior to leaving, to find out if the worker is, in fact, to be discharged.  If the worker fails to do so and was not to be discharged, the worker leaves work voluntarily without good cause in connection with the work.

Arizona Administrative  Code,  in  Section R6-3-51190,  provides  in pertinent  part as follows:

B. Burden of proof and presumption

> 1. The burden of proof consists of the requirement to submit evidence of such nature that, taking all other circumstances into account, the facts alleged appear to be true.  When this burden has been met, the evidence becomes proof.

> 2. The burden of proof rests upon the individual who makes a statement.

a. If a statement is denied by another party, and not supported by other evidence, it cannot be presumed to be true.

b. When a discharge has been established, the burden of proof rests on the employer to show that it was for disqualifying reasons. This burden may be discharged by an admission by the claimant, or his failure or refusal to deny the charge when faced with it.

c. An employer who discharges a worker and charges misconduct but refuses or fails to bring forth any evidence to dispute a denial by the claimant does not discharge the burden of proof. It is important to keep in mind that mere allegations of misconduct are not sufficient to sustain such a charge.

The evidence shows that the claimant believed that he was to be discharged because he was copied on an email that indicated that he was no longer employed and because his job was posted for hire. The claimant contacted the employer's general counsel who failed to answer the claimant's question as to why his job was posted.

The employer did not appear at the hearing and presented no evidence to show that the claimant was not going to be discharged. The employer is, therefore, considered to be the moving party and I conclude that the claimant did not quit but was discharged.

The employer did not present any evidence to show that the claimant's discharge was for misconduct.

Therefore, I conclude that the claimant was discharged, but not for wilful or negligent misconduct connected with the employment.

**B. J. Cather**
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 4/8/2018                Issue Code: 10,20
Date of Separation: 3/24/2018
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 6/22/2018

Place of Hearing: Teleconferencing from Tucson, Arizona
Appearances: Claimant

**Distribution:**
Claimant
Employer
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Claimant: garrison.jones@outlook.com

File


BC/aj


# APPEAL/REOPENING DEADLINE:  JULY 23, 2018


(ESTE DOCUMENTO AFECTA SU ELIGIBILIDAD PARA SEGURO POR DESEMPLEO.  SI USTED NO LEE INGLES, COMUNIQUESE CON SU OFICINA LOCAL O BUSQUE QUIEN LE TRADUZCA)

## APPEAL AND REOPENING RIGHTS

**THIS DECISION WILL BECOME FINAL UNLESS YOU FILE A SIGNED WRITTEN PETITION FOR REVIEW AND/OR A REQUEST TO REOPEN BY THE APPEAL DEADLINE DATE.**

**IF YOU WISH TO APPEAL THIS DECISION OR REQUEST REOPENING:**

1. File your Petition for Review or Request to Reopen by Internet by going to www.azui.com and then clicking "Appeal a UI Decision." (The option of filing an appeal by Internet is only available to claimants at this time.)

**OR, SUBMIT THE ENCLOSED FORM OR WRITE A LETTER USING ONE OF THE OPTIONS BELOW:**

2. Fax the Petition for Review or Request to Reopen to (602) 257-7056.

3. Mail or hand deliver the Petition for Review or Request to Reopen to:

   ARIZONA DEPARTMENT OF ECONOMIC SECURITY
       Office of Appeals

*Ex 1A*

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys At Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletreedeakins.com

## FACSIMILE TRANSMITTAL

| **DATE:** | 7/23/2018 | **PAGES:** | 16 (includes cover page) |
|---|---|---|---|
| **TO:** | Arizona Department of Economic Security | **FROM:** | Christopher J. Meister |
| **FAX:** | 602.257.7056 | **PHONE:** | 602.778.3720 |

Original Will Be Sent via First-Class Mail

If problems arise with receipt of this transmission, please contact: Diane M. Kelly at 602.778.3749.

**MESSAGE:**   Please see the attached.

Atlanta • Austin • Berlin (Germany) • Birmingham • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Denver • Detroit Metro • Greenville
Houston • Indianapolis • Jackson • Kansas City • Las Vegas • London (England) • Los Angeles • Memphis • Mexico City (Mexico) • Miami • Milwaukee • Minneapolis
Morristown • Nashville • New Orleans • New York City • Oklahoma City • Orange County • Paris (France) • Philadelphia • Phoenix • Pittsburgh • Portland, ME • Portland, OR
Raleigh • Richmond • St. Louis • St. Thomas • Sacramento • San Antonio • San Diego • San Francisco • Seattle • Stamford • Tampa • Toronto (Canada) • Torrance • Tucson • Washington

*CONFIDENTIALITY NOTICE: This message and the documents accompanying this facsimile are legally privileged, confidential, and exempt from disclosure under applicable law. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please be advised that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If this communication has been received in error, please notify us by telephone immediately to arrange for the return of the original documents to us. Thank you.*

ASA – 126GC – APS #: 1600600 – Type: OA – Exhibit #: 09 – Claimant Last Name: JONES

# Ogletree Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletree.com

Christopher J. Meister
602.778.3720
christopher.meister@ogletree.com

July 23, 2018

**Via Fax and First Class U.S. Mail**

Arizona Department of Economic Security
Office of Appeals
1951 W. Camelback Road, Suite 400
Phoenix, AZ 85015
Fax No. (602) 257-7056

RE:   Unemployment Insurance Claim, Garrison Jones
      Arizona Appeal No. U-1595392-001

To Whom It May Concern:

This firm represents Velocity Technology Solutions, Inc. ("Velocity" or "Employer"), in connection with Garrison Jones's ("Claimant") claim for unemployment benefits before the Arizona Department of Economic Security. We write to Request to Reopen the Decision of the Appeal Tribunal, dated June 22, 2018, which found that Mr. Jones qualifies for benefits because he was discharged from employment, but not for willful or negligent misconduct. The Appeal Tribunal's decision should be overturned because Mr. Jones has been employed by Velocity from the day he filed for unemployment benefits to this day.

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh
Richmond ▪ St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

July 23, 2018
Page 2

**Ogletree
Deakins**

and fringe benefits and the cash value of all remuneration in any other medium other than cash."
A.R.S. § 23-622. From February 2018 to the present, Velocity has continued to provide Mr. Jones
with health, dental, and vision benefits. Thus, Mr. Jones has received "wages" as defined by the
Arizona Revised Statutes, is not unemployed, and is, therefore, not eligible for unemployment
benefits.

Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged
from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged
because he was copied on an email indicating that he was no longer employed and because his job
was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own
conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice
President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked
Velocity's General Counsel directly about his employment status, he was unequivocally told that he
was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been
posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and
then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own
findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was
still employed.

For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22,
2018, decision granting Mr. Jones unemployment benefits be reversed.

Sincerely,

Christopher J. Meister

Enclosure

34946289.1



# Arizona Department of Economic Security

## Office Of Appeals

**1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019**
**Toll Free 1(877)528-3330 FAX (602)257-7056**

# DISMISSAL OF APPEAL

| | |
|---|---|
| GARRISON JONES | VELOCITY TECHNOLOGY SOLUTIONS |
| 705 W LIBERTY DR | Appeal Staff |
| WHEATON, IL 60187-4842 | OGLETREE DEAKINS NASH SMOAK & |
| | STEWART |
| | ESPLADE CENTER III |
| | 2415 E CAMELBACK RD STE #800 |
| | PHOENIX, AZ 85016 |
| Arizona Appeal No. U-1600605-001 | Date of Mailing:  8/20/2018 |
| Social Security No. 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 | Employer Acct. No. 7428011-000 |

### IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS

The Department of Economic Security provides language assistance free of charge.  For assistance in your preferred language, please call our Office of Appeals (602)771-9019.

### IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO

The Department of Economic Security suministra ayuda de los idiomas gratis.  Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602)771-9019.

## NOTICE TO CLAIMANT

***
**YOUR APPEAL HAS BEEN DISMISSED BECAUSE  THE EMPLOYER  DID NOT ESTABLISH GOOD CAUSE FOR FAILING TO APPEAR AT THE PREVIOUS HEARING.**
***

***
Today, I made a separate decision that found the employer did not have good cause for failing to appear at the hearing scheduled for 6/22/2018  and that the hearing  would not be reopened.  I am dismissing  your appeal  because the Tribunal decision issued 6/22/2018 remains in full force and effect.

You have no right to appeal this dismissal.  However, you may request further review of my other decision that you did not have good cause for failing to appear at the scheduled hearing.
***

**Richard Ebert**
Administrative Law Judge

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1(877)528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

**REPRESENTATION**: You may have someone represent you. If you pay the representative, then that person must be a licensed Arizona attorney or be supervised by one. An employer may also use any employee of the business as its representative. This office does not provide representatives.

**Distribution:**
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Employer: ryan.mangum@ogletreedeakins.com
File

RE/aj

Ex J C

**Arizona Department of
Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL  60187-4842

DBA VELOCITY TECHNOLOGY
SOLUTIONS
c/o Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ  85016

Arizona Appeal No. U-1600600-001

Date of Mailing:                 8/20/2018

Social Security No. 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

Employer Acct. No.         7428011000

---

### DECISION OF APPEAL TRIBUNAL

# HEARING IS NOT REOPENED

**The last day to file an appeal is ___September 19, 2018___. Instructions for filing an appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis.  Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Should the non-appearing party's request to re-open the hearing of June 22, 2018, be granted?

1 C

## DECISION:

The applicant did not establish good cause for failure to appear at the hearing scheduled for 06/22/2018. The Decision of Appeal Tribunal remains in effect.

## FINDINGS OF FACT:

On May 17, 2018, a determination was issued holding the claimant ineligible for benefits. Timely appeal of the determination was filed by the claimant.

 A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.

 The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

## REASONING AND CONCLUSIONS OF LAW:

The issue is whether the nonappearing party's request to reopen the hearing of June 22, 2018, should be granted.

The Arizona Administrative Code, in Section R6-3-1503, provides in pertinent part as follows:

    B.    APPEAL TRIBUNAL HEARINGS

          *           *           *

        3.    Failure of Party to Appear

                a.    If there is no appearance on behalf of an interested party at a scheduled hearing, the Appeal Tribunal may:

                        i.    Adjourn the hearing to a later date; or

                        ii.    Proceed to review the evidence of record and other admissible evidence as may be presented at the scheduled hearing, and make a disposition or decision on the merits of the case.

b.     If a decision is issued adverse to any interested party that failed to appear at a scheduled hearing, that party may file 1 written request for a hearing to determine whether good cause exists to reopen the hearing.   The request to reopen shall be filed within 15 calendar days of the mailing date of the decision or disposition and shall list the reasons for the failure to appear.

c.     The Appeal Tribunal shall hold a hearing to determine whether there was good cause for the failure to appear and, in the discretion of the hearing officer, to review the merits of the case. Upon a finding of good cause for failure to appear at the scheduled hearing, the disposition or decision on the merits shall be vacated and the case rescheduled for hearing under R6-3-1502, unless the hearing on the merits is held concurrently with the good cause hearing.

d.     Good cause warranting reopening of a case shall be established upon proof that both the failure to appear and failure to timely notify the hearing officer were beyond the reasonable control of the nonappearing party.

e.     A party may obtain only 1 hearing to determine if good cause exists to reopen a case.

      i.     If a party does not appear at the scheduled good cause hearing, a party may file a written request for review to determine whether good cause exists for failure to appear at both the good cause hearing and the original hearing on the merits.

      ii.    If a case is reopened upon a finding of good cause, and the party fails to appear at the time and date of the new hearing, the party may file a written request for review to determine whether good cause exists for failure to appear at the new hearing.

f.     A request for review shall state the reasons for the party's failure to appear.   The party shall attach

       copies of any documentation supporting the request.

 g.  The Appeal Tribunal shall review the request and the evidence of record to determine whether there is good cause to reopen the hearing on the issue of good cause or on the merits and shall issue a decision accordingly.

 h.  Any interested party may appeal to the Unemployment Insurance Appeals Board from the decision of a hearing officer that denies reopening for lack of good cause as defined in subsection (B)(3)(d). The appeal shall be in writing and filed within 15 calendar days from the date of mailing of the decision denying reopening. If the Unemployment Insurance Appeals Board reverses the denial to reopen, the case shall be remanded to the Appeal Tribunal and rescheduled for hearing on the merits in accordance with R6-3-1502.

 i.  If an appellant fails to appear or waive appearance, the Appeal Tribunal may enter a default disposition in accordance with R6-3-1502(A)(4) without further right to appeal except as provided in this Section.

In *Maldonado v. Arizona Department of Economic Security*, 182 Ariz. 476, 897 P.2d 1362 (App., 1994), the Court of Appeals held that the language in A.A.C. R6-3-1503.B.3.d must be interpreted in such a way as to allow an "excusable neglect" standard to be considered in determining whether to reopen a hearing, similar to the test under Arizona Rule of Civil Procedure 60(c).

In interpreting the term "excusable neglect", as expressly included in Ariz. R. Civ. P. 60(c), Appellate Courts have held that such standard does not apply if the action occurred because of a party's mere neglect, inadvertence or forgetfulness without a reasonable excuse therefor, *Daou v. Harris*, 139 Ariz. 353, 678 P.2d 934 (1984). The term "excusable neglect" is not synonymous with carelessness, *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 871 P.2d 698 (App. 1993), and a party claiming excusable neglect must have promptly sought relief, *Baker Intern. Associates, Inc. v. Shanwick Intern. Corp.*, 174 Ariz. 580, 851 P.2d 1379 (App. 1993). The standard for determining whether an action constitutes "excusable neglect" is whether the neglect involves an error such as might be made by a reasonably prudent person who attempted to handle a matter in a prompt and diligent fashion. *Beal v. State Farm Mutual Automobile Insurance Co.*, 151 Ariz. 514, 729 P.2d 318 (App. 1986).

Good cause is about allowing parties who have not had the ability to present their case through accident or lack of notice to remedy that situation. In this case, employer did not appear because of a deliberate choice – a tactic to influence other negotiations. The employer had notice and the opportunity to be heard, but knowingly and deliberately declined that opportunity.

Therefore, I conclude that the employer has not established good cause for failing to appear at the hearing of June 22, 2018. I deny the request to reopen that hearing.


**Richard Ebert**
Administrative Law Judge


## CASE HISTORY:

Original Case:

  Effective Date of Initial Claim: 4/8/2018   Issue Code: GC
  Date of Determination: 5/17/2018
  Appealed By: Claimant
  Date of Hearing: 6/22/2018
  Place of Hearing: Teleconferencing from Tucson, Arizona
  Appearances: Claimant

First Reopening Case:

  Date of Appeal Tribunal Disposition/Decision: 6/22/2018
  Reopening Requested by: Employer
  Date of Reopening Hearing: 8/20/2018
  Place of Reopening Hearing: Teleconferencing from Phoenix, Arizona
  Appearances: Employer Counsel

## Distribution:
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

## Electronic Distribution:
Employer: ryan.mangum@ogletreedeakins.com

File



**Arizona Department of
Economic Security**

**Office Of Appeals**

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
IN CARE OF BIRTE
PO BOX 1751
SACRAMENTO, CA  95812-1751

Arizona Appeal No. U-1639659-001          Date of Mailing:          
10/23/2019

Social Security No. 3█████████8

---

### DECISION OF APPEAL TRIBUNAL

# IN FAVOR OF CLAIMANT

---

**The last day to file an appeal is    November 22, 2019   . Instructions for filing an
appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM  FOR
UNEMPLOYMENT BENEFITS
The Department  of Economic Security provides language assistance  free of charge.
For assistance in your preferred language, please call our Office of Appeals (602) 771-
9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE
SEGURO DE DESEMPLEO
The Department  of Economic Security suministra ayuda  de los idiomas gratis.  Para
recibir ayuda en su idioma preferido, por favor comunicarse con  la oficina de
apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

### ISSUE:

Was the claimant able to work beginning 4/8/2018?

### DECISION:

I reverse  the deputy's ruling.  The claimant  was able to work from 4/8/2018  through
5/19/2018.

## FINDINGS OF FACT:

The claimant was last employed as a Lead Supply Chain Consultant by a Technology company in Phoenix, AZ, for approximately one year prior to separating from this job on 3/15/2018.

The claimant was able to work beginning 3/22/2018. There is no documentation which establishes an inability to work after 3/22/2018.

## REASONING AND CONCLUSIONS OF LAW:

The claimant has contested a Determination of Deputy that held the claimant was not able to work beginning 4/8/2018.

Arizona Revised Statutes, Section 23-771, provide in pertinent part as follows:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if the department finds that the individual:
>
> *    *         *
>
> 3. Is able to work.

The Arizona Administrative Code, in Section R6-3-52235, provides in pertinent part:

A.    General

1.    Ability to work, a requisite for eligibility for benefits, generally means the physical and mental capacity of an individual to work under circumstances that ordinarily exist. Thus, ability to work is defined as the possession of the physical and mental capabilities necessary to the performance of suitable work for which one is reasonably fitted. Conversely, inability to work refers to a lack of physical or mental ability to such a degree as to prevent the acceptance of work for which one is reasonably fitted which renders him unemployable.

The evidence presented establishes the claimant's ability to work from 3/22/2018 forward. The claimant did not elect for FMLA but was provided such time by his previous employer. Their reason for giving the claimant FMLA is insufficient to establish an inability to work on behalf of the claimant. The claimant has present documents from his physician which cleared him for work. In the absence of any other evidence which shows the claimant was unable to work, I find the claimant was able to work during the time period of 4/8/2018 to 5/19/2018.

Page 2—Arizona Appeal No. U-1639659-001

Therefore, I conclude that the claimant's physical condition did allow performance, under ordinary circumstances, of work for which the claimant is reasonably fitted by training and experience. Accordingly, the claimant was able to work from 4/8/2019 through 5/19/2018.


**D. Whiting**
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 4/8/2018                    Issue Code: 01
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 10/23/2019
Place of Hearing: Teleconferencing from Phoenix, Arizona
Appearances: Claimant

### Distribution:
Claimant
BPC PHOENIX Site Code 918-B2

File

dw /db

# APPEAL/REOPENING DEADLINE: NOVEMBER 22, 2019

(ESTE DOCUMENTO AFECTA SU ELIGIBILIDAD PARA SEGURO POR DESEMPLEO. SI USTED NO LEE INGLES, COMUNIQUESE CON SU OFICINA LOCAL O BUSQUE QUIEN LE TRADUZCA)

## APPEAL AND REOPENING RIGHTS

**THIS DECISION WILL BECOME FINAL UNLESS YOU FILE A SIGNED WRITTEN PETITION FOR REVIEW AND/OR A REQUEST TO REOPEN BY THE APPEAL DEADLINE DATE.**

**IF YOU WISH TO APPEAL THIS DECISION OR REQUEST REOPENING:**

Page 3—Arizona Appeal No. U-1639659-001

1. File your Petition for Review or Request to Reopen by Internet by going to www.azui.com and then clicking "Appeal a UI Decision." (The option of filing an appeal by Internet is only available to claimants at this time.)

**OR, SUBMIT THE ENCLOSED FORM OR WRITE A LETTER USING ONE OF THE OPTIONS BELOW:**

2. Fax the Petition for Review or Request to Reopen to (602) 257-7056.

3. Mail or hand deliver the Petition for Review or Request to Reopen to:

   ARIZONA DEPARTMENT OF ECONOMIC SECURITY
   Office of Appeals
   1990 W. Camelback Road, Suite 200
   Phoenix, AZ 85015

4. Mail, hand deliver or fax the Petition for Review or Request to Reopen to any unemployment office in the United States or Canada.

The appeal or Request to Reopen is considered filed on the date: (A) postmarked by the United States Postal Service; (B) received by fax at the above number; or (C) received via the Internet or hand delivery.

You or your authorized agent must sign the appeal. Your appeal may be based on:

a. Irregularity on part of presiding officer or other party to proceedings;
b. Abuse of discretion on part of hearing officer whereby petitioner was deprived of a fair hearing;
c. Newly discovered evidence which could not with reasonable diligence have been discovered and produced at time of original hearing;
d. Error in admission or exclusion of evidence in Tribunal hearing;
e. Error in law in Tribunal hearing; and/or
f. Other good and sufficient grounds.

**The Appeals Board Chairman will refer your appeal to a single member for review. If you or the other party objects in writing to review by one member, three members of the Appeals Board will review your appeal.**

**AUDIO RECORDING OF YOUR HEARING:** To request an audio recording of the hearing, you may either:

1. Call (602) 771-9019, or

2. Fax your request to (602) 257-7056, or

3. Mail or hand deliver your request in writing to:

ARIZONA DEPARTMENT OF ECONOMIC SECURITY
Office of Appeals
1990 W. Camelback Road, Suite 200
Phoenix, AZ  85015

**CLAIM FILING:** If you are a claimant who remains unemployed, you should continue to file your weekly claims while any appeal of this case is pending.  If you have questions regarding the filing or payment of claims, you should contact the unemployment insurance claims office.

**RIGHT TO BE REPRESENTED:** You may have someone represent you.  If you pay your representative, that person must be a licensed Arizona attorney or must be supervised by a licensed Arizona attorney.  An employer may also use any employee of the business as its representative.  The Department does not provide representatives.

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1-877-528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

**General Adjudication**



**UB-098**        Claimant SSN:   361 56 1008 0

PER T/C ON 5-4-18 AT 11:59AM PHN: 704-357-7721, LEFT MESSAGE ON SHAUNA COLMAN (HEAD OF HR) ANSWERING MACHINE, TO RESPOND BY 5-8-18 BY 12:00PM AND ADVISED OF CONSEQUENCES.

SHAUNA RETURNED CALL ON 5-4-18 AT 1:35PM AND LEFT MESSAGE STATING:

CLAIMANT IS ON FMLA FOR MEDICAL REASONS. CLAIMANT IS DUE TO RETURN TO WORK ON 5-15-18 ER STATES CLMT IS STILL CURRENTLY EMPLOYED WITH THEIR COMPANY AND IS EXPECTED TO RETURN TO WORK AS SCHEDULED ON 5-15-18.

DEPUTY NOTE: DUE TO THE INFORMATION PRESENTED BY BOTH ER AND CLMT AND NOT BEING ABLE TO REBUTTLE WITH ER DUE TO CLMT REQ IT SEEMS CLMT STILL HAS A JOB TO RETURN TO ON 5/15/18 AND CLMT IS REFUSING TO DUE SO BECAUSE HE FEELS HE HAS BEEN DISCHARGED AS OF 3/15/18. WILL USE START DATE AS 3/15/18 SICE THAT IS THE ASSUMED SEPERATION DATE

IF APPLICABLE SEE SECOND UB-098 FOR ADDITIONAL INFORMATION FROM ER AND OR CLMT.

**General Adjudication**

**UB-098**       Claimant SSN:  361 56 1008 0

*EX 2B*

Issue:  Able

Basis:                                                    Base Period Separation:  No
ABILITY TO WORK

BPR:
R6-3-52235.A.

Reasoning and Conclusion:
SEE UB 100

Additional Text:

CLMT WRITTEN STATEMENT:
UB436 SENT ON 4/19/18 DUE BACK ON 4/24/18
SEE UB-436R IN ONBASE REC'D 5/2/18

CLMT CALL: ON 5-4-18 AT 11:22AM PHN: 916-870-4960, LEFT MESSAGE TO RESPOND BY 5-8-18 BY 11:24AM AND ADVISED
OF CONSEQUENCES.

CLAIMANT RETURNED CALL ON 5-7-18 AT 1:53PM PHN: 916-870-4960, T/C WITH CLAIMANT:

CLMT STATES HE HAD A STROKE IN NOVEMBER OF 2017. CLMT IS STILL UNDER DOCTORS CARE UNTIL 5/15/18.

Exhibit # 02

**Arizona Department of
Economic Security**



**Office Of Appeals**



1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
IN CARE OF BIRTE
PO BOX 1751
SACRAMENTO, CA  95812-1751

Arizona Appeal No. U-1639659-001          Date of Mailing:          10/23/2019

Social Security No. 3██████████8

---

### DECISION OF APPEAL TRIBUNAL

## IN FAVOR OF CLAIMANT

---

**The last day to file an appeal is   November 22, 2019   . Instructions for filing an
appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM  FOR
UNEMPLOYMENT BENEFITS
The Department  of Economic Security provides language assistance  free of charge.
For assistance in your preferred language, please call our Office of Appeals (602) 771-
9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE
SEGURO DE DESEMPLEO
The Department  of Economic Security suministra ayuda  de los idiomas gratis.  Para
recibir  ayuda  en su  idioma  preferido, por favor  comunicarse  con  la  oficina  de
apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Was the claimant able to work beginning 4/8/2018?

## DECISION:

I reverse  the deputy's ruling.  The claimant  was able  to work  from 4/8/2018 through
5/19/2018.

## FINDINGS OF FACT:

The claimant was last employed as a Lead Supply Chain Consultant by a Technology company in Phoenix, AZ, for approximately one year prior to separating from this job on 3/15/2018.

The claimant was able to work beginning 3/22/2018. There is no documentation which establishes an inability to work after 3/22/2018.

## REASONING AND CONCLUSIONS OF LAW:

The claimant has contested a Determination of Deputy that held the claimant was not able to work beginning 4/8/2018.

Arizona Revised Statutes, Section 23-771, provide in pertinent part as follows:

An unemployed individual shall be eligible to receive benefits with respect to any week only if the department finds that the individual:

\*      \*           \*

3.   Is able to work.

The Arizona Administrative Code, in Section R6-3-52235, provides in pertinent part:

A.   General

1.   Ability to work, a requisite for eligibility for benefits, generally means the physical and mental capacity of an individual to work under circumstances that ordinarily exist. Thus, ability to work is defined as the possession of the physical and mental capabilities necessary to the performance of suitable work for which one is reasonably fitted. Conversely, inability to work refers to a lack of physical or mental ability to such a degree as to prevent the acceptance of work for which one is reasonably fitted which renders him unemployable.

The evidence presented establishes the claimant's ability to work from 3/22/2018 forward. The claimant did not elect for FMLA but was provided such time by his previous employer. Their reason for giving the claimant FMLA is insufficient to establish an inability to work on behalf of the claimant. The claimant has present documents from his physician which cleared him for work. In the absence of any other evidence which shows the claimant was unable to work, I find the claimant was able to work during the time period of 4/8/2018 to 5/19/2018.

Page 2—Arizona Appeal No. U-1639659-001

Therefore, I conclude that the claimant's physical condition did allow performance, under ordinary circumstances, of work for which the claimant is reasonably fitted by training and experience. Accordingly, the claimant was able to work from 4/8/2019 through 5/19/2018.

**D. Whiting**
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 4/8/2018                    Issue Code: 01
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 10/23/2019
Place of Hearing: Teleconferencing from Phoenix, Arizona
Appearances: Claimant

### Distribution:
Claimant
BPC PHOENIX Site Code 918-B2

File

dw /db

# APPEAL/REOPENING DEADLINE:  NOVEMBER 22, 2019

(ESTE DOCUMENTO AFECTA SU ELIGIBILIDAD PARA SEGURO POR DESEMPLEO. SI USTED NO LEE INGLES, COMUNIQUESE CON SU OFICINA LOCAL O BUSQUE QUIEN LE TRADUZCA)

### APPEAL AND REOPENING RIGHTS

**THIS DECISION WILL BECOME FINAL UNLESS YOU FILE A SIGNED WRITTEN PETITION FOR REVIEW AND/OR A REQUEST TO REOPEN BY THE APPEAL DEADLINE DATE.**

**IF YOU WISH TO APPEAL THIS DECISION OR REQUEST REOPENING:**

Page 3—Arizona Appeal No. U-1639659-001



**Arizona Department of**
**Economic Security**



**Office Of Appeals**

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
IN CARE OF BIRTE
PO BOX 1751
GA~~~~~~~~~~, CA ~~~~~~ 1751

Arizona Appeal No. U-1642697-001          Date of Mailing:          10/29/2019

Social Security No. 3~~~~~~~~~

---

### DECISION OF APPEAL TRIBUNAL

# CLAIMANT WAS OVERPAID BENEFITS
# HOWEVER, CLASSIFICATION OF OVERPAYMENT IS
# CHANGED

---

**The last day to file an appeal is   November 29, 2019   . Instructions for filing an**
**appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR
UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge.
For assistance in your preferred language, please call our Office of Appeals (602) 771-
9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE
SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis. Para
recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de
apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Was the Claimant overpaid benefits? If yes, what is the amount and classification of the
overpayment?