**FILED**

AUG 18 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

2:19-CV-2374-KJM-JDP

**PLEASE TAKE NOTICE** that on September 16 , 2021 at 10:00 am. in Courtroom 9 of the United States District Court of Eastern California Court located at 501 I Street Sacramento, California 95814, Plaintiff Garrison Jones will move this Court for an **Order striking ALL of the affirmative defenses with prejudice and deny**

**the defendants the right/ABILITY to amend all affirmative defenses contained in the RESPONSE /Answer**  document 62 filed by Defendants and defendants counsel Ogltree Deakins Paul Smith and Anthony Decristoforo on behalf of defendants Velocity Technology Solutions on November 13, 2020.

This Motion will be made pursuant to *Federal Rule of Civil Procedure* 12(f) on the grounds that ALL of the affirmative Defenses listed in the answer filed by Defendant assert only affirmative defenses that are both insufficient to state a valid defense and are wholly irrelevant to the causes of action alleged in the complaint, thus they constitute irrelevant, important and immaterial allegations which should be stricken.

Many of the so called affirmative defenses fail to

Plaintiff argues that they did not plead enough facts to support its affirmative defenses under Twombly. Dkt. 11-1 at 6. Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The standard for sufficiency of affirmative defenses has been the subject of much debate, as this court has previously acknowledged:
Whether affirmative defenses are subject to the fair notice standard set forth in Conley v. Gibson or the heightened pleading standard set forth by the Supreme Court

- 1 -

in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal is unsettled law in the Fifth Circuit. Compare Brink, 2011 WL 835828, at *3 (applying the plausibility standard to assess the sufficiency of affirmative defenses), with Rodriguez v. Physician Lab. Servs., LLC, No. 7:13-CV-622, 2014 WL 847126, at *2 (S.D. Tex. Mar. 4, 2014) (Alvarez, J.) (applying the fair notice standard to assess the sufficiency of an affirmative defense).

That will give the plaintiff fair notice of what the defendants claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957) (citation omitted).

Franks v. Tyhan, No. H-15-191, 2016 WL 1531752, at *2 (S.D. Tex. Apr. 15, 2016) (Miller, J.). However, the Fifth Circuit has applied the fair notice standard in opinions after Twombly and Iqbal, suggesting that the lesser standard of fair notice is the appropriate standard for affirmative defenses. See, e.g., LSREF2 Baron, L.L.C. v. Tauch, 751 F.3d 394 (5th Cir. 2014); Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C., 546 Fed. App'x 458 (5th Cir. 2013). Further, this court recently revisited the issue, explaining that "[u]nder Rule 8(c), a defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced." Joe Hand Promotions, Inc. v. Izalco, Inc., No. H-16-3696, 2017 WL  The heightened pleading standard set forth in Twombly  requires a complaint to plead "more than labels and conclusions," prov "factual content that allows the court to draw [a] reasonable inference" that the claim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.
    (2007);

This motion shall be based upon this Notice, the attached evidence and exhibits.

## RESERVATION OF ADDITIONAL DEFENSES

Velocity reserves the right to assert such other and additional defenses as discovery and further investigation might indicate are appropriate as this litigation continues.

////

**Reservation of additional defenses**

The court must strike and issue and order to deny the defendants and their attorneys from Ogltree Deakins the right or ability to amend, refile any affirmative defenses.  All they are attempting to do is extend this litigation for the purpose of revenue and billable hours to charge their client.  There are months of gaps where they are actively billing Velocity for revenue purpose only and they feed off the filings of the plaintiff for revenue, then another lapse of 8 months before they file another frivolous pleadings.

It is completely ridiculous what the defendants and their attorneys are attempting.
Now that they have been caught committing multiple criminal felonies  against the federal government, they are attempting to make a mockery of confusion and misdirection to this court when their defense on the termination of the plaintiff and his FMLA status and their defense of ineligible has changed multiple times from eligible to ineligible in attempting to break-away the connection to the termination  of the plaintiff or in their minds cancel-out each other as together they clearly prove the same thing the plaintiff has said all along, that he was terminated while on FMLA.

**FMLA**

- 3 -

What the defendants and specifically are leaving out is the fact that

In their "affirmative defenses" on one hand, they claim he was is ineligible for FMLA and FMLA protection.

On the other hand in their affirmative defenses, they make claims that can only be made of a person that was on approved FMLA medical leave, claiming
   a. failure of participation of the interactive process of FMLA

   b. Claiming the non- return of the physician certification for FFMLA

   c. Claiming the non-return of a written statement of his ability to return to work

   d. Claiming, Velocity did not have to return the plaintiff to his original position after returning from approved FMLA medical leave because he was "highly paid employee"

These are not defenses that can be made for an employee that was terminated. They are for an employee that is a current employee and on FMLA which is not the case of the plaintiff as he had been terminated in March 2018 while on approved FMLA medical leave.

The replies in affirmative Sixteen should suffice as compliance.

**Termination**
Their Version of the termination of the plaintiff also has changed multiple times depending on the court, jurisdiction and if it appears that it would be of

- 4 -

their advantage to do so.  There exist a final adjudication decision/ruling that the plaintiff was terminated unlawfully while on FMLA Medical leave by velocity made on June 22, 2018 yet part of the continued cover up of these facts they continue to gloss over and pretend this proceeding never happened or exist.

The same goes where they continue to claim the case before this court was and is "virtually identical to claims in prior litigation that simply is yet another lie they have repeatedly been caught claiming.

**April 2018**

Still employed

**June 21, 2018**

Same document – **Still employed** but terminated over-up
**Ogltree Deakins attorney Christopher Meister**

**June   25, 2018 fraud charges filed with AZDES by Velocity**

Velocity filing with AZDES in attempting to induce them into using law enforcement and weaponizing law enforcement to file criminal charges of unemployment fraud a Class 6 Felony in the state of Arizona after they were stalking the plaintiff, finding out he had return to work for another organization falsely claiming he was collecting they were paying unemployment benefits and he was corking at the same time.

This against an employee that you are claiming is "still employed" at your organization, just for the past 3 months and after you lost appeal hearing on June 22, 2018.

- 5 -

**July 23 2018**

**Not terminated – negotiating separation of employment**
**Still receiving benefits and wages from Velocity (which was a lie)**

Doctrine of res judicata, also known as "claim preclusion," which prevents a party from asserting a claim or cause of action after it is subject to a **final judgment.** While res judicata deals with questions of law, collateral estoppel can **apply to issues of law or fact.**

Many of the "affirmative defenses are connected to final judgements rendered in favor of the plaintiff in multiple prior litigations.  Each where the defendants and their counsel from Ogltree Deakins received these final judgments and rulings from the Arizona Court of Appeals.

This includes his termination, ability to work, fraud, and all the successful appeals, reversals, and overturned decisions made in favor of the plaintiff.

A matter that has been adjudicated by a competent court and may not be pursued further by the same parties.

3. A Court may strike affirmative defenses under Federal Rule of Civil Procedure 12(f) if they present an "insufficient defense, or any **redundant, immaterial, impertinent, or scandalous matter.**" Fed. R. Civ. P. 12(f). The purpose of a 12(f) motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.1993).

4. ). A defense is insufficiently pled if it fails to give the plaintiff "fair notice of the nature of the defense." Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir.1979).

5. A matter is immaterial if it has "no essential or important relationship to the claim for relief or the defenses being pleaded." Fogerty, 984 F.2d at 1527.

6. A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." Id.

7. While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics.

8. This Motion will be made pursuant to *Federal Rule of Civil Procedure* 12(f) on the grounds that **ALL** of the affirmative Defenses listed in the answer filed by Defendant assert only affirmative defenses that are both insufficient to state a valid defense and are wholly irrelevant and immaterial, many of them are fail to provide the plaintiff the specific/actual and proper notice of the defense and are vague open-ended false allegations done for the purpose of billable hours and have no connection   to the causes of action alleged in the complaint, thus they constitute immaterial allegations which should be stricken

9. The entire response and all the affirmatives by defendants Document 62 filed on November 13, 2020 are nothing more than another of a long list of dilatory, delay tactics with no specific supporting facts, used by the defendants and their counsel from the law firm of Ogltree Deakins for the main purpose to gain more billable hours, delay the proceedings, and obstruction of justice of a federal proceedings.

10.      Their response contains multiple defenses of litigation that has already been previously been adjudicated and final rulings/decisions, judgements have all been rendered in favor of the plaintiff Garrison Jones.

They from the beginning have intentionally been avoiding every aspect of this case.

11.     They have knowingly that it had been filed and they have received multiple waivers from the plaintiff to avoid the expense of serving the defendants with a summons.

12.     They failed to follow the courts order in providing a status report as it was not enough billable hours.

13.     Ogltree Deakins does not care one way or another about their guilty client, their only goal is of the ability of billable hours and revenue.

14.     The defendants to date have been served with 4 waivers 3 by the plaintiff and 1 by the US Marshall, they failed to respond to all of them,

15.     The defendants have been formally served with a summons and complaint on two occasions for the same complaint.

16.     They were served the last time because they avoided being served by the US Marshall and failed to respond to the waiver.  The plaintiff had to incur the expense for a second time to serve them with by an outside process server as if he had not, they would have delayed the proceedings for months.

17.

18.     They were served on October, 6, 2020 and a response was due by October 28, 2020 at the latest.  Instead they failed to respond until November 13, 2020 but failed to respond to the complaint until November 13, 2020 more than 16 days late per FRCP rules and nothing was done.

19.     The plaintiff was entitled for a default summary judgement at that time and did not receive one.

**20.**     They only responded to this complaint in May 2020 because off the pandemic that **resulted in layoffs by and pay cuts by Ogltree Deakins** and as all of us know the only way to **avoid layoff is to produce revenue and Velocity was the target.**

21.     In many cases all of their affirmative defenses fall under the doctrines, of equitable estoppel, collateral estoppel, detrimental reliance, and res judicitca apply to their affirmative defenses and precludes the defendants from re-litigating these same issues claims and or defenses as all of the judgments are all final and also contradict many previous statements and actions made by their own client Velocity as well statements , actions and pleading from multiple attorneys from Ogltree Deakins, including the current attorneys Paul Smith and Anthony Decristoforo.

22.     In many of the prior proceedings, the defendants and their counsel were specifically told via the decision/rulings related to the termination of the plaintiff where they were specifically told in the court's ruling "**they had no right to appeal the court's decision**", yet they intentionally ignored the decisions and attempting to weasel around the ruling/decision and filed other frivolous pleadings to 'reopen the hearing" that were also denied and dismissed.

23.     Now they are in a federal jurisdiction yet again fabricating evidence from the current and prior litigations as if none of these proceedings ever existed.

24.     Instead they are attempting to induce and in essence appeal those final judgements in this court to re-litigate the prior rulings/decisions and again try to making known misrepresentation of material facts more false claims and present "evidence that in their minds reverse the prior court's rulings/decisions.

25.     Defense counsel knowingly have been aiding and abetting their client Velocity Technology Solutions/Navisite in avoiding the liability of not only

- 9 -

this civil case but also obstructing justice in a parallel federal criminal
violations of federal law.

26.     This knowing that they were committing fraud, forging government
documents, then at the date/time of appeal hearings neither Ogltree Deakins
and velocity both intentionally failed to appear in support of these false
allegations, claims and complaints they filed in representation of these false
allegations

Listed in the answer as all of the affirmative defenses are not only insufficient to a
valid defense, all are wholly irrelevant to the causes of the actions in the complaint.
Many of them have been previously adjudicated, the evidence in many of the
responses there is and has been documented communications i.e. emails and
documents from multiple sources (AZDES) or the Arizona Court of Appeals.
In addition many of the affirmative defenses are claiming non-receipt of documents
that have a documented history and acknowledgement of receipt by the defendant
(Velocity) or by attorneys from Ogltree Deakins sent to or received by Velocity from
the plaintiff by Velocity and or via other Ogltree Deakins attorneys.

In addition the defendants entire answer to the complaint filed on November 13,
2020

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred
and/or Plaintiff's damages, if any, must be reduced, because Velocity exercised reasonable care to
prevent and correct any alleged discriminatory and/or retaliatory conduct, but Plaintiff
unreasonably failed to take advantage of such preventive and/or corrective measures provided by
Velocity, or to otherwise avoid harm.

This affirmative defense must be stricken as Velocity at no time exercised any care whatsoever to prevent any alleged discriminatory or retaliatory acts or conduct. At all times Velocity was the aggressor and the party who was openingly retaliating against the plaintiff during his employment, after he was terminated and even after they learned he was employed at another organization. Time and Time again, there is documented history of them coming after him, stalking him and his family eagerly attempting to find out who and where he was working.

This was done to disrupt his life, put him in awareness that they were stalking him and prevent him from being employed as well as not to continue to further expose their unethical, illegal and criminal activities. That includes over billing customers, sending known unqualified consultants to customers knowing they did not have the skillset to complete assignments.

They were cyber – stalking him on job websites, on the internet as well as reaching out to recruiting agencies claiming they were looking for a Supply chain resource but actually looking for these agencies to do their dirty work and locate the plaintiff for them.

At all times it has been Velocity who has been caught committing unethical, illegal and criminal violations of the law where they targeted the plaintiff for retaliation.

It is no coincidence that the retaliatory acts immediately followed the uncovering of these acts and directed at the plaintiff for doing so after he exposed them.

There is a documented history of events where immediately after the plaintiff filed complaints with HR and the EEOC that velocity took and used whatever they had available to them to specifically hurt the plaintiff in any way they could whether it was access to any of Velocity systems, email system, the intentionally acts of failing to reimburse him for monetary business expenses, cancelling of his healthcare benefits after previously voluntarily making statements that they would recover

- 11 -

health premiums when he returned to work as well as the deletion of evidence on their network of stolen intellectual property stolen from Infor.

No employee should have to do anything to "keep or prevent harm" especially from his employer.
No employee should have to do anything out of the ordinary except for the job in which they were hired to perform.
No employee needs to keep their head on a swivel in fear of doing their job and at all times expect to suffer harm, discrimination and or retaliation from their employer for refusing to complete any assignment and task that they know is unethical, illegal and a violation of any local, state and or federal law.

A contract or settlement agreement with an illegal consideration, fraud or involving any sort of illegal activities is void **ab initio.** That is, no matter what the contract is and what the terms may be, law will not acknowledge the existence of such a contract.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, fails to state a cause of action upon which relief can be granted.

The court must strike this affirmative defense as it is irrelevant as the US District Court of Eastern California has already screen the plaintiffs' complaint and recognized that he had a cognizant claim against Velocity for his termination while on approved FMLA medical leave.

An adjudication that the plaintiff has a cognizant claim against Velocity that he is entitled for relief.  Had the plaintiff not put forth a ton off exhibits this court would not have made this determination.

Whether counsel or the defendants agree is irrelevant and irrelevant and the first affirmative defense must be struck per

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or a redundant, immaterial, impertinent or scandalous matter." Therefore, if an affirmative defense in a defendant answer fails to state a sufficient defense or if the allegations in the affirmative defense are not relevant to the claims in plaintiff's complaint, then the affirmative defense constitutes an immaterial or impertinent allegation that must be stricken as it is completely irrelevant and immaterial to any claims in the entire complaint.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred by the applicable statutes of limitations.

Second affirmative defense must be stricken as this is first redundant and the same defense as the third affirmative defense.
It, irrelevant and immaterial, as it has been addressed in a previous pleading by the plaintiff.

- 13 -

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred by the equitable doctrine of laches.

The FMLA is subject to a statute of limitations. This means that, generally, suit must be filed within two years after the last action that the employee believes was in violation of the FMLA, or **three years if the violation was willful**.

The plaintiff filed this action on November 25, 2019 two days after he successfully appealed all of the false claims, allegations and complaints filed by Velocity with the AZDES and the Arizona Court of Appeals from May 7 2018 until December 2019.

These multiple false claims, complaints and allegations were discovered beginning in July 2019 all administrative decisions, rulings and judgements were all made in favor of the plaintiff with the last one on November 23, 2019.

Two days later this complaint before the court was filed. Perhaps the attorneys from Ogltree Deakins do not have a single calender in their entire organizations.

In addition, the plaintiff is well inside the parameters to file this litigation and to add all the actions by the defendants and their counsel were all WILLFUL which would add another year to the limitations of any filing.

Either way, this affirmative defense is irrelevant and immaterial and must be stricken as there is not specific notice of this defense, it is merely "filler" that adds no merit whatsoever to any defense by the defendants.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred by the doctrine of estopped.

- 14 -

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff' Complaint, and each alleged (and surviving) cause of action therein, is barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred by the doctrine of accord and satisfaction.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred because and to the extent that Plaintiff previously settled and released all rights to the claims presented herein.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred by the after-acquired evidence doctrine.

## **TWELFTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that any decision Velocity made with respect to Plaintiff's employment was made in good faith and reasonably based on the facts as applied to the law as Velocity then understood them.

## **THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that each employment action taken by Velocity and challenged by Plaintiff, if it occurred, was taken and/or made for non-discriminatory and non-retaliatory business reasons that did not violate public policy or any statutory prohibition whatsoever.

XXXXX

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, fails to state

facts sufficient to entitle Plaintiff to an award of attorneys' fees in any amount.

Defendants Eleventhr afformative defense must be struck as the plaintiff has never requested or filed a motion for any attorneys fees as he has represented hisself Pro Se in this proceeding.

Defendangs affirmative defense is irrelevant to any claim or allegations in this proceedings and must be struck.

Striking insufficient affirmative defenses is proper, because courts "must not tolerate shotgun pleading of affirmative defenses and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint." Tsavaris v. Pfizer, Inc., 310 F.R.D. 678, 682 (S.D. Fla. 2015).

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff's employment would have ceased/ended for other reasons.

- 17 -

The defendants **Eighth, Thirteenth and Fourteenth** affirmative defenses collectively all must be struck for two reasons

   a.  The defendants are barred from making any such claim or affirmative defense as to the plaintiffs termination as via the doctrine of Collateral estoppel and Res Judicata as in prior litigation by the same parties a final judgment has been adjudication in a prior hearing/proceeding that determined that the plaintiff was unlawfully terminated and was done so not for any misconduct. As such by his termination, it also is without question that the plaintiff Garrison Jones was unlawfully terminated while on approved FMLA medical leave.

   b.  The decision and ruling from this proceeding was upheld by the Arizona Court of Appeals in Arizona Appeal number U-1600605-001 on July 23, 2018. where the appeal filed by Ogltree Deakins attorney Christopher Meister on behalf of Velocity, on July 23, 2018 where it was denied and dismissed.

   c.  It was again affirmed and upheld in Arizona Appeal number U-1600600-001 where again after the court specifically informed the defendants and their counsel from Ogltree Deakins **"they had no right to appeal the court's decision"**

   d.  Completely ignoring the court its decision, they instead filed another attempt to appeal and Reopen the initial haring of June 22, 2018 and it was also denied.

There exist three (3) separate decisions and rulings related to the plaintiffs' termination where all have never been reversed, overturned by the defendants and or their counsel from Ogltree Deakins.

Ogltree Deakins per the state of Arizona law, had 40 days to appeal all administrative decisions with the Maricopa county Superior Court and on each occasion after decisions made in the plaintiffs favor, they failed to do so. All of the five (5) decisions/ruling made by the Arizona Court of Appeals are all final judgments / adjudications and per the doctrine of Collateral Estoppel and Res Judicata the defendants and their counsel are both precluded from Relitigating these same issues again in any jurisdiction, including the US District Court of Eastern California.

This court must strike the defendants Eighth, Thirteenth and Fourteenth affirmative defenses collectively and uphold Collateral estoppel and Res Judicata and uphold all the prior final adjudications, decisions and rulings and preclude the defendants' ability to re-litigate these rulings.

They simply have no new **acquired evidence**, the also have failed to provide fair notice of the specificity of there so called defense. They failed to provide the specific **for other reasons** or **grounds of any decision in respect to the plaintiff employment** as they added in these fabricated affirmative defenses failed to provide a specific defense that the rule requires.

In addition, in the event and or hearing there is a **100 percent certainty** that the plaintiff Garrison Jones would prevail and succeed.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred and/or Plaintiff's damages, if any, must be reduced, because Velocity exercised reasonable care to prevent and correct any alleged discriminatory and/or retaliatory conduct, but Plaintiff unreasonably failed to take advantage of such preventive and/or corrective measures provided by Velocity, or to otherwise avoid harm.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred to the extent that Plaintiff failed to cooperate in the interactive process in good faith concerning the status of his leave.

This court requested and received a total of five (5) decisions/rulings all in favor of the plaintiff Garrison Jones in his successful journey to reverse all of the negative

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff never provided a health-care provider's certification of his need for leave.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff did not provide a written statement from his health-care provider that he was fit to return to work.

Here is the blank document sent to the plaintiff to have his physician complete and return it with his ability and date he was cleared and approved to return to work.

**∩Lincoln**
**Financial Group®**

The Lincoln National Life Insurance Company
8801 Indian Hills Drive, Omaha, NE 68114-4066
Toll free (800) 423-2765
www.LincolnFinancial.com

## GROUP CONTINUANCE OF DISABILITY
## (PLEASE see FRAUD NOTICES attached)

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
Velocity Technology Solutions, Inc. IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

**Attending Physician's Statement**

1. Patient's Name __Garrison Jones__                    Date of Birth Redacted

2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any)

_____

3. a) Date of First Treatment                    _____

   b) Date of Most Recent Treatment              _____

   c) Frequency of Treatments                    _____

   d) Type of Treatment Rendered                 _____

   e) Is surgery scheduled? If so, when?         _____

4. The patient has been continuously Totally Disabled (unable to perform regular job) from _____ to _____

   The patient has been continuously Partially Disabled (some restrictions or light duty) from _____ to _____

   If the patient is still disabled, when should the patient be able to return to work?  _____

5. Remarks or Comments  _____

6. List Restrictions and Limitations:  _____

7. Physical Impairment:

   Class 1 – No limitation – capable of heavy work – No restrictions (1-10%):

   Class 2 – Medium manual activity (15 – 30%)

   Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)

   Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)

   Class 5 – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments ( if applicable)

   Class 1 – Patient is able to function under stress and engage in personal relations (no limitations)

   Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)

   Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)

   Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)

   Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date _____   Signed _____   /Degree/Specialty _____
      (Month Day Year)          (Attending Physician, No Stamps, please)

                    Street Address    _____

                    City, State       _____

                    Phone Number      _____

                    Fax Number        _____

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC01450FTD

Page 1 of 3
10/10

- 21 -

Her    Here is the completed document returned to Velocity HR Director, Shauan Coleman per her instrsictions and the same document was sent to Lincoln financials as illustrated by the fax number on the document.

Lincoln financial confirmed they received this same document on December 22, 207

Velocity received this docummn in January 2018.

**∏ Lincoln**
Financial Group

**GROUP CONTINUANCE OF DISABILITY**
**(PLEASE see FRAUD NOTICE® attached)**

(877) - 873 - 3956

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.

Attending Physician's Statement

Date of Birth Redacted

**AN PHAM MD**

Document was complaeted by his physchian.

This document was also sent to the plaintiff by  Oglree Deakins attoney christopeher Meister on May 21, 2018 as part of the requar from the plaintiff for all of his emplyee file contents.

He again was unaware on My 4, 2018 Velocity HR Director Shauna Coleman had proactively contacted AZDES claiming that he was physically unable to work, which triggered 1 second negative adjudication of denial of unemplyment benefits.

### General Adjudication

**UB-098**    Claimant SSN █████████

PER T/C ON 5-4-18 AT 11:59AM PHN: 704-357-7721, LEFT MESSAGE ON SHAUNA COLMAN (HEAD OF HR) ANSWERING MACHINE, TO RESPOND BY 5-8-18 BY 12:00PM AND ADVISED OF CONSEQUENCES.

SHAUNA RETURNED CALL ON 5-4-18 AT 1:35PM AND LEFT MESSAGE STATING:

CLAIMANT IS ON FMLA FOR MEDICAL REASONS. CLAIMANT IS DUE TO RETURN TO WORK ON 5-15-18 ER STATES CLMT IS STILL CURRENTLY EMPLOYED WITH THEIR COMPANY AND IS EXPECTED TO RETURN TO WORK AS SCHEDULED ON 5-15-18.

DEPUTY NOTE: DUE TO THE INFORMATION PRESENTED BY BOTH ER AND CLMT AND NOT BEING ABLE TO REBUTTLE WITH ER DUE TO CLMT REQ IT SEEMS CLMT STILL HAS A JOB TO RETURN TO ON 5/15/18 AND CLMT IS REFUSING TO DUE SO BECAUSE HE FEELS HE HAS BEEN DISCHARGED AS OF 3/15/18. WILL USE START DATE AS 3/15/18 SICE THAT IS THE ASSUMED SEPERATION DATE

IF APPLICABLE SEE SECOND UB-098 FOR ADDITIONAL INFORMATION FROM ER AND OR CLMT.

The court needs to keep in mind that the written statement showing that the plaintiff was approved to return to work was in the posession of Velocity since January 2018 however, as this date approached, Velocity made the decision to unlawfully terminate the plaintiff and begin the cover-up of his termination beginning in March 2018.

Now if this document was in their posession and it was given to a Ogltree attorney and sent to the plaintff on May 21, 2018 aftr they had filed a false fabricated emploer protest claiming the plaintiff was still emplyed.

They used his return to work letter they requested to terminate him prior to March 22, 2018.

SO instead of sending AZDES this return to work document, instead they claimed he was physically unable to work because he was on FMLA.

Now remember, the plaitiff has no knowledge of any of this interaction and did not know of this until a year later July 2019.  However

The contact log at AZDES shows that on May 7, 2018, they claimed the plaintiff Garrison Jones contacted them and confirmed everything Shauna Coleman stated three days prior on May 4, 2018 and the person at AZDES even recorded his cell phone number n the log.

## General Adjudication

**UB-098**          Claimant SSN: 3███████

Issue: Able

Base Period Separation: No

Basis:
ABILITY TO WORK

BPR:
R6-3-52235.A.

Reasoning and Conclusion:
SEE UB 100

Additional Text:

CLMT WRITTEN STATEMENT:
UB436 SENT ON 4/19/18 DUE BACK ON 4/24/18
SEE UB-436R IN ONBASE RECD 5/2/18

CLMT CALL: ON 5-4-18 AT 11:22AM PHN: 916-870-4960, LEFT MESSAGE TO RESPOND BY 5-8-18 BY 11:24AM AND ADVISED OF CONSEQUENCES.

CLAIMANT RETURNED CALL ON 5-7-18 AT 1:53PM PHN: 916-870-4960, T/C WITH CLAIMANT:

CLMT STATES HE HAD A STROKE IN NOVEMBER OF 2017. CLMT IS STILL UNDER DOCTORS CARE UNTIL 5/15/18.

*NEVER CALLED AZDES ON MAY 7 2018*

- 26 -

This is the first known  uncovered impersonation of the plaintiff and this document was sent to him prior to his appeal hearing with the Arizona Court of Appeals on Otober 23, 2019 over a year later.  Once the plaintiff found out of this false allegation he immediately appeal the negative decision.

Now here it is over a year later and afte receiving notification from the Arizona Court of Appeals of the date/time of the appeal hearing , the defendants and intentionally failed not to appear however, the day before the hearing just like the termination hearing on June 22, 2018, they contact the court and send emplyer exhibits in suppoort of their claim the plaintiff was physicall unable to work and they send the court US government federal document from the emplyee file of the plaintiff at Velocity  exhibit # 05 stating he as on approved FMLA medical leave from February 20, 2018 until May 15, 2018.

This still, they did not attend the appeal hearing on October 23, 2109.  They prefered that someone else do their dirty work and rely on these false documents in making a decision as ling as the decision was in their favor.

Just like in the last hearing, this back fired in their faces because the plaintiff submitted the same document sent to him that was on file with Velocity Showing he was cleared to return to work On March 22, 2018 but was unlawfully terminated on March 15, 2018.  The court enven had that case from the hearing on June 22, 1018 in front of him at the appeal hearing.

- 27 -

Defendants **NINETH, TEENTH 15 AND SIXTEENTH** Affirmative defenses collectively must be stricken as their claims of failure to participate in the interactive process of FMLA is absolutely ridiculous as previously stated, in the eighteenth affirmative defense they are claiming plaintiff is and was not eligible for FMLA, so all of these false affirmative defenses can only be asked and made for an employee that was approved for FMLA, it is immaterial , irrelevant and to be honest petty for a defense attorney to " straddle the fence on both sides of FMLA. One minute is not eligible, the next minute he is claiming on FMLA but did not do this, did not return that and all has already been proven to be outright lies.

The exhibits in in affirmative Sixteenth no question prove interactive compliance and the defendants Nineth, Tenth and Sixteenth all collectively must be stricken as there is no such specific evidence that he did not participate and comply with any and all task in connection with his FMLA medical leave with Velocity.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Velocity was not required to return Plaintiff to work in the same or a comparable position following medical leave because he was employed in a highly paid, essential position.

Defendant Seventeenth affirmative defense is irrelevant and immaterial as it

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff was not an "eligible employee" under the provisions of the Family Medical Leave Act.

Where they were prior to the filing of this document claiming in prior pleadings he did not meet the criteria pertaining to a work site location and 50 employee 75 mile range criteria.
That the plaintiff was ineligible for FMLA because he did not work at a location or work site at Velocity thus he was ineligible for FMLA and FMLA protection they intentionally failed to mention per FMLA regulation 825.111, paragraph that has been in existence for over 25 years

The employee meets the first two requirements and the company is a covered employer, the issue then is the employee's work location. An employee who works remotely (75 miles or more from the employer's office) is covered under the FMLA if the office to which the employee reports and from which assignments are made has 50 or more employees working within 75 miles of its location. FMLA regulation 825.111, paragraph (2) applies to remote and other off-site workers. The regulation states: "An employee's personal residence is not a worksite in the case of

- 29 -

employees, such as salespersons, who travel a sales territory and who generally leave to work and return from work to their personal residence.

as under the concept of flexiplace or telecommuting. Rather, their worksite is the office to which they report and from which assignments are made."

This is the case of the plaintiff where he along with 70% of the consultants work out of their home office get their assignments from Minneapolis or Charlotte work location where they have an phone extension and the address of the reporting assignment worksite on their business cards.

**See attached exhibit FS 18**

That contain multiple email communication, documents from Appeals sent by Velocity HR Director Shauna Coleman to AZDES and to the Arizona Court of appeals stating plaintiff was on approved FMLA medical leave. As well as sending US government federal FMLA documents from the US department of labor as proof of FMLA status.

False administrative claims filed against him By Velocity where most of them were filed and made behind his back. Document 82 filed on August 9, 2021 contain all of these decisions from the Arizona Court of Appeals.

Included as well is the tactual appeal filed by Ogltree Deakins attorney Christopher Meister that was denied and dismissed on July 23, 2018.

Jul. 23. 2018  4:44PM

No. 1235   P. 3/16

# Ogletree Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletree.com

Christopher J. Meister
602.778.3720
christopher.meister@ogletree.com

July 23, 2018

## Via Fax and First Class U.S. Mail

Arizona Department of Economic Security
Office of Appeals
1951 W. Camelback Road, Suite 400
Phoenix, AZ 85015
Fax No. (602) 257-7056

RE:   Unemployment Insurance Claim, Garrison Jones
      Arizona Appeal No. U-1595392-001

To Whom It May Concern:

This firm represents Velocity Technology Solutions, Inc. ("Velocity" or "Employer"), in connection with Garrison Jones's ("Claimant") claim for unemployment benefits before the Arizona Department of Economic Security. We write to Request to Reopen the Decision of the Appeal Tribunal, dated June 22, 2018, which found that Mr. Jones qualifies for benefits because he was discharged from employment, but not for willful or negligent misconduct. The Appeal Tribunal's decision should be overturned because Mr. Jones has been employed by Velocity from the day he filed for unemployment benefits to this day.

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual ..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Ogletree
Deakins

July 23, 2018
Page 2

and fringe benefits and the cash value of all remuneration in any other medium other than cash."
A.R.S. § 23-622. From February 2018 to the present, Velocity has continued to provide Mr. Jones
with health, dental, and vision benefits. Thus, Mr. Jones has received "wages" as defined by the
Arizona Revised Statutes, is not unemployed, and is, therefore, not eligible for unemployment
benefits.

Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged
from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged
because he was copied on an email indicating that he was no longer employed and because his job
was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own
conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice
President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked
Velocity's General Counsel directly about his employment status, he was unequivocally told that he
was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been
posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and
then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own
findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was
still employed.

For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22,
2018, decision granting Mr. Jones unemployment benefits be reversed.

Sincerely,

Christopher J. Meister

Enclosure

34948283.1

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred because and to the extent that Plaintiff previously settled and released all rights to the claims presented herein.

.

There was never a claim or allegation in the complaint filed by the plaintiff in the US District Court of Northern Illinois or any other jurisdiction or agency except this court of the US District of Eastern California.

However, this court already knows that the US Department of Labor has investigated and determined that their **records/files do not contain a single FMLA complaint or charge that was made and filed by the plaintiff Garrison Jones.**

The defendants nor their attorneys from Ogltree Deakins have never challenged this fact for now over 4 ½ years and have never produced any such evidence otherwise.

The defendants and specifically Ogltree Deakins attorney Anthony Decristoforo already made this false allegation in document 5 at 26 in his failed motion to dismiss attempting to mislead this court claiming that the current complaint and claims were virtually identical to the complaint in Northern Illinois.

When confronted with the truth and the complete lawsuit from Northern Illinois where it was uncovered that the phrase "fmla" did not exist in the entire complaint,

- 33 -

he claimed it was "premature" to present evidence of fraud to this court because he had been caught in a lie.



I am certain, that if the defendants and counsel seek any form of "release" against the multiple federal criminal violations of the law committed by Velocity and Ogltree Deakins, the US government would gladly open their door to entertain this proceeding.

They have continued to mention a **"general release"** multiple times in the proceedings but has never produced it now for over a year since their appearance.

I am also certain, as a result of this proceeding, they will be escorted out off the courtroom on their way to federal prison.

Still, if this illegal agreement exist, they should schedule a hearing with this court to formally offer and present it to this court as their "get **out of jail free card**".

I doubt very serious knowing the connection to the multiple federal criminal violations of the law that this will not occur.  **"No ticket, No laundry** "meaning if you don't produce said document, it is irrelevant, immaterial inadmissible and simply does not exist.

Based solely on the defendants' and their counsel documented record of lying with every breath they take, where there has not been a single jurisdiction that has believed a single word or pleading they have made, the same should go for this court.

**There is no "release"** and the defendants nor their counsel has presented to this court **no offer of proof** that any such "release even exist.

Plaintiff cannot release criminal fraud claims committed against him and the federal government of the United States only the US Federal government has the authority to release any claims and hold the defendants and their attorneys not liable for the crimes committed against the federal government and the criminal acts that are included in this **"unenforceable agreement"**.

If the defendants and their counsel had any such thought of using and or enforcement of this illegal false fabricated "release" they would have done so by now instead of continuing to reference it in their pleadings that is not supported by any direct evidence of its existence

**Arizona Department of
Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019
Toll Free 1(877)528-3330 FAX (602)257-7056

## DISMISSAL OF APPEAL

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

VELOCITY TECHNOLOGY SOLUTIONS
Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016

Arizona Appeal No. U-1600605-001

Date of Mailing: 8/20/2018

Social Security No.

Employer Acct. No. 7428011-000

**IMPORTANT—THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR
UNEMPLOYMENT BENEFITS**

The Department of Economic Security provides language assistance free of charge. For
assistance in your preferred language, please call our Office of Appeals (602)771-9019.

**IMPORTANTE — ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO
DE DESEMPLEO**

The Department of Economic Security suministra ayuda de los idiomas gratis. Para recibir ayuda
en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602)771-9019.

### NOTICE TO CLAIMANT

***
**YOUR APPEAL HAS BEEN DISMISSED BECAUSE THE EMPLOYER DID NOT ESTABLISH GOOD
CAUSE FOR FAILING TO APPEAR AT THE PREVIOUS HEARING.**
***

***
Today, I made a separate decision that found the employer did not have good cause for failing to appear at the hearing
scheduled for 6/22/2018 and that the hearing would not be reopened. I am dismissing your appeal because the
Tribunal decision issued 6/22/2018 remains in full force and effect.

You have no right to appeal this dismissal. However, you may request further review of my other decision that you did
not have good cause for failing to appear at the scheduled hearing.
***

**Richard Ebert**
Administrative Law Judge

You have no right to appeal this dismissal. However, you may request further review of my other decision that you did not have good cause for failing to appear at the scheduled hearing.
***

**Richard Ebert**

Administrative Law Judge

Ignoring the court's decision they attempted to again "appeal" the court's decision instead filing a request **to "reopen the hearing" that was also denied and dismissed.**

**Arizona Department of Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330  FAX (602) 257-7056

GARRISON JONES 

DBA VELOCITY TECHNOLOGY SOLUTIONS
c/o Appeal Staff
OGLETREE DEAKINS NASH SMOAK & STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016

| | | |
|---|---|---|
| Arizona Appeal No. U-1600600-001 | Date of Mailing: | 8/20/2018 |
| Social Security No. 3█████████8 | Employer Acct. No. | 7428011000 |

---

**DECISION OF APPEAL TRIBUNAL**

# HEARING IS NOT REOPENED

> Good cause is about allowing parties who have not had the ability to present their case through accident or lack of notice to remedy that situation. In this case, employer did not appear because of a deliberate choice – a tactic to influence other negotiations. The employer had notice and the opportunity to be heard, but knowingly and deliberately declined that opportunity.
>
> Therefore, I conclude that the employer has not established good cause for failing to appear at the hearing of June 22, 2018. I deny the request to reopen that hearing.

Even the Court recoginezed what the defendants and their counsel from Ogltree Deakins made the choice not to intentionally appear at the hearing and that they declined the opprotunity to appear.

In additon, they also recoginized that it ws a deliberate choice and a tactic to influence other negotiations and that this and that attempt failed and was not successful.

## FINDINGS OF FACT:

On May 17, 2018, a determination was issued holding the claimant ineligible for benefits. Timely appeal of the determination was filed by the claimant.

A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.

The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

**The defendants do not have any such "after-acquired" evidence whatsoever** to present to this or any court that can prove that any such justification of the

termination of the plaintiff.  It is simply more off the games/tactics by the defendants and their counsel to induce this court into making a decision in their favor.


Per the procedure to appeal an administrative ruling/decision, the defendants had **35 days to file an appeal with the Arizona Superior Court. See <u>A.R.S. § 41-1092.08(H)</u>.**

be mailed to your home address at <u>1360 N 43rd Avenue, Phoenix, AZ 85009</u>. If you would like us to use a different email address to communicate about your leave or other issues related to your employment, please let me know.


Thank you,

**Shauna Coleman | Director, Human Resources |Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 |<u>velocitycloud.com</u>


Re: Summary List Discrimination - Garrison Jones

Shauna Coleman <shauna.coleman@velocitycloud.com>

Tue 1/16/2018 12:42 PM

To: Garrison Jones <garrison.jones@velocitycloud.com>

Good Afternoon Garrison,

As previously mentioned, we take any and all allegations seriously, and will thoroughly investigate all claims; however, we cannot do that without documented support to know what specific situations occurred so that we can invest them.

I look forward to receiving the documented support for these allegations.

Thank you

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | <u>velocitycloud.com</u>

- 39 -

**After receiving the documentation the next day and seeing that it was damaging to velocity.**

**Shauna Coleman in retaliation and seeing that the information was coming from the plaintiff email account at Velocity and to prevent him from accessing this damaging information.**

**On January 17, 2018 they made up an excuse to revoke his access to corporate email claiming they wanted him to focus on his health.**

**As you can see from the arrow above he was using his Velocity email account to communicate these issues and in direct retaliation they removed access and began to send communication to the plaintiff personal business email account that was used prior to his employment.**

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Wednesday, January 17, 2018 5:26:13 PM
**To:** Garrison Jones
**Subject:** Fwd: Access Removal Notice

Good Afternoon Garrison,

It has come to our attention that you have been accessing your work email. As you may recall, we instructed you to focus on your health and well-being and not to work while you were our on medical leave.  As per the email below you acknowledged this direction and the action you took to comply.

It appears that on or around December 28, 2017 an email forwarding program was installed to forward e-mails from your Velocity work account to multiple personal accounts.  This is not permitted both because you should not be working while you are on medical leave and because company e-mails should not be forwarded to a personal e-mail address. It is because of this that we have removed your account access.  If you have any questions, please contact me directly.

Going forward, we will send all communications to your personal email that we have on file with human resources: garrison.jones@outlook.com.  A copy of this correspondence will also be mailed to your home address at 1360 N 43rd Avenue, Phoenix, AZ 85009. If you would like us to use a different email address to communicate about your leave or other issues related to your employment, please let me know.

Thank you,

**Shauna Coleman | Director, Human Resources |Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 |velocitycloud.com

This is in direct relation and was not done for any business reason.  It was done to revoke access to any source of damaging information period.

The plaintiff based on past history anticipated this would happen.

Next in direct retaliation velocity cancelled all the health benefits of the plaintiff.

They did not give a shit  and still do not about his health and did so knowing that he had not begun rehabilitation from a major stroke and did so after they had previously claimed that they would collect health benefits "after he returned to work" less than a month prior.

If an employer would intentionally cancel an employee health benefits after suffering a major illness clearly illustrates retaliation and the use of anything available to them to carry out that retaliation.

On Dec 22, 2017, at 12:37 PM, Shauna Coleman <shauna.coleman@velocitycloud.com> wrote:

Hello,

Thank you Wendy. Garrison, as mentioned during open enrollment you will not be eligible to receive LTD benefits on your current disability as you did not have this coverage in place when this situation started. That said, you will be eligible for coverage in a year (with review by Lincoln Financial).

Velocity will collect your premium once you return to work.

1

- 41 -

# On January 23, 2018

More retaliation cancelling all of the health benefits after previously claiming Velocity would collect premiums when plaintiff returned to work and is so not at the request of the plaintiff.

**garrison.jones@outlook.com**

| From: | Shauna Coleman <shauna.coleman@velocitycloud.com> |
|---|---|
| Sent: | Tuesday, January 23, 2018 7:26 PM |
| To: | garrison.jones1724@outlook.com; Garrison Jones |
| Subject: | Benefit Premium Recoup |

Good Evening Garrison,

As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

|  |  | Dec-17 |  | Jan-18 |
|---|---|---|---|---|
| Medical | $ | 185.83 | $ | 242.15 |
| Dental | $ | 22.21 | $ | 25.77 |
| FSA | $ | 83.33 | $ | 83.33 |
| LTD |  | $0 (not enrolled) | $ | 26.88 |
|  | $ | 291.37 | $ | 378.13 |

In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51. Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you

**Shauna Coleman**  I Director, Human Resources I Velocity Technology Solutions, Inc.

o: 704.357.7721 | m: 845.282.6955 | f: 703.931.1269 | velocitycloud.com

**January 29, 2018**

**Next it was removal of access to all Velocity Systems**

**From:** Chris Heller <chris.heller@velocitycloud.com>
**Sent:** Monday, January 29, 2018 2:17:35 PM
**To:** Garrison Jones
**Cc:** garrison.jones1724@outlook.com
**Subject:** RE: Access Removal Notice

Garrison,

The information Velocity has requested has nothing to do with your access to Velocity's systems.

**Next it was harassment by phone and email at all times of the day and night knowing that the plaint was asleep and the calls were after 1:30 am EST.**

**From:** Garrison Jones [mailto:garrison.jones@outlook.com]
**Sent:** Wednesday, January 24, 2018 2:56 PM
**To:** Shauna Coleman <shauna.coleman@velocitycloud.com>; Wendy Cauthen <wendy.cauthen@velocitycloud.com>; chris.heller@velocitycloud.com
**Subject:** Email rejection

Not sure who sent the message however today I noticed that there were two email rejection messages sent to someone From blasted it as a rule I have turned on the do not disturb feature.  It automatically puts that email address on the blacklist to prevent that individual from communicating with me. I will not change it  is very unprofessional and unethical to be sending emails at 9:30 PM Arizona time which means That it is at least 11:30 PM Eastern time. There is no reason why anybody from Velocity should be emailing me at that time of night unless you are emailing me As  to Informed me that one of my children have died in that case you should pick up the phone and call. When Velocity cut my email access, it does not give anyone privileges or the green light to abuse my personal email any time you want. As you folks have eloquently put I am on medical leave recovering from a major stroke. It had to be someone from Velocity as all I see is the domain name that was rejected. I consider this continued harassment and another act of retaliation. It's whatever communication that is that urgent you should put it in a letter form and send it overnight don't ever email me again after normal business hours who's ever email address it was associated with that message is permanently on the block list in my email thank you

## February 2018
Next it was retaliation for filing an EEOC complaint also a protected activity.


Asserting these EEOC rights is a "protected activity,". and it can take many forms However, it is unlawful for an employer to retaliate against applicants or employees for:

- filing or being a witness in an EEO charge, complaint, investigation, or lawsuit


<u>**FIFTEENTH AFFIRMATIVE DEFENSE**</u>

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on

the grounds that Plaintiff never provided a health-care provider's certification of his need for leave.


**The fifteenth affirmative defense must be stricken as the as the document he is stating was never returned or received by Velocity  was sent to the plaintiff by Ogltree Deakins attorney Christopher Meister via email on May 21, 2018 and he had to have received it from Velocity HR Director Shauna Coleman.  This affirmative defense is an outright lie and must be stricken as in a hearing or trial**

- 44 -

There exit with 100 percent certainty that the plaintiff in a motion hearing or trial the plaintiff with the supporting evidence would succeed despite any state of facts which could be proved in support of the defense.

The facts show that in an email from Velocity HR Director, acknowledges that he sent and they received the FMLA certification that their defense counsel is claiming was never received. This is merely another lie that their counsel has been caught making.

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
To: garrison jones <garrison.jones1724@outlook.com>, Garrison Jones <garrison.jones@outlook.com>
Date: Wednesday, February 14, 2018, 10:59 AM -0700
Subject: Re: FMLA - Garrison Jones

Hello Garrison,

As you know, you have been on a medical leave of absence since November 18, 2017. During this time, you have applied for and received short term disability benefits. Your current medical leave of absence expired with the ending of your short term disability benefits on January 27, 2018, which is why we sent you the FMLA paperwork on January 23, 2018. You returned that paperwork to us on February 8, 2018.

Thank you for submitting the FMLA paperwork (certification form). We have evaluated

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff did not provide a written statement from his health-care provider that he was fit to return to work.

There exist with 100 percent certainty that the plaintiff in a motion hearing or trial the plaintiff with the supporting evidence would succeed despite any state of facts which could be proved in support of the defense claiming Velocity was not provided a written document from his physician on his ability, date to return to work with limitations. **See affirmative defense** where it shows Velocity HR Director Shauna Coleman acknowledging receipt of the physician certification form.

- 45 -

The facts show that in an email from Velocity HR Director, acknowledges that he sent and they received the FMLA certification that their defense counsel is claiming was never received. This is merely **another lie that their counsel has been caught making.**

The affirmative defense must be struck as evidence exist of the return of the physician certification,

**Arizona Department of Economic Security**



**Office Of Appeals**

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES



Arizona Appeal No. U-1639659-001          Date of Mailing:           10/23/2019

Social Security No.

**DECISION OF APPEAL TRIBUNAL**

# IN FAVOR OF CLAIMANT

- 46 -

## ISSUE:

Was the claimant able to work beginning 4/8/2018?

## DECISION:

I reverse the deputy's ruling. The claimant was able to work from 4/8/2018 through 5/19/2018.

which renders him unemployable.

The evidence presented establishes the claimant's ability to work from 3/22/2018 forward. The claimant did not elect for FMLA but was provided such time by his previous employer. Their reason for giving the claimant FMLA is insufficient to establish an inability to work on behalf of the claimant. The claimant has present documents from his physician which cleared him for work. In the absence of any other evidence which shows the claimant was unable to work, I find the claimant was able to work during the time period of 4/8/2018 to 5/19/2018.

Page 2—Arizona Appeal No. U-1639659-001

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Velocity was not required to return Plaintiff to work in the same or a comparable position following medical leave because he was employed in a highly paid, essential position.

This affirmative defense is Irrelevant and immaterial to the complaint and should be stricken.

**In the same breath they are claiming the plaintiff was ineligible for FMLA and on the other hand they are continuing to claim that he failed to provide**

- 47 -

**documents that can only be requested of an employee that was approved for FMLA medical leave.**

The plaintiff at the time he suffered a serious medical condition was the only Lawson Supply Chain employee in the entire organization and in the Lawson Practice.

There was no other employee with the same level of experience and or skill-set in the entire organization of over 800 employees. The supporting fact to this is that immediately Velocity had to go outside the organization to hire an independent consultant to take over the multiple supply chain engagements that were assigned to the plaintiff.

This affirmative defense is immaterial and irrelevant as the plaintiff was terminated while on approved FMLA medical leave and the Velocity had no intent of him returning to his original position or any other position within the organization.

He was not a highly paid employee. In fact *he was earning more than 26 thousand dollars less that his previous position before joining Velocity.*

There were employees in the Lawson Practice earning considerably more wages than the plaintiff where many of them had less than 6 years of experience compared to the plaintiffs 27 years of Lawson Supply Chain experience.

In fact, the plaintiff had more experience than multiple employees combined that equaled less than the 27 year career of the plaintiff.

Nevertheless per FMLA rules and regulations clearly state when an employee returns from FMLA leave, he or she must be restored to the same job or to an "equivalent job".

## <u>EIGHTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff was not an "eligible employee" under the provisions of the Family Medical Leave Act.

**This getting tiresome, the co-counsel in this case Anthony DeCristoforo for the 3 time has claimed that the plaintiff was on FMLA, he has changed his position on this 3 separate times, again when it appears it is advantageous to him and their case.  However, attorney Paul Smith is apparently trying this case separate from his own co-counsel.**

**This is from Document 84, filed on August 13,, 2021**

**See attached Exhibit – EX-AF8**

It was no such error or mistake on the part of Velocity as it is currently being offered by the attorneys from Ogltree Deakins that show or prove that the plaintiff was not terminated while on approved FMLA medical leave.

**This was a complete lie and fabrication as May 20, 2018 was a Sunday, yet when caught in a lie, Velocty HR director would not speak to the plaintiff and never did about this fabricated doctor appointment.**

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Date:** May 15, 2018 at 6:18 PM
**To:** Garrison Jones <garrison.jones@outlook.com>
**Subject: Re: FMLA - Garrison Jones**

Hi Garrison,

I am not able to speak this evening. Please send me your questions via email.

Thank you

On Tue, May 15, 2018 at 7:04 PM Garrison Jones <garrison.jones@outlook.com> wrote:
Again this repeatedly stuff is not working Shauna. I never said I had dr appt on May 20. That again is velocity saying that.

You guys want to have a reason.


I have tons of questions. Call me  you have my number 916 879 4960

Repeatedly after 4 months this is just a tactic

**MAY 2018**

| SUN | MON | TUE | WED | THU | FRI | SAT |
|-----|-----|-----|-----|-----|-----|-----|
|     |     | 1   | 2   | 3   | 4   | 5   |
| 6   | 7   | 8   | 9   | 10  | 11  | 12  |
| 13  | 14  | 15  | 16  | 17  | 18  | 19  |
| 20  | 21  | 22  | 23  | 24  | 25  | 26  |
| 27  | 28  | 29  | 30  | 31  |     |     |

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Date:** May 15, 2018 at 6:18 PM
**To:** Garrison Jones <garrison.jones@outlook.com>
**Subject: Re: FMLA - Garrison Jones**

Hi Garrison,

I am not able to speak this evening. Please send me your questions via email.

Thank you

On Tue, May 15, 2018 at 7:04 PM Garrison Jones <garrison.jones@outlook.com> wrote:
Again this repeatedly stuff is not working Shauna. I never said I had dr appt on May 20. That again is velocity saying that.

You guys want to have a reason.

I have tons of questions. Call me  you have my number 916 879 4960

Repeatedly after 4 months this is just a tactic

.
This even though the plaintiff never told her that he had no dr appt on May 20, 2018 and the fact that he had not seen his physician since March 2018 and that she had no

- 51 -

The Doctrine of Equitable Estoppel exist where it prevents Ogltree Deakins and the defendants from an affirmative defense and or claim that contradicts not only prior legal positions from a previous litigation but also previous statements by their client that was proactively taken in previous litigation where they were using FMLA in a prohibited negative employment action, in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit where it clearly states

An employer is prohibited from using FFMLA as a negative factor in employment actions and or disciplinary actions.
Unemployment proceedings are considered an employment action

- Using an employee's request for or use of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions, or,

**As a general principle no court can enforce a contract where it is uncovered and that elements of the contract is the result of illegal criminal behavior and violations of public policy and criminal statues**

**The issue where an out of court settlement agreement contains multiple claims and releases of issues and complaints filed/, made by a plaintiff is very common.**

**It is also very common for a settlement agreement to include potential claims filed by the plaintiff.**

However, it is exceptionally heinous for a settlement agreement to contain false fabricated complaints filed by the defendants to exonerate themselves from potential liability for willful, intentional acts committed by the defendants where they make it appear that the plaintiff made these complaints or allegations.

**The plaintiff Garrison Jones completely relied upon the experience, guidance of the entire FMLA process and procedures as well as all the communications from Velocity and specifically the HR Director, Shauna Coleman**

Equitable estoppel is a legal doctrine that prevents a party from asserting or denying something in court that contradicts his past statements or actions when that contradictory position would be unfair to the other party who relied on the original position.

Because the plaintiff failed to demonstrate detrimental reliance on his employer's alleged misrepresentations regarding his eligibility for FMLA leave, the employer was entitled to judgment as a matter of law.  The Sixth Circuit has jurisdiction over Kentucky, Michigan, Ohio, and Tennessee.

Daniel Dombrowski worked as a mechanical engineer for the employer on a project at the Detroit Wastewater Treatment Plant.  He had suffered from epilepsy since childhood, and, although he managed his condition through medication, he continued to suffer from seizures as an adult.

In 2004, Dombrowski decided to undergo surgery to treat his condition.  In September, he discussed his upcoming surgery with his supervisor and requested time off from work.  He was given a form entitled, "Application for Leave of Absence under the FMLA," which he completed and returned to the employer.  In October, the employer informed Dombrowski that his request for leave was approved for 12 weeks, from October 18, and that his position would be held open during the leave period.

Dombrowski underwent surgery and informed his employer that he wanted to return to work in early December, weeks before his leave period was to have concluded.  When Dombrowski returned to work on December 13, 2004, he was informed that his position was being eliminated and no other position was available.

Dombrowski sued the employer, among other things, for FMLA violations.  The employer moved for summary judgment, arguing that Dombrowski was not eligible for FMLA leave because the employer employed fewer than 50 employees within a 75 mile radius of Dombrowski's worksite.  Dombrowski argued that, having provided him with FMLA leave, the doctrine of equitable estoppel precluded the employer from denying his eligibility.

The appellate court noted that it previously recognized the doctrine of equitable estoppel in FMLA cases to prevent employers from raising non-eligibility as a defense, but it had not adopted a standard for applying the doctrine.  After a review of case law, the  plaintiff Garrison Jones has shown that the Defendants VTS while the process was fragmented and was in violation of multiple DOL FMLA regulations and procedures made and approved the plaintiff for FMLA medical leave on February 20, 2018 after he had reached his one year anniversary.

The plaintiff completely relied upon the communications from Velocity and as far as he was concerned as of February 20, 2018 he was on approved FMLA Medical leave from Velocity from February 20, 2018 until May 15, 2018.

- 53 -

He had complied and responded to all requested documents and certifications requested from him and his physician.  His physician as well completed and returned to the plaintiff all documents received from Velocity as well as from Lincoln Financial Group.

For the next 7 months Velocity and specifically Shauna Coleman, Human Resource Director, the highest ranking HR professional in the organization and from Velocity General CO9unsel, Chris Heller both communicated to the plaintiff via email that he was a Velocity employee on approved FMLA medical leave.

However, after the plaintiff had been subjected to actions that pointed to retaliation from protected activates  where he began to convey to HR, the abuse he had suffered during his employment that cultivated with the filing of a 15 page list of discrimination, hostile racially charged work environment, sexual harassment and assault, mail fraud, wire fraud, fraudulent billing, theft of intellectual property and trade secrets, Velocity began the conspiracy of covering up these unethical, illegal and criminal violations of the law.

The first after seeing that the information they requested in support of his allegations was coming from the plaintiff Velocity email account, they removed his access to Velocity email system and began to communicate with him on his personal email account.

Show only "(1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation."  The Court previously had required

that the party asserting the estoppel also be unaware of the "true facts," and that the adverse party intended the complaining party to rely on the statement or conduct.

The plaintiff Garrison Jones has shown he detrimentally relied on the all statements and communication of his FMLA rights and his eligibility because only dealt with Velocity HR Director Shauna Coleman the highest ranking HR employee in the organization

. She never communicated or presented any evidence establishing that he "change[d] her position" in his reliance on the belief that his approved FMLA medical leave would be FMLA-protected.

There also was at no time in the next 5 months between February 20, 2018 and May 15, 2018 that it was communicated to the plaintiff that he was not on approved FMLA medical leave.

The plaintiff completely relied on and did not receive any communication that his approved FMLA medical leave was in any way an erroneous representations.

 Velocity nor Ogltree are entitled to any such judgment as a matter of estoppel and as a matter of law.

The main reason for this request is that anyone who makes it a point to lie to the court in every single breath and pleading they have ever filed with the court has to be under the influence of drugs or alcohol.

The only other viable explanation is that all attorneys from Ogltree Deakins as is the history of all cases they have been involved in with plaintiff is that they all are **narcissistic documented pathological liars** and that they also suffer from reading comprehension deficiency.

### General Adjudication

**UB-098**        Claimant SSN: ▆▆▆▆▆▆▆

PER T/C ON 5-4-18 AT 11:59AM PHN: 704-357-7721, LEFT MESSAGE ON SHAUNA COLMAN (HEAD OF HR) ANSWERING MACHINE, TO RESPOND BY 5-8-18 BY 12:00PM AND ADVISED OF CONSEQUENCES.

SHAUNA RETURNED CALL ON 5-4-18 AT 1:35PM AND LEFT MESSAGE STATING:

CLAIMANT IS ON FMLA FOR MEDICAL REASONS. CLAIMANT IS DUE TO RETURN TO WORK ON 5-15-18 ER STATES CLMT IS STILL CURRENTLY EMPLOYED WITH THEIR COMPANY AND IS EXPECTED TO RETURN TO WORK AS SCHEDULED ON 5-15-18.

DEPUTY NOTE: DUE TO THE INFORMATION PRESENTED BY BOTH ER AND CLMT AND NOT BEING ABLE TO REBUTTLE WITH ER DUE TO CLMT REQ IT SEEMS CLMT STILL HAS A JOB TO RETURN TO ON 5/15/18 AND CLMT IS REFUSING TO DUE SO BECAUSE HE FEELS HE HAS BEEN DISCHARGED AS OF 3/15/18. WILL USE START DATE AS 3/15/18 SICE THAT IS THE ASSUMED SEPERATION DATE

IF APPLICABLE SEE SECOND UB-098 FOR ADDITIONAL INFORMATION FROM ER AND OR CLMT.

## Return of Certification physician certification form
## Email HR Director Shauna Coleman Feb 14, 2018

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
To: garrison jones <garrison.jones1724@outlook.com>, Garrison Jones
<garrison.jones@outlook.com>
Date: Wednesday, February 14, 2018, 10:59 AM -0700
Subject: Re: FMLA - Garrison Jones

Hello Garrison,

As you know, you have been on a medical leave of absence since November 18, 2017.  During this time, you have applied for and received short term disability benefits.  Your current medical leave of absence expired with the ending of your short term disability benefits on January 27, 2018, which is why we sent you the FMLA paperwork on January 23, 2018.  You returned that paperwork to us on February 8, 2018.

Thank you for submitting the FMLA paperwork (certification form).  We have evaluated

## Return of Certification physician certification statement by Ogltree Deakins attorney Anthony Decristoforo

### Case 2:19-CV-02374-KJM-JDP Document 43 Filed 09/25/20 Page 8 A at 17

17 | 2018. Velocity then sent Plaintiff FMLA paperwork which he **returned** on February 8, 2018.

May 15, 2018, he has degenerated back to claiming that the plaintiff was not eligible for FMLA in document 62 filed 49 days after his co-counsel filed a pleading stating he was approved for FMLA

Additionally as illustrated in the pleading the plaintiff returned the physician certification paperwork to Velocity on February 8, 2018

Not only did the plaintiff return the physician certification form used by Velocity to approve him for FMLA, he also return the documents to Velocity that approved him to return to work and this document stated he was able to return to work on March 22, 2018.

However, the plaintiff was terminated on March 15, 2018 7 days before he was cleared to return to work.

The continuous cover-up and conspiracy to claim denial of this unlawful act is getting old.

Just life a programmer that leaves "backdoors" or bread crumbs so they can go back and retrieve access to data he may need to direct or use in the future this is exactly what Velocity and Ogltree Deakins attorneys did.  Trap doors id you will.

In another attempt at fraud counsel is attempting by fraud and deception that the termination of the plaintiff did not exist.

They planted this event.  Why would Shauna Coleman out of the blue send an email like this and create an audit trail? The reason was because she was advised to do this by Ogltree Deakins attorneys.

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Date:** May 15, 2018 at 6:18 PM
**To:** Garrison Jones <garrison.jones@outlook.com>
**Subject: Re: FMLA - Garrison Jones**

Hi Garrison.

I am not able to speak this evening. Please send me your questions via email.

Thank you

On Tue, May 15, 2018 at 7:04 PM Garrison Jones <garrison.jones@outlook.com> wrote:
Again this repeatedly stuff is not working Shauna. I never said I had dr appt on May 20. That again is velocity saying that.

You guys want to have a reason.

I have tons of questions. Call me  you have my number 916 879 4960

Repeatedly after 4 months this is just a tactic

Get Outlook for iOS

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Tuesday, May 15, 2018 5:59.10 PM

**To:** Garrison Jones
**Subject:** Re: FMLA - Garrison Jones
Good Afternoon Garrison.

We have repeatedly informed you that your employment has not been terminated by Velocity. To our knowledge, you remain an employee on leave which is why you are continuing to receive medical, vision, dental, FSA, LTD, STD, basic life insurance, and AD&D benefits from Velocity. If you have decided to end your employment, please let us know the effective date of your resignation.

If you have not resigned, you have exhausted your FMLA leave as of today, May 15, 2018. You have indicated that you have a doctor's appointment on May 20, so please promptly provide us documentation from your healthcare provider regarding your ability to return to work, and any restrictions or potential accommodations you may have or would like to discuss after that appointment.

Please let me know if you have any questions and we look forward to continuing to work with you throughout this process. Thank you for your time and responsible attention to these important matters.

After he was terminated by decisions on the termination of the plaintiff and the defense Velocity has used in defense of both termination and FMLA were appealed in favor of the plaintiff on both occasions with the same information/exhibits entered as evidence at hearings at the Arizona Court of Appeals.

The court needs to be reminded that Velocity at the advice of Ogltree Deakins filed a total of 4 false fraudulent claims/allegations/complaints with AZDES in their desperate efforts to deny the plaintiff unemployment benefits after he was terminated.

The plaintiff appealed all of these negative determinations

1. **Termination**
2. **Ability to work as he was on approved FMLA**
3. **Unemployment Fraud.**

In addition, Velocity and Ogltree Deakins filed an appeal to the termination decision of June 22, 2018 on July 23, 2018 that was denied, and dismissed with prejudice with a special notation that they had no right to go further and appeal the dismissal ruling.

## DISMISSAL OF APPEAL

GARRISON JONES

VELOCITY TECHNOLOGY SOLUTIONS
Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016
Date of Mailing: 8/20/2018

Arizona Appeal No. U-1600605-001

Social Security No.

Employer Acct. No. 7428011-000

- 60 -

the middle of the hearing the judge disclosed exparte communication by Ogltree Deakins attorney Christopher Meister the day before the hearing and that he also submitted ex parte evidence to the court.  This is the practice of unethical ex parte communications and a documented fact that Ogltree Deakins has done this time and time again behind the back of the plaintiff.

This time he is attempting to induce the court into making a decision in favor of Velocity without appearing in court and going on the record.  The same that all Ogltree attorneys have done since 2018.
That

.

Jul. 23. 2018  4:44PM                                    No. 1235   P. 3/16

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletree.com

Christopher J. Meister
602.778.3720
christopher.meister@ogletree.com

July 23, 2018

**Via Fax and First Class U.S. Mail**

Arizona Department of Economic Security
Office of Appeals
1951 W. Camelback Road, Suite 400
Phoenix, AZ 85015
Fax No. (602) 257-7056

  RE:  Unemployment Insurance Claim, Garrison Jones
       Arizona Appeal No. U-1595392-001

To Whom It May Concern:

   This firm represents Velocity Technology Solutions, Inc. ("Velocity" or "Employer"), in
connection with Garrison Jones's ("Claimant") claim for unemployment benefits before the Arizona
Department of Economic Security. We write to Request to Reopen the Decision of the Appeal
Tribunal, dated June 22, 2018, which found that Mr. Jones qualifies for benefits because he was
discharged from employment, but not for willful or negligent misconduct. The Appeal Tribunal's
decision should be overturned because Mr. Jones has been employed by Velocity from the day he
filed for unemployment benefits to this day.

   As an initial matter, Velocity should not be precluded from requesting that the Appeal
Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason
not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated
in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the
terms of his separation from employment. Velocity believed that appearing before the Appeal
Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions.
Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable
agreement but unfortunately that has yet to occur.

   Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed
by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits.
A person is deemed "unemployed with respect to any week during which the individual performs no
services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages
constitute "all remuneration for services from whatever sources, including commissions, bonuses,

July 23, 2018
Page 2

**Ogletree
Deakins**

and fringe benefits and the cash value of all remuneration in any other medium other than cash."
A.R.S. § 23-622. From February 2018 to the present, Velocity has continued to provide Mr. Jones
with health, dental, and vision benefits. Thus, Mr. Jones has received "wages" as defined by the
Arizona Revised Statutes, is not unemployed, and is, therefore, not eligible for unemployment
benefits.

Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged
from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged
because he was copied on an email indicating that he was no longer employed and because his job
was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own
conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice
President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked
Velocity's General Counsel directly about his employment status, he was unequivocally told that he
was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been
posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and
then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own
findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was
still employed.

For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22,
2018, decision granting Mr. Jones unemployment benefits be reversed.

Sincerely,

Christopher J. Meister

Enclosure

34948289.1

# Conclusion

- 63 -

Defendants are not entitled to any relief from the acts that were intentionally willfully committed against the plaintiff.  What both Velocity and Ogltree Deakins are entitled to is a long prison sentence in a federal penal facility.

The plaintiff is entitled to is an order from this court to dismiss every single one of these dreadful affirmative defenses and order to dismiss/deny the entire case in favor of the plaintiff and also it is under the authority of this court to refer this case over to federal law enforcement for criminal prosecution.

**The plaintiff Garrison Jones is a victim** of multiple federal criminal and civil violations of federal law and his is entitled to the protection of this court for himself and his family from any further retaliation and criminal offenses committed against them,

Respectfully submitted,

August 16, 2021

**Garrison Jones Plaintiff (Pro Se**
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

## CERTIFICATE OF SERVICE

- 64 -

**I hereby certify** that on this [date] a copy of the forgoing [name of document] was mailed, USPS to defendants on August 16, 2021

**EXHIBITS AF8**

## MOTION EXHIBITS

The defendants and their counsel from Ogltree Deakins have continued to attempt to deceive this court and make it believe that none of these events every happened and attempting to disconnect the termination of the plaintiff from all the events surro9unding his approved FMLA by Velocity where he was terminated in direct retaliation for engaging in multiple protected activities.

Ogltree Deakins attorney Anthony DeCristoforo and Paul Smith are intentionally attempting to make false and misleading statements in regards to the US Department of Labor FMLA rules and regulations in regards to approval and eligibility for employee FMLA medical leave.

In multiple pleadings specifically in document 35 filed on 8/14/2020

He states:

1

15    The FMLA provides that an "eligible employee shall be entitled to a total of 12 workweeks

16  of leave during any 12-month period… because of a serious health condition that makes the

17  employee unable to perform the functions of the position of such employee." 29 U.S.C.

18  § 2612(a)(1)(D).  An eligible employee is one who has worked for a covered employer for at least

19  twelve months, who has worked at least 1,250 hours during the previous twelve months, and who

20  has been employed at a worksite where there are at least fifty or more employees within a seventy-

21  five mile radius.  29 U.S.C. § 2611(2)(A); 29 U.S.C. § 2612(2)(B)(ii).  An employee must satisfy

22  each of these criteria independently to be eligible for FMLA leave. 29 C.F.R. § 825.110.  As

23  explained more fully below, the court should dismiss Plaintiff's interference claim because the

24  Complaint fails to allege that (1) Plaintiff was employed by Velocity for twelve months and (2) that

25  he worked at a worksite with at least fifty or more employees within a seventy-five mile radius.

However, he is intentionally leaving out specific information from the US Department of Labor that clearly addresses the remote employee and telecommuting sections that is the exact model of their client Velocity, the configuration of their work at home policy and remote employees and the worksite of these employees **including the plaintiff** who was assigned the work site of Minneapolis where there are over 50 employees that work within 75 miles from that office.

Again over 70 % percent of the consultants at Velocity work out of their home offices however, they all report to either and are assigned to  work site  office location in Minneapolis and or  Charlotte , North Carolina.

**The plaintiff and other consultants were assigned to the Minneapolis, Minnesota work site and also received their work assignments** from that location as well all were assigned a phone number at that location for customers to call and all this information was also on their Velocity business cards, not the employee home address or home office.

2

The rule directly from the US Department of Labor states:

"An employee with no fixed worksite is covered under the FMLA if the office to which the employee reports and from which assignments are made has 50 or more employees working within 75 miles of its location. The FMLA regulations state, "An employee's personal residence is not a worksite in the case of employees, such as salespersons, who travel a sales territory and who generally leave to work and return from work to their personal residence, or employees who work at home, as under the concept of flexi place or telecommuting. Rather, their worksite is the office to which they report and from which assignments are made."

In an email from Velocity HR Director, Shauna Coleman on October 20, 2017 confirms the policy and Velocity configuration that employees **work from their homes.**

On Fri, Oct 20, 2017 at 4:40 PM, Shauna Coleman
<shauna.coleman@velocitycloud.com> wrote:
 Hey Garrison, I am sorry to hear. Fortunately we work in a company where you can work from home! Please let us know that you will be able to do that. If you're not please let us know that is the case as we need to plan accordingly as there are project due dates coming up that need to be covered.

3

Per the US Department of Labor employees are eligible for FMLA

An employee with no fixed worksite and or telecommuting and remote employees are covered under the FMLA if the office to which the employee reports and from which assignments are made has 50 or more employees working within 75 miles of its location. The FMLA regulations state, "An employee's personal residence is not a worksite in the case of employees, such as salespersons, who travel a sales territory

and who generally leave to work and return from work to their personal residence, or employees who work at home, as under the concept of flexplace or telecommuting. Rather, their worksite is the office to which they report and from which assignments are made."

The attorneys from Ogltree Deakins know this as the us Department of Labor is one of their biggest enemies as they are a labor law firm that only represents employers.

The US Department of labor is their main adversary.  They have hired employees directly from the US Department of Labor and have learned all their policies, procedures and how complaints are filed and handled.

They are intentionally attempting to mislead the court as to all of the parameters related to remote, telecommuting employees and leaving out specific information to make it appear the plaintiff was ineligible for FMLA and FMLA protection.

Again attempting to disconnect FMLA from the termination of the plaintiff.

4

In document 35 filed on 8/14/2020 Ogltree Deakins attorney Anthony Decristoforo who does not have a clue as to the organization structure of his client makes a fatal flaw/mistake claiming the plaintiff worked for Velocity at "various home office across the country.

Plaintiff alleges he worked at various home office in Arizona, Illinois, Indiana and California.  But he also states none of which is near Velocity's allege corporate locations.

He is lying, there is no text, statement allegation or claim that is contained anywhere in the complaint related to any work location.

He claims it is ID at paragraph 8.  However this is the text at paragraph 8

Case 2:19-cv-02374-KJM-JDP  Document 35  Filed 08/14/20  Page 4 of 5

1  Plaintiff alleges that approximately 70% of Velocity's workforce works remotely from home
2  offices across the country.  *Id.* at ¶ 8.  Third. Plaintiff alleges that he worked at various home
3  offices in Arizona, Illinois, Indiana, and California, none of which is near Velocity's alleged
4  corporate locations.  And finally, Plaintiff fails to include any allegation that Velocity employed at
5  least fifty employees within seventy-five miles of any of his home office "worksites."  Because the
6  Complaint does not allege that Plaintiff worked at a worksite with at least fifty employees within a
7  seventy-five mile radius, Plaintiff does not state sufficient facts to allege that he qualifies for the
8  protections of the FMLA.
9      Plaintiff's allegations in the Complaint establish that he cannot satisfy the first or third
10  requirements for an FMLA interference claim: (1) Plaintiff was not eligible to receive the FMLA's
11  protections and (3) he was not entitled to take FMLA leave.  Therefore, Plaintiff does not state a
12  claim for FMLA interference, and that claim should be dismissed.

At every opportunity they had, Velocity used whatever they had available to them in order to hurt the plaintiff, whether it be financial,

monetary, putting multiple false fabricated complaints in his path as well as cancelling his medical benefits after they had promised to recover the premiums after he return to work after suffering a near death experience, recovering from a major stroke.

They want to make this court believe that he was still employed the entire time and none of these events ever happened.

They also wants this court to believe that when promises were made to him they kept their promises and he was terminated " for other reasons" yet as it is their documented history, they have not offered a single piece of evidence and exhibits, nor have the offered any testimony, nor have the defendants and their attorneys from Ogltree Deakins have ever appeared at a single hearing, proceeding in support of a single false allegation, complaint, or claim they have made to any agency, court or jurisdiction.

They also wants this court to believe that from December 2017 until August 2018, they (Velocity) for a "terminated employee" they paid all of the health benefits including his employee portions after he was terminated and after they knew he was working for another organization.

During this same time period ( June 2018) they lost an appeal hearing filed by the plaintiff on his termination from Velocity and in retaliation and after they were stalking the plaintiff and his family looking for anything they could use against him to gain in their minds "some kind of advantage", they learned who and where he was working, then filed a false complaint with AZDES that the plaintiff was committing "unemployment fraud" by working and collecting unemployment benefits at the same time.

6

This a felony in the state of Arizona.  This after losing the appeal hearing where they were by law charged all of the monetary awards he was legally entitled to as ruled by the court and done specifically to stop/prevent put a major obstacle in his path to stop Velocity   from paying unemployment.

Their retaliation was to make a false complaint to an agency and induce them to weaponize law enforcement to charge the plaintiff with a felony, knowing how blacks are unjustly treated, put him into the criminal justice system, knowing how difficult it is for a black man to be successful and would prefer the plaintiff be sent to prison to stop paying a measly $240.00 per week in unemployment.

At the same time, they hire a so called "Tier **one" law firm Ogltree Deakins** to represent them in these legal proceedings and pay them in excess of $385.00 per hour vs the $240.00 per week.

This "law firm" claims to be worth over $800 million dollars, had more than 900 attorneys and they for a period of four (4) years have never appeared in open court on behalf of Velocity and every attorney assigned to any case has lied at every breath they have taken, they have intentionally avoided appearing on the record, preferring to do all of their work in collaboration and in a complicit relationship of fraud with Velocity, exparte where they are intimately involved in the scheme and conspiracy of fraud and criminality in every single case and proceeding.

They have coached/advised Velocity to commit these unethical l/criminal acts where they are taking these instructions from the

7

"Ogltree Deakins Fred Flinstone playbook estimated to have been created in 200 BC where thus far they have failed, lost and had every "preliminary negative ruling/decision" reversed, overturned, changed, denied and or dismissed.

They are assuming that in the previous litigation they were **"victorious"** but when you are the party that pays a settlement you technically lost.

The only victory they have both achieved is the fact that both are sinking in the "cease pool of **fraud and federal felony criminality.**

However, first the court has to look at the evidence and the extent both Ogltree Deakins and Velocity have went thru to cover-up this fact and t

The following exhibits and evidence of prior/current judicial proceeding and communication via email as well as documents from appeal hearings logged in as evidence as well as decisions/rulings made in favor of the plaintiff is a historical/current clear concise documented history of the FMLA status and approval for FMLA by Velocity that until the current attorneys from Ogltree Deakins were involved, including the fact that Velocity used FMLA as an "offensive weapon" and a prohibited act as defined by the US DOL where it is prohibited to use FMLA as a negative disciplinary employment action however, they used it in a direct violation of this rule/regulation to prevent the plaintiff from receiving unemployment false claiming he was physically unable to work where with the direction and representation of Ogltree Deakins used the plaintiff personal confidential FMLA documents to claim he was physically unable to work all the while, having in their possession, the same document presented to the Arizona court of Appeals used by the plaintiff that he was able to work from his physician and scheduled

8

to return on March 22, 2018, however, knowing this date was approaching Velocity terminated him on March 15, 2018 as they had no intention for him returning under any circumstances after he had filed a complaint with HR ( engaged in protected activity) and after he exposed their federal criminal violation the law where they stole intellectual property and trade secrets from their biggest revenue source Infor, where the planned on using illegally recorded videos of Infor certification training sessions and "fuck" infor out of the education revenue and to avoid paying any employee expense of sending Velocity employees to Infor certification class for 6 consecutive weeks.

Their intent was to use the plaintiff as the "test bed" but was actually a "scape goat" as Infor had discontinued the ability to obtain certification simply taking the final exam to obtain certification.

They only way to obtain Cloudsuite certification was to attend the entire 6 weeks of Cloudsuite training.

They knew this yet, they were willing to sacrifice the plaintiff, ruin his 28 year career and see if he could "slip past" all of these parameters and take the certification exam that would have certainly ended his career.

All this is tied to the retaliation of termination while on FMLA as he refused to participate in this illegal criminal activity and as such Velocity again using whatever they had available to them, terminated the plaintiff while on FMLA.

It's all connected and he was at all times the target.

9

1. **January 17, 2018** Plaintiff access to Velocity Corporate email revoked.

2. **January 23, 2018 all healthcare coverage was cancelled**, after previously being assured that Velocity was to pay for and collect his portion of the premium when he returned to work.
   Forcing him to apply for the state of **Arizona Medicaid** to begin his rehabilitation after suffering a major Stroke.



Yet for months Velocity in the vast cover-up of my termination wants this court to believe that after they originally agreed to collect health benefits when plaintiff returned to work, in less than a month later and in direct retaliation of filing a complaint with HR, they used again whatever they had available to them to hurt the plaintiff, this immediately after revoking his access to Velocity corporate email, they cancelled all of his benefits.

12

# January 29 2018 – Email Chris Heller Velocity General Counsel
## Plaintiff access to all Velocity systems were revoked.

Monday, January 29, 2018, 2:17 PM -0700 from Chris Heller
<chris.heller@velocitycloud.com>:

Garrison,


The information Velocity has requested has nothing to do with your access to Velocity's systems.

 Velocity needs basic factual information on the claims you have made in order to interview the appropriate people.


The following is one of the prior requests for information and I have highlighted the required information for this claim:

"With respect to your claims of sexual harassment, we again take these allegations seriously and are investigating.  We require additional information from you to permit us to further this investigation.  Please advise as to who witnessed this conduct, who touched/rubbed up against you, when did it happen, where did it happen, has it happened since, and are there any further details you have available to assist in Velocity's investigation.   Once we receive this information, we will continue our investigation. "

Once Velocity receives this information, we will conduct interviews of the individuals involved, including you.  Without this information, the investigation of this claim can't continue.


Regards,

Chris

13

4. **Febraury14 , 2018  Email from Velocity HR Director Shauna Colemen confirming dates of FMLA**
5. **Email to Shauna Coleman and Chris Heller dated Feb. 24, 2018**

Why is my position posted on Indeed.com?

Sent copy of advertisement and in their tradition of immediately cover-up, the advertisement was deleted but plaintiff saved and printed a copy.

The next day, plaintiff went back on indeed to search for this same advertisement, it had been deleted by Velocity, TYPICAL cover-up.

6. **Email on March 15, 2018 stating he was no longer with Velocity.**

**From:** Susan Holtapp <susan.holtapp@velocitycloud.com>
**Sent:** Thursday, March 15, 2018 8:08:38 AM
**To:** Chance Veasey <chance.veasey@velocitycloud.com>
**Cc:** Garrison Jones <garrison.jones@velocitycloud.com>
**Subject:** Garrison Jones

Chance,

I understood from our last exchange that Garrison Jones was no longer employee of Velocity.  His record remains in ADP reporting to Michael B.  Please let us know if Michael or myself have open action item to release Garrison.

Regards,
Susan

**Susan Holtapp-Freiday**  | Velocity Technology Solutions, Inc.
Sr. Practice Director Professional Services, Infor Line of Business
o 612.333.9853 | m  612.802.6914|
email susan.holtapp@velocitycloud.com  | Website velocitycloud.com

7.

14

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Chris Heller <chris.heller@velocitycloud.com> |
| **Sent:** | Monday, March 19, 2018 8:36 AM |
| **To:** | Garrison Jones |
| **Cc:** | Shauna Coleman |
| **Subject:** | RE: Employment Status - supporting Documentation - unanswered request Feb 24,2018 |

Garrison,
You are a Velocity employee that is currently on unpaid leave pursuant to the Family and Medical Leave Act.

**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**
o  704.593.3423| m  816.678.5162 | f  703.935.4308 | velocitycloud.com


**From:** Garrison Jones <garrison.jones@outlook.com>
**Sent:** Monday, March 19, 2018 9:22 AM
**To:** chris.heller@velocitycloud.com
**Cc:** shauna.coleman@velocitycloud.com
**Subject:** Re: Employment Status - supporting Documentation - unanswered request Feb 24,2018

So please clarify what is my employment status ?

Get Outlook for iOS

**From:** Garrison Jones
**Sent:** Friday, March 16, 2018 7:50:24 AM
**To:** chris.heller@velocitycloud.com
**Cc:** shauna.coleman@velocitycloud.com
**Subject:** Employment Status - supporting Documentation - unanswered request Feb 24,2018

In response to your message as to who told me that I had been terminated

1.  I sent the message below to both you and Shauna Coleman on 2/24/2018 that neither of you responded to, as a friend tipped me off that Velocity was looking for a "Lead Procurement consultant and sent me the link to the position  below. Now again somebody for the 37th time is lying

1

To: Shauna Coleman <shauna.coleman@velocitycloud.com>, Chris Heller <chris.heller@velocitycloud.com>
Date: Saturday, February 24, 2018, 1:02 PM -0700
Subject: why is my position being advertised - FMLA ???

Apparently Velocity has decided to move on and hopefully you folks have decided to settle these issues and allow me to move on


What is my status as last message from Shauna said I was on FMLA until

May 2018.  Please advise asap. I trust a settlement is going to be processed soon

# Infor S3 Professional Procurement

**Velocity Technology Solutions, Inc.** - Remote

**Description**

Apply your expertise to Customers in healthcare a
transform their Supply Chain/Procurement operati
Infor. Become intimately involved with driving solut
and allowing Velocity Customers to become better
knowledge of Infor's S3 product and of best pract
will lead the solution design, build, and testing for
times, these projects will be a full scale implement
projects will be a tactical re-design of business pr
configuration. In all cases, you will be a functional
project team. As an Infor Professional Services Le
teammates will look to you as the subject matter e
Customers using Infor's solutions in Supply Chain

Velocity is looking for an Infor Professional Service
consulting, and designing solutions This role is par
organization and requires travel in North America.
nearly 700 experts who lean in and help Customer
Software no matter where they are on their journe

*There is no greater wealth in this world other than children*

*Blessed is the peacemaker for he is a child of god.............................*

STATEMENT OF CONFIDENTIALITY

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

Sources

# Infor S3 Professional Procurement

**Velocity Technology Solutions, Inc. -** Remote
**Description**
Apply your expertise to Customers in healthcare a
transform their Supply Chain/Procurement operatic
Infor. Become intimately involved with driving soluti
and allowing Velocity Customers to become better
knowledge of Infor's S3 product and of best practi
will lead the solution design, build, and testing for I
times, these projects will be a full scale implement
projects will be a tactical re-design of business pro
configuration. In all cases, you will be a functional I
project team. As an Infor Professional Services Le
teammates will look to you as the subject matter e
Customers using Infor's solutions in Supply Chain (

Velocity is looking for an Infor Professional Service
consulting, and designing solutions This role is part
organization and requires travel in North America. ,
nearly 700 experts who lean in and help Customer
Software no matter where they are on their journe

### 1st source

Personal friend that I will not provide her name. that said Velocity was looking for a "lead Procurement Consultant and that the job was on several job boards.

NOTE Prior to typing this email I went back on INDED.COM and the position has now mysteriously "DISSAPPEARED" no doubt by Velocity after I sent the email of Feb 24,2018. Too late as I have a copy of it as seen below that clearly shows the Velocity logo and position they are looking for

### 2nd source

2nd - Source Indeed .com who verified the posting

### 3rd source

2.  3rd source as I also have an email from a recruiter who has a requisition he is trying to fill for the same and he identified Velocity as the client.

### 4th source

I have an email made a copy of same email from an internal velocity employee stating that I was no longer with velocity

( no I ill no provide the name as the last time I did that Velocity, jumped the gun and called Infor and lied to them as to the illegal

Recordings. But as you know I do not bluff and if I say I have evidence and or supporting documentation, I have it, you people must think I am stupid as I keep sending you info, you do nothing with it, no response and then keep asking for more.

Just so you know " I was born at night, not last night."

I know hundreds of people in the Lawson community at Lawson, consultants and customers. The supply Chain community is unique and small. You should know that as Velocity has multiple contractors that are "procurement consultant" and have multiple unhappy customers who have upgraded and or implementing Lawson procurement that are not happy with their performances and are in turmoil as a result.

Now if you Mr. Heller is telling the truth that means four different sources who none know each other are telling me a lie

1. Indeed.com
2. Recruiter
3. My Personal friend who I have known for over 12 years
4. Internal Velocity source – still employed

   All have to be lying to me and I doubt that is the case. I will not just go away and with the unethical , cutthroat attitude I have seen thus far in the time I have been with Velocity  "Stevie Wonder" is the only person who cannot see it.

   You can keep up these lies and legal tactics just so long, yet there is not one thing that i have sent to you / a allegations that Velocity has fought back and said that is not true.

   So I don't care how it's done but you need to look at my settlement  offer deeply and see that it is the best option to resolve this issue.

   These people will make you look like a fool  and violate you oath in a court room trying to defend them.

   The evidence I have **will not potentially** cost Velocity Millions in a court settlement or future revenue. I am a banana peel away from the last straw and the gloves coming off. Gamble if you may but the repercussions are larger than you think

3

## 8. position posted on Velocity internal website



**Position posted on Indeed.com**



Tue 5/15/2018 5:59 PM

Shauna Coleman <shauna.coleman@velocitycloud.com>

**Re: FMLA - Garrison Jones**

To   Garrison Jones

🛈 You replied to this message on 5/15/2018 6:04 PM.

Suggested Meetings                                                                                          ✦ Get more

Good Afternoon Garrison,

We have repeatedly informed you that your employment has not been terminated by Velocity. To our knowledge, you remain an employee on leave which is why you are continuing to receive medical, vision, dental, FSA, LTD, STD, basic life insurance, and AD&D benefits from Velocity. If you have decided to end your employment, please let us know the effective date of your resignation.

If you have not resigned, you have exhausted your FMLA leave as of today, May 15, 2018. You have indicated that you have a doctor's appointment on May 20, so please promptly provide us documentation from your healthcare provider regarding your ability to return to work, and any restrictions or potential accommodations you may have or would like to discuss after that appointment.

Please let me know if you have any questions and we look forward to continuing to work with you throughout this process. Thank you for your time and responsible attention to these important matters.

Thank you,

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

o 704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

📅 **Shauna Coleman** Invitation: US Benefits Overview - 2018 @ Mon Nov 27, 2017 1pm - 2pm (Garrison Jones)                    

16

They have changed their versions of his termination multiple times

**July 23, 2018**

Ogltree Deakins appeal of termination
States plaintiff was on approved FMLA medical leave
However, he is lying to the court claiming he was receiving wages
and benefits knowing that they had been cancelled by Velocity in
January 2018.

**First** – He had not been terminated
**Second** – They were "negating" the end of his employment
**Third** – no violation of FMLA occurred as he was not terminated
**Fourth** – He would have been terminated for "other reasons"
**Fifth** - Whatever decision Velocity made in terminating the plaintiff was done for "business reasons"

Sixth – After –Acquired Evidence

All off these versions are all lies and they have never presented a single piece of evidence or exhibits in support of any of these false allegations.

Again, an attempt to disconnect the termination from FMLA

## 9. FMLA ELGIBILITY – work from home

Velocity has 2 physical locations, Minneapolis, Minnesota and Charlotte, North Carolina.
Attempting to "disqualify the plaintiff Ogltree Deakins attorneys have made a claim that he did not work at a location 50 miles from a Velocity worksite/ work location.

It is obvious they had not done due diligence on their client, all they were interested in was their money.

19

**10.**     **Subject: Shauna work from home**
On Fri, Oct 20, 2017 at 4:40 PM, Shauna Coleman
<shauna.coleman@velocitycloud.com> wrote:
Hey Garrison, I am sorry to hear. Fortunately we work in a
company where you can work from home! Please let us know that
you will be able to do that. If you're not please let us know that is
the case as we need to plan accordingly as there are project due
dates coming up that need to be covered.


Thank you.


**11.**     **FMLA eligibility – Other employees**
None of the employees the plaintiff worked with as part of the
Lawson Practice at Velocity would never be eligible for FMLA as
more than 30 of them who also worked 100 percent out of their
home office and none of them live within 50-75 mils from
Charlotte, North Carolina or Minneapolis, Minnesota.
In retrospect, there are/were several employees who took FMLA
leave when he was an independent contractor and after the plaintiff
was employed.
On one occasion the reason for FMLA was birth of a child and the
other was the employee and his wife took over 12 weeks off to go
to China to adopt two children on separate trips, all while on
approved FMLA and neither of these employees lived within 50-
75 miles from a Velocity work location, they worked from home
and it was approved by Shauna Coleman, Velocity HR Director.

20

The only difference in the situation is they were not terminated while on FMLA like the plaintiff in retaliation for and while engaging in a protected activity.

All these Velocity employees do not qualify for FMLA if what the current Ogltree Deakins attorneys are claiming

**12.    Included is just a small sample of where these employees live and the area codes of their contact numbers**

Michael Baldwin - **California**   760-713-6613
Anne Bowgi – **Maryland** 240-460-4976
Andy Paige – **Michigan** 616-283-6981
Tom Hasler **Illinois** 847-274-5683
Ruth Ann – Florida 727-742-0544
Eric Libinsky- New **York** 914-603-3178
Sunil Parhelini - **Missouri** 314-600-7179

The plaintiff has 30 more examples

**13.**    They at all times prior to June 22, 2018 the first appeal hearing with the Arizona Court of Appeals they did not know the plaintiff had received in his personal email and

**14.    Email on March 15, 2018 stating he was no longer with Velocity.**

**15.**

**16.**

**17.     Email dated March 19, 2018 Velocity General Counsel Chris Heller**

Email from Velocity General Counsel Chris Heller stating the plaintiff was on approved unpaid FMLA medical leave knowing that plaintiff had been terminated.

**18.     Email  March 15, 2018 from EEOC  investigator after being terminated**


**19.     Also included is a copy of Velocity advertisement for the plaintiff position sent to Velocity as proof of his termination, however, they did not know I had copy of email from March 15, 2018 and they lied to me and began to cover-up my termination.**

Sources

# Infor S3 Professional Procurement

Velocity Technology Solutions, Inc. - Remote
**Description**

Apply your expertise to Customers in healthcare at
transform their Supply Chain/Procurement operatic
Infor. Become intimately involved with driving soluti
and allowing Velocity Customers to become better
knowledge of Infor's S3 product and of best practi
will lead the solution design, build, and testing for I:
times, these projects will be a full scale implement:
projects will be a tactical re-design of business prc
configuration. In all cases, you will be a functional I
project team. As an Infor Professional Services Le
teammates will look to you as the subject matter e
Customers using Infor's solutions in Supply Chain (

Velocity is looking for an Infor Professional Service
consulting, and designing solutions This role is part
organization and requires travel in North America. /
nearly 700 experts who lean in and help Customer
Software no mattor whoro thoy aro on thoir journer

## 1ˢᵗ source

Personal friend that I will not provide her name. that said Velocity was looking for a lead Procurement
Consultant and that the job was on several job boards.

NOTE Prior to typing this email I went back on INDED.COM and the position has now mysteriously
"DISSAPPEARED" no doubt by Velocity after I sent the email of Feb 24,2018. Too late as I have a copy of it as
seen below that clearly shows the Velocity logo and position they are looking for

## 2nd source

2ⁿᵈ - Source Indeed .com who verified the posting

24

The plaintiff knowing that Velocity would immediately react to this Indeed Advertisement and he was correct.

**The next day he looked for the same advertisement on Indeed.com, it had been deleted by Velocity.**

They thought because they had revoked his email access to Velocity corporate email, they thought they had "plausible deniability".
They were wrong

**21.**    The following is a list by date of all the communications and statements made by Velocity and attorneys from Ogltree Deakins in connection to FMLA.

There is not one statement / communication that stated he was ineligible from February 2018 until May 2020, until the current attorneys Paul Smith and Anthony Decristoforo began this fraud as it was ( in their minds) advantageous to do so to disconnect it to the termination of the plaintiff while on FMLA.

.

### March 4, 2018 contact log AZDES

Call from Velocity HR Director Shauna Coleman proactively contacting AZDES stating plaintiff on approved FMLA medical leave until May 15, 2018 lying to AZDES knowing he had been terminated with the intent to put multiple obstacles in his path of getting justly deserved unemployment benefits

**May 7, 2018 contact log AZDES**
Claiming the plaintiff contacted them and confirmed all the false
claims made by Velocity HR Director Shauna Coleman on May 4,
2018.

**This again was the first time Velocity impersonated the
plaintiff and made false statements.**

The fact of the matter is the plaintiff did not know of this false
complaint until July 2019 over a year later.

He informed AZDES and the Arizona Court of Appeals he
**never contacted AZDES on May 7, 2018 and provided his
cellphone bill as proof where there was no call on May 7, 2018
to AZDES or any other agency on that date/time.**

22.     **Email Velocity HR Director May 9, 2018**

23.     **Email stating plaintiff had not been terminated again
confirming dates of FMLA medical leave but, asking for a
statement they already have in their possession in regards to a
statement on his return and ability to work.**

27

**24.      Email Velocity HR Director May 15, 2018**

**25.      Email Ogltree Deakins attorney Christopher Meister May 21, 2018 HR Director February 14, 2018**
Sending the plaintiff his employment file and confidential medical records that contained the same document Velocity HR Director is asking for proving the already had this document in their possession

They had this document and used it seeing the plaintiff had been approved to return to work on March 22, 2018 but however, 7 days before this date, they made the determination to terminate the plaintiff and informed senior executives of this fact and later informed all employees.
In addition, they informed all employees to report any contact with the plaintiff immediately to HR.

**26.      FMLA Confidential Medical documents sent to Arizona Court of Appels by Velocity HR Director Shauna Coleman October 23, 2019 one year later**

Showing the court that plaintiff was approved for FMLA Medical leave
**Arizona Appeal No. U-1639659-001**

**27.      This is the 2nd time, both Velocity and Ogltree Deakins knew of the date/time of the appeal hearing and intentionally failed to appear** after registering for the hearing

**28.** Instead sent this document assuming that it would influence the court into making a decision in their favor without appearing and going on the official record or testify as to their false allegations or present this fabricated evidence on the official record.
It failed

**29.     Arizona court of Appeals Decision- October 23, 2019**
In favor of the plaintiff Garrison Jones who provided proof of his ability to work from his physician of March 22, 2018

**30.     Ogltree Deakins attorney Anthony Decristoforo dated September 5, 2020**
**Document 43 Page 8 at 26**

Stating the plaintiff received every benefit afforded to him under FFMLA ( stating in fact that the plaintiff was approved for FMLA medical leave but he is also lying attempting again to disconnect the termination of the plaintiff which cannot be done no matter how much they cover-up and no matter how many lies they have told.  Documented history, events and judicial historical proceedings **along with other** evidence clearly show that he was terminated by Velocity while on approved FMLA medical leave a protected activity.

✓   Contact **Shauna Coleman** at **shauna.coleman@velocitycloud.com** to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave. You have a minimum 30-day (or, indicate longer period, if applicable) grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

\_\_\_\_ You will be required to use your available paid \_\_\_\_\_ sick, \_\_\_\_\_ vacation, and/or \_\_\_\_\_ other leave during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

\_\_\_\_ Due to your status within the company, you are considered a "key employee" as defined in the FMLA. As a "key employee," restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us. We \_\_\_ have/ \_\_\_ have not determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

\_\_\_\_ While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every _____. (Indicate interval of periodic reports, as appropriate for the particular leave situation).

**If the circumstances of your leave change, and you are able to return to work earlier than the date indicated on the this form, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

If your leave does qualify as FMLA leave you will have the following rights while on FMLA leave:

• You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as:

\_\_\_\_ the calendar year (January – December).

\_\_\_\_ a fixed leave year based on _____

\_\_\_\_ the 12-month period measured forward from the date of your first FMLA leave usage.

✓   a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

• You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered servicemember with a serious injury or illness. This single 12-month period commenced on _____

• Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
• You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA.)
• If you do not return to work following FMLA leave for a reason other than: 1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.
• If we have not informed you above that you must use accrued paid leave while taking your unpaid FMLA leave entitlement, you have the right to have \_\_\_\_ sick, \_\_\_\_ vacation, and/or \_\_\_ other leave run concurrently with your unpaid leave entitlement, provided you meet any applicable requirements of the leave policy. Applicable conditions related to the substitution of paid leave are referenced or set forth below. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid FMLA leave.

\_\_\_\_For a copy of conditions applicable to sick/vacation/other leave usage please refer to _____ available at: _____

\_\_\_\_Applicable conditions for use of paid leave:_____

FMLA leave will begin on February 20, 2018.

12 Weeks of FMLA extends through May 15, 2018.

A recertification is required by the employee prior to May 15, 2018.

**Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement. If you have any questions, please do not hesitate to contact:**

_____ at _____.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

Form WH-381 Revised February 2013

Exhibit # 05

# Arizona Department of Economic Security



# Office Of Appeals

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330  FAX (602) 257-7056

GARRISON JONES



Arizona Appeal No. U-1639659-001

Social Security No.

Date of Mailing:

10/23/2019

---

## DECISION OF APPEAL TRIBUNAL

# IN FAVOR OF CLAIMANT

---

**The last day to file an appeal is   November 22, 2019   . Instructions for filing an appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis. Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Was the claimant able to work beginning 4/8/2018?

## DECISION:

I reverse the deputy's ruling. The claimant was able to work from 4/8/2018 through 5/19/2018.

## PRAYER FOR RELIEF

Having fully answered the Complaint and set forth its affirmative defenses to the allegations therein, Velocity hereby requests relief, as follows:

1. That Plaintiff takes nothing by way of his Complaint;

2. That the Court enter judgment for Velocity and against Plaintiff;

3. That the Court award Velocity its costs of suit;

4. That the Court label Plaintiff a vexatious litigant to prevent further unmeritorious litigation; and

5. For such other and further relief as the Court deems jut and proper.

DATED:  November 13, 2020

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By:  /s/ Paul M. Smith
Anthony J. DeCristoforo
Paul M. Smith

Attorneys for Defendant
VELOCITY TECHNOLOGY SOLUTIONS, INC.

9, 10, 13, 16

44961957_1.docx

13                    Case No. 2:19-cv-02374-KJM-EFB

DEFENDANT VELOCITY TECHNOLOGY SOLUTIONS, INC.'S
ANSWER TO COMPLAINT

# CERTIFICATE OF SERVICE

I am employed in the County of Sacramento, State of California; I am over the age of 18 years and not a party to this action. My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA 95814.

On November 13, 2020, I served the following document(s) described as:

**Defendant Velocity Technology Solutions, Inc.'s Answer to Complaint**

With the Clerk of the United States District Court of Eastern District of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF System **and/or:**

By placing ___ (the original) XX (a true copy thereof) in a sealed envelope addressed as stated on the following party(ies):

Garrison Jones                                    *Pro Se*
P.O. Box 188911
Sacramento, CA 95818

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 13, 2020, at Sacramento, California.

Deborah J Weidle

44961957_1.docx

Case No. 2:19-cv-02374-KJM-EFB