Garrison Jones
Plaintiff (Pro Se)
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com



SEP 07 2021



## U.S. DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARRISON JONES**<br><br>**Plaintiff,**<br><br>v.<br><br>**VELOCITY TECHNOLOGY SOLUTIONS LLC et al**<br>**Defendants.** | Case No.: **2:19-cv-02374 KJM-JDP**<br><br>**JURY TRIAL DEMANDED**<br><br>Action filed:  Nov 25, 2019<br><br>Date set for trial: NONE |

**Plaintiff**
**Objections to Magistrate Judge's Findings and Recommendations**
**Supplemental**

## Introduction

**If this court wants to make ruling per the rules it must go back to the defendants answer on November 13, 2020 that was filed 39 days after they were served and in that documented instance they were in default.**

- 1 -

**Per the 21 days and failed to do so.**

**I do agree that their defense is frivolous and is done for the main reason is to escape the federal criminal violations of FMLA and the criminal offenses willfully committed by the defendants and Ogltree Deakins Attorneys.**

**They have attempted to misdirect the courts attention away from these events and have presented to this court over 6 times their so called agreement as the means to do so.**

**That document as it will be referred to from this point forward, is not worth the last two sheets of a roll of toilet paper, because it is inadmissible and governed by the laws of Arizona, a state the defendants will not file any litigation in.**

**e FRCP rules they needed to respond within and their defense constitutes fraud upon the court "Again, plaintiff offers no factual support for these claims and they must be dismissed.**

Case 2:19-cv-02374-KJM-JDP Document 35 Filed 08/14/20 Page 4 of 5

Plaintiff alleges that approximately 70% of Velocity's workforce works remotely from home offices across the country. *Id.* at ⁕ 8. Third, Plaintiff alleges that he worked at various home offices in Arizona, Illinois, Indiana, and California, none of which is near Velocity's alleged corporate locations. And finally, Plaintiff fails to include any allegation that Velocity employed at least fifty employees within seventy-five miles of any of his home office "worksites." Because the Complaint does not allege that Plaintiff worked at a worksite with at least fifty employees within a seventy-five mile radius, Plaintiff does not state sufficient facts to allege that he qualifies for the protections of the FMLA.

1.
2.
3.

- 2 -

Plaintiff's Motion to Strike ("Motion") lacks merit. First, Plaintiff's Motion is untimely and should be denied. A Motion to Strike must be filed within 21 days of receipt of the responsive pleading it seeks to strike. Fed. R. Civ. P. 12(f). Plaintiff filed his Motion **278 days** after Defendant Velocity Technology Solutions, Inc. ("Velocity") filed its Answer to Plaintiff's Complaint.

Second, Plaintiff's Motion may become moot. Plaintiff's Motion seeks to strike affirmative defenses from Velocity's Answer to Plaintiff's Original Complaint [DKT 62], but the original Complaint is likely to no longer be the operative complaint. On August 16, 2021, Magistrate Judge

4. ———————————

5.

6. The rules as it relates to responding to affirmative defenses clearly state under

**Timeliness of Motion to Strike**

Courts have held that a plaintiff in a litigation has the right to challenge the legal sufficiency of a defense at any time and have interpreted Rule 12(f) to allow a motion to strike at any point in the case; even on its own motion. *Oregon Laborers-Employers Trust Funds v. Pacific Fence & Wire Co. (D OR 1989) 726 F. Supp. 786, 788; Williams v. Jader Fuel Co., Inc. (7th Cir. 1991) 944 F.2d 1388, 1399.*

7. The Court has Broad Discretion
8.
9. The decision to strike an affirmative defense is within the liberal discretion of the district court;
10.    While motions to strike are generally viewed with disfavor by the court, the function of the motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case. *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting Kennedy v. City of Cleveland, 797 F.2d 297, 305 (6th Cir. 1986)).*

11.

12.     A motion to strike should be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Engineers, 783 F.3d at 1050 (quoting Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991)).*

*13.*     Furthermore, such motions "should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense." *SEC v. Gulf & Western Indust., 502 F. Supp. 343, 345 (D.D.C. 1980).*

14.

15.     This was in his motion to dismiss on September 25, 2020 5 days before the plaintiff received his first FOIA response from the US DOL.

16.     Their response, supports the plaintiffs' claims of fraud upon the court by Velocity and Ogltree Deakins as the response uncovered the false fabricated FMLA complaint planted in the files of the USDOL on July 19, 2018.

17.     After this discovery, that was filed with this court just as is their pattern, and once caught in a lie, they go silent and never bring this issue up again and move onto the next lie.

18.     In addition in defendants responses of Document 91 and 92 their defense counsel introduces yet another issue that he probably has charged Velocity 3 or 4 billable hours for that is immaterial and irrelevant to these proceedings attempting to bait the plaintiff into going back and re-litigating and issue that has already been adjudicated in his favor.  It is nothing more than a petty attempt for more revenue/billable hours.

19.     First counsel has repeatedly attempted to minimize the significance of the states rulings/decisions and judgements claiming that none of them are related to the FMLA interference, termination of the plaintiff and FMLA.

20.     This is simply another in a long line of petty denials much like a criminal would do, after the fact.

21.     The most laughable is the one where he attempts to minimize the subject matter of the appeal filed by the plaintiff where he claims the ruling was related to "overpayment" and nothing to do with the actions of his client Velocity.

22.     The appeal filed by the plaintiff was directly attributed to the false claim made by Velocity to AZDES where the charge was "Unemployment Fraud" and was not over payment.

23.     As typical of their acts they cowardly did this behind the plaintiffs back.

24.     Only cowards do this type of thing and then when it is time to show up in court they fail to do so.  They again, prefer to let others do their dirty work.

25.

26.     **There is no question it was Velocity who contacted AZDES** after they had been stalking the plaintiff and after they found out he had returned to work for another organization, then immediately contacted AZDES claiming he was committing unemployment fraud by working and receiving unemployment benefits at the same time.

27.     **This at the same time. They are claiming he was still employed at Velocity.**

28.     **While the plaintiff was attempting to move forward, Velocity was still coming after him time and time again, trying to get him sent to prison.**

29.

30.     This was after they had lost the appeal hearing of June 22, 2018 that both Velocity and Ogltree Deakins attorneys intentionally failed to appear.

31.     It had nothing to do with overpayment and that was not the reason Velocity contacted AZDES.

32.     They are simply sore losers and did everything they could to stop paying the plaintiff unemployment.  They lied to AZDES to induce them to weaponize law enforcement to charge him with a felony and send him to prison and at the same time, hiding in the bushes and when confronted they would say they had nothing to do with it, it was all AZDES.

33.     As we all know, this attempt failed just like all of the other false claims, allegations and complaint falsely filed by Velocity against the plaintiff.

34.     This in addition to the FMLA complaint filed by Velocity with AZDES on May 4, 2018, all of appeals filed by the plaintiff where each lie by Velocity was reversed, denied and dismissed.

35.     Now for the 15th time, they are again attempting to relitigate these issues.

36.     IN addition, there was then as it was now, known to the defendants and their counsel, the appeal process to all these decisions/judgements and that was to the Maricopa county Superior Court.

37.     They had a total of 40 days to appeal to a higher court and failed to do so a total of five (5) times.

4 Plaintiff's Motion refers to unspecified proceedings with the Arizona Court of Appeals. *See*, ECF 82 at 1, 2, and 6. Plaintiff does not provide any information about cases in the Arizona state court system, and these references likely relate to the administrative appeal process arising from his claim for unemployment benefits.

6                    Case No. 2:19-cv-02374-KJM-JDP
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

38.

39.     *See A.R.S. § 12-904. Appeals of final administrative decisions are assigned to the Appeals Department of the Maricopa County Superior Court, which hears and decides all administrative appeals as well as appeals from the limited jurisdiction courts within Maricopa County. Maricopa County Superior Court*

40.     *If they did not know the procedure to file an appeal to the Maricopa County Superior court, then I suggest refresher courses. It is not the responsibility to advise lawyers who have allegedly pass the bar exam with these procedures.*

41.

- AZDES determined that Plaintiff was able to work from April 8, 2018 through May 19, 2018 [ECF 82, Document 4]; and

42.

43.     These administrative hearing were not related to simply unemployment benefits.  They properly adjudicated the issues Velocity filed against the plaintiff related to his termination, his FMLA status, his ability to work etc. All of these whether counsel wants to recognize them or not are the same issues in this case.

44.     If one of the over 900 attorneys at Ogltree Deakins including current counsel would have appeared at these appeal hearings they would know this instead of being a  three (3) year old Monday morning quarterback who can't read or understand the significance of these judgements.

45.　　The court properly adjudicated and ruled that the plaintiff was unlawfully terminated by Velocity and it was done not for misconduct.  This decision was made, upheld, and all appeal attempts by Velocity and Ogltree Deakins were denied and dismissed.

46.　　By default whether they want to recognize this or not, the plaintiff was terminated while on approved FMLA from Velocity.

**47.**　　In defense counsel document 83 filed on August 13, 2021 counsel after in prior pleadings admits that the plaintiff "**While on Job-protected Leave under the FMLA, plaintiff files suit in the Unites States District Court of Northern Illinois:**

The two issues related to the interference by Velocity have already been established and confirmed by Ogltree Deakins attorneys and by the prior ruling and judgment by the Arizona Court of Appeals.
1. The plaintiff was unlawfully terminated
2. The plaintiff was on approved FMLA medical leave from Velocity that began on February 20, 2018
3. He was terminated on March 15, 2018 before his FMLA medical leave ended and done unlawfully.
So what is being disputed?

There is no dispute to any of these issues before this court and the plaintiff is entitled to an aggravated Summary Judgement against the defendants.

48.

**C.　While on Job-Protected Leave under the FMLA, Plaintiff Files Suit in the United States District Court for the Northern District of Illinois**

On May 8, 2018, Plaintiff, proceeding *pro se*, filed a lawsuit in the United States District Court for the Northern District of Illinois, *Garrison Jones v. Velocity Technology Solutions, et al.*, Case No. 1:18-cv-03288.  He alleged numerous causes of action, including harassment,

49.     The defense counsel has accused the plaintiff of "rambling" on multiple occasions.  Well, it is a documented fact that I suffered a major stroke and a near death experience.

> Case 2:19-cv-02374-KJM-JDP   Document 43   Filed 09/25/20   Page 8 of 9
>
> 1  such a challenge, the complaint must contain sufficient factual information that, accepted as true,
>
> 2  states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);
>
> 3  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must contain a short and
>
> 4  plain statement of the claim showing that the pleader is entitled to relief. *Fed. R. Civ. P. 8(a)(2)*;
>
> 5  *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). The First Amended Complaint does neither.
>
> 6      The First Amended Complaint consists of a long, rambling recitation of the many causes of
>
> 7  action that this Court and Plaintiff previously dismissed relating to harassment and discrimination.
>
> 8  Plaintiff does not plead any facts to support these claims and therefore they must be dismissed.

50.

51.

52.     Now, he can't say "I did not say that because it's right there in black and white.

53.     He can't transform it into something else like a glass of lemonade.

54.     **I have a medical excuse for my disability**.

55.     I can counter that and asked the same. **What is your excuse for lying at every breath you take?**

56.     In addition **what is your medical condition**  other than the motivation for money, billable hours and revenue, that allows and prevents you from seeing the truth or the medical condition that allows you to see/put and replace words that are not there, and **transform thank-you letters into FMLA complaints**? ?????.

57.     What medical condition is that?

58.     There were people I saw that had less of a stroke than I had that are deformed and have lifelong disabilities.  I am blessed and fortunate to have survived and still able to function in life.

59.     There is one thing my stroke did not take away from me and **that is the ability to spot a liar from 100 miles away** and the ability to detect and isolate

a lie with the truth.  You might want to have a stroke maybe it will teach you something other than how to lie…………….

60.     To add finally, I actually do not know when I am rambling, repeating or duplicating statements, however, I do know when you are lying.

61.

62.     The plaintiff Garrison Jones commend this court in its recommendations this is the third (3rd) such dismissal of defendants motion to dismiss because they simply do not have a case whatsoever.  Their Motion to Dismiss and their latest Motion for Summary Judgement Document 83 in what they describe as an      "Alternative Motion to Dismiss"   and not a summary judgment where they are claiming that the federal criminal acts of fraud as well as other criminal general **release claims umbrella**.

63.     However, the defendants have submitted to this court a document that clearly states it is **"inadmissible in any proceeding"**

> 9. **No Admission of Wrongdoing**. Jones acknowledges and agrees that the Released Parties expressly deny any liability or wrongdoing and this Agreement is not an admission of liability or wrongdoing. Jones further acknowledges and agrees that this Agreement is not admissible in any proceeding as evidence of or an admission by the Released Parties of any violation of any federal, state, or local laws.

64.     **In addition it contains claims that cannot be release by an agreement**. They have attempted to release claims under the Fair Labor Standard Act that cannot be release without theXXXXXX

65.

66.     According to an old Department of Labor rule, FLSA claims may only be waived in a settlement agreement that is made under court or DOL supervision. This means that in order for the employer to resolve such claims, the plaintiff must have filed suit or initiated an administrative investigation of the employer's pay practices. The Fourth Circuit and other appellate circuits have upheld the validity of this regulation.

67.

68.    The Fifth Circuit stood as an exception to this position, interpreting the DOL rule to apply only to attempts by employers to prospectively release FLSA claims. However, last week the Fifth Circuit, in Bodle v. TXL Mortg. Corp., restricted its prior position on release of FLSA claims. In this case, the plaintiffs had settled a non-compete dispute with the employer and had signed general releases of claims. They then filed a subsequent claim for overtime payment. The defendant sought to dismiss the claim based on the prior release.

69.

70.    The Fifth Circuit rejected this position, stating that private releases of FLSA claims only work when the underlying dispute that leads to the release involves unpaid overtime or minimum wages. General releases obtained in unrelated matters or releases signed in the absence of any known dispute between the employer and employee will not act to prevent later FLSA claims. There was no claim or allegation in respect to any unpaid overtime and minimum wages.

In addition, as the plaintiff has repeatedly stated he cannot release a claim where the claim was filed by the defendants in a conspiracy to commit fraud upon the United States government in violation of The general conspiracy statute, 18 U.S.C. § 371, creates an offense "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose.

71.

72. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government . . . (A) any conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operation and reports as fair, impartial and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation.

73.    To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or

obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention.

74.     There is no question or dispute that it was a conspiracy to defraud the government and specifically the USDOL where Velocity and Ogltree conspired to plant evidence of an FMLA complaint in the files of the USDOL and as they have done in the past attempted to "FRAME" the plaintiff Garrison Jones as the person submitting this false fabricated FMLA complaint with the USDOL on July 19, 2018.

75.     They then in a complicit conspiracy attempted to cover up this and other criminal violations of federal law and fraudulently conceal them intentionally from the plaintiff Garrison Jones, up until it was uncovered and then they are now attempting to claim it is now transformed to an 'unknown claim".

76.     It is not an unknown claim as it was known to the defendants prior to August 2018.

1964, the Employee Retirement Income Security Act, the National Labor Relations Act, the Labor Management Relations Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Occupational Health and Safety Act, the Americans with Disabilities

77.

78.     The court granted in part the defendants motion to dismiss but there is no clear indication in its order **Document 87** what part is being granted as the only thing only relief the seek is dismissal of the complaint claiming again the plaintiff deserves no relief again reverting back to the unconsciable, illegal, unenforceable agreement that had not been submitted to the court until now 11 months later.  There is no such evidence or exhibits at the time this motion was filed that could give anyone any existence of it and they have at that time not done or used any offer of proof.

79.     The motion just as it is now should have been **denied in its entirety**.

80.    Even when the court has the third motion for Summary Judgement in the courts possession that they are calling and "Alternative motion to dismiss" the court still denied Document 43 so there is no difference in the content of either as they are again claiming the same thing.

81.    As in the prior two denials they were dismissed in entirety and as such so should this one and the Motion for Summary Judgement because all contain the same reasons for dismissal.

82.    The unconsciable, illegal, enforceable agreement is not under the jurisdiction of this court, it is under the laws of the state of Arizona.

83.    In the case in Northern Illinois an Order was submitted on December 19, 2019 after this complaint before the court was filed where Judge Jorge Alonso specifically denied his motion to vacate the judgment but Stated at the end of his order "If the plaintiff seeks relief from the obligations of the settlement agreement, he should file a new case in an appropriate court.

> For the foregoing reasons. plaintiff's motion provides no basis for the Court to disturb its judgment in this case. If plaintiff seeks relief from the obligations of his settlement agreement with Velocity. he should file a new case in an appropriate court.

Date:  12/18/2019



Jorge L. Alonso
United States District Judge

84.
85.
86.    That court, is the state of Arizona the state court and forum in the illegal agreement and the state that Ogltree Deakins is attempting to avoid and give jurisdiction to this court and the state of California.

87.    The plaintiff Garrison Jones did not make any assumptions of the risk of "unknown claims, the unknown claims were specifically and intentionally, hidden, surprises, omitted and fraudulently conceal from him by the defendants and their counsel from Ogltree Deakins.

88.    The USDOL in their FOIA response of dated June 8, 2021 confirm that Velocity and Ogltree Deakins prior to August 2018 received a copy of July 19, 2018 false fabricated FMLA complaint and had it in their possession before

August 16, 2018 and the complaint number 3850645 was intentionally omitted from the document.

89.

### 90.   Denials of Motion to Dismiss

91.   The court on multiple occasions and orders have repeatedly denied the defendants motions to dismiss this case including the latest denial of their Document 43 Motion to Dismiss on August 16, 2018

92.   As stated they have a Motion for Summary Judgement that again contains the same '**general release claim** that has already been denied in its entirety

93.

94.

95.   This court has already **denied** a prior order Document 29 denied  motion to dismiss in its entirety   Document 5 a Motion to Dismiss that included the same defense of claiming the "general release" as the reason the court should dismiss the complaint.  Yet here they are once again in front of a different judge attempting to re-litigate an issue where an order has been previously denied with the same ole fabricated defense or release claim, the exact same tactic they have used in the past that was dismissed, and denied.

97.   The court on its own merit and reviewed  denied the entire motion Document 5 filed on May 5, 2020 where they were claiming resolution in a prior litigation and the general release.  They did not grant any portion of this motion.

[1] Among the multiple grounds for early dismissal of this case is that Plaintiff previously filed and dismissed with prejudice a virtually identical action involving the same parties and claims in the United States District Court for the Northern District of Illinois.  Plaintiff filed that case in May 2018, the parties settled the case, and Plaintiff signed a general release.  Plaintiff dismissed that case with prejudice on August 16, 2018. *Jones v. Velocity Technology Solutions, et al.* (N.D.Ill.). No. 1:18-cv-03288.

3                Case No. 2:19-cv-02374-KJM-EFB

SPECIALLY APPEARING DEFENDANT VELOCITY TECHNOLOGY SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

98.

99.   The court did not grant in part any of their motion to dismiss, it was denied in its entirety.

100.    As well the court on August 16, denied their motion to dismiss
101.    Document 29

> Case 2:19-cv-02374-KJM-EFB   Document 29   Filed 07/31/20   Page 2 of 12
>
> 1   *forma pauperis* is granted: the complaint's claims, with the exception of an interference claim
>
> 2   under the Family Medical Leave Act against Velocity, are dismissed for failure to state a claim;
>
> 3   and plaintiff's motion for sanctions is denied.  Further, it is recommended Velocity's motion to
>
> 4   dismiss be denied.

102.                                                                                    .

103.    However, the court in its order granted in part their motion to dismiss
104.    The court in this case denied their motion in document and court order 29
        dated August 29, 2020
105.    The court did so twice in its order in Document 5 page 2 at 4 and        page
        3 at 10.

106.    The court has in rulings/decisions from prior proceedings that was
        requested  from the plaintiff received in Document 82 on August 9, 2021

> 19   The Motion to Dismiss [DKT 43] provides the Court with adequate grounds to dismiss the
>
> 20   Complaint and, to the extent it is deemed properly filed, the FAC.  Nevertheless, because the
>
> 21   Settlement Agreement provides an additional, independent basis to terminate this case, Velocity files
>
> 22   this Motion as an alternative to its Motion to Dismiss.

107.    Should also denied and dismissed in the courts decision to deny and
        dismiss as well.
108.    They have never offered in this case and in any of the other
        administrative proceedings any evidence what so ever that has in anyway been
        successfully submitted as a counter-claim to counter any of the evidence and
        exhibits by the plaintiff.   Instead, in an act of desperation that have done as
        they always have and abandoned their latest lies and failure and move on to
        other false unproven claims and allegations to misdirect this court away from
        the real issues of this case and only done so because they have been caught
        committing fraud upon this court and in their Document 83 submitted finally

the "Alamo Defense document that not only proves fraud upon this court but felony fraud against the United States Government. They simply do not case at this point but have confirmed every actuation the plaintiff has proven to be true.

109.    Their motion to dismiss Document 43 and Document 83 both should be denied and dismissed in their entirety.

110.    There is no doubt that the plaintiff was terminated while on FNLA and was done so unlawfully, and a direct act of interference and retaliation by Velocity.

111.    In addition, they and their attorneys at the time he was terminated thought they had plausible deniability as to hide and cover-up his termination because on January 17, 2018 they revoked his access to Velocity corporate email, then on January 23, 2018 cancelled all his health care benefits and finally on January 29, 2018 revoked and removed his access to all Velocity systems.

112.    However, they began the cover-up that exist to this day that he was not terminated.

113.    They want this court and others to believe none of this happened and that his termination on FMLA was a mistake or erroneous.

114.    They want this court and others to believe his employment ended on the same date of the unconsciable, illegal, unenforceable agreement on August 16, 2018 and that none of the documented events happened between January 2018 and August 2018.

115.    They want this court to **believe he was still employed and receiving wages and his health benefits premiums were being paid by Velocity all this despite the facts** and that again they were cancelled by Velocity in January 2018 after they reneged on a promise to collect them after he returned to work but cancelled them in retaliation of him filing a complaint with HR.

**116.**    They want this court to believe they were "negotiating the **"terms of his separation of employment".**

- 15 -

Jul. 23. 2018  4:44PM

No. 1235   P. 3/16

# Ogletree
# Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Attorneys at Law
Esplanade Centre III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletree.com

Christopher J. Meister
602.778.3720
christopher.meister@ogletree.com

July 23, 2018

**Via Fax and First Class U.S. Mail**

Arizona Department of Economic Security
Office of Appeals
1951 W. Camelback Road, Suite 400
Phoenix, AZ 85015
Fax No. (602) 257 7056

RE:   Unemployment Insurance Claim, Garrison Jones
       Arizona Appeal No. U 1595392-001

To Whom It May Concern:

This firm represents Velocity Technology Solutions, Inc. ("Velocity" or "Employer"), in connection with Garrison Jones's ("Claimant") claim for unemployment benefits before the Arizona Department of Economic Security. We write to Request to Reopen the Decision of the Appeal Tribunal, dated June 22, 2018, which found that Mr. Jones qualifies for benefits because he was discharged from employment, but not for willful or negligent misconduct. The Appeal Tribunal's decision should be overturned because Mr. Jones has been employed by Velocity from the day he filed for unemployment benefits to this day.

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual ..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

117.

118.    The fact is that he was terminated in March 2018, before the date he was able to return to work March 22, 2018 by his physician, a document in the possession of Velocity since January 2018 and that after he had been terminated the plaintiff within 30 days received multiple offers of employment from multiple organizations.

**To:**    Vishnu Laljie <VLALJIE@jhmc.org>

**Date:**    4 9 2018 8:42 PM

**Subject:** Re[2]: Garrison Jones Offer  Letter

I need a couple days to go over this with family


Monday, 09 April 2018, 11:25AM -05:00 from Vishnu La vlaljie5_612@indeedemail.com:

Garrison,
I sent you an email on Friday that we did get approval fro your the offer at 160k. Any word?

Please let me know

Vishnu


Vishnu Laljie

119.    Director of Talent Acquisition

120.

- 17 -



June 14, 2018

Garrison Jones
16152 W Durango St
Goodyear, AZ 85338

Re:   Offer of Employment

Dear Mr. Jones,

We are pleased to extend this offer to you to join Monroe Hospital as IT Application Analyst – Supply Chain Management.

Your starting compensation will be $130,000.00 on an annualized basis, payable bi-weekly. As an employee of Monroe Hospital, you will be eligible for benefits we offer generally to our employees, which currently include: Paid Time Off, 401(k), Medical, Dental and Vision for you and your dependents. All compensation and benefits are, of course, subject to change at any time, upon appropriate notice.

By signing below, you acknowledge that you are not relying on any promises that are not set out in this offer letter in deciding to accept this offer of employment.

It is a condition of this offer that, before commencing employment, you sign a Mutual Agreement to Arbitrate that contains additional requirements for the protection of Monroe Hospital, a copy of which is enclosed.

121.

122.    The later he accepted.

123.    Now, as the plaintiff has repeatedly illustrated Velocity has been coming after him time and time again and prior to his acceptance in this position where he was a corporate employee of Prime Healthcare based in California, he was assigned a worksite at one of their facilities in Indiana as they knew of his

recent recovery from a stroke and did this to cut down time travel and provide coverage for the eastern section of the country for multiple hospitals.

124.     Now claiming after stalking the plaintiff Velocity found out he was working for this organization, in the state of Indiana immediately contacted AZDES and filed a false complaint claiming he was committing unemployment fraud (a felony in Arizona).

125.     Who else had the motivating interest to do this other than Velocity?  The plaintiff was working for a California organization with facilities all over the country and a state Agency where he used to live and a state agency he just appealed and was awarded monetary unemployment benefits against his former employer who terminated him and as he is attempting to move forward, return to work after a near death experience, he is stalked and false accused of felony employment fraud by his former employer.

126.

127.     This was done to induce AZDES to do their dirty work, induce them to contact and weaponize law enforcement to charge and convict him of a felony, send him to prison to stop from paying $240.00 per week in unemployment benefits that he was awarded after his successful appeal on June 22, 2018.

128.     At this time they claim he was still employed at Velocity and receiving health benefits they claim to be paying for on his behalf, knowing he was employed at another organization and at the same time, they are filing felony fraud charges of unemployment fraud against an employee they claim to be still employed.

129.     Keep in mind, they did this behind his back yet again which is their tradition and what cowards to and when it was appealed by the plaintiff, they again intentionally failed to appear at the hearing, relying on AZDES and the Arizona Court of Appeals to again do their dirty work for them,

130.     The court already has in their possession the decision in that appeal. Again, despite knowledge and the so called agreement that they claim would prevent the plaintiff from receiving any monetary awards from his employment and the opportunity to present it to the Arizona Court of Appeals over a year later, they failed to do so, in another documented instance of avoidance in the state of Arizona by Velocity and specifically Ogltree Deakins.

131.

132.      .

### 133.      Unknown Claims

134.      Defendants attempt to include and categorize the discovery/uncovering of the false fabricated FMLA complaint they planted in the files of the US Department of Labor does not qualify as an "unknown claim" as it is their documents submitted to the US Department of Labor on August 24, 2018 by Ogltree attorney Jennifer Colvin that are attached to it along with communication from the US Department of Labor that show that prior to August 2018, that Velocity and Ogltree Deakins received copies of this FMLA complaint and as such knew of its existence and that they intentionally fraudulently concealed it from the plaintiff and excluded/omitted any and all identifying information ( complaint/charge number ) from the illegal agreement from him as not to alert him or anyone else of their inducement and fraud.

135.      Neither Velocity nor Ogltree Deakins never intended or anticipated he or anyone else would ever discover this or the federal criminal violations of the law they both committed prior to the agreement.

136.      Paramount in the issue to this court is the fact they are attempting to illegally interpret and modify the same agreement that was drafted/created by them to now include all of the criminal uncovered elements that only implicates them further in all of the illegal activities.

137.      This including intentionally not a single defense to the "unknown claim" anywhere in their pleadings since it was uncovered and now attempting to modify and change the jurisdiction and state governing law of the illegal agreement from Arizona to California, claiming California laws are "similar" the most laughable attempt I has seen so far.  It is nothing more of the same approach of avoidance and attempt to gain an advantage.  None of the events in connection to the agreement occurred in California except the criminal violations uncovered by the plaintiff.

138.

139.
140.


# Transformations

141.    The plaintiff has multiple serious concerns in relation with Ogltree Deakins attorney Anthony Decristoforo who has seen too many Transformer movies or the court must order him to complete "**drug testing" with negative results" before he is allowed to return or proceed in these proceedings.**

142.    He has shown several instances of making quotes about "evidence" that he claims to be in pleadings filed by the plaintiff as well in other documents that simply do not exist time and time again.

143.    None of the statements he has made to deceive this court were ever located in the locations he claims they exist at the location he claims.

144.

145.    First, he wants to transform a thank-you letter to the US DOL into an FMLA complaint.

146.    Second, after being caught red handed in planting evidence of an FMLA complaint in the official records of the US DOL he wants to transform it into an **"unknown claim"**

147.    **Third**, he wants to transform the filing of an complaint by the plaintiff in Northern Illinois in his mind as a negative bad thing to do claiming and I quote

**C.    While on Job-Protected Leave under the FMLA, Plaintiff Files Suit in the United States District Court for the Northern District of Illinois**

On May 8, 2018, Plaintiff, proceeding *pro se*, filed a lawsuit in the United States District Court for the Northern District of Illinois, *Garrison Jones v. Velocity Technology Solutions, et al.*, Case No. 1:18-cv-03288. He alleged numerous causes of action, including harassment, discrimination, and other employment-related claims. *See,* Defendant's Request for Judicial Notice

- 21 -

148.   This knowing that the plaintiff had been terminated unlawfully over two months ago while on FMLA and in his previous pleadings to this court he claims the plaintiff was **"not eligible for FMLA or for FMLA protection"**.

**149.**   However now he must have watched a "sneak preview" of an unreleased Transformer movie as not he claims he was on approved **"Job-Protected leave under the FMLA".**


150.   **In his last transformation on Pages 5 and 6 he reverts back to a 3rd grade Psych 101 tactic where he reduces the font on Page 5 at 25 for no reason from a 14 to a 6. Here he changes the font 3 separate times, for no reason, making it hard to read. In most circumstances, people will skip of these sections and move on to a section that is back in the normal font size**

151.   **This is nothing more than a deliberate act concealment, deception** on the part of the attorney, Anthony DeCristoforo.  He does not want anyone to stop and concentrate on his deception he wants them to concentrate on the distraction and not the intent.

152.   He then changes back to a different larger font. By all intentions, this is no more than a "[petty" Jedi mind trick to draw attention away from his "transformation" where he is inducing this court into a decision to obtain jurisdiction over an inadmissible, unconsciable, illegal, unenforceable document. **Petty at best.**

153.

### 154.   Arizona

**155.**   This directly attributed to the knowledge by Ogltree Deakins attorney of what they did as a law firm in the state of Arizona and specifically against the Count of Maricopa County, the jurisdiction that they would have to file any litigation with to attempt to litigate the illegal agreement.   Arizona is the last jurisdiction they want to go to.

**156.**   Included is the letter if you want to call it is a threat to enforce the illegal agreement from July 19, 2019 from Ogltree Deakins attorney Jennifer Colvin.


157.   **Here she claims "at this time Velocity " Velocity does not want to enforce the agreement"**

- 22 -

**Ogletree Deakins**

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Attorneys at Law
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone: 312-558-1220
Facsimile: 312-807-3619
www.ogletree.com

Jennifer L. Colvin
312-558-1234
jennifer.colvin@ogletree.com

August 26, 2019

Via E-Mail

Garrison Jones
garrison.jones@outlook.com

RE:   Jones –and– Velocity Technology Solutions, Inc

Dear Mr. Jones:

As you may recall, you and I met last summer in Ogletree's Chicago, Illinois office when you came in to sign the attached settlement agreement (the "Agreement") with Velocity. In exchange for you signing the Agreement and releasing all claims against the released parties named in the Agreement, Velocity paid you a handsome sum of $107,500. Velocity fulfilled its obligation under the Agreement and paid you the full amount.

As part of the Agreement, you agreed, among other things, "not to make any disparaging statements or remarks regarding" Velocity or any of the released parties. You also agreed that if you do so, Velocity may seek damages, including attorneys' fees. Now, unfortunately, it has come to my attention that you have begun sending a series of emails and letters to individuals at Velocity, Infor and other parties, and that you have written to the New York Times publication. In each instance, your conduct has violated the plain terms of the Agreement.

Despite your conduct in violation of the Agreement, at this time Velocity would prefer not to be forced to enforce the terms of the Agreement through litigation. However, your continued violation of the Agreement will force us to do so. Thus, we implore you to immediately discontinue making disparaging comments about Velocity and from taking any other actions in violation of the Agreement.

Lastly, we understand from your communication that you have had difficulty obtaining a new position. I cannot pretend to know why others have elected not to employ you, but Velocity can assure you that it has not engaged in the conduct you allege and has made no attempt to prevent you from obtaining gainful employment. We wish you all the best in the future and, again, implore you to discontinue your campaign against Velocity.

Sincerely,

Jennifer L. Colvin

158.   _____


159.   In reality neither Velocity nor Ogltree Deakins had any intention of filing any litigation to "enforce this illegal agreement.  Everything said about

- 23 -

Velocity and all their unethical, illegal, criminal crimes as well their fraudulently overbilling their customers can be proven even today.

160.    After months of being harassed, stalked and cyber-stalked by Velocity and finding out they had filed multiple false claims against the plaintiff, he began to fight back and fought back with undisputable proof.  Then Velocity like big babies went and called their watch dogs at Ogltree Deakins crying now that they have been exposed with the truth. The problem is in the words of Jack Nicholson, "**They can't handle the truth**"

161.    This was on August 26, 2019 and if they had grounds to enforce or grounds for litigation they would have done so.  They did nothing for over 2 years.

162.    The reason why they have not done anything is because they knew they had to go to the state of Arizona to do it, the same as the current attorneys.

163.    This is why they why the state of California transformation and the intentional effort then and now to avoid going back to the State of Arizona for anything.

164.    It really does not matter if they want to any court in this country because **as soon as the court sees that agreement is "inadmissible" they will decline and dismiss any litigation and Ogltree Deakins knows it**.

165.    **This is where he is attempting to transform this unconsciable, illegal, unenforceable agreement** into something it can and it is not, **a contract governed by the laws of the state of California and not a contract governed by the state of Arizona.  It is not the states of California or Arizona** and their "interpretation it is the transformation interpretation of Ogltree attorney Anthony Decristoforo who thinks that he and Ogltree Deakins have a better advantage in California and not Arizona.

A release of claims is "governed by the principles of local law which apply to [the] interpretation of contracts generally." *United Commercial Ins. Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (internal citations omitted).  The Settlement Agreement includes an Arizona choice of law provision: "The Parties agree this Agreement will be governed by Arizona

5   Case No. 2:19-cv-02374-KJM-JDP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Case 2:19-cv-02374-KJM-JDP   Document 83-1   Filed 08/13/21   Page 6 of 7

law." [Declaration of Jennifer Colvin in support of Defendant's Motion for Summary Judgment ¶ 3,

166.

> 2 Although the parties agreed that Arizona law would govern the Settlement Agreement, California law is similar. When considering a release, the court should "give effect to the parties' mutual intent as it existed" when they entered into their agreement. *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (quoting *Skrbina v. Fleming Cos*, 45 Cal.App.4th 1353 (1996)).  Absent ambiguity or uncertainty in the agreement, the parties' intent should be inferred from the language in the release. *Id.* (citing Cal. Civ. Code §§ 1638, 1639).  "'Where contract language is clear and explicit and does not lead to absurd result, [the court] ascertains intent from the written terms and go[es] no further.'" *Shaw v. Regents of Univ. of Cal.*, 58 Cal.App.4th 44, 53 (1997) (quoting *Ticor Title In. Co. v. Employers Ins. Of Wausau*, 40 Cal.App.4th 1699, 1707 (1995)).

6   Case No. 2:19-cv-02374-KJM-JDP

167.
168.
169.   Here he has went from a size 14 font to a size 6.

170.   His beginning statement: "Although" is **his transformaiton phrase.**

171.   This also is his knowledge based on the history of fraud and criminality by Ogltree Deakins in the state of Arizona and the fact that he knows they do not have a chance in hell in succeeding in Arizona, he is violating the illegal agreement and failing to put this "**change/modification** if that's what you want to call it, in writing and send to the other party ( the plaintiff) assuming that he and everybody else is stupid and will not question his motives or wuestion his unethical tactics.

174.     Even before this complaint before the court was filed, it was the intention
of both Velocity and Ogltree Deakins to commit the act of Fraudulent
Concealment of both the false and fabricated FMLA complaints they filed with
the USDOL.  First in the unconsciable, illegal, unenforceable agreement, they
conspired to intentionally omit the complaint and charge numbers from the
document only referring to it as "the FMLA charge filed with the United States
Department of Labor".  It is the only so called charge that does not have a
complaint or Charge number and it is inserted into the document amongst
legitimate complaints filed by the plaintiff Garrison Jones and the only one he
did not file a complaint with.

referred to as the "Parties."

WHEREAS, a dispute exists regarding Jones' employment with the Company and the
ending thereof effective August 16, 2018, including the allegations and claims that were
made or that could have been made in Equal Employment Opportunity Commission
Charge Nos. 440-2018-05157, 35A-2018-00231, and 540-2018-001834, Arizona Civil
Rights Division Charge No. P18-0058, Illinois Department of Labor Charge No. 18P-
095, and the FMLA charge filed with the United States Department of Labor,
(collectively, the "Charges"), and the lawsuit filed in United States District Court
Northern District of Illinois titled *Jones v. Velocity Technology Solutions, Inc., et al.*, No.
1:18-cv-03288  (the "Lawsuit").

175.

WHEREAS, a dispute exists regarding Jones' employment with the Company and the
ending thereof effective August 16, 2018, including the allegations and claims that were
made or that could have been made in Equal Employment Opportunity Commission
Charge Nos. 440-2018-05157, 35A-2018-00231, and 540-2018-001834, Arizona Civil
Rights Division Charge No. P18-0058, Illinois Department of Labor Charge No. 18P-
095, and the FMLA charge filed with the United States Department of
(collectively, the "Charges"), and the lawsuit filed in United States District Court
Northern District of Illinois titled *Jones v. Velocity Technology Solutions, Inc., et al.*, No.
1:18-cv-03288  (the "Lawsuit").

176.

177.     To establish fraudulent concealment, a plaintiff must prove (1) that the
defendant took affirmative action to conceal the cause of action or remained
silent and failed to disclose material facts despite a duty to do The plaintiff from

the beginning of this litigation has shown and proved this element, this was never a mistake it was always the intention in the conspiracy to do this as not to draw attention to a specific complaint/charge number so that it would prevent the plaintiff or anyone else from fact-checking or investigation this before the document was signed.,

178.    (2) The plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence.  This is evident as they continued to remain silent and made no reference to it even after it was uncovered by the plaintiff in September of 2020.

(#) The third essential element of fraudulent concealment is knowledge on the part of the defendant of facts giving rise to the cause of action. In other words, the defendant must be aware of the wrong.

179.    Not only were they aware of the wrong they have continued to remain silent to this day and have never referenced the discovery and uncovering of this damaging information because it ties/connect them even further into all of the federal criminal felony offense both Velocity and Ogltree committed prior to August 16, 2018.

180.    The fourth and final essential element of fraudulent concealment is a concealment of material information from the plaintiff.

*Shadrick v. Coker,* 963 S.W.2d 726, 735 (Tenn. 1998) (citations omitted). If a fiduciary relationship exists between the plaintiff and defendant, the party asserting fraudulent concealment need not show affirmative concealment of the cause of action, because 'failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation.' *Id.* (quoting *Hall v. De Saussure,* 297 S.W.2d 81, 85 (Tenn. Ct. App. 1956))." 2008 WL 4253628 at *6.

181.    This is apparent they have again on the date of the document being signed Jennifer Colvin knew of all the illegal criminal acts that were committed and intentionally failed to disclose and speak of any of them.  To add she also knew of all the other false complaints, charges and claims made against the plaintiff from May, June and July 2018 made in the complicit conspiracy between Velocity and Ogltree Deakins attorneys with AZDES and the Arizona Court of Appeals and

said nothing.  Knowing at the plaintiff was being set-up and he was being victimized.XXXXXXXXX

182.

183.　　The defendants and their attorneys from Ogltree Deakins in their Motion for Summary Judgement on October, 13, 2021 Document 83, is attempting to use their affirmative defense 7 as the means of inducing this court to grant this motion, claiming again for the 15th time a unconsciable, illegal, unenforceable release as the means and mechanism for the court to grant this desperate motion.

184.　　As the plaintiff has repeatedly stated that he cannot release any claims that were made in connection with   federal criminal crimes/offenses committed/ made by the defendants, only the federal government can release such claims.

185.　　The defendants committed multiple federal criminal violations of the law in the inducement and procuring this unconsciable, illegal agreement and as such it was and has been void from its inception and unenforceable.

186.　　Any contract that was created for illegal purposes or via illegal criminal activity is void in its entirety.

187.　　No one has to seek relief from anything they are not connected to.

188.　　Its human instinct to defend oneself from any false allegations.  Only criminals remain silent as it is their constitutional right, however, you don't move evidence to an "unknown claim" category in seeking relief unless you know you have or can be held responsible for in their minds "a **lesser included crime**.

189.　　What the defendants and their attorneys have done is submitted to this court a confession and admission that they are the ones who committed multiple federal criminal violations of the law including fraud upon this court.

190.　　They should be adjudicated for both as they are in parallel violations of civil and federal law.

191.

192.　　The silence by the defendants and their counsel from Ogltree Deakins on the discovery of what they now call "**unknown claim**" that could have only been filed by the defendants and their attorneys from Ogltree Deakins.

193.

194.

referred to as the "Parties."

WHEREAS, a dispute exists regarding Jones' employment with the Company and the ending thereof effective August 16, 2018, including the allegations and claims that were made or that could have been made in Equal Employment Opportunity Commission Charge Nos. 440-2018-05157, 35A-2018-00231, and 540-2018-001834, Arizona Civil Rights Division Charge No. P18-0058, Illinois Department of Labor Charge No. 18P-095, and the FMLA charge filed with the United States Department of Labor,  (collectively, the "Charges"), and the lawsuit filed in United States District Court Northern District of Illinois titled *Jones v. Velocity Technology Solutions, Inc., et al.*, No. 1:18-cv-03288   (the "Lawsuit").

Here they indicated that an FMLA charge exist filed with the United States Department of Labor, however, it is the only such "complaint listed that does not have a complaint, or charge number like all of the legitimate complaints that were actually filed by the plaintiff.

---

### WHISARD Complaint Information Form

*CP alleges that the requested time she put in with VTS is incorrect to the time she was off on FML.*
*CP alleges tht she did not ask for certain off and know HR is trying to covers it tytrack.*

*Chicago DO received a withdrawal letter from attorney citing a settlement between CP and her ER.*

Contact Log:

*8/24/2018 1:43:46 PM*          *FILED-NO ACTION*

*7/19/2018 5:14:44 PM*          *INTAKE ONLY*

---

Respectfully submitted,

Dated: September 2, 2021

_____

**Garrison Jones Plaintiff** (Pro Se
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

## CERTIFICATE OF SERVICE

**I hereby certify** that on this August 16, 2021 a copy of the forgoing
[Opposition to deny defendant motion for summary judgement was mailed, USPS to
defendants on August 16, 2021