Garrison Jones
Plaintiff (Pro Se)
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com





**FILED**

SEP 28 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

# U.S. DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

**GARRISON JONES**

**Plaintiff,**

v.

**VELOCITY TECHNOLOGY SOLUTIONS LLC et al**
**Defendants.**

**Case No.: 2:19-cv-02374 KJM-JDP**

**JURY TRIAL DEMANDED**

Action filed:  Nov 25, 2019

Date set for trial: NONE

## DEFENDATS CLAIM OF PURPOSE ADMISSABILITY OF EVIDENCE INADMISSABLE EVIDENCE AND INTERFERENCE

### Introduction

1. Not really sure what decristoforo is now claiming.
2. Is apparent that he has a real issue with reading, transformation, reading comprehension and interpretation.
3. Not sure what he thinks 6 different judges in different and multiple jurisdictions are making their decisions and adjudications from if there was any **"admissible evidence or exhibits"** they all have used to make decisior ,rulings and findings that the plaintiff was unlawfully terminated while on FMLA by Velocity.

4. There is nothing from any proceeding including this case from the defendants or their attorneys that has been submitted except the document the claim to be an agreement that counter-claims or remotely proves that he was not.

5. I have seen the word **release** so many times I will never speak it again.

6. I am going to replace it with "**let go**".

7.

8. That is the result of the ten (10) month wait and gap and obvious the last Alamo defense they have and the first response by any Ogltree attorney in any litigation.

9. If this is the best you folks have you are going to be disappointed.

10. As stated in previous pleadings that document is not worth the last two sheets on a roll of toilet paper at best.

11. The declarations of decristoforo will not either and nor will any of his pre-determined declarations to make any and all the evidence from the plaintiff that none have ever been ruled to be inadmissible be ruled as such.

12. Neither will the ultimate transformer transformation assist you either.

13. There will be no more wild goose chases like the **"Jedi mind trick"** to say "**go fetch nigger** "send the plaintiff off on a useless scavenger hunt for more evidence to appease decristoforo while after he sees it all he does  is attempt to discredit it by going into his goody bag of marble precedents to make it appear irrelevant.

14. Those days are over.  You have no idea how much evidence I have against you and the criminals you represent.

15. As you already have, you might want to consider putting that attorney you hired to represent you in the bar association complaint back on a retainer for your own defense or if they were company paid you might want to get two.

16. Where I grew up they call that **"kick rocks"**

17. When evidence which is admissible as to one party or for one purpose

18.     Is not admissible as to another party or for another purpose is admitted, the  plaintiff does here by request the court,  to l restrict the evidence to its proper purpose or scope and instruct the defendants and their counsel accordingly.

19.     Because now he is claiming that it is not ambiguous and that the inadmissible only applies to "wrongdoing".

20.     **Yeah right**.

21.     They are attempting to use the document they call and agreement as a Swiss army knife and every time you turn around it is used for a different purpose.

22.     Here decristoforo is yet again attempting to tell this court what is and what is not admissible as evidence.

### Exhaustion of Administrative remedies

23.     It is a known fact that many cases have been dismissed in federal court because the party did not exhaust any or all the administrate remedies to resolve issues, claims and allegations that could have been resolved via an administrative judicial process but as he claims it was for unemployment benefits and had nothing to do with the termination while on FMLA.

24.     Yeah right then how can he explain all the FMLA claims, documents presented in these proceedings from Ogltree Deakins and Velocity that mysteriously appeared **ex-parte** in these proceedings?

25.     I suppose this is the same transformation where FMLA can be used as an offensive and defensive weapon as long as it's in the favor of Velocity and Ogltree Deakins.

26.     **By the way all the use of FMLA failed**, both offensive and defensive.

27.

28.

29.     The defendants knew this and put as many of them in the path of the plaintiff.

30.     However, they did not anticipate in their wildest dreams that the plaintiff was going to be successful in appealing, reversing, overturning and getting dismissals of all of the false adjudications velocity made and put in his path as obstacles.

- 3 -

31.     However now, counsel is attempting to reduce the intent of this process trying to minimize the signifigance of their impact on these proceedings when Ogltree Deakins was actively involved in advising Velocity to make these false claims and they also advised them to use FMLA as a tool to do so.

32.     At the same time they (velocity)  was told to remain silent and not to participate and or testify in any of the proceedings as later any and all statements made can and will be used against them.

33.     The same statement made to criminals who have committed criminal offenses. It's appropriate.

34.     The question is why a director of HR would and their attorneys not show up for a hearing that they created and make any testimony about an employee they claim is still employed.

**35.     "you have a right to remain silent" anything you say can and will be used against you in a court of law.**

**36.     Better yet, the truth is that in the advice of counsel I will remain silent because not only am I guilty but if I say something it will make matters worse.**

37.      That's exactly why they lost.

38.     Here is Velocity HR director Shauna Coleman after she already registered to be on the hearing call the next day 6/22/2018 contacting the court after they had already been on a call with Ogltree Deakins attorneys with the court saying that she will not be attending the hearing, fully expecting that the second time they sent the same document on 4/24/2018 would do its magic and word again.

39.     No, it did not.  It was inadmissible and so noted by the judge in its ruling /decision.

| 06/22/2018 11:18:21 AM | T/C FRM THE CLT WANTING TO KNW WHAT WAS GOING ON W/ THE HRG, CHECKED C2T THE HRG WAS IN PROGRESS. | IA |
|---|---|---|
| 06/22/2018 9:26:07 AM | T/C FRM THE CLT RE; THE REG IN C2T. PROVIDED TO THE CLT THE REG WAS ENTERED CORRECTLY. THE ALJ WILL BE PLACING THE CALL TO HIM. | IA |
| 06/21/2018 1:29:26 PM | 6/21 RECVD CALL FROM ER WHO CHOOSES  NOT BE ATTENDING HEARING, SHAWNA COLEMAN 704-357-7721 | JC |
| | U-1595392-001-OA | |

**40.    THE JUDGE mad that determination of inadmissibility not a lawyer a JUDGE**

41.    Instead the day before they sent this, the same pre-printed document sent to all employees and deceived the low level AZDES person that he was still employed, which is what they intended.

42.    However when it matters **no show**.

43.    I recall appearing at the hearing and getting the ruling the same day

**Arizona Department of Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

VELOCITY TECHNOLOGY
ENTERPRISES INC DBA
DBA VELOCITY TECHNOLOGY
SOLUTIONS
1901 ROXBOROUGH RD FL 4
CHARLOTTE, NC 28211

Arizona Appeal No. U-1595392-001



Date of Mailing:          6/22/2018

Employer Acct. No.        7428011000

**DECISION OF APPEAL TRIBUNAL**

# IN FAVOR OF CLAIMANT
# EMPLOYER'S ACCOUNT IS CHARGED

The last day to file an appeal is ___July 23, 2018___ . Instructions for filing an appeal
are at the end of this decision.

44.

The evidence shows that the claimant believed that he was to be discharged because he was copied on an email that indicated that he was no longer employed and because his job was posted for hire. The claimant contacted the employer's general counsel who failed to answer the claimant's question as to why his job was posted.

The employer did not appear at the hearing and presented no evidence to show that the claimant was not going to be discharged. The employer is, therefore, considered to be the moving party and I conclude that the claimant did not quit but was discharged.

The employer did not present any evidence to show that the claimant's discharge was for misconduct.

Therefore, I conclude that the claimant was discharged, but not for wilful or negligent misconduct connected with the employment.

B. J. Cather
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 4/8/2018          Issue Code: 10,20
Date of Separation: 3/24/2018
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 6/22/2018

45.

46.    I also recall getting another decision that of a denial of appeal from July 23, 2018 that the appeal filed by Ogltree Deakins filed on behalf of Velocity was denied and dismissed with no right to appeal this decision. **strike one**



**Arizona Department of
Economic Security**                    **Office Of Appeals**

1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019
Toll Free 1(877)528-3330 FAX (602)257-7056

## DISMISSAL OF APPEAL

| | |
|---|---|
| GARRISON JONES | VELOCITY TECHNOLOGY SOLUTIONS |
| 705 W LIBERTY DR | Appeal Staff |
| WHEATON, IL 60187-4842 | OGLETREE DEAKINS NASH SMOAK & |
| | STEWART |
| | ESPLADE CENTER III |
| | 2415 E CAMELBACK RD STE #800 |
| | PHOENIX, AZ 85016 |
| Arizona Appeal No. U-1600605-001 | Date of Mailing:  8/20/2018 |
| Social Security N█████████ | Employer Acct. No. 7428011-000 |

47.

48.     This was also sent to Ogltree Deakins – **strike two**

49.      I also getting a third decision from August 20, 2018 where the motion to
Reopen the hearing was denied and dismissed.

Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL  60187-4842

DBA VELOCITY TECHNOLOGY
SOLUTIONS
c/o Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ  85016

Arizona Appeal No. U-1600600-001

Date of Mailing:          8/20/2018

Social Security No. ███████

Employer Acct. No.       7428011000

## DECISION OF APPEAL TRIBUNAL

#  HEARING IS NOT REOPENED

The last day to file an appeal is __September 19, 2018__ .  Instructions for filing an
appeal are at the end of this decision.

50.

## DECISION:

The applicant did not establish good cause for failure to appear at the hearing scheduled for 06/22/2018. The Decision of Appeal Tribunal remains in effect.

## FINDINGS OF FACT:

On May 17, 2018, a determination was issued holding the claimant ineligible for benefits. Timely appeal of the determination was filed by the claimant.

A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.

The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

## REASONING AND CONCLUSIONS OF LAW:

The issue is whether the nonappearing party's request to reopen the hearing of June 22, 2018, should be granted.

The Arizona Administrative Code, in Section R6-3-1503, provides in pertinent part as follows:

B.   APPEAL TRIBUNAL HEARINGS

\*          \*          \*

3.   Failure of Party to Appear

a.   If there is no appearance on behalf of an interested party at a scheduled hearing, the Appeal Tribunal may:

i.   Adjourn the hearing to a later date; or

ii.   Proceed to review the evidence of record and other admissible evidence as may be presented at the scheduled hearing, and make a disposition or decision on the merits of the case.

51.

- 10 -

52.     Again, for the third time you can note the court once again made a statement related to "**admissible evidence**". It is clear the plaintiff Garrison Jones submitted admissible evidence and the defendants did not.

**53.     Once again, A JUDGE made the determination by LAW as to what is and what is not admissible evidence not a lawyer A JUDGE.**

54.     No attorney has the right or authority to make any decision as to what is and is not **admissible evidence, this includes decristoforo**

Labor ("DOL"). These, and his other arguments, do not raise a triable issue of fact. Plaintiff does not dispute the facts submitted by Velocity in support of its Motion. And he does not submit any admissible evidence to support the facts he presents in opposition to the Motion. The Court should grant Velocity's Motion.

Here in Document 94 he claims "he does not submit any admissible evidence to support the facts.

These are facts and the facts were from judicial proceedings where admissible evidence was submitted.
The bad choices were made by Velocity and Ogltree Deakins to intentionally failed not to attend and testify in all of these proceedings.

The plaintiff showed up and won each appeal hearing in his favor.

If he can show a precedent where the defendants won a case by sending ex-parte evidence in a proceeding and then failed to gain a decision in their favor then please provide it.
I dam sure it was not a hearing or precedent when no party both the defendant and their counsel who was getting paid, where both did not show up a total of 5 times and were victorious.

3.   Failure of Party to Appear

    a.   If there is no appearance on behalf of an interested party at a scheduled hearing, the Appeal Tribunal may:

        i.   Adjourn the hearing to a later date; or

        ii.   Proceed to review the evidence of record and other admissible evidence as may be presented at the scheduled hearing, and make a disposition or decision on the merits of the case.

Page 2---Arizona Appeal No. U-1600600-001

55.

56.    This illustrates how hard Velocity and Ogltree Deakins attempted to get this decision overturned because they knew they had unlawfully terminated the plaintiff while on FMLA **but they were still hard at work fabricating FMLA claims with the USDOL as part of their  back up plan, JUST IN CASE.**

57.    However, this advice was made because Ogltree knew the percentages of success in overturning negative decisions in administrative decisions and relied on this and to allow others to do their dirty work.

58.    They advised HR director, Shauna Coleman, not to attend any of these administrative appeals, which is her right not to based on laws of this country.

59.    But as you know the right to remain silent has put many individuals in prison based on the evidence and in this case the court can see the impact of

- 12 -

Ogltree Deakins advice where they lost all appeals and administrative hearings and the adjudications from these hearings as well as the many exparte communications and documents sent to AZDES and to the court of Appeals are all admissible evidence in these proceedings despite attempts by counsel where he is trying to reduce them to exclusively about "unemployment benefits"

60.     Now he claims it cannot be used as evidence of any wrong doing despite the fact there is an overabundance of evidence that both Velocity and Ogltree have both committed many.

61.     Yet he is oblivious that this is a federal proceeding and that now the entire document is irrelevant and the only use he has used it for was the "release of claims" which is a lie.

62.

63.     This is the very definition of unconsciable where now the defendants and their counsel is attempting to claim that the illegal document and its inadmissibility term only applies to the plaintiff Garrison Jones and not to Velocity or Ogltree Deakins.

64.     In document 94 page 10 at section E the claims the plaintiff misunderstands the provision upon he relies.

**Plaintiff Understanding**

65.     The misunderstanding is on the part of counsel and not the plaintiff.

66.     There is no  misunderstanding of this provision at all, this is simply another transformation by decristoforo who has used this document from everything to misdirect this court, the bar association, AZDES and the Arizona Court of Appeals away from the facts off each time he has presented this document and its multiple use purpose that he has used it for.

67.     There exist already in the files of this case, evidence of unlawfully wrongdoing on the part of the defendants and their counsel where it clearly states that the plaintiff Garrison Jones was unlawfully terminated and was done so not for any misconduct.

68.     Whether counsel wants to admit to it or not is irrelevant and as such, this provision like many other provision has already been proven to be unenforceable and moot.

69.     Just like **Section 5 Affirmations** where it states "he **will not accept any damages, attorney fees or equitable relief to any such claims or causes of actions and that he is not deemed the "prevailing party".**

> dismiss with prejudice any other claim, cause of action, lawsuit, or administrative charge against Released Parties; (6) if any complaint, cause of action, lawsuit, or claim that has been released in this Agreement is filed, re-filed, or brought by anyone including third parties, he will not accept any damages, attorneys' fees, or equitable relief relating to any such claims or causes of action; (7) he is not subject to any garnishments, judgments, liens, or child support orders and has not assigned or transferred his rights to any claim or cause of action or otherwise impaired, by bankruptcy or otherwise, his ability to sign a complete and binding release of any and all claims released in this Agreement; and (8) he shall not be deemed a "prevailing party" for the purposes of any fee shifting statute, rule, or agreement.

70.

71.     The documented fact is that this provision was and is not enforceable either as

72.     A. he was the prevailing  party in over 6 different adjudications

73.     B. he did accept damages, he did not reject any monetary funds from the courts and despite the fact the document and that Ogltree Deakins presented this document to the courts and AZDES.

74.

75.     **Protected Rights**

76.     **Here in protected rights this document attempts to prevent and restrict his ability to collect monetary awards from any proceeding as well.**

77.     **This also has been proven to be unenforceable, claiming that "he waives his right to any monetary damages or equitable relief, including reinstatement. Arising from or relating to any administrative charge or proceeding"**

3. **Protected Rights.** Nothing in this Agreement prohibits or restricts Jones from initiating communications directly with, responding to any inquiry from, providing information to, or providing testimony before any self-regulatory organization or state or federal regulatory authority or agency or prevents Jones from receiving an award as a result of these actions. This Agreement also does not affect Jones' right to file an administrative charge with or participate in an investigation or proceedings conducted by any federal, state, or local administrative agency. Jones does, however, knowingly and willingly waive his right to any monetary damages or equitable relief, including reinstatement, arising from or relating to any administrative charge or proceeding.

**78.**

79.     Both Velocity and Ogltree Deakins was aware of each administrative proceeding from June 2018 until November 2019 where the plaintiff appealed all of the false claims, allegations and false fabricated complaints filed by Velocity against him and they also sent to AZDES and the Arizona court of Appeals this same document to prevent him from receiving any and all monetary awards as a result of his victorious and all the attempts to do so failed.

80.     The fact remains that he was awarded monetary awards and Velocity paid them as the losing party.

81.     This document had no affect then and does not have any affect now as it is unenforceable.

82.     A dispute exist related to this document and per the document it is under the laws of the state of Arizona for the state forum and for any and all disputes.

83.     The court knows as well the defendants are avoiding Arizona like the plague.

84.     However, the court should be aware that this has been appealed in June of 2021 and with confidence just like the other appeals by the plaintiff it will be overturned and reversed.

85.     The investigator was motivated by fees and dues to the bar association and intimidated by the firm of Ogltree Deakins.  He claims all of their activity was confidential and even attempted to induce the plaintiff into sending him the illegal agreement when he already had it in his possession because it was sent to him by decristoforo.

86.    Here in this email he claims he is looking for a copy of it

> 19    **E.    The Settlement Agreement Is Not Being Offered for Evidence of Wrongdoing**
>
> 20        Plaintiff contends that the terms of the Settlement Agreement render it inadmissible in this
>
> 21    matter.  Oppo. [DKT 88] at 36.  However, Plaintiff misunderstands the provision upon which he
>
> 22    relies.
>
> 23        Section 9 of the Settlement Agreement provides: "Jones further acknowledges and agrees
>
> 24    that this Agreement is not admissible in any proceeding <u>as evidence of or an admission by the</u>
>
> 25    <u>Released Parties of any violation of any federal, state, or local laws.</u>"  (Emphasis added.) Velocity
>
> 26    _____

87.

88.    Well this case does contain many documented violations of federal, state and local laws, which is exactly what the plaintiff has shown via multiple exhibits and evidence.

89.    Somewhere along the line the defendants and their counsel has somehow come to the conclusion that this document somehow cannot be used against them in any proceeding including of fraud upon this court and fraud upon the Federal Government of the United States is a **"releasable claim"** and that the document they are calling an agreement exonerates them as well dissolves all the financial ramifications in addition gives them some form of immunity of all the federal criminal crimes of fraud, forgery, as well as a slew of other federal criminal crimes they have committed are all simply washed away.

**90.**    They are mistaken as they think the plaintiff will use it as evidence, however that provision is not enforceable either and I will make sure I send his pleading Document 94 to law enforcement to let them see how arrogant his delusion is that he is making a statement as **if he and all the others involved in this conspiracy are all untouchable.**

91.    There is evidence, exhibits and documented fact that support the wrongdoing of the defendants and their attorneys from Ogltree Deakins.

- 16 -

92.     He just provided the incentive to send this document to law enforcement in multiple states and jurisdictions.

93.     They also are under the delusion that this court will give them a form of relief and let them walk away Scott free and turn its back on all the

94.     If a **contract is unfair or oppressive** to one party in a way that suggests abuses during its formation, a court may find it unconscionable and refuse to enforce it. A contract is most likely to be found unconscionable if both unfair bargaining and unfair substantive terms are shown.

95.     In December 2019 they used it to prevent the plaintiff from moving forward in his motion to vacate the judgement due to fraud,

96.     They have used it with the bar association of California to direct their attention away from the complaint filed by the plaintiff for making false statement, fabrication of evidence fraudulent concealment of claims and concealment of the identity Ogltree Deakins attorneys who aided and abetted Velocity in filing false fabricated FMLA claims with the USDOL.

97.     Now they are using it multiple times to claim that it is a release of claims when it clearly states it's inadmissible in any proceeding, however now they are claiming this only applies to the plaintiff and not the defendants or their counsel.

98.     This despite it states clearly "the parties" if they are not a party to this case then they should submit a formal withdrawal.

99.

100.    This document does not contain any of the terms, provisions they are claiming and it is not ambiguous as to its meaning.

101.

102.    It is mere desperation as they are losing this case and he reason is because they all are **pathological liars** and are showing the true nature of their lies in this case.

103.    Everything that has been already adjudicated on they are now claiming that it was not adjudicated on the facts related to the termination of the plaintiff while he was on approved FMLA medical leave.

104.    This in spite of the insurmountable evidence that he was.

105.    They are relitigating these adjudications all over again.

106.    This is his tactic to bait the plaintiff into searching for evidence to counter his false statements and delusions on issues

107.    Prior adjudications that have already been made in his favor and thus takes him away from the real issues of this case.

108.

109.    This will be the last time he attempts to do this as all his future attempts will not be responded to.

110.    He continues to claim that the plaintiff has not provided any proof of any FMLA interference when there has already been an abundant of evidence and decisions by five ( 6) different judges all have made documented decisions that the plaintiff had been unlawfully terminated while on approved FMLA medical leave.

111.

112.    Only this one counsel is the only one that has not accepted these decisions and especially the two made in this case by the two judges that have been assigned to this case and the latest by Judge Peterson on 9/16/2021 and in document 34 by Judge Brennan.

113.    In addition there have been three (3 ) separate decisions prior to this by three (3 ) separate administrative judges who have made these decisions, affirmed the decision, denied and dismissed all attempts to overturn  the decision by appeals and denied all attempts to reopen the litigation.

114.    Now counsel in a different court and jurisdiction is attempting to relitigate these decisions claiming no violation of FMLA interference occurred and the plaintiff received all the benefits of FMLA oblivious to the fact that he had been terminated.

115.    The evidence shows that at the time counsel claims he was still employed at Velocity, he had actually returned to work for another organization and when Velocity found out, they filed a false charge against him of unemployment fraud that failed.

116.    However, they still contend they were paying his portion of his health benefits knowing that in January of 2018 they cancelled them in direct retaliation of his filing of a complaint with HR department at Velocity.

117.    Still they have three (3) separate attorneys saying and giving three (3) separate versions of his termination.

- 18 -

118.    Christopher Meister claims they were "Negotiating" the terms of separation of employment"

119.    decristoforo is claiming he was not terminated at all.

120.    Paul Smith is claiming that his employment would had been terminated for "other reasons"

121.    None of them are telling the truths and none of this has ever been present in court on the record at any proceeding nor have any of them offered any supporting evidence to counter any of the decisions.

122.    The fact remains that he was working for another organization after he was terminated unlawfully by Velocity.

123.    Yet Velocity HR Director Shauna Coleman who should know if an employee is still employed or terminated on May 15, 2018 claims "**to our knowledge. You remain an employee on leave which is why you are continuing to receive  medical , dental and vison, FSA benefits from Velocity**"

124.    This is a complete contradiction and cover-up of the facts.

125.    All this sent to his personal email account and after he received this in his personal email account after Velocity revoked his access

---

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Susan Holtapp <susan.holtapp@velocitycloud.com> |
| **Sent:** | Thursday, March 15, 2018 8:09 AM |
| **To:** | Chance Veasey |
| **Cc:** | Garrison Jones |
| **Subject:** | Garrison Jones |

Chance,

I understood from our last exchange that Garrison Jones was no longer employee of Velocity.  His record remains in ADP reporting to Michael B.  Please let us know if Michael or myself have open action item to release Garrison.

Regards,
Susan

**Susan Holtapp-Freiday  | Velocity Technology Solutions, Inc.**
Sr. Practice Director Professional Services, Infor Line of Business
o 612.222.0052 | m  612.202.6011

126.

- 19 -

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Tuesday, May 15, 2018 5:59:10 PM
**To:** Garrison Jones
**Subject:** Re: FMLA - Garrison Jones

Good Afternoon Garrison,

We have repeatedly informed you that your employment has not been terminated by Velocity. To our knowledge, you remain an employee on leave which is why you are continuing to receive medical, vision, dental, FSA, LTD, STD, basic life insurance, and AD&D benefits from Velocity. If you have decided to end your employment, please let us know the effective date of your resignation.
If you have not resigned, you have exhausted your FMLA leave as of today, May 15, 2018. You have indicated that you have a doctor's appointment on May 20, so please promptly provide us documentation from your healthcare provider regarding your ability to return to work, and any restrictions or potential accommodations you may have or would like to discuss after that appointment.

Please let me know if you have any questions and we look forward to continuing to work with you throughout this process. Thank you for your time and responsible attention to these important matters.

Thank you,

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

127.

a. In addition after it is a documented fact that he was working for Prime Healthcare as of June 2018.

- 20 -

 Monroe Hospital

June 14, 2018

Garrison Jones

Re:    Offer of Employment

Dear Mr. Jones,

We are pleased to extend this offer to you to join Monroe Hospital as IT Application Analyst – Supply Chain Management.

Your starting compensation will be ████████ an annualized basis, payable bi-weekly. As an employee of Monroe Hospital, you will be eligible for benefits we offer generally to our employees, which currently include: Paid Time Off, 401(k), Medical, Dental and Vision for you and your dependents. All compensation and benefits are, of course, subject to change at any time, upon appropriate notice.

By signing below, you acknowledge that you are not relying on any promises that are not set out in this offer letter in deciding to accept this offer of employment.

It is a condition of this offer that, before commencing employment, you sign a Mutual Agreement to Arbitrate that contains additional requirements for the protection of Monroe Hospital, a copy of which is enclosed.

We wish to emphasize the importance we place on the proper treatment of any confidential information with which you may have come into contact in the past. We are offering you this job based on your skills and abilities and not your possession of any trade secret, confidential or proprietary information. We require that you not obtain, keep, use for our benefit or disclose to us any confidential, proprietary or trade secret information that belongs to others, unless the party who has the rights to the information expressly consents in writing in advance. Also, by signing below you affirm that you are not a party to any agreements, such as noncompetition agreements, that would limit your ability to perform your duties for Monroe Hospital.

Your employment with Monroe Hospital in both the position for which you are being hired, and any position that you hold thereafter (e.g., due to a transfer or promotion), is at will. This means that either Monroe Hospital or you can terminate the employment relationship at any time, with or without cause, and for any reason or for no reason, at any time. Any statements which are contrary to the at-will status of your employment are not authorized, and may not be relied upon by you. No provisions set forth in any employee handbook or any other type of policy can be relied on as modifying in any way, the at-will nature of your employment with Monroe Hospital. No one except Monroe Hospital's CEO has authority to enter into an agreement for any type of employment other than at-will

b.

- 21 -

c.

d. However they want you to believe he was still working for Velocity at the same time until August 2018.  Per decristoforo in document 35 he claims he his employment ended on August 16, 2018

26
27
28

[1] Plaintiff's employment with Velocity actually ended August 16, 2018, not in March of 2018, but Velocity recognizes that at this stage of the case, the Court must presume all well-pleaded allegations in the Complaint are true.  The actual date Plaintiff's employment ended is not relevant to Velocity's objections to the Order & FAR.

[2] Velocity's error should play no role in the ultimate resolution of this dispute because as a matter of law, Plaintiff was not entitled to the protections of the FMLA.

3          Case No. 2:19-cv-02374-KJM-EFB

DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION

And that he was not eligible for FMLA because he did not work at a location where

1  Plaintiff alleges that approximately 70% of Velocity's workforce works remotely from home

2  offices across the country.  *Id.* at ¶ 8.  Third, Plaintiff alleges that he worked at various home

3  offices in Arizona, Illinois, Indiana, and California, none of which is near Velocity's alleged

4  corporate locations.  And finally, Plaintiff fails to include any allegation that Velocity employed at

5  least fifty employees within seventy-five miles of any of his home office "worksites."  Because the

6  Complaint does not allege that Plaintiff worked at a worksite with at least fifty employees within a

7  seventy-five mile radius, Plaintiff does not state sufficient facts to allege that he qualifies for the

8  protections of the FMLA.

9      Plaintiff's allegations in the Complaint establish that he cannot satisfy the first or third

10  requirements for an FMLA interference claim: (1) Plaintiff was not eligible to receive the FMLA's

11  protections and (3) he was not entitled to take FMLA leave.  Therefore, Plaintiff does not state a

12  claim for FMLA interference, and that claim should be dismissed.

e.  claims "the plaintiff alleges that he worked in various home office in Arizona, Illinois, Indiana and California.

f.  The truth of the matter is the phase Arizona does not exist in the entire document and no such allegation or claim was never made by the plaintiff.

- 22 -

g. The phrase **Illinois** does not exist in the entire document
h. The phrase **Indiana** does not exist in the entire document
i. The phrase **worksite** does not exist in the entire document
j. The phrase **Arizona** does not exist in the entire document

1. Then he goes on and attempts to himself disqualify the plaintiff for FMLA claiming none of these "worksites" are anywhere near Velocity locations.

2. However he is intentionally leaving out a fact that was established over 15 years ago from the department of labor where it addressed the remote, telecommuting employee and FMLA of those employees, attempting to exclude the plaintiff and his failure to do due diligence on his criminal client.

3. The US Department of Labor states that remote employees are eligible for FMLA and FMLA protection not because of their residence location but because they report to an office where their assignments are given our and their assigned work site where 40 or more employees work within 75 miles of this location.

4. This is the same configuration of the plaintiff and 70% of the employees who work for Velocity where they work from home, travel to different customer sites but just like the plaintiff all were assigned to Minneapolis or Charlotte worksite locations where they were given business cards and an extension at those locations with that location address as heir "**WORKSITE which makes them eligible for FMLA.**

5. Now however, in his latest flip/flop he does not state ineligible for FMLA now he is back on the bandwagon of this "imaginary release document that now over two (2) years Ogltree Deakins and Velocity / Navisite have threatened to "enforce and present to multiple jurisdictions and proceedings but for some reason (probably criminal) they have intentionally failed to do so.

- 23 -

**6.** Decritoforo even knew that none of his attempts on disqualification /ineligible for FMLA would not work as the plaintiff produced his business card from Velocity clearly indicating his work site along with the FMLA regulation that supports remote employees. His worksite just like many other employees was Minneapolis where more than 50 employees work.



**7.**

**8.** He even in his document 83 page 3 at 11 he does a complete reversal of all his other contradictions that the plaintiff was on "job protected FMLA leave

**9.**

> 9   weeks. *Id.*   Velocity then granted Plaintiff leave under the FMLA from February 20 to May 15,
>
> 10   2018. *Id.*
>
> 11   **C.   While on Job-Protected Leave under the FMLA, Plaintiff Files Suit in the United States District Court for the Northern District of Illinois**
>
> 12
>
> 13   On May 8, 2018, Plaintiff, proceeding *pro se*, filed a lawsuit in the United States District

**10.**

**11.**    This as if there was some form of violation of the law by filing a lawsuit while on FMLA leave.

- 24 -

**12.**      In addition oblivious to the fact that he is intentionally mentioning that the plaintiff was terminated and no longer employed at Velocity attempting to disconnect FMLA from his termination.

**13.**

**14.**      The first and only indication of any sort of evidence they now want to present is what they call the " **declaration of Jennifer Colvin**" who is the Ogltree Attorney who by deception inserted the famous fabricated Department of Labor release letter amongst legitimate complaints filed by the plaintiff in order to obtain his signature hiding the content of the letter, then immediately snatching it away as if it was simply "**routine**"

     Jennifer Colvin now has been identified as the "attorney: who sent the fabricated release letter to the US Department of Labor on August 24, 2018 as recorded in this contact log from the US Department of Labor

**WHISARD Complaint Information Form**

*CP alleges that the requested time she put in with VTS is incorrect to the time she was off on FML.*
*CP alleges tht she did not ask for certain off and know HR is trying to covers it tytrack.*

*Chicago DO received a withdrawal letter from attorney citing a settlement between CP and her ER.*

Contact Log:

| | |
|---|---|
| *8/24/2018 1:43:46 PM* | *FILED-NO ACTION* |
| *7/19/2018 5:14:44 PM* | *INTAKE ONLY* |

Also where she included this letter that they claimed was an FMLA complaint by the plaintiff made on May 22, 2018 but in fact was a **thank-you letter to the agency** on providing direction based on his termination while on approved FMLA medical leave from Velocity.

It makes no logical sense that this "fabricated FMLA complaint where it is being alleged only by Velocity and Ogltree Deakins, that it Shows up 2 months after the false fabricated FMLA complaint was filed where normally in the real world the date of May 22, 2018 comes before July 19, 2019 and this false fabricated release letter and the fabricated FMLA complaint they claim was filed on May 22, 2018 show up on August 24, 2018 because and only shows up because it was attached to the same release letter and we are supposed to believe that they say it was an official FMLA

complaint with the US Department of Labor and that it is included in the illegal agreement that it is an official complaint/charge with the US department of Labor.

Makes no logical sense but shows how extensive the fraud and confusion they want this court to believe is part of legitimate, efforts and negotiations of settlement of a discrimination lawsuit settlement.

Now that the plaintiff was the one who diligently uncover the truth and criminal fraud committed upon this court where the defendants and Ogltree Deakins now are still not taking credit for the false fabricated FMLA complaint filed on July 19, 2018, they are now claiming that this discovery is covered under and now they are **considering it to be a known and unknown claims.**

This is what they are now trying to weasel out of putting it under what they think is a covered element of the illegal agreement.

Let's make it clear to the court.  This is again another attempt among a long list of criminal violations of the law that only implicates Velocity and Ogltree Deakins.

It is nothing more than proof that the defendants and Ogltree Deakins are still actively involved in the fraudulent concealment of claims and actions they intentionally committed intended to conceal, suppress

through fraudulent concealment, "the defendants conspired and employed "artifice, they also planned to prevent discovery inquiry or escape investigation, and mislead or hinder acquirement the knowledge of both the false fabricated FMLA complaints they filed and planted in the files of the US department of Labor along with other information disclosing a right of action, when they had the responsibility to disclose all of the information to the plaintiff.  Instead they remained silent and in the deception mode just as they had the duty and responsibility that from May 2018 until December 2018 had filed multiple false fabricated charges, allegations, claims and against the plaintiff with AZDES the Arizona court of Appeals prior to and after August 2018.

The defendants and their attorneys from Ogltree Deakins are still actively participating in the fraudulent concealment of the FMLA claim they listed in the illegal agreement as well as a assisting Velocity in the concealment of all the individuals within their organization  who were involved and participating in any and all of the concealment where Velocity and Ogltree Deakins would both  be held liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person ( the plaintiff)  entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim.

The defendants and their attorneys from Ogltree Deakins had one and one only intent and that was to fraudulent induce and fraudulent concealment of the claims in connection with FMLA, they had no intention or care whatsoever about any of the other discrimination claims in the prior litigation.  Their efforts and direction was concentrated on the FMLA termination of the plaintiff.

The plaintiff has already shown the  where the defendants knowingly with intent made  false statement of material facts and omissions as not to draw attention to the real reason for the illegal agreement they also knew what they were going was false and illegal, (2) known or believed to be false by the defendant; (3) intended to induce the plaintiff to act; (4) plaintiff acted in reliance on the truth of the representation; and (5) resulting damage but also they did multiple acts of deception to obtain his signature on the illegal fabricated release and release letter.

These are all of the undisputed elements of fraudulent concealment by the defendants.

At no time did the plaintiff file with a local, state, or federal jurisdiction an FMLA complaint to charge.

However, the defendants and their attorneys felt it was necessary to not create one but multiple FMLA complaints and fabricated release letters.

As previously mentioned a release in any form is void when it was the intent of the defendants to intentional conceal the claim of FMLA from the plaintiff by deception fraud and criminal violations against the federal government that was committed prior to the agreement.

There was no record of any FMLA complaint made by the plaintiff on May 22, 2018.

However, this contact was attached to the only FMLA complaint in the WHISRD system used by the US Department of Labor and that complaint was an FMLA complaint that the defendants have never mentioned or recognized that they planted in the files/records of the US Department of Labor, in preparation of the inducement into the illegal, unenforceable agreement that the defendants have been claiming exist and vindicate them from any liability.

The date of this false fabricated FMLA complaint was made on July 19, 2018 and the documents sent to the US Department of Labor by Ogltree Deakins attorney Jennifer Colvin on August 24, 2018 as attached and associated with this false fabricated complaint because, Velocity and Ogltree Deakins knew that the low level employees of the US Department of Labor would first look in the WHISARD system for an official complaint and they would attached these documents to the first open complaint they found and would do no investigation on none of the letters sent to them by Ogltree Deakins.

This false complaint id 3850645 **is still OPEN number in the files of the US Department of Labor.** It was never assigned to an investigator, it was never updated internally by a single employee at the US Department of labor.

**PRIOR BAD ACTS**

The defendants despite their efforts not to mention the existence of the false fabricated FMLA complaint under customer id 3850645 filed on July 19, 2018 there could be only two organizations who had a vested interest to file such a false fabricated FMLA complaint with the US department of Labor and that being Velocity and Ogltree Deakins.

Document 73

The plaintiff has already illustrated to the court that it was the defendants who drafted the illegal agreement and they also included a term that the illegal agreement was not admissible in any proceeding in addition that it is governed under the laws of Arizona. As such this court does not have any jurisdiction nor can it be used in any decision of this court.

## Conclusion

My conclusion is this it is extremely prejudicial for the plaintiff to continue to re-litigate issues and ruling, decisions, orders in this case and inn prior proceedings when all of these decisions and judgments are final just for the purpose of Ogltree changing the wording, throw in some irrelevant, immaterial precedents just for the purpose of billable hours and revenue. That is and has always been their intention. Then all they have submitted is a bunch of lies. The court can see, they have not mentioned or denied the fraudulent concealment and has never mentioned a denial as to being caught planting false fabricated evidence of an FMLA complaint in the files of the USDOL, because they can't. There are over 3 billion people in this planted and just so happens the FMLA complaint between the plaintiff and Velocity somehow shows up in the files of the USDOL claiming I was the submitting person when the phone number in the false complaint was disconnected over a month it was filed. To add, there exist a history of this same act of fraud in a different state and state agency of the exact same thing where my number is in a contact log claiming I called AZDES when I had no knowledge of it for over a year.

Am I missing something or does the court see a pattern?

- 30 -