Garrison Jones
Plaintiff (Pro Se)
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

**FILED**

OCT 27 2021



CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## U.S. DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**GARRISON JONES**

**Plaintiff,**

v.

**VELOCITY TECHNOLOGY SOLUTIONS LLC et al Defendants.**

Case No.: 2:19-cv-02374 KJM-EFB

Judge: The Honorable Judge Peterson

Date Action filed: Nov 25, 2019

Date set for trial: NONE

## PLAINTIFFS SECOUND AMENDED COMPLAINT FOR FMLA

## INTERFERENCE AND TERMINATION

## Introduction

Plaintiff first wants to remove all doubt that the plaintiff was not terminated by Velocity while on FMLA. After he was unlawfully terminated he obtained gainful employment with Prime Healthcare a healthcare organization with over 56 hospitals.

Velocity knew this and filed false charges against him in July 2018 claiming plaintiff was committing unemployment fraud, a felony in the state of Arizona.

The negative adjudication by Arizona Authorities state clearly they **"received"** information that plaintiff was committing unemployment fraud. **They received this information from Velocity after they were stalking the plaintiff while he was**

- 1 -

attempting to move forward after a near death experience and getting away as far as he could away from Velocity.  However, they came after him again after they lost appeal hearing on June 22, 2018 then falsely accusing him of a felony to stop and prevent them from paying a measly $240.00 per week in unemployment after they unlawfully terminated the plaintiff.  All they while they were claiming he was still employed at Velocity.

**Exhibit – F1 –** Fraud Determination AZDES based on Velocity contact.

I was working for a California      organization  where my work site location was in Indiana and no one except Velocity had a vested interest and contacts AZDES in Arizona to lie and claim I was committing unemployment fraud.  Who else could it have been?

Respectfully submits **exhibits Prime 1 thru 3**

1. **Prime Offer Letter dated  June 14, 2018**
   a. Plaintiff was a Prime Corporate employee  in Ontario California  working out of  their facility in Bloomington, Indiana as Prime knew he suffered a stroke and wanted him to cut down on travel distance and cover the east coast of the country

2. **Prime 2 –  Prime Healthcare** Smarthire notification completion of hire process **June 18, 2018**
3. **Prime 3 – First payroll Direct Deposit Prime Healthcare July 19, 2018**

Plaintiff claims and alleges that Velocity repeatedly committed multiple violations and interferences of his FMLA rights under FMLA while he was exercising his protected rights under FMLA medical leave including terminating the plaintiff while he was on approved leave under FMLA and violations of FMLA regulations and prohibited acts.

Under 29 U.S.C. § 2615(a)(1), which provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under FMLA.

In addition under provision, § 2615(a)(2), provides: "**It shall be unlawful for any employer to discharge** or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter/FMLA..

Plaintiff Garrison Jones was hired by Velocity on February 20, 2017 as a Lead Supply Chain Consultant. He was the only Lawson Supply Chain Consultant in the entire organization of over 500 employees and the only one in the entire Lawson Practice. He was considered in the to 10 percent of Lawson Supply Chain Consultants in the country and brought with him 27 years of experience where he had implemented and consultant Lawson Supply Chain software in over 300 hospitals throughout the Unites States, Canada, Australia and the United Kingdom.

1. At the time he was hired, there were no other consultants in the Lawson supply chain vertical that reported to him.

2. On November 17, 2017 he suffered a job related Hemorrhagic stroke.

3. Velocity was notified off this medical condition on November 18, 2018 and Shauna Coleman Velocity HR Director acknowledged it on Monday November 20, 2017

4. "To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which he was entitled under the FMLA.

5.

6. To state a prima facie claim for interference under the FMLA, a plaintiff must allege the following:

7. Plaintiff Garrison Jones alleges that he was an eligible employee under the FMLA, he was granted and approved for FMLA medical leave by Velocity on February 20, 2018 thru May 15, 2018 on his one year anniversary of employment.

8. Velocity after they had approved his FMLA medical leave terminated him on March 15, 2018 and intentionally violated provision, § 2615(a)(2), provides: where "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful under FMLA.

9. (2) that the defendant Velocity is an employer as defined by the FMLA; (3) the plaintiff was entitled to take leave under the FMLA; (4) he gave official notice on November 18, 2018.

10.     Velocity failed to properly administer FMLA so on documents they listed two separate dates but included the original notification date of November 18, 2017.

11.     Plaintiff made the proper notifications on two occasions gave notice to the defendant Velocity of his intention to take leave; and (5) he was denied the benefit to do so on multiple occasions the right to exercise his rights under FFMLA he was entitled under the FMLA on multiple occasions between February 20, 2018 and May 15, 2018.

12.     Velocity repeatedly committed multiple violations and interferences of his FMLA medical leave including terminating the plaintiff while he was on

approved leave under FMLA and violations of FMLA regulations and prohibited acts.

13.    This is what they want this court to believe and are going further and further into the abyss with each step.

14.    At all times they thought they had pull off their most genius mouse trap however, the only mouse or rat they appears to have captured is themselves and failed intentionally in violations of FMLA and interference on a weekly basis.

15.    Velocity agreed to extend the plaintiffs FMLA leave on May 9, 2018 but still continued to commit multiple interferences against the plaintiff.

## COUNT ONE

16.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

17.     The plaintiff suffered a serious major health medical condition a Hemorrhagic stroke an on November 17, 2017.

FMLA Interference occurred when Velocity failed to notify plaintiff of FMLA eligibility within 5 business days of when employer obtained knowledge of serious medical condition on November 18, 2017.

1. Per FMLA **Eligibility and Rights and Responsibilities Notice Requirements** Velocity (the employer) was required and must notify the employee (the plaintiff) of his rights and eligibility under FMLA of eligibility notice may be either oral or in writing and must:

2. **Be provided within five business days of the**  when the employer acquires knowledge that an employee leave may be for an FMLA-qualifying reason; Inform the employee of his or her eligibility status; and If the employee is determined to be not eligible for FMLA leave, state at least one reason why.

3. Shauna Coleman confirms in **exhibit 2** on where she list 3 separate dates off notification February 8, 2018, 2/20/2018 and the original date of 11/18/2017.

4. The actual date of notification was 11/18/2017 and Velocity at that time should have in 5 business days notified and communicated the FMLA eligibility of the plaintiff and gain failed to do so in violation and interference of his FMLA rights.

- 6 -

5. Velocity failed to notify the plaintiff of any of his rights under FMLA and as by virtue of their failure to notify him in 5 business days violated his rights under FMLA and was the first occurrence of FMLA interference.

6. Velocity did not notify him of any FMLA rights or eligibility until January 23, 2018 more than 67 days later.

**DESIGNATION NOTICE REQUIREMENTS**

7. The employer is responsible in all circumstances for designating leave as FMLA-qualifying and giving notice of the designation to the employee.

8. Failure to follow the notice requirements constitute **an interference with, restraint, or denial of the exercise of an employee's FMLA rights.**

9. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement promotion, or any other relief tailored to the harm suffered.

10.      Velocity intentionally failed to notify plaintiff of his rights under FMLA whether he was eligible or not.

## COUNT TWO

11.      Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein

**12.** Velocity first notified the plaintiff of FMLA on January 23, 2018 more than 67 days after plaintiff notified them of his serious medical condition. As such Velocity committed Interference o his FFMLA rights.

**13.** In addition Velocity committed a third occurrence of FMLA interference where on January 23, 2018  Velocity HR Director Shauna Coleman provided **inaccurate information as to the plaintiff eligibility and the FMLA work site**   50 employees within 75 miles" eligibility criterion**,** where she falsely claimed he did not report to a worksite where 50 or more employees reported to.

14. The plaintiff just like many other consultants was a remote employee assigned to the Minneapolis, Minnesota work site where he reported to and where his assignments were issued.

15. His business card reflects his position of Senior Lawson/Infor Supply Chain Consultant and his work site of Minneapolis, Minnesota

**GARRISON JONES**
Senior Lawson/Infor Supply Chain Consultant
garrison.jones@VelocityCloud.com

Velocity Technology Solutions, Inc.
1200 Washington Avenue South, Suite 200
Minneapolis, MN 55415

w 916.870.4960
fx 916.870.4960

16.

**17.    Exhibit 2-1  Email Shauna coleman 1 23, 2018**

**18.**    Per FMLA regulations related to remote employees the plaintiff met this **eligibility criteria.**

19.    Therefore, the plaintiff just like many other consultants and employees was receiving his assignments from the worksite to which he used to report, that worksite would be considered her worksite. If at least 50 company employees within 75 miles work at that site, the plaintiff would meet the "50 employees within 75 miles" eligibility criterion.

- 9 -

20.     This would be true even if his residence was 200 or 300 miles away from the office where his assignments originated and were given.

21.     Shauna **Coleman intentionally gave plaintiff inaccurate FMLA eligibility** information.

**GARRISON JONES**
Senior Lawson/Infor Supply Chain Consultant
garrison.jones@VelocityCloud.com

**Velocity Technology Solutions, Inc.**
1200 Washington Avenue South, Suite 200
Minneapolis, MN 55415

w 916.870.4960
m 916.870.4960

# COUNT THREE

18.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

19.     Velocity communicated to the plaintiff on February 14, 2018 that his approved FMLA medical leave would begin on February 20, 2018 until May 15,

Subject: Re: FMLA - Garrison Jones

Hello Garrison,

As you know, you have been on a medical leave of absence since November 18, 2017. During this time, you have applied for and received short term disability benefits. Your current medical leave of absence expired with the ending of your short term disability benefits on January 27, 2018, which is why we sent you the FMLA paperwork on January 23, 2018. You returned that paperwork to us on February 8, 2018.

Thank you for submitting the FMLA paperwork (certification form). We have evaluated your certification form and determined that you do not currently meet the eligibility requirements for FMLA, which require that you have been employed for 12 months.

That said, since your short-term disability and medical leave of absence ended on January 27, 2018 and in close proximity to your one year employment anniversary, Velocity, although it is not required to do so, will extend your unpaid medical leave to your one-year anniversary, February 20, 2018. On that day, you become eligible for FMLA leave and Velocity will start you on FMLA leave for 12 weeks.

Your FMLA leave will run from February 20, 2018 to May 15, 2018. You will be required to provide a re-certification of your medical status from your healthcare provider prior to May 15, 2018 so that we can evaluate continued eligibility and potential return to work. Attached are the "Notice of Eligibility and Rights & Responsibilities" document.

Best,

Shauna Coleman

**Shauna Coleman** I Director, Human Resources I **Velocity** Technology Solutions, Inc.

20.    ...le him with ... 1.    ...oyee's rights ...ce and as ...locity.

21.    ...cuments.

22.    ...cuments.

23.

24.    ...achment

## COUNT FOUR

25.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Where plaintiff claims and alleges Velocity committed FMLA Interference and retaliation.

26.    Prior to FMLA medical leave was approved by Velocity , in retaliation of the plaintiff submitting a complaint to HR on January 16, 2018 Velocity

27.    **Exhibit 4**

28.    **4-1** Velocity claiming collection of premiums when return to work – **12 22, 2017**

29.    **4-2** Velocity revoked email access- **1 17, 2018**

30.    **4-3** Velocity cancelling heath premiums – **1,17,2018**

**31.**     **4-4** Velocity Vison plan terminated – **2 21, 2018**

**32.**     **4-5** Velocity demanding recoup of premiums 2nd time - **2 24,**
**2018(Statement "Velocity not responsible for health premiums)**

**33.     4-6 Plaintiff Arizona Medic aid card**

**34.     4-7 Plaintiff Access removal all Velocity systems – 1 29, 2018**

**35.     As of January 30, 2018 plaintiff had not access to none of Velocity**
**systems, email and had no health care coverage.**

## COUNT FIVE

36.     Plaintiff re-alleges and incorporates by reference each and every allegation
contained in the previous paragraphs of this Complaint as though fully set forth
herein.

37.      Velocity violated and interfered in plaintiff FMLA rights by forcing him to
work, participate in an investigation and provide them with documents and
information on as many as 9 occasions from February 20, 2018 (the beginning of
FMLA until May 2018 where they demanded information from the plaintiff even
though he had no access to any Velocity systems, email or any of the items and
documents after they revoked all his access.

38.     USDOL FMLA rules and regulations state
In some instances, an employer may need to contact or interview an employee on
FMLA leave concerning a workplace investigation or where the employee is
needed to serve as a witness.

39.    In such cases, courts have generally found that employers may contact employees for the limited purpose of fulfilling their investigatory obligations, but they cannot coerce or require employees to work and participate.

40.    Plaintiff was never contacted during the entire FMLA period for anything connected to or associated with his health, return to work or FMLA reasons.

41.    However, plaintiff already provided Velocity with a 15 page complaint for investigation on January 16, 2018.  The complaint/investigation was not for any misconduct by the plaintiff and information provided was more than enough for Velocity to investigate.

42.    **Per FMLA if an employer was conducting any investigation, they should wait until the employee on FMLA returns to work and not require or demand his participation while on FMLA.**

43.    Even Prior to his FMLA leave he warned Velocity and they ignored his demand not to abuse his personal email account after they revoked his access to Velocity corporate email.  Again, they ignored this and continued to contact him relentlessly at all times of the day and night.

44. From: Garrison Jones [mailto:garrison.jones@outlook.com]

45. Sent: Wednesday, January 24, 2018 2:56 PM

46. To: Shauna Coleman <shauna.coleman@velocitycloud.com>; Wendy Cauthen <wendy.cauthen@velocitycloud.com>; chris.heller@velocitycloud.com

47. Subject: Email rejection

48. Not sure who sent the message however today I noticed that there were two email rejection messages sent to someone From blasted it as a rule I have turned on the do not disturb feature.   It automatically puts that email address on the blacklist to prevent that individual from communicating with me. I will not change it is very unprofessional and unethical to be sending emails at 9:30 PM Arizona time which means That it is at least 11:30 PM Eastern time. There is no reason why anybody from Velocity should be emailing me at that

time of night unless you are emailing to Informed me that one of my children have died in that case you should pick up the phone and call. When Velocity cut my email access, it does not give anyone privileges or the green light to abuse my personal email any time you want.

As you folks have eloquently put I am on medical leave recovering from a major stroke. It had to be someone from Velocity as all I see is the domain name that was rejected. I consider this continued harassment and another act of retaliation. It's whatever communication that is that urgent you should put it in a letter form and send it overnight don't ever email me again after normal business hours who's ever email address it was associated with that message is permanently on the block list in my email thank you

49.

50.      **Velocity's repeated contact with the plaintiff via his personal email account constituted interference in his right to exercise his rights under FMLA.**

*51.*      **The contact by Velocity was not for a limited purpose based on the multiple contacts and the information they were demanding the plaintiff work, produce and forward to them documents. Velocity contacted him multiple times in the next 3 months**

52.      On **February 21, 2018** Velocity General Counsel Chris Heller interfered twice on February 21, 2018 , first claiming Velocity was conducting an investigation but was actually attempting to coerce the plaintiff into providing information in regards to stolen intellectual property in addition to evidence where Velocity employees had what they claim was a team dinner at a gay club while at a customer site where they were drinking, drunk as well as the fact they billed all of these expenses to the customer and finally where the plaintiff was sexually assaulted by a gay drunk Velocity employee.

53.      He (Chris Heller then contacted plaintiff for a second later the same day asking him to work and find additional documents and forward them to Velocity address with the FMLA medical leave of the plaintiff when contacted the

- 14 -

plaintiff for a se, again because he had no access to Velocity email and his account access was revoked, he wanted them to be mailed.

**54.**   **This investigation had nothing to do with the conduct of the plaintiff but the unethical, illegal and criminal acts of Velocity executives and employees they were aiding and abetting.**

55.   The court needs to be reminded all communication since January 17, 2018 was occurring on the plaintiff personal email account as Velocity had revoked his access to Velocity corporate email in January claiming he was conducting an investigation related to an HR complaint filed by the plaintiff in January.

56.   This for an employee they claim is still employed but regulated to use his personal email account to communicate with Velocity.

**57.**   However, **Velocity did not and never conducted an investigation.  All of the contact from Velocity was for an alternate purpose and was not FMLA related.**

58.   Velocity was attempting to gain access to all the evidence the plaintiff had in his possession that was **damaging to Velocity so that they can prepare a defense, cover their tracks and get rid of the evidence and any trace of the evidence** the  same way they did in January of 2018 where they deleted all the data files related to the theft of Intellectual Property stolen from Infor from June 2017 thru August 2017 where Velocity executives aided and abetted employees Chad Carlson and Eric Libinsky to illegally record the entire 6 weeks of Infor Certification classes without the knowledge and consent of Infor.

59.     All this was reported to HR in a 15 page complaint to HR Director, Shauna Coleman.

60.     She claimed that she was "looking forward to receiving the supporting documents so HR could investigate these allegations on January 15, 2018.

61.     However, after receiving this incriminating documents on January 16, 2018 and seeing how damaging it was to Velocity, instead on January 17, 2018 they revoked his access to Velocity Corporate email in retaliation as they saw the source for these documents was his corporate email account.

62.     They claimed they were revoking his access as he should be concentrating on his heath.

63.     However, in the next 5 days, they cancelled his healthcare benefits after less than a month prior (December 2017) they claimed they would collect these same premiums after he returned to work, not knowing when that date was.

64.     There was never an investigation.  None of the Velocity employees ever received a verbal, written reprimand. Chris Heller was trying to use the plaintiff to obtain all the documents and evidence from the plaintiff he had in his possession.

**65.     Exhibit 5**

**66.     4-1** Velocity claiming collection of premiums when return to work **– 12 22, 2017**

67.     There was no reason to contact plaintiff as many times as Velocity did except they wanted to know what evidence he had against them so they could get rid of it.

68.     **Document 11 a CD that contains 12 hours/ 320 Meg of 16 gigabytes of** stolen intellectual property is just a sample of what they were looking for.

69.     After plaintiff blew the whistle on this illegal criminal acts by Velocity, they deleted it from their network.

# COUNT SIX

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Where plaintiff claims and alleges Velocity committed FMLA Interference. In addition under provision, § 2615(a) (2), provides:
**"It shall be unlawful for any employer to discharge** or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter/FMLA.

70.     Velocity unlawfully terminated plaintiff while on approved FMLA medical leave.

On March 15, 2018 plaintiff in his personal email account received and email from Susan Holtapp to her Senior Vice President, Chance Veasey stating and confirming from a previous conversation the plaintiff was no longer an employee of Velocity.
There is no ambiguous interpretation of this email.  It is looking for direction in removing plaintiff from the ADP report management module.

**71.     Exhibit 6**
**6-1 Email Susan Holtapp March 15, 2018 – termination of plaintiff.**

Plaintiff contacted Velocity on multiple occasions and never received a response.

- 17 -

**6-2 March 24, 2018** Plaintiff thru other associates learned his position was posted on **Indeed.com** and on Velocity internal website as an open position.
**6-3** Plaintiff position posted on **Velocity internal website as open position**

In addition, plaintiff was contacted by a recruiter who was looking to fill a Lawson Supply Chain position only to find out her the position she was recruiting for was his at Velocity.

After email sent to Velocity asking why his position was posted, the Indeed.com recruitment ad was deleted by Velocity.

## COUNT SEVEN

72.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Where plaintiff claims and alleges Velocity committed FMLA Interference in violation of FMLA regulations 2615.

**73.**     Plaintiff reached out to Velocity several times **with no response** so he **applied for unemployment on April 8, 2018 based on his termination.**

**74.**     **Velocity filed an employer protest forcing him to appeal this negative adjudication.  Appeal hearing was set for June 22, 2018.**

## COUNT EIGHT

Violation of FMLA regulation Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit employer acts.

- 18 -

It was Velocity who contacted AZDES and made false claim plaintiff was physically unable to work because he was on approved FMLA.

As such, Velocity turned this proceeding into a FMLA proceeding and as such it is also an interference hearing where Velocity intentionally interfered with the FMLA rights of the plaintiff and disclosed his confidential FMLA document to this agency.

    a. An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.

    b. An employer is prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.

    c. An employer is prohibited from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA.

    d. An employee has — Filed any charge, has instituted, or caused to be instituted, any proceeding under or related to the FMLA; Given, or is about to give, any information in connection with an inquiry or proceeding relating to any right under the FMLA; or Testified, or is about to testify, in any inquiry or proceeding relating to a right under the FMLA.

In regards to disclosure of confidential FMLA medical documents.  Under the FMLA, **an employer may not reveal confidential medical information about the employee taking the leave**.

Velocity HR Director, Shauna Coleman intentionally with reckless disregard of her actions and the consequences, released and sent these confidential documents to AZDES and its disclosure is a clear interference violations of the FMLA rights of the plaintiff, Garrison Jones.

Disclosure of medical confidential information can result in a Family and Medical Leave Act (FMLA) interference claim, even when the employer does not actually

interfere with the employee's right to take FMLA leave. *Holtrey v. Collier County Board of Commissioners.*

FMLA regulations state FMLA documents must be maintained as confidential medical records separate from personnel files.  While there is an exception for informing supervisors and managers about necessary restrictions or accommodations, that exception is limited.

AZDES never made a formal request for these documents and had no right to receive these personal confidential records from Velocity
The plaintiff had under FMLA a right of privacy invoked by his approval for FMLA and this act by Velocity constituted a serious claim for FMLA interference because "confidentiality of medical information is a right provided and protected under FMLA. Velocity the court can see will use anything at their disposal or available to them to hurt the plaintiff in any way they can, including violation of FMLA regulations.  The plaintiff as such suffered sever damages because of the release of his confidential medical and FMLA records by Velocity and as such can recover damages for this heinous act.

**Exhibit 8**

**8 - AZDES – contact log May 4**

**8-1 FMLA** documents sent to AZDES by Shauna Coleman on May 4, 2018 and on October 23, 2019 before appeal hearing 1 year later.  Identified as **employer exhibit # 05**

**8-2** Doctors Certification December **28, 2017 plaintiff** date to return to work date with limitations identified
Indicates March 22, 2018 as return date (**Velocity received this document on January 5, 2018**) and had it in their possession at the time they contacted AZFDES on May, 4, 2018.

Velocity sent this document to plaintiff requesting his physician complete the form and it was **returned to Lincoln Financial on December 28, 2017 per their instructions.**

**8-3 Email May 21, 2018** Ogltree Deakins attorney Christopher Meister sent same document to plaintiff from 8-2 he received from Velocity proving they were lying about not having it in their possession and they knew he was approved to return to

### General Adjudication

**UB-098**      Claimant SSN:  361 56 1008 0

PER T/C ON 5-4-18 AT 11:59AM PHN: 704-357-7721, LEFT MESSAGE ON SHAUNA COLMAN (HEAD OF HR) ANSWERING MACHINE, TO RESPOND BY 5-8-18 BY 12:00PM AND ADVISED OF CONSEQUENCES.

SHAUNA RETURNED CALL ON 5-4-18 AT 1:35PM AND LEFT MESSAGE STATING:

CLAIMANT IS ON FMLA FOR MEDICAL REASONS. CLAIMANT IS DUE TO RETURN TO WORK ON 5-15-18 ER STATES CLMT IS STILL CURRENTLY EMPLOYED WITH THEIR COMPANY AND IS EXPECTED TO RETURN TO WORK AS SCHEDULED ON 5-15-18.

DEPUTY NOTE: DUE TO THE INFORMATION PRESENTED BY BOTH ER AND CLMT AND NOT BEING ABLE TO REBUTTLE WITH ER DUE TO CLMT REQ IT SEEMS CLMT STILL HAS A JOB TO RETURN TO ON 5/15/18 AND CLMT IS REFUSING TO DUE SO BECAUSE HE FEELS HE HAS BEEN DISCHARGED AS OF 3/15/18. WILL USE START DATE AS 3/15/18 SICE THAT IS THE ASSUMED SEPERATION DATE

IF APPLICABLE SEE SECOND UB-098 FOR ADDITIONAL INFORMATION FROM ER AND OR CLMT.

76.      She did this despite the fact that the plaintiff was cleared to return to work on March 22, 2018 and that he per the request from Velocity had his physician complete and return a document stating this along with his limitations of performing required job assignments in January 2018.

77.      In addition, Shauna Coleman without being requested to do so, she sent confidential FMLA documents from the confidential medical file of the plaintiff in violation of FMLA confidentiality regulations to AZDES in support of her false claims to AZDES.

78.      These documents were identified as employer exhibit # 5 in the files of the Arizona Court of Appeals and the records of AZDES filed on May 4, 2018.

79.     It's important to add that the plaintiff was unaware off this act of interference until over a year later, in July 2019 when he appealed this false allegation and the negative adverse decision was overturned.

80.     The plaintiff produced the same document in possession of Velocity showing he had been approved to return to work on March 22, 2018 after Velocity had unlawfully terminated him.

81.

## **COUNT NINE**

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

82.     The FMLA''s "prohibition against „interference" prohibits an employer and their attorneys from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c). 78.

83.     Employers cannot use the taking of FMLA leave as a negative factor in employment actions as done by the defendants, such as hiring, promotions, or disciplinary actions." The defendants Velocity used FMLA as a negative employment action by falsely claiming plaintiff was physically unable to work and on the same day claiming to **reach out a branch of resolution** as a tactic to distract the plaintiff to prevent him from the real reason their attorney reached out to him on the same day.

84.     It is a petty scheme premeditated by both Velocity and Ogltree Deakins.

85.     79. Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

86.     Plaintiff claims the fifth occurrence / violation of FMLA interference based contact from Ogltree Deakins attorney Christopher Meister on May 1, 2018. Now Velocity attorneys are contacting plaintiff while on approved FMLA medical leave on behalf of Velocity claiming he wanted to begin settlement discussions interfering with his ability to exercise his rights under FMLA.

**87.**     Plaintiff was contacted again on his personal email account that was given to Ogltree Deakins attorney Christopher Meister **without his knowledge and consent while on FMLA.**

88.     This was a coordinated attack of interference by Velocity and Ogltree Deakins where together they interfered in the plaintiffs' ability to exercise his rights under r FMLA.

**89.     Plaintiff agreed to speak with him on May 4, 2018**

**90.**     However, this was on the same day of Shauna Coleman was contacting AZDES and filing a false complaint against the plaintiff. This was a coordinated distraction where Ogltree attorneys was tasked with distracting plaintiff while Shauna Coleman was making the false complaint behind his back.

91.     He claims he wants to begin discussions on a settlement on behalf of Velocity even before plaintiff filed any litigation or complaint. The **conversation last 3 minutes**. Plaintiff only listened.

92. Meister, began to state plaintiff had no case and that the entire issue would be settled for less than $1,000.00 dollars in Small claims Court.

93. At that point plaintiff hung up, blocked his number from calling him again.

94. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

95. 82. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

96. The FMLA''s "prohibition against „interference'' prohibits an employer and their attorneys from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights

97. **Exhibit 9**
garrison.jones@outlook.com

| From: | Meister, Christopher J. <Christopher.Meister@ogletree.com> |
|---|---|
| Sent: | Friday, May 4, 2018 8:28 AM |
| To: | Garrison Jones |
| Subject: | RE: |

Mr. Jones, I am writing to follow-up on our conversation on Wednesday. It is unfortunate that you again lost your temper and hung-up because I was only trying to clarify for you what the confidential settlement negotiation process entails. Despite your recent behavior, my client is willing to try one more time to reach an amicable resolution. My client would prefer to resolve this matter in this way as opposed to taking the various legal avenues available.

If you are interested in doing so, you must understand that we will need to first agree on both monetary and non-monetary settlement terms and then reduce those terms to writing. You will then be provided the opportunity to review the settlement agreement and will need to sign it if it is agreeable to you. You will then be paid after you have signed the agreement and the period of time the law requires us to give you has expired. If you understand this process and are willing to engage in good faith settlement negotiations, please let me know.

Please understand that my client's willingness to have any further confidential settlement discussions is contingent upon you not engaging in any further misconduct. Please also understand that by engaging in further settlement discussions my client is not waiving its rights to take action against you for prior misconduct. Thank you for your time and responsible attention to this vitally important matter.

**Christopher J. Meister | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax: 602-778-3750
christopher.meister@ogletree.com | www.ogletree.com | Bio

On May 8, 2018 tired of the tactics by both Velocity and their attorneys from Ogltree Deakins, plaintiff filed a **discrimination complaint** in the US District court of Northern California as it is clear Velocity had no intention to take responsibility for their actions.

## COUNT TEN
Violation of USDOL Regulations in regards to delaying and extending FMLA medical leave

98.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Plaintiff alleges and claims that Velocity violated terms of FMLA intentionally when they informed the plaintiff that his FMLA medical Leave was being extended after the 12 week maximum period was exhausted.

# Employers Cannot Delay or Extend FMLA Leave

99.    Per the Department of Labor (DOL) clarified how leave under the Family and Medical Leave Act (FMLA) should be administered by employers. Importantly, the DOL **determined that employers are prohibited from delaying** or extending the designation of FMLA-qualifying leave, even where doing so would benefit the employee.

100.    **Exhibit 10** Velocity extending FMLA for fabricated doctor appointment on May 20 plaintiff never heard from Velocity HR again, ever.

101.    **They did noting after May 15, 2018**

- 25 -

102.     The FMLA allows eligible employees to take 12 weeks of unpaid, job-
protected leave for specified reasons.
Generally speaking, employers may require employees, or employees may elect, to
use available paid leave to cover part of the unpaid FMLA leave period.  To increase
the amount of leave available, however, certain employers permit employees to delay
the start of their FMLA leave until after the employees have exhausted their
available paid vacation or sick time.  In such cases, for example, if an FMLA-eligible
employee needed time off for an FMLA-qualifying medical condition and had a
week of vacation available, the employer would allow the employee to take the week
of vacation first and not designate the time off as FMLA leave (and, thus not start or
extend the 12-week "clock") after leave has been exhausted.

103. According to the DOL, this practice is not permitted under the FMLA.  The
Opinion Letter states that, once an eligible employee communicates a need to take
leave for an FMLA-qualifying reason, the employer must "start and end the clock"
on the 12 weeks.  If an employee uses paid leave to cover unpaid FMLA time, the
paid leave must count toward the FMLA entitlement and cannot be used to expand
that entitlement.

104. Plaintiff had did not request nor did he have any vacation or PTO time available
to him.
This "extension" by Velocity was interference in his rights under FMLA and was
done specifically against him as Velocity had no intention to allow him to return to
work under any circumstances and "invented" their own excuse to prevent his return.

105. They knew he had been terminated in March.  The entire organization knew he
had been terminated.
Their interference consisted of false claims of a doctor appointment on May 20, 2018
that was never communicated to them by plaintiff.

106. When plaintiff responded to this false claim Velocity Human Resource
Director, Shauna Coleman refused to speak to plaintiff requesting he put his

questions via email that was never responded to and plaintiff never spoke or heard from Velocity HR ever again to this day.

Velocity did not have a non-discriminatory work policy where all employees returning from FMLA automatically were given FMLA extension before they were allowed to return to work.

This was directed to and specifically for the plaintiff and is a **gross act of blatant interference against him and confirms his termination**.

107. Plaintiff has suffered damages as a result of Defendant's unlawful actions. The FMLA"s "prohibition against „interference" prohibits an employer and their attorneys from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.

There was no dr appoint on May 20, 2018. **Plaintiff had not seen his physician** since the end of February.

| MAY 2018 | | | | | | |
|---|---|---|---|---|---|---|
| SUN | MON | TUE | WED | THU | FRI | SAT |
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

**May 20, 2018 was a Sunday**

Plaintiff was refused the opportunity to return to work in violation and interference of his rights under FMLA.

108. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA as after they extended his FMLA leave he never heard from Velocity HR again after May 15, 2018.

109. However, Velocity on May 22, 2018 manufactured and created a false fabricated FMLA complaint letter using personal identifying information from his employee file and public records from the US District Court of Northern

- 28 -

Illinois to continue the cover up and began to implicate plaintiff as the person creating and filing a complaint with the USDOL in violation and interference in his **"extended FMLA leave"** they just extended in violation of his rights under FMLA. The FMLA''s  where an employer is "prohibited against „interference" prohibits an employer from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights

110. However, Velocity even on his extended Medical leave continued to violate FMLA regulations and proceeded to file multiple false complaints, allegations and claims against plaintiff was they knew they had unlawfully terminated him back in March 2018.

111. As far as Velocity was concerned **he was on extended FMLA medical leave** despite the USDOL does not allow such extensions.  Plaintiff knew he had been terminated and began to look for gainful employment.

112. Equally per their attorney decristoforo, none of this happened and plaintiff received every benefit of his approved FMLA leave.

113. In addition, he also claimed that his employment ended on August 16, 2018 and not March of 2018.  DKT 35 at 26.

---

[1] Plaintiff's employment with Velocity actually ended August 16, 2018, not in March of 2018, but Velocity recognizes that at this stage of the case, the Court must presume all well-pleaded allegations in the Complaint are true. The actual date Plaintiff's employment ended is not relevant to Velocity's objections to the Order & FAR.

[2] Velocity's error should play no role in the ultimate resolution of this dispute because as a matter of law, Plaintiff was

114. To add, the courts assumption in DKT 98 also has failed to recognize or accept the fact plaintiff was actually terminated and as such the court must allow plaintiff to extend his violations and interface claims against velocity and Ogltree to the end of his employment per all of these false assumptions. **They are not accurate documented historical events.**

115. The date of his employment is relevant in the entire time period of interference and employment.

116. The truth of the matter is plaintiff was terminated on March 15, 2018.

He was not receiving any health coverage from Velocity since January 2018.

The only coverage he had from January thru June 2018 came from the state of Arizona Medicaid.

## COUNT ELEVEEN

116. The FMLA"s "prohibition against „interference" prohibits an employer and their attorneys from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. Velocity continued to interfere in FMLA rights of the plaintiff.

117. They were the ones responsible for the appeal hearing via their "employer protest in April 2018 yet they and their counsel intentionally failed to appear for the appeal hearing.

118. However, there is a documented effort by both Ogltree Deakins attorneys and velocity where on June 21, 2018 they had ex-parte communication with the

Arizona court of Appeals and presented ex parte evidence to the court but both had no intention of appearing at the hearing the next day.

119. There was a conference call between the court, Velocity HR Director, Shauna Coleman and Ogltree Deakins attorney Christopher Meister where they were attempting to "hijack" the hearing and obtain a ruling in their favor without attending on the record to testify at the hearing.

120. Shauna Coleman even after being on the conference all contacted the court and stated **she "chose not to attend the hearing"**

| | | |
|---|---|---|
| 06/22/2018 11:18:21 AM | T/C FRM THE CLT WANTING TO KNW WHAT WAS GOING ON W/ THE HRG, CHECKED C2T THE HRG WAS IN PROGRESS. | IA |
| 06/22/2018 9:26:07 AM | T/C FRM THE CLT RE; THE REG IN C2T. PROVIDED TO THE CLT THE REG WAS ENTERED CORRECTLY. THE ALJ WILL BE PLACING THE CALL TO HIM. | IA |
| 06/21/2018 1:29:26 PM | 6/21 RECVD CALL FROM ER WHO CHOOSES NOT BE ATTENDING HEARING, SHAWNA COLEMAN 704-357-7721 | JC |
| | U-1595392-001-OA | |

121. An appeal hearing was conducted on June 22, 2018 and the court knows the court ruled in favor of the plaintiff and determined plaintiff was **unlawfully terminated and not for any misconduct.**

122. Just like in criminal court **a defendant that fails to show can have a judgment made against them when they had full knowledge and notice of the hearing.**

- 31 -

Its clear Velocity on June 7, 2018 just like the plaintiff received notice of the date/time of the appeal hearing.

123. They both made a conscious decision not to appear.

The court made that decision because Velocity failed to attend and presented no evidence to counter or prove that he was not terminated.

Absent of any evidence by the defendant the court must make its ruling on the evidence at hand and properly admitted.

## COUNT TWELVE

124. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA on July 23, 2018 when after Velocity FMLA leave and filed an appeal of the courts decision of June 22, 2018 on July 23, 2018 making false claims that plaintiff was still employed receiving wages and health benefits from Velocity and **never offered any evidence or exhibits of proof of paying premiums. It was a tactic to deceive the court. Whatever it took for them to lie and cast doubt or confusion, they will do it and it will take months to get to the truth. Nothing more than a dilatory tactic.**

The Court Denied and dismissed the appeal.

**Exhibit 13-1 – July 23, 2018 Ogltree Deakins appeal**

125. The court even made a statement in the denial and dismissal of this appeal that what Velocity and Ogltree Deakins was attempting was an **"unsuccessful tactic' that failed.**

> A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.
>
> The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

126. Ogltree attorney Christopher Meister goes on and states he was on FMLA and then claims the court's decision **would interrupt "the negotiations" of** separation of employment being negotiated**.**

This expanding and exaggerating the 3 minute call when he was hung up on**.**

127. What Ogltree is not revealing to this court is that there were actually 3 separate ruling on the termination of the plaintiff.
**June 22, 2018 Arizona Appeal U-1595392-001** where ruling made confirmed the unlawful termination
**July 23, 2018  Arizona Appeal U-1600605-001** where  ruling of June 22, 2018 was affirmed  where Velocity /Ogltree appeal was denied and dismissed with special notation **they had no right to appeal the 2nd decision**.
**August 20, 2018, 2018 Arizona Appeal U-16000 600-001** where the court for the 3rd time denied the request to Reopen the hearing and affirmed the prior two ruling of plaintiffs termination.

- 33 -

128. Defendants had the opt **U-1600600-001** istrative decision to the Arizona Superior but failed to do so.

## COUNT THIRTEEN

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA where on July 19, 2018 Velocity HR Director, Shauna Coleman contacted the USDOL and provided them with personal identifying information from the employee file of the plaintiff and **filed an official false fabricated FMLA complaint** with this agency. One of the most serious federal criminal violations of FMLA and FMLA interference where Velocity impersonated the plaintiff, left his cell number like they had done before on May 7, 2018 to make it appear he was the person making the complaint.

129. USDOL Complaint number *3850645* was discovered by the plaintiff on September 30, 2020 via a FOIA request to the USDOL.

Exhibit 13

**14-1** USDOL Complaint number *3850645*   filed on July 19, 2018

**14-2 May 7, 2018 AZDES** where Velocity impersonated the plaintiff in a return call confirming everything said by Shauna Coleman on May 4, 2018.

130. The fact is, plaintiff did not know of this false complaint by Velocity until over a year later, July 2019 and he immediately appealed this negative adjudication.

131. Velocity thought that send they had successfully gotten away with it once, they would escalate the same this time on a federal level with the USDOL and impersonate him once again.

132. Each time they impersonated the plaintiff they intentionally left his cell number from the employee file at Velocity to make it appear authentic and implicate him as the person making the complaint.

133. Per FMLA regulations **an employer is prohibited from using FMLA in a discriminatory manner and cannot use it as a means of disciplinary or for adverse employment actions against the plaintiff.**

Velocity violated this on the most serious level as they used FMLA as a tool of criminal fraud against a United States government federal agency, the USDOL.

## COUNT FOURTEEN

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA where on August 20, 2018 Ogltree Deakins filed a third attempt to reopen the hearing on June 22, 2018 where it was ruled that Velocity unlawfully terminated the plaintiff while on FMLA.

The court affirmed for the second time that he was terminated and was done not for misconduct and while on approved FMLA Medical leave by Velocity.

- 35 -

## COUNT FIFTEEN

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.
Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA where on September 9, 2021 Ogltree Deakins attorney Anthony Decristoforo in retroactive attempt interfered with the FMLA rights of the plaintiff Garrison Jones as he submitted a forgery of an FMLA complaint and attempted to retrofit it back to May 22, 2018 claiming the plaintiff filed and FMLA complaint with the USDOL on May 22, 2018 in retro violation of the plaintiffs rights under FMLA.

The USDOL on 3 separate occasions conducted investigations and did not find a single FMLA complaint made under the name of Garrison Jones against Velocity technology Solutions.  As late as October 18, 2021 the USDOL after plaintiff sent copies of the attached Exhibit A from Document 94 stating that this document was a forgery.

USDOL in their response on October 18, 2021 stated they had no record of the document sent to the court by Ogltree Deakins attorney Anthony Decristoforo and it did not come from their agency.
It is a complete manufactured forgery by Ogltree Deakins attorney Anthony.

However, in a retroactive manner the court must also include this as FMLA interference as he did this in his representation of Velocity as such Velocity is charged with FMLA interference in violation of the FMLA rights of the plaintiff Garrison Jones.

Both Velocity and Ogltree Deakins have both failed to recognize the truth and documented events. That occurred from February 20, 2018 thru the current date and the intentional criminal violations of Federal law and the termination of the plaintiff while on approved FMLA medical leave.

It is now 4 years and they continue this conduct. They have stooped to the level where they made the USDOL a depository of fraud of their criminal acts and a depository of false fabricated forged documents and complaints planted in the files of the USDOL.

The USDOL on the other hand have on seven different occasions have determined that none of the documents they claim to be in their files /records simply do not exist. Knowing that they have been uncovered Ogltree on behalf of velocity manufactured their own and via fraud upon the court have submitted them in their effort of allowing velocity to escape the severed monetary financial damages the justly deserve to be levied against them.

WHEREFORE, plaintiff demands the following relief: (a) Damages under 29 U.S.C. § 2617(a)(1)(A) (i)(I) for any wages, salary, employment benefits, or other compensation denied or lost because of defendant's wrongful conduct; (b) Although no wages, salary, or benefits were lost, damages under 29 U.S.C. § 2617(a)(1)(A)(i) (II) equal to the actual monetary losses sustained by plaintiff because of defendant's wrongful conduct, such as the cost of providing care and aggravated damages as the defendants have committed multiple illegal criminal aggravated acts against the plaintiff that has ruined ended his 28 year career as a Lawson Supply Chain Consultant. In addition, the work related stroke he suffered is directly attributed to

his employment and was aggravated by the defendants interference in his rights under FMLA up to an amount equal to 12 weeks of wages or salary of plaintiff; (c) Interest under 29 U.S.C. § 2617(a)(1)(A)(ii); (d) Liquidated (double) damages under 29 U.S.C. § 2617(a)(1)(A)(iii); (e) Such equitable relief under 29 U.S.C. § 2617(a)(1)(B) as may be appropriate,

 Sent

Dated: October 25, 2021

**Garrison Jones Plaintiff (**Pro Se
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

## CERTIFICATION   SECOND AMENDED

I hereby certify that the statements made in the forgoing Motion to compel the production of documents ns are true and correct, including all statements regarding all efforts by the Plaintiffs to resolve this discovery matter without the need for litigation.

**Garrison Jones Plaintiff (**Pro Se

- 38 -

# PLAINTIFF EXHIBITS

# ✚ Monroe Hospital

June 14, 2018

Garrison Jones
16152 W Durango St
Goodyear, AZ 85338

Re:     Offer of Employment

Dear Mr. Jones,

We are pleased to extend this offer to you to join Monroe Hospital as IT Application Analyst – Supply Chain Management.

Your starting compensation will be ▓▓▓▓▓▓▓ on an annualized basis, payable bi-weekly. As an employee of Monroe Hospital, you will be eligible for benefits we offer generally to our employees, which currently include: Paid Time Off, 401(k), Medical, Dental and Vision for you and your dependents. All compensation and benefits are, of course, subject to change at any time, upon appropriate notice.

By signing below, you acknowledge that you are not relying on any promises that are not set out in this offer letter in deciding to accept this offer of employment.

It is a condition of this offer that, before commencing employment, you sign a Mutual Agreement to Arbitrate that contains additional requirements for the protection of Monroe Hospital, a copy of which is enclosed.

We wish to emphasize the importance we place on the proper treatment of any confidential information with which you may have come into contact in the past. We are offering you this job based on your skills and abilities and not your possession of any trade secret, confidential or proprietary information. We require that you not obtain, keep, use for our benefit or disclose to us any confidential, proprietary or trade secret information that belongs to others, unless the party who has the rights to the information expressly consents in writing in advance. Also, by signing below you affirm that you are not a party to any agreements, such as noncompetition agreements, that would limit your ability to perform your duties for Monroe Hospital.

Your employment with Monroe Hospital in both the position for which you are being hired, and any position that you hold thereafter (e.g., due to a transfer or promotion), is at will. This means that either Monroe Hospital or you can terminate the employment relationship at any time, with or without cause, and for any reason or for no reason, at any time. Any statements which are contrary to the at-will status of your employment are not authorized, and may not be relied upon by you. No provisions set forth in any employee handbook or any other type of policy can be relied on as modifying in any way, the at-will nature of your employment with Monroe Hospital. No one except Monroe Hospital's CEO has authority to enter into an agreement for any type of employment other than at-will

employment. Furthermore, to be effective, any such agreement must be in writing and signed by Monroe Hospital's CEO.

You agree that Monroe Hospital will conduct periodic checks to confirm that you are not excluded from employment, as required by the Office of the Inspector General of the U.S. Department of Health and Human Services. By signing below, you further agree to abide by the existing rules of Monroe Hospital and any rules and regulations that become effective during the course of your employment.

We look forward to working with you as part of the Monroe Hospital team. Please indicate your acceptance of these terms of employment by signing and returning to me one of the two copies of this letter.

Sincerely,

Will Conaway
Chief Information Officer and Vice President of Information Technology

Enclosure

ACCEPTED:

_____
Garrison Jones

Dated _____

2

From: noreply@smarthires.com <noreply@smarthires.com>
Sent: Monday , June  18, 2018 9:06:22 AM
To: garrison.jones@outlook.com <garrison.jones@outlook.com>
Subject: Status update : PRIME HEALTHCARE SERVICES ONTARIO -
ITapplicationanalyst18(Application Analyst (SCM))


Dear Jones Garrison ,


Your application status for postion :ITapplicationanalyst18(Application Analyst
(SCM)) has been updated to Hired.
Please sign in to www.smarthires.com. and navigate to "My Applied Positions"
from your SmartHires Jobsearch Dashboard. You have the option to view past
comments and respond online by clicking on the "Post Comment" icon under
"Actions" column on the right Any feedback or comments from or to our staffing
team can be viewed under 'Comments'.


This is an auto generated Email. Please do not reply to this mail.



7/19/18        1St DiRECt 3
                       DEPOSit

## TRANSACTION ACTIVITY

| Date | Activity Description | Deposits | Withdrawals | Daily Balance* |
|------|----------------------|----------|-------------|----------------|
| 7/19 | Charged-Off Account Reactivation | 2,699.60 | | 2,699.60 |
| 7/20 | ATM WITHDRAWAL | | 302.50 | |
|      | *****9247 07/20 09:40 | | | |
| 7/20 | ATM WITHDRAWAL | | 203.00 | |
|      | *****9247 07/20 16:02 | | | |
| 7/20 | POS PURCHASE | | 115.04 | |
|      | WAL-MART #1991 BLOOMINGTON IN 241991 | | | |
|      | *****9247 07/20 16:06 | | | |
| 7/20 | Foreign ATM Fee 716120 | | 2.50 | |
|      | FARMERS AND M 3535 WEST 3RD BLOOMINGTON | | | |
| 7/20 | Foreign ATM Fee 001067 | | 2.50 | |
|      | Woodforest Na 3585 W State Bloomington | | | 2,274.06 |
| 7/21 | POS PURCHASE | | 186.64 | |
|      | NNT T-MOBILE #5552 5720 BLOOMINGTON IN | | | |
|      | 092453 *****9247 07/21 07:22 | | | |
| 7/21 | POS PURCHASE | | 31.99 | |
|      | Village Pantry 5 BLOOMINGTON IN | | | |
|      | 00016T *****9247 07/21 09:51 | | | |
| 7/21 | POS PURCHASE | | 191.46 | |
|      | CNS K & G INDY #0400606 INDIANAPOLIS IN | | | |
|      | 024008 *****9247 07/21 12:49 | | | 1,863.97 |
| 7/22 | POS PURCHASE | | 49.41 | |
|      | WAL-MART #1459 INDIANAPOLIS IN | | | |
|      | 241459 *****9247 07/22 08:27 | | | 1,814.56 |
| 7/24 | POS PURCHASE | | 306.69 | |
|      | NST BEST BUY #105  6605 RNCH CUCAMONG C | | | |
|      | 065766 *****9247 07/24 13:54 | | | |
| 7/24 | DMC EXPEDITE FEE | | 25.00 | 1,482.87 |
| 7/29 | ATM WITHDRAWAL | | 403.00 | |
|      | *****9247 07/28 19:01 | | | |
| 7/29 | POS PURCHASE | | 155.52 | |
|      | WAL-MART #1991 BLOOMINGTON IN 241991 | | | |
|      | *****9247 07/29 10:04 | | | |
| 7/29 | Foreign ATM Fee IN0112 | | 2.50 | |
|      | 7800 COL H WE 7800 COL H WE INDIANAPOLI | | | 921.85 |
| 7/31 | POS PURCHASE | | 49.37 | |
|      | KROGER #091 BLOOMINGTON IN 700091 | | | |
|      | *****7587 07/30 20:17 | | | 872.48 |
| 8/01 | POS PURCHASE | | 144.78 | |
|      | WM SUPERCENTER # BLOOMINGTON IN | | | |
|      | 199100 *****7587 08/01 17:11 | | | 727.70 |
| 8/02 | PRIME HEALTHCARE/DIRECT DEP | 3,702.69 | | |
| 8/02 | POS PURCHASE | | 32.09 | |
|      | CIRCLE S # 50 CI BLOOMINGTON IN | | | |
|      | 004CQS *****7587 08/02 08:15 | | | |
| 8/02 | POS PURCHASE | | 145.47 | |
|      | WM SUPERCENTER # BLOOMINGTON IN | | | |
|      | 199100 *****7587 08/02 08:37 | | | 4,252.83 |
| 8/03 | POS PURCHASE | | 225.11 | |
|      | WAL-MART #1991 BLOOMINGTON IN 241991 | | | |
|      | *****7587 08/03 15:15 | | | 4,027.72 |
| 8/04 | POS PURCHASE | | 21.00 | |
|      | DSC*DOLLAR SHAVE 866-2232780 CA | | | |
|      | 123456 *****7587 08/03 09:41 | | | |

78750

MEMBER
FDIC
*Pending transactions are not reflected in the Daily Balance.        **Indicates skip in check numbers
Checks converted to ACH will not have an image.


EQUAL HOUSING
LENDER

F I

FRAUD Velocity

UIB-1076AFORPD (11-17)

**Unemployment Insurance Program**
**Benefit Payment Control, Mail Drop 5893**
**P.O. Box 29225, Phoenix, Arizona 85038-9225**
**Telephone: 602-364-4300**
**Fax: 602-364-1211 or 602-364-1213**

ARIZONA DEPARTMENT OF ECONOMIC SECURITY
Workforce Administration

|||||||||||||||||||||||||||||||||||||||||||||||||||||||
*3615610082018000003808012018*

PRIME HEALTHCARE SERVICES MONR
4011 S MONROE MEDICAL BLVD
BLOOMINGTON
BLOOMINGTON, IN 47403 - 4740

**RECEIVED**

AUG 23 2018

IMAGING / JC

Date: 08/01/2018
Re:      GARRISON JONES
SSN:

RECEIVED FROM

VELOCITY

**Employer Instructions**

This is an Unemployment Insurance (UI) Audit. Our Department received information that your agency/company
recently hired/rehired the above referenced individual. The purpose of this questionnaire is to detect incorrect or
fraudulent UI claims by ensuring that the worker did not claim benefits to which they were not entitled. **You now have
the option to receive this notice and/or provide the response electronically. Please visit our website at
www.AZUITAX.com for additional information and to sign up for these services.**

We are auditing the calendar weeks **printed on the reverse side of this form** based on information reported by you
(additional weeks have been added to allow for mailing delays). If the employee was hired/rehired by you prior to the
first week of the audit, please include wage and hour information for any additional days or weeks that this individual
actually worked for you. Please complete and return the information requested within **5 calendar days from the date
of this audit form** for your convenience, a pre-addressed envelope is enclosed.

Please review the form carefully and complete all entries as appropriate. If your payroll is different from the seven day
calendar week requested on this form you may have to use your daily wage records to complete the requested
information. The claim week begins on Sunday and ends on Saturday. Please complete all other entries as appropriate  If
the individual did not work at any time during the weeks listed, please write "None" in each of the Gross Wages Earned
columns. If payments were made to this individual other than wages for work performed, please specify the type of
payment using the letter codes shown on the audit form.

**Unemployment Insurance Fraud Costs YOU $$$**

Unemployment Insurance fraud is a **billion dollar industry** which costs **you**, the employer, by increasing your
tax rates. We perform audits of Unemployment Insurance claims in order to prevent abuse of the
Unemployment Insurance Trust Fund, to which employers like you, contribute the majority of taxes to fund
the program.

Equal Opportunity Employer/Program. ✦ Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI and VII), and the Americans
with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of
the Genetic Information Nondiscrimination Act (GINA) of 2008, the Department prohibits discrimination in admissions, programs,
services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics, and retaliation. The
Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity.
For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair
accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you
to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will
not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in
advance if at all possible. To request this document in alternative format or for further information about this policy, contact your local
office manager; TTY/TTD Services: 7-1-1. ✦ Free language assistance for DES services is available upon request.

P1

Unemployment Insurance Program
Benefit Payment Control, Mail Drop 5893
P.O. Box 29225, Phoenix, Arizona 85038-9225
Telephone: 602-364-4300
Fax: 602-364-1211 or 602-364-1213

UIB-1098AFORPD (12-18)

602—

ARIZONA DEPARTMENT OF ECONOMIC SECURITY
Workforce Administration

# DETERMINATION OF OVERPAYMENT
## FRAUDULENT

Éste es un documento importante relacionado a sus beneficios
de Seguro por Desempleo. Si no les usted Inglés,
llame al número a la cabeza del formulario.

*00141642371901201S*

GARRISON JONES                              Date:        10/01/2019
PO BOX 1751                                 Claimant ID:  0014164237
Attn: BIRTE
SACRAMENTO, CA 95812-1751

*(handwritten: APPEAL REQUEST Not Fraud)*

Our records show that you have been overpaid benefits (or had benefit entitlements applied as offsets to a prior overpayment reduced or totally voided) as shown on the reverse of this Determination. This overpayment is a result of unreported or underreported earnings and is classified as fraudulent. The amount of the overpayment is $960.00 (this amount may include money withheld for child support and/or federal and state income tax withholding) and the total offset amount voided is $0.00.

Re-mailed determination of overpayment to updated address.

The evidence indicates that you received benefits as a result of a false statement or representation of a material fact in an effort to obtain benefits you were not entitled to receive.

Under Section 23-787, A and E of the Employment Security Law.

- A fifteen percent penalty will be assessed to the amount of the erroneous payment. This applies to any fraud overpayments established on or after October 21, 2013. You are not eligible to receive any benefits until all overpayment principal, penalties, and interest have been paid.

- Appropriate court proceedings may be instituted by the attorney general or the appropriate county attorney to recover in the name of the department any amount for which an individual is liable to the department.

In addition, your case will be considered under Section 23-778 of the Employment Security Law:

An individual may, within twenty-four calendar months immediately preceding a week in which a valid claim for benefits has been filed, be disqualified for the week the claim was filed and for not more than fifty-one weeks when the individual made a false statement or misrepresentation of a material fact knowing it to be false, or knowingly failed to disclose a material fact with intent to obtain benefits.

Interest will be computed on the unpaid principal balance, at the annual rate of 10%, beginning the month following the overpayment establishment date. Interest will accrue on overpayments even though they may be under appeal.

Your check or money order for this amount should be made payable to: The Arizona Department of Economic Security Office of Accounts Receivable and Collections, P O Box 804097, St. Louis, MO 63180-4097. For payment arrangements, contact the Office of Accounts Receivable and Collections at (602) 252-0024. For proper credit if you are paying by check or money order, please write your Social Security Number on your payment. Online payments can be made at https://atlas.gov/esp/dcosp/index.xhtml

APPEAL RIGHTS: This determination becomes final 15 calendar days after the mailing date shown at the top of this determination unless you file an appeal. You can file by fax, mail, or in person. The address and fax number are listed above. Your nearest Employment Service office will accept in person appeals and have fax machines available. For the appeal to be timely, you must file it within 15 calendar days of the mailing date shown at the top of this determination. If the last day of the appeal period falls on a Saturday, Sunday, or holiday the appeal period will be extended to the next working day. This 15 day appeal period may also be extended if you can establish that failure to file within the specified period was due to delay or other action by the U.S. Postal service, or was due to misinformation or error on the part of the Department of Economic Security. Your appeal must include the reason(s) you believe the determination is in error, your Social Security number, and your signature (if filed by mail). If an appeal is filed by mail, the postmark date is considered the date of your appeal. Offset amounts that were reduced or totally voided as a result of under or unreported earnings will be restored to your prior overpayment balance(s). Any appeal filed to this Determination of Overpayment will relate only to the issue of the earnings reported by the employer(s) shown on the reverse of this determination and not to the previous overpayment.

You may have someone represent you. If you pay your representative, that person must be a licensed Arizona attorney or must be supervised by a licensed Arizona attorney. An employer may also use any employee of the business as its representative. The Department does not provide representatives. If you want the Administrative Law Judge (ALJ) to consider documents not already in the file in deciding your case, you must bring a legible copy of them to the hearing. If your evidence is not paper, call the number at the top of the Notice of Hearing to make arrangements to have it considered at the hearing. If your hearing is by telephone, you must immediately mail or fax copies of any documents you want considered to the ALJ and the other party. In addition to attending the hearing yourself, you should bring with you any witnesses whose testimony you want the ALJ to hear. You can make a written request for a subpoena to require someone to bring something to the hearing or a subpoena for a witness. You must make a written request at least five calendar days before the hearing. The request must describe the item, identify the owner or custodian, list that person's address, and describe why the ALJ must consider that item in order to make a proper decision.

If you are the party who filed the appeal and do not attend, the ALJ will decide the matter without you. If you are not the party who appealed and you do not attend, the hearing will proceed without you and you may be required to repay to the Department any benefits you have received. If you miss the hearing, the ALJ's decision will explain how to request a reopening of that hearing.



**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Tuesday, January 23, 2018 7:53:58 PM
**To:** garrison.jones1724@outlook.com; Garrison Jones
**Subject:** FMLA - Garrison Jones

Good Evening Garrison,

We wanted to review your request for FMLA with you. Per the Notice of Eligibility and Rights & Responsibilities (Form WH-381). You are not eligible for FMLA leave, because you do have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately 8 months toward this requirement. In addition, you do not work and/or report to a site with 50 or more employees within 75-miles.

Velocity's FMLA calculation practice for eligible employees aligns with the Federal DOL regulations; which is a maximum of 12 weeks coverage within a 12 month period. Our calculation runs concurrently with short-term disability.

That said, please complete the attached DOL required form and return to me for further processing/review:

1. Certification of Health Care Provider for Employee's Serious Health Condition (Form WH-380-E). Please complete Section 2 and have your doctor complete Section 3. Per the requirements and return the completed form within 15 days (Feb 8, 2018).

Once you return the form we will provide a written designation notification form as per the DOL requirements.

If you have any questions please let us know.

Thank you

**Shauna Coleman** | Director, Human Resources | **Velocity Technology Solutions, Inc.**

o 704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

STATEMENT OF CONFIDENTIALITY



The above business card of the plaintiff shows that his work location was at the Velocity Minneapolis, Minnesota location.

Employees and the plaintiff Garrison Jones was eligible to take FMLA leave for a qualifying reason if they meet the following criteria:

They have been employed by your company for at least 12 months, They have worked at least 1,250 hours in the 12 months before leave is to begin, and They work at a site with at least 50 company employees within 75 miles.

That last criterion can be a bit tricky for remote workers. That's because an employee's private residence is not considered a worksite for purposes of employee eligibility for FMLA leave.

Instead, for employees who work from home, their worksite is the office to which they report and from which assignments are made.

Therefore, the plaintiff was receiving his assignments from the worksite to which he used to report, that worksite would be considered his worksite. If at least 50 company employees within 75 miles work at that site, he would meet the "50 employees within 75 miles" eligibility criterion. This would be true even if Pam's residence was 200 or 300 miles away from the office where her assignments originated.

Consequently, if he had worked for the company for at least 12 months and had performed at least 1,250 hours of work in the 12 months before leave was to begin, she would be eligible to take FMLA leave for a qualifying reason.

The plaintiffs' business card from Velocity shows that his worksite was at the Velocity office in Minneapolis located at 1200 Washington, Minneapolis.  At this office there is more than 100 employees that work out of this location.

**As such, this proves both Ogltree Deakins attorneys especially decristoforo have no clue what they are talking about.  Attempting to disqualify the plaintiff when he has no such clue about his client and their working environment.**

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
To: garrison jones <garrison.jones1724@outlook.com>, Garrison Jones
<garrison.jones@outlook.com>
Date: Wednesday, February 14, 2018, 10:59 AM -0700
Subject: Re: FMLA - Garrison Jones

Hello Garrison,

As you know, you have been on a medical leave of absence since November 18, 2017.  During this time, you have applied for and received short term disability benefits.  Your current medical leave of absence expired with the ending of your short term disability benefits on January 27, 2018, which is why we sent you the FMLA paperwork on January 23, 2018.  You returned that paperwork to us on February 8, 2018.

Thank you for submitting the FMLA paperwork (certification form).  We have evaluated your certification form and determined that you do not currently meet the eligibility requirements for FMLA, which require that you have been employed for 12 months.

That said, since your short-term disability and medical leave of absence ended on January 27, 2018 and in close proximity to your one year employment anniversary, Velocity, although it is not required to do so, will extend your unpaid medical leave to your one-year anniversary, February 20, 2018.  On that day, you become eligible for FMLA leave and Velocity will start you on FMLA leave for 12 weeks.

Your FMLA leave will run from February 20, 2018 to May 15, 2018.  You will be required to provide a re-certification of your medical status from your healthcare provider prior to May 15, 2018 so that we can evaluate continued eligibility and potential return to work.  Attached are the "Notice of Eligibility and Rights & Responsibilities" document.

Best,

Shauna Coleman

**Shauna Coleman** | Director, Human Resources | **Velocity Technology Solutions, Inc.**

4-1

On Dec 22, 2017, at 12:37 PM, Shauna Coleman
<shauna.coleman@velocitycloud.com>
wrote:
Hello,
Thank you Wendy. Garrison, as mentioned during open enrollment you will
not be eligible to receive LTD benefits on your current disability as you did not
have this coverage in place when this situation started. That said, you will be
eligible for coverage in a year (with review by Lincoln Financial).
Velocity will collect your premium once you return to work. *

Shauna Coleman | Director, Human Resources | Velocity Technology
Solutions, Inc. o
704.357.7721 | m 845.282.6955 | f 703.935.1269  velocitycloud.com

4-2

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Wednesday, January 17, 2018 5:26:13 PM
**To:** Garrison Jones
**Subject:** Fwd: Access Removal Notice

Good Afternoon Garrison,

It has come to our attention that you have been accessing your work email. As you may recall, we instructed you to focus on your health and well-being and not to work while you were our on medical leave.  As per the email below you acknowledged this direction and the action you took to comply.

It appears that on or around December 28, 2017 an email forwarding program was installed to forward e-mails from your Velocity work account to multiple personal accounts.  This is not permitted both because you should not be working while you are on medical leave and because company e-mails should not be forwarded to a personal e-mail address. It is because of this that we have removed your account access.  If you have any questions, please contact me directly.

Going forward, we will send all communications to your personal email that we have on file with human resources: garrison.jones@outlook.com.  A copy of this correspondence will also be mailed to your home address at 1360 N 43rd Avenue, Phoenix, AZ 85009. If you would like us to use a different email address to communicate about your leave or other issues related to your employment, please let me know.

Thank you,

**Shauna Coleman   Director, Human Resources |Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 |velocitycloud.com


---------- Forwarded message ----------
From: **Garrison Jones** <garrison.jones@velocitycloud.com>
Date: Thu, Nov 9, 2017 at 10:51 AM
Subject: return note
To: Shauna Coleman <shauna.coleman@velocitycloud.com>

I did not see a meeting invite sorry. You told me to rest and I did and have not been checking email every day as instructed

**Garrison Jones | Lawson/Infor Supply Chain Consultant | Velocity Technology Solutions, Inc.**
Mobile916-870-4960| velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Tuesday, January 23, 2018 7:26 PM |
| **To:** | garrison.jones1724@outlook.com; Garrison Jones |
| **Subject:** | Benefit Premium Recoup |

Good Evening Garrison,

As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

| | Dec-17 | | Jan-18 |
|---|---|---|---|
| **Medical** | $ 185.83 | $ | 242.15 |
| **Dental** | $ 22.21 | $ | 25.77 |
| **FSA** | $ 83.33 | $ | 83.33 |
| **LTD** | $0 (not enrolled) | $ | 26.88 |
| | $ 291.37 | $ | 378.13 |

In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51. Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you

**Shauna Coleman** · **Director, Human Resources | Velocity Technology Solutions, Inc.**

o 704.357 7721 | m 845.282.6955 | f 703.935.1269| velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

4-3

In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51. Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you

**Shauna Coleman** | **Director, Human Resources** | **Velocity Technology Solutions, Inc.**

c 704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

4-4

**Garrison Jones**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Wednesday, February 21, 2018 4:22 PM |
| **To:** | Garrison Jones |
| **Cc:** | chris.heller@velocitycloud.com |
| **Subject:** | Re: Coverage |

Hi Garrison,

In 2018 we implemented a vision plan that employees had to elect into for coverage. This is a paid for benefit that was previously paid by Velocity as a discount program and not a true vision plan.  This change was communicated in the packet that we sent to your home, the email communications and live webinars that we conducted during open enrollment.

 As I recall it did not elect into vision coverage for 2018. If this was a mistake and you meant to elect into vision benefits for 2018 please let me know and I will see if the carrier will make an exception to the late enrollment.

 Thank you

On Wed, Feb 21, 2018 at 5:00 PM Garrison Jones <garrison.jones@outlook.com> wrote:
 Received message from Optimetrist stating my vision coverage was cancelled in December 2017. Can you tell
 me how this happened before I even sent my discrimination complaint
--
Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc. o 704.357.7721 | m
845.282.6955 | f 703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

*4 — 5*

# Garrison Jones

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Saturday, February 24, 2018 12:30 AM |
| **To:** | garrison jones; Garrison Jones |
| **Subject:** | Re: Benefit Premium Recoup |

Good Evening Garrison,

On January 23, 2018 we notified you that we needed you pay for your portion of the benefit premiums that have not been paid in order to not lose coverage. Please provide payment for the following months and amounts:

- December 2017 = $291.37
- January 2018 = $378.13
- February 2018 = $378.13

As previously mentioned, we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

This is the second request for payments. Velocity is not responsible for your benefit premium and without payment you are at risk of losing coverage. Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you,

*Velocity NOT Responsible*

**Shauna Coleman** | **Director, Human Resources** | **Velocity Technology Solutions, Inc.**

o 704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

On Tue, Jan 23, 2018 at 10:25 PM, Shauna Coleman <shauna.coleman@velocitycloud.com> wrote:
Good Evening Garrison,

As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

| | Dec-17 | |
|---|---|---|
| **Medical** | $ 185.83 | $ |
| **Dental** | $ 22.21 | $ |
| **FSA** | $ 83.33 | $ |
| **LTD** | $0 (not enrolled) | $ |

1



9 -h

4—7

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Chris Heller <chris.heller@velocitycloud.com> |
| **Sent:** | Monday, January 29, 2018 3:18 PM |
| **To:** | Garrison Jones |
| **Cc:** | garrison.jones1724@outlook.com |
| **Subject:** | RE: Access Removal Notice |

*Systems*

Garrison,

The information Velocity has requested has nothing to do with your access to Velocity's systems. ✳

Velocity needs basic factual information on the claims you have made in order to interview the appropriate people.

The following is one of the prior requests for information and I have highlighted the required information for this claim:

"With respect to your claims of sexual harassment, we again take these allegations seriously and are investigating.  We require additional information from you to permit us to further this investigation.  ==Please advise as to who witnessed this conduct, who touched/rubbed up against you, when did it happen, where did it happen, has it happened since, and are there any further details you have available to assist in Velocity's investigation.==   Once we receive this information, we will continue our investigation."

Once Velocity receives this information, we will conduct interviews of the individuals involved, including you.  Without this information, the investigation of this claim can't continue.

Regards,
Chris

**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**
o  704.593.3423| m  816.678.5162 | f  703.935.4308 | velocitycloud.com

**From:** Garrison Jones [mailto:garrison.jones@outlook.com]
**Sent:** Saturday, January 27, 2018 9:56 AM
**To:** chris.heller@velocitycloud.com
**Cc:** garrison.jones1724@outlook.com
**Subject:** Fwd: Access Removal Notice

 As I stated I have been through this before with Shauna requesting that I forward information regarding the allegations. You may be aware that my email access was Revoked.  not because I was working but responding to a request from Velocity. Shauna used an email dated November 9 2018 when I was on PTO not medical leave as the reason  to show that I agreed not to be working however the message was related to invite I received while  I was on PTO  from Velocity to be on a velocity conference call that I did not see the request to attend.  She used it to justify the access removal.  Now Now how can you use cannot use a email response from November 9 to again justify removing my email access when I did not go on medical leave until November 18.   In affect it's like going back in the deck of Cards and using the Ace of spades again when it was already used.

1

**garrison.courtdocs@outlook.com**

| | |
|---|---|
| **From:** | Garrison Jones <garrison.jones@outlook.com> |
| **Sent:** | Thursday, May 21, 2020 2:32 PM |
| **To:** | Garrison Jones -Court-Docs |
| **Subject:** | Fwd: Garrison Jones |

Get Outlook for iOS

**From:** Susan Holtapp <susan.holtapp@velocitycloud.com>
**Sent:** Thursday, March 15, 2018 8:08:38 AM
**To:** Chance Veasey <chance.veasey@velocitycloud.com>
**Cc:** Garrison Jones <garrison.jones@velocitycloud.com>
**Subject:** Garrison Jones

Chance,

I understood from our last exchange that Garrison Jones was no longer employee of Velocity.  His record remains in ADP reporting to Michael B.  Please let us know if Michael or myself have open action item to release Garrison.

Regards,
Susan

**Susan Holtapp-Freiday  | Velocity Technology Solutions, Inc.**
**Sr. Practice Director Professional Services, Infor Line of Business**
o 612.333.9853 | m  612.802.6914|
eMail susan.holtapp@velocitycloud.com   | Website velocitycloud.com

STATEMENT OF CONFIDENTIALITY

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

6-2



⌂  🔒 tps://careers.velocitycloud.com   ③

‹            Results *(35 jobs)*            ⟳

**Data Center Engineer - Senior**
Information Technology
US - TN                                    ›

**Infor - Sr. Financial Consultant**
Information Technology
US - Remote (Virtual)                      ›

**Infor S3 Professional Services Lead - Procurement**
Information Technology
US - Remote (Virtual)                      ›

**JDE CNC Managed Services Consultant - Senior**
Information Technology
US - Remote (Virtual)                      ›

**Internal IT Administrator - Lead**
Information Technology
US - NC - Charlotte (1901 Roxborough Road)  ›

**Sr. SAP Project Manager (Virtual if willing to travel)**
Information Technology
US - NC - Charlotte                        ›

VELOCITOWN WEB SITE
3/24/18

ASA – Employer Exhibit – APS #: 1595392 – Type: OA – Exhibit #: 02 – Claimant Last Name: JONES

Sources

*Indeed . com   2/24/18*

# Infor S3 Professional Procurement

**Velocity Technology Solutions, Inc. - Remote**

**Description**

Apply your expertise to Customers in healthcare a
transform their Supply Chain/Procurement operatic
Infor. Become intimately involved with driving soluti
and allowing Velocity Customers to become better
knowledge of Infor's S3 product and of best practi
will lead the solution design, build, and testing for I
times, these projects will be a full scale implement
projects will be a tactical re-design of business pro
configuration. In all cases, you will be a functional I
project team. As an Infor Professional Services Le
teammates will look to you as the subject matter e
Customers using Infor's solutions in Supply Chain (

Velocity is looking for an Infor Professional Service
consulting, and designing solutions This role is part
organization and requires travel in North America.
nearly 700 experts who lean in and help Customer
Software no matter where they are on their journe

### 1st source

Personal friend that I will not provide her name. that said Velocity was looking for a "lead Procurement
Consultant and that the job was on several job boards.

NOTE Prior to typing this email I went back on INDED.COM and the position has now mysteriously
"DISSAPPEARED" no doubt by Velocity after I sent the email of Feb 24,2018. Too late as I have a copy of it as
seen below that clearly shows the Velocity logo and position they are looking for

### 2nd source

2nd - Source Indeed .com who verified the posting

### 3rd source

2.   3rd source as I also have an email from a recruiter who has a requisition he is trying to fill for the same and he
identified Velocity as the client.

### 4th source

2

ASA – Employer Exhibit – APS #: 1595392 – Type: OA – Exhibit #: 02 – Claimant Last Name: JONES



## General Adjudication

**UB-098**         Claimant SSN: ●●●●●●●●

PER T/C ON 5-4-18 AT 11:59AM PHN: 704-357-7721, LEFT MESSAGE ON SHAUNA COLMAN (HEAD OF HR) ANSWERING MACHINE, TO RESPOND BY 5-8-18 BY 12:00PM AND ADVISED OF CONSEQUENCES.

SHAUNA RETURNED CALL ON 5-4-18 AT 1:35PM AND LEFT MESSAGE STATING:

CLAIMANT IS ON FMLA FOR MEDICAL REASONS. CLAIMANT IS DUE TO RETURN TO WORK ON 5-15-18 ER STATES CLMT IS STILL CURRENTLY EMPLOYED WITH THEIR COMPANY AND IS EXPECTED TO RETURN TO WORK AS SCHEDULED ON 5-15-18.

DEPUTY NOTE: DUE TO THE INFORMATION PRESENTED BY BOTH ER AND CLMT AND NOT BEING ABLE TO REBUTTLE WITH ER DUE TO CLMT REQ IT SEEMS CLMT STILL HAS A JOB TO RETURN TO ON 5/15/18 AND CLMT IS REFUSING TO DUE SO BECAUSE HE FEELS HE HAS BEEN DISCHARGED AS OF 3/15/18. WILL USE START DATE AS 3/15/18 SICE THAT IS THE ASSUMED SEPERATION DATE

IF APPLICABLE SEE SECOND UB-098 FOR ADDITIONAL INFORMATION FROM ER AND OR CLMT.

✓    Contact **Shauna Coleman**    at   shauna.coleman@velocitycloud.com   to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave. You have a minimum 30-day (or, indicate longer period, if applicable) grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

___ You will be required to use your available paid _____ **sick**, _____ **vacation**, and/or _____ **other leave** during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

___ Due to your status within the company, you are considered a "key employee" as defined in the FMLA. As a "key employee," restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us. We ___ **have/** ___ **have not** determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

___ While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every _____. (Indicate interval of periodic reports, as appropriate for the particular leave situation).

**If the circumstances of your leave change, and you are able to return to work earlier than the date indicated on the this form, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

If your leave does qualify as FMLA leave you will have the following **rights** while on FMLA leave:

- You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as:

  ___ the calendar year (January – December).

  ___ a fixed leave year based on _____.

  ___ the 12-month period measured forward from the date of your first FMLA leave usage.

  ✓ a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered servicemember with a serious injury or illness. This single 12-month period commenced on _____.

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA.)
- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.
- If we have not informed you above that you must use accrued paid leave while taking your unpaid FMLA leave entitlement, you have the right to have ___ **sick,** ___ **vacation,** and/or ___ **other leave** run concurrently with your unpaid leave entitlement, provided you meet any applicable requirements of the leave policy. Applicable conditions related to the substitution of paid leave are referenced or set forth below. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid FMLA leave.

___ For a copy of conditions applicable to sick/vacation/other leave usage please refer to _____ available at: _____.

___ Applicable conditions for use of paid leave:_____

**FMLA leave will begin on February 20, 2018.**

**12 Weeks of FMLA extends through May 15, 2018.**

**A recertification is required by the employee prior to May 15, 2018.**

**Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement. If you have any questions, please do not hesitate to contact:**

_____ at _____.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

        Form WH-381 Revised February 2013

Exhibit # 05

✓    Contact **Shauna Coleman**    at   shauna.coleman@velocitycloud.com   to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave. You have a minimum 30-day (or, indicate longer period, if applicable) grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

_____ You will be required to use your available paid _____ sick, _____ vacation, and/or _____ other leave during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

_____ Due to your status within the company, you are considered a "key employee" as defined in the FMLA. As a "key employee," restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us. We _____ have/_____ have not determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

_____ While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every _____ (Indicate interval of periodic reports, as appropriate for the particular leave situation).

**If the circumstances of your leave change, and you are able to return to work earlier than the date indicated on the this form, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

If your leave does qualify as FMLA leave you will have the following rights while on FMLA leave:

- You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as:

  _____    the calendar year (January – December).

  _____    a fixed leave year based on _____

  _____    the 12-month period measured forward from the date of your first FMLA leave usage.

  ✓    a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered servicemember with a serious injury or illness. This single 12-month period commenced on _____.

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA.)
- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.
- If we have not informed you above that you must use accrued paid leave while taking your unpaid FMLA leave entitlement, you have the right to have _____ sick, _____ vacation, and/or _____ other leave run concurrently with your unpaid leave entitlement, provided you meet any applicable requirements of the leave policy. Applicable conditions related to the substitution of paid leave are referenced or set forth below. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid FMLA leave.

_____ For a copy of conditions applicable to sick/vacation/other leave usage please refer to _____ available at: _____

_____ Applicable conditions for use of paid leave: _____

**FMLA leave will begin on February 20, 2018.**

**12 Weeks of FMLA extends through May 15, 2018.**

**A recertification is required by the employee prior to May 15, 2018.**

**Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement. If you have any questions, please do not hesitate to contact:**

_____ at _____.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.

Exhibit # 05

REF #2419311



## Lincoln
### Financial Group®

The Lincoln National Life Insurance Company
8801 Indian Hills Drive, Omaha, NE 68114-4066
Toll free (800) 423-2765
www.LincolnFinancial.com

8-2

**GROUP CONTINUANCE OF DISABILITY
(PLEASE see FRAUD NOTICES attached)**

(877) - 843 - 3956

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
Velocity Technology Solutions, Inc. IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS
FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER
EXPENSE.

### Attending Physician's Statement

1. Patient's Name  Garrison Jones _____  Date of Birth  Redacted

2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any)
   _stroke (L PICA, R PICA) w/ residual LLE weakness b/l visual defizit_

3. a) Date of First Treatment  _11/22/2017_
   b) Date of Most Recent Treatment  _12/21/2017_
   c) Frequency of Treatments  _2-3x/week_
   d) Type of Treatment Rendered  _physical therapy_
   e) Is surgery scheduled? If so, when?  _n/a_

4. The patient has been continuously Totally Disabled (unable to perform regular job) from _____ to _____
   The patient has been continuously Partially Disabled (some restrictions or light duty) from  _11/22/2017_ to _3/22/2018_
   If the patient is still disabled, when should the patient be able to return to work?  _re-eval 3/22/2018_

5. Remarks or Comments:  _pending further PT/neuro rehab, f/u ophthalmology_

6. List Restrictions and Limitations:  _visual impairment, weakness require FWW for ambulation_

7. Physical Impairment:

   Class 1 – No limitation – capable of heavy work – No restrictions (1-10%):
   Class 2 – Medium manual activity (15 – 30%)
   Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)
   Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)
   (Class 5) – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments ( if applicable)
   (Class 1) – Patient is able to function under stress and engage in personal relations (no limitations)
   Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)
   Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)
   Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)
   Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date _12/21/17_    Signed _____    /Degree/Specialty _Family Med, MD_
(Month Day Year)    (Attending Physician, No Stamps, please)

Street Address  _2627 N 7th Ave_
City, State  _Phoenix, AZ_
Phone Number  _602 406 3153_
Fax Number  _602 406 7176_

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC-01450PTD

00000471 LFPO8YD1 00001I&1



**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Meister, Christopher J. <Christopher.Meister@ogletree.com> |
| **Sent:** | Monday, May 21, 2018 2:15 PM |
| **To:** | Garrison Jones |
| **Attachments:** | Jones Confidential Medical Records.pdf; 20180518155027747.pdf |

Mr. Jones attached please find your personnel and confidential medical records files. Thank you.

**Christopher J. Meister | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax: 602-778-3750
christopher.meister@ogletree.com | www.ogletree.com | Bio

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

1

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile:  602.778.3750
www.ogletree.com

Christopher J. Meister
602.778.3720
christopher.meister@ogletree.com

July 23, 2018

**<u>Via Fax and First Class U.S. Mail</u>**

Arizona Department of Economic Security
Office of Appeals
1951 W. Camelback Road, Suite 400
Phoenix, AZ 85015
Fax No. (602) 257-7056

> RE:   Unemployment Insurance Claim, Garrison Jones
>       Arizona Appeal No. U-1595392-001

To Whom It May Concern:

This firm represents Velocity Technology Solutions, Inc. ("Velocity" or "Employer"), in connection with Garrison Jones's ("Claimant") claim for unemployment benefits before the Arizona Department of Economic Security. We write to Request to Reopen the Decision of the Appeal Tribunal, dated June 22, 2018, which found that Mr. Jones qualifies for benefits because he was discharged from employment, but not for willful or negligent misconduct. The Appeal Tribunal's decision should be overturned because Mr. Jones has been employed by Velocity from the day he filed for unemployment benefits to this day.

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh
Richmond ▪ St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

ASA - 126GC - APS #: 1600600 - Type: OA - Exhibit #: 09 - Claimant Last Name: JONES

*12-1*

**Ogletree**
**Deakins**

July 23, 2018
Page 2

and fringe benefits and the cash value of all remuneration in any other medium other than cash."
A.R.S. § 23-622. From February 2018 to the present, Velocity has continued to provide Mr. Jones
with health, dental, and vision benefits. Thus, Mr. Jones has received "wages" as defined by the
Arizona Revised Statutes, is not unemployed, and is, therefore, not eligible for unemployment
benefits.

Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged
from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged
because he was copied on an email indicating that he was no longer employed and because his job
was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own
conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice
President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked
Velocity's General Counsel directly about his employment status, he was unequivocally told that he
was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been
posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and
then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own
findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was
still employed.

For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22,
2018, decision granting Mr. Jones unemployment benefits be reversed.

Sincerely,

Christopher J. Meister

Enclosure

34946289.1

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys At Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletreedeakins.com

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **DATE:** | 7/23/2018 | **PAGES:** | 16 (includes cover page) |
| **TO:** | Arizona Department of Economic Security | **FROM:** | Christopher J. Meister |
| **FAX:** | **602.257.7056** | **PHONE:** | 602.778.3720 |

Original Will Be Sent via First-Class Mail

If problems arise with receipt of this transmission, please contact: Diane M. Kelly at 602.778.3749.

**MESSAGE:**    Please see the attached.

Atlanta • Austin • Berlin (Germany) • Birmingham • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Denver • Detroit Metro • Greenville Houston • Indianapolis • Jackson • Kansas City • Las Vegas • London (England) • Los Angeles • Memphis • Mexico City (Mexico) • Miami • Milwaukee • Minneapolis Morristown • Nashville • New Orleans • New York City • Oklahoma City • Orange County • Paris (France) • Philadelphia • Phoenix • Pittsburgh • Portland, ME • Portland, OR Raleigh • Richmond • St. Louis • St. Thomas • Sacramento • San Antonio • San Diego • San Francisco • Seattle • Stamford • Tampa • Toronto (Canada) • Torrance • Tucson • Washington

*CONFIDENTIALITY NOTICE: This message and the documents accompanying this facsimile are legally privileged, confidential, and exempt from disclosure under applicable law. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please be advised that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If this communication has been received in error, please notify us by telephone immediately to arrange for the return of the original documents to us. Thank you.*



**Arizona Department of Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019
Toll Free 1(877)528-3330 FAX (602)257-7056

# DISMISSAL OF APPEAL

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

VELOCITY TECHNOLOGY SOLUTIONS
Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016

Arizona Appeal No. U-1600605-001

Date of Mailing: 8/20/2018

Social Security No.

Employer Acct. No. 7428011-000

### IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS

The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602)771-9019.

### IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO

The Department of Economic Security suministra ayuda de los idiomas gratis. Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602)771-9019.

## NOTICE TO CLAIMANT

***
**YOUR APPEAL HAS BEEN DISMISSED BECAUSE THE EMPLOYER DID NOT ESTABLISH GOOD CAUSE FOR FAILING TO APPEAR AT THE PREVIOUS HEARING.**
***

***
Today, I made a separate decision that found the employer did not have good cause for failing to appear at the hearing scheduled for 6/22/2018 and that the hearing would not be reopened. I am dismissing your appeal because the Tribunal decision issued 6/22/2018 remains in full force and effect.

You have no right to appeal this dismissal. However, you may request further review of my other decision that you did not have good cause for failing to appear at the scheduled hearing.
***

**Richard Ebert**
Administrative Law Judge

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1(877)528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

**REPRESENTATION**: You may have someone represent you. If you pay the representative, then that person must be a licensed Arizona attorney or be supervised by one. An employer may also use any employee of the business as its representative. This office does not provide representatives.

**Distribution:**
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Employer: ryan.mangum@ogletreedeakins.com
File

RE/aj

## General Adjudication

**UB-098**      Claimant SSN:  361 56 1008 0

Issue: Able

Base Period Separation: No

Basis:
ABILITY TO WORK

BPR:
R6-3-52235.A.

Reasoning and Conclusion:
SEE UB 100

Additional Text:

CLMT WRITTEN STATEMENT:
UB436 SENT ON 4/19/18 DUE BACK ON 4/24/18
SEE UB-436R IN ONBASE REC'D 5/2/18

CLMT CALL: ON 5-4-18 AT 11:22AM PHN: 916-870-4960, LEFT MESSAGE TO RESPOND BY 5-8-18 BY 11:24AM AND ADVISED OF CONSEQUENCES.

CLAIMANT RETURNED CALL ON 5-7-18 AT 1:53PM PHN: 916-870-4960, T/C WITH CLAIMANT:

CLMT STATES HE HAD A STROKE IN NOVEMBER OF 2017. CLMT IS STILL UNDER DOCTORS CARE UNTIL 5/15/18.

Exhibit # 02

13-2

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
Date: May 15, 2018 at 6:18 PM
To: Garrison Jones <garrison.jones@outlook.com>
Subject: Re: FMLA - Garrison Jones

Hi Garrison,

I am not able to speak this evening. Please send me your questions via email.

Thank you

On Tue, May 15, 2018 at 7:04 PM Garrison Jones <garrison.jones@outlook.com> wrote:
Again this repeatedly stuff is not working Shauna. I never said I had dr appt on May 20. That
again is velocity saying that.

You guys want to have a reason.

I have tons of questions. Call me  you have my number 916 879 4960

Repeatedly after 4 months this is just a tactic

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys At Law*

Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletreedeakins.com

*13-1*

## FACSIMILE TRANSMITTAL

| DATE: | 7/23/2018 | PAGES: | 16 (includes cover page) |
|---|---|---|---|
| TO: | Arizona Department of Economic Security | FROM: | Christopher J. Meister |
| FAX: | **602.257.7056** | PHONE: | 602.778.3720 |

Original Will Be Sent via First-Class Mail

If problems arise with receipt of this transmission, please contact:  Diane M. Kelly at 602.778.3749.

**MESSAGE:**    Please see the attached.

Atlanta • Austin • Berlin (Germany) • Birmingham • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Denver • Detroit Metro • Greenville
Houston • Indianapolis • Jackson • Kansas City • Las Vegas • London (England) • Los Angeles • Memphis • Mexico City (Mexico) • Miami • Milwaukee • Minneapolis
Morristown • Nashville • New Orleans • New York City • Oklahoma City • Orange County • Paris (France) • Philadelphia • Phoenix • Pittsburgh • Portland, ME • Portland, OR
Raleigh • Richmond • St. Louis • St. Thomas • Sacramento • San Antonio • San Diego • San Francisco • Seattle • Stamford • Tampa • Toronto (Canada) • Torrance • Tucson • Washington

*CONFIDENTIALITY NOTICE: This message and the documents accompanying this facsimile are legally privileged, confidential, and exempt from disclosure under
applicable law. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please be
advised that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If this communication has
been received in error, please notify us by telephone immediately to arrange for the return of the original documents to us. Thank you.*

**MAIL OR HAND DELIVER TO:**

> **ARIZONA DEPARTMENT OF ECONOMIC SECURITY**
> **Office of Appeals**
> **1951 W. Camelback Road, Suite 400**
> **Phoenix, AZ  85015**

**OR FAX TO:     (602) 257-7056**

**INSTRUCTIONS:**

Check **ONE** of the three following boxes:

[X]  I did not appear at the hearing.  I request reopening <u>only</u> (complete only Part A below).

[ ]  I am filing a Petition for Review to the Appeals Board <u>only</u> (complete only Part B below).

[ ]  I request <u>both</u> reopening and filing a Petition for Review to the Appeals Board (complete <u>both</u> Part A and Part B below).

<u>**PART A:**</u>

| **REQUEST TO REOPEN** |
|---|

I, Velocity Technology Solutions, Inc. , request reopening of the hearing.

**I did not appear for the hearing because:**

Please see the attached letter.

Signature: _____     Date:  7/23/2018

Current Mailing Address: 2415 E. Camelback Road, Suite 800
  *(Street address)*
  Phoenix,                              AZ             85295
  *(City)*                              *(State)*      *(Zip Code)*

Page 10—Arizona Appeal No. U-1595392-001

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletree.com

Christopher J. Meister
602.778.3720
christopher.meister@ogletree.com

July 23, 2018

**Via Fax and First Class U.S. Mail**

Arizona Department of Economic Security
Office of Appeals
1951 W. Camelback Road, Suite 400
Phoenix, AZ 85015
Fax No. (602) 257-7056

RE:   Unemployment Insurance Claim, Garrison Jones
      Arizona Appeal No. U-1595392-001

To Whom It May Concern:

This firm represents Velocity Technology Solutions, Inc. ("Velocity" or "Employer"), in connection with Garrison Jones's ("Claimant") claim for unemployment benefits before the Arizona Department of Economic Security. We write to Request to Reopen the Decision of the Appeal Tribunal, dated June 22, 2018, which found that Mr. Jones qualifies for benefits because he was discharged from employment, but not for willful or negligent misconduct. The Appeal Tribunal's decision should be overturned because Mr. Jones has been employed by Velocity from the day he filed for unemployment benefits to this day.

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual…" A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh
Richmond ▪ St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

July 23, 2018
Page 2

**Ogletree
Deakins**

and fringe benefits and the cash value of all remuneration in any other medium other than cash."
A.R.S. § 23-622. From February 2018 to the present, Velocity has continued to provide Mr. Jones
with health, dental, and vision benefits. Thus, Mr. Jones has received "wages" as defined by the
Arizona Revised Statutes, is not unemployed, and is, therefore, not eligible for unemployment
benefits.

Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged
from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged
because he was copied on an email indicating that he was no longer employed and because his job
was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own
conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice
President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked
Velocity's General Counsel directly about his employment status, he was unequivocally told that he
was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been
posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and
then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own
findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was
still employed.

For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22,
2018, decision granting Mr. Jones unemployment benefits be reversed.

Sincerely,

Christopher J. Meister

Enclosure

34946289.1

Decision Coversheet

Continue to file claims for unemployment insurance if you remain unemployed during the appeal process. If you win the case you will be paid only for the weeks for which you filed a claim and were otherwise eligible. For additional information about the appeal process, go to:
https://www.azdes.gov/main.aspx?menu=317&id=3918

We are continually striving to improve our customer service.  Please go to this web address and take a brief 10 question survey to give us your feedback.
https://des.az.gov/uisurvey

Your responses will not affect your case.

Thank you.

Si sigue sin empleo durante el período de apelación, siga reportando semanalmente sus reclamos.  Si gana su apelación se le pagará únicamente por las semanas por las cuales usted reportó un reclamo y era elegible. Para mas información sobre el proceso de apelació, visite a
https://www.azdes.gov/main.aspx?menu=317&id=3918

Estamos continuamente esforzándonos por mejorar nuestro servicio al cliente.  Por favor ingrese a la página web y participe en el cuestionario de 10 preguntas para compartir con nosotros su opinión.
https://des.az.gov/uisurvey

Sus respuestas no afectarán de ninguna manera su caso.

Gracias.

Office of Appeals Phoenix
1951 W. Camelback Road, Ste 400
Phoenix, AZ  85015

VELOCITY TECHNOLOGY ENTERPRISES INC DBA
VELOCITY TECHNOLOGY SOLUTIONS
1901 ROXBOROUGH RD FL 4
CHARLOTTE, NC  28211

*14-1*

## General Adjudication

**UB-098**      Claimant SSN:  361 56 1008 0

Issue:  Able

Base Period Separation:  No

Basis:
ABILITY TO WORK

BPR:
R6-3-52235.A.

Reasoning and Conclusion:
SEE UB 100

Additional Text:

CLMT WRITTEN STATEMENT:
UB436 SENT ON 4/19/18 DUE BACK ON 4/24/18
SEE UB-436R IN ONBASE REC'D 5/2/18

CLMT CALL: ON 5-4-18 AT 11:22AM PHN: 916-870-4960, LEFT MESSAGE TO RESPOND BY 5-8-18 BY 11:24AM AND ADVISED OF CONSEQUENCES.

CLAIMANT RETURNED CALL ON 5-7-18 AT 1:53PM PHN: 916-870-4960, T/C WITH CLAIMANT:

CLMT STATES HE HAD A STROKE IN NOVEMBER OF 2017. CLMT IS STILL UNDER DOCTORS CARE UNTIL 5/15/18.

Exhibit # 02

## WHISARD Complaint Information Form

### U.S. Department of Labor
Wage And Hour Division

| | | |
|---|---|---|
| Complaint ID: **3850645** | Receiving *Chicago IL District Office* | Last updated by |
| Date of Contact: **07/19/2018** | Contact Priority: | Last updated |
| Complaint Status: **FILED-NO ACTION** | Contact Type: | See customer history log for Contact type(s) |

### Establishment Information

| | | |
|---|---|---|
| Name: *Velocity Technology* | Primary Phone: *704-357-7705* | ext. |
| Address: *1901 Roxborough RD. Charlotte, NC 28211* | Other Phone: | ext. |
| | Fax: | ext. |
| | Email: | |

| | | |
|---|---|---|
| County: *Mecklenburg* | NAIC | |
| Contact Name: | Gov. Contract, Furnishes | *N* |
| Contact Title: | Gov. Contract, Furnishes services: | *N* |
| Estimated # of locations: | Gov. Contract, Performs construction: | *N* |
| Headquarters location: | Gov. Contract, Other contract type: | *N* |
| Branch Name/Location 1: | Gov. Contract, Unknown contract | *N* |
| Branch Name/location 2: | Est. expiration date of gov. | |
| ER business status: | Estimated EEs affected: | |
| Estimated $ADV: | Special Coverage: | |
| Nature of Business: | Franchise: *N* | |
| Interstate Commerce: | Union Shop: *N* | |
| Number Of Employees: | ER Exempt? *N* | |

### Person Submitting Information

| | | |
|---|---|---|
| Name: *Jones, Garrison* | Primary Phone: *916-870-4060* | ext. |
| Address: *705 West Liberty Drive Wheaton, IL, 60187* | Other Phone: | ext. |
| | Fax: | ext. |
| | Email: | |
| | If not complainant, EE Name: | |
| Is Customer complainant? *Y* | | |
| Verbal permission to use name *N* | Verbal notification of Private Right Action *N* | |
| Written permission to use name *N* | | |
| Written permission to use name *N* | Relationship: | |

| Alleged Act | Alleged Violation | From | To | Notes |
|---|---|---|---|---|
| *FMLA* | *Discrimination (e.g. disciplinary action)* | | | |

| | | |
|---|---|---|
| Date: 09/29/2020 3:47:49 PM | Customer ID: 3850645 | Page 1 |

## WHISARD Complaint Information Form

Most critical act:  *FMLA*

### Employment Information

Job title:

Description of duties:

Employed From:                    To:

Employee status:

Date of Birth:

Employee age at time of complaint:

Employee age at time of violation:

### Payroll Information

Pay rate:

*Hours Worked:*

Sun  Mon  Tue  Wed Thu  Fri   Sat

Avg. hrs per day:

Days worked per week:

Total hrs per week:

Pay period:

Time records kept:     *N*

### Complaint Notes

*CP Jones wishes to file complaint againt Velocity Technology.CP feels that the Company was busy against her for filing discrimination complaint regarding FMLA..*

*CP alleges that she did not received the notification in the required  five business days*
*CP alleges no  conversation was ever held with any Rep from Velocity.*

*No other documents(e-mail) were received to support provision that is offgered on FMLA.*

*CP Jones alleges that Human Resource Director Shauna Coleman never mailed anything to her home.*

*CP alleges never receiving any FMLA information in the required timeframe  that she did not receive any FmLA information in the required time frame.*

*CP feels that company is retaliating against her due to her filing a discriminaiton complaint against Velocity.*

*CP alleges that company is trying to cover there tracks concerning the documents that were lleges that based on the communicaitons withj Velocity Technology are covring tyheree tracks that they prov idced CP with the documents in regards to taking FMLA.*

*CP alleges that Human Resource Shauna Coleman alleges sent e-mail concerning issues of the injury date and year she was hire.*

*CP alleges that dates that VTS claims were in correct and are trying to cover themselm.*

*CP states in the letter that she never made any such statement.*

*CP wishes to file complaint against VTS alleging that company made false claims of her requesting FML.*

*CP wants it on recordsthat company might try to terminate her for false claim of non compliance with FMLA*

*CP stated that she attachment of email to support her complainbt. No attachement was included with this compla9int.*

*CP feels that VTS is retaliating against her for filing discriminaiton compklaint and feel they dropped the ball on providing the documents on FMLA.*

*Its CP words against VTS that they*

## WHISARD Complaint Information Form

*CP alleges that the requested time she put in with VTS is incorrect to the time she was off on FML.*
*CP alleges tht she did not ask for certain off and know HR is trying to covers it tytrack.*

*Chicago DO received a withdrawal letter from attorney citing a settlement between CP and her ER.*

Contact Log:

*08/24/2018 1:43:46 PM*          *FILED-NO ACTION*

*07/19/2018 5:14:44 PM*          *INTAKE ONLY*

*Jamaica Hospital*
*4/9/18*

**To:** Vishnu Laljie <VLALJIE@jhmc.org>
**Date:** 4/9/2018 8:42 PM
**Subject:** Re[2]: Garrison Jones Offer Letter

I need a couple days to go over this with family

Monday, 09 April 2018, 11:25AM -05:00 from Vishnu Laljie vlaljie5_6i2@indeedemail.com:

Garrison,

I sent you an email on Friday that we did get approval from my CFO to extend your the offer at 160k. Any word?

Please let me know

Vishnu

*160 K*

*Job Offer*

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Meister, Christopher J. <Christopher.Meister@ogletree.com> |
| **Sent:** | Friday, May 4, 2018 8:28 AM |
| **To:** | Garrison Jones |
| **Subject:** | RE: |

Mr. Jones, I am writing to follow-up on our conversation on Wednesday. It is unfortunate that you again lost your temper and hung-up because I was only trying to clarify for you what the confidential settlement negotiation process entails. Despite your recent behavior, my client is willing to try one more time to reach an amicable resolution. My client would prefer to resolve this matter in this way as opposed to taking the various legal avenues available.

If you are interested in doing so, you must understand that we will need to first agree on both monetary and non-monetary settlement terms and then reduce those terms to writing. You will then be provided the opportunity to review the settlement agreement and will need to sign it if it is agreeable to you. You will then be paid after you have signed the agreement and the period of time the law requires us to give you has expired. If you understand this process and are willing to engage in good faith settlement negotiations, please let me know.

Please understand that my client's willingness to have any further confidential settlement discussions is contingent upon you not engaging in any further misconduct. Please also understand that by engaging in further settlement discussions my client is not waiving its rights to take action against you for prior misconduct. Thank you for your time and responsible attention to this vitally important matter.

**Christopher J. Meister | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax: 602-778-3750
christopher.meister@ogletree.com | www.ogletree.com | Bio

**From:** Garrison Jones [mailto:garrison.jones@outlook.com]
**Sent:** Tuesday, May 01, 2018 1:57 PM
**To:** Meister, Christopher J. <Christopher.Meister@ogletreedeakins.com>
**Subject:** Re:

Available between 10 am and 1 pm cdt

Get Outlook for iOS

**From:** Meister, Christopher J.<Christopher.Meister@ogletree.com>
**Sent:** Tuesday, May 1, 2018 3:55:22 PM
**To:** Garrison Jones
**Subject:**

Good afternoon. I wanted to check on your availability for a call tomorrow. Please let me know what works best for you.

**Christopher J. Meister | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax: 602-778-3750
christopher.meister@ogletree.com | www.ogletree.com | Bio

**B.**   **Analysis**

According to the Complaint, Velocity employed Plaintiff from February 2017 to March 2018.[1]  Dkt. 1 at 22, ¶ 21.  Plaintiff alleges that Velocity terminated his employment while on FMLA leave relating to a stroke he suffered on November 17, 2017.  *Id.*  Plaintiff further alleges that Velocity notified him of his rights regarding FMLA leave in January 2018.  *Id.* at ¶ 23.  As the Court correctly noted, Plaintiff fails to allege exactly when he first requested leave, or when his leave actually began.  *See,* Dkt. 1 generally; Dkt. 29 at 6.  The Complaint also does not provide any statement regarding whether Plaintiff performed work between the date of his stroke and notice of FMLA rights.  *Id.*

However, Plaintiff included as an exhibit to the Complaint a copy of the Notice of Eligibility and Rights & Responsibilities under the Family and Medical Leave Act (Form WH-381) provided to him by Velocity.  Dkt. 1 at 44.  According to the information in that Notice, Plaintiff first informed Velocity of his request for FMLA leave on or about February 8, 2018, and requested leave dating back to November 18, 2017 – the day after his stroke.  *Id.*  Although Velocity erroneously granted Plaintiff leave,[2]  this information establishes that Plaintiff did not qualify for FMLA leave as of the first date of requested leave – November 18, 2017 – because that was only about nine months after his employment with Velocity began.  *See,* Dkt. 1, generally.  Because the Complaint and this exhibit demonstrate Plaintiff had not been employed by Velocity for twelve months when he requested FMLA leave on November 18, 2017, the Order & FAR should have dismissed the FMLA interference claim.

Additionally, the Complaint fails to allege that Velocity employed Plaintiff at a worksite with at least fifty employees within a seventy-five mile radius.  To the contrary, Plaintiff alleges facts that rebut any such finding.  First, Plaintiff alleges that Velocity maintains two physical office locations – in Minneapolis, Minnesota and Charlotte, North Carolina.  Dkt. 1 at 19, ¶ 6.  Second,



---

[1] Plaintiff's employment with Velocity actually ended August 16, 2018, not in March of 2018, but Velocity recognizes that at this stage of the case, the Court must presume all well-pleaded allegations in the Complaint are true.  The actual date Plaintiff's employment ended is not relevant to Velocity's objections to the Order & FAR.

[2] Velocity's error should play no role in the ultimate resolution of this dispute because as a matter of law, Plaintiff was not entitled to the protections of the FMLA.

43863076_1.docx

DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Chris Heller <chris.heller@velocitycloud.com> |
| **Sent:** | Thursday, March 15, 2018 9:39 AM |
| **To:** | Garrison Jones |
| **Cc:** | Shauna Coleman |
| **Subject:** | RE: Investigation |

Garrison,
You are incorrect.  Velocity is not abandoning its internal investigation.
As we have indicated numerous times, Velocity has investigated and continues to investigate this matter.
Per prior correspondence, we have determined based on the information provided to date we don't need to have an interview with you at this time.
We may need to schedule an interview with you at some point in the future.


**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**
o  704.593.3423| m  816.678.5162 | f  703.935.4308 | velocitycloud.com


**From:** Garrison Jones <garrison.jones@outlook.com>
**Sent:** Thursday, March 15, 2018 9:27 AM
**To:** chris.heller@velocitycloud.com
**Cc:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Subject:** Investigation

So please confirm Velocity is abandoning its internal investigation  , is that correct ?

STATEMENT OF CONFIDENTIALITY

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

12/98/2612

REF #2419311

# Lincoln
### Financial Group®

The Lincoln National Life Insurance Company
8801 Indian Hills Drive, Omaha, NE 68114-4066
Toll free (800) 423-2765
www.LincolnFinancial.com

**GROUP CONTINUANCE OF DISABILITY**
**(PLEASE see FRAUD NOTICES attached)**   (877) - 843 - 3956

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
Velocity Technology Solutions, Inc. IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS
FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER
EXPENSE.

## Attending Physician's Statement

1. Patient's Name   Garrison Jones                    Date of Birth  Redacted

2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any)
stroke (L PICA, R PCA) w/ residual LLE weakness, b/l visual deficit

3. a) Date of First Treatment   11/22/2017
   b) Date of Most Recent Treatment   12/21/2017
   c) Frequency of Treatments   2-3x/week
   d) Type of Treatment Rendered   physical therapy
   e) Is surgery scheduled? If so, when?   n/a

4. The patient has been continuously Totally Disabled (unable to perform regular job) from _____ to _____
   The patient has been continuously Partially Disabled (some restrictions or light duty) from  11/22/2017 to 3/22/2018
   If the patient is still disabled, when should the patient be able to return to work?  re-eval 3/22/2018

5. Remarks or Comments:  pending further PT/neuro rehab, then ophthalmology

6. List Restrictions and Limitations:  visual impairment, weakness require FWW for ambulation

7. Physical Impairment:
   Class 1 – No limitation – capable of heavy work – No restrictions (1-10%):
   Class 2 – Medium manual activity (15 – 30%)
   Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)
   Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)
   Class 5 – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments ( if applicable)
   Class 1 – Patient is able to function under stress and engage in personal relations (no limitations)
   Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)
   Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)
   Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)
   Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date 12/21/17   Signed _____   /Degree/Specialty  Family Med, MD
   (Month Day Year)   (Attending Physician, No Stamps, please)

   Street Address   2927 N 7th Ave
   City, State   Phoenix, AZ
   Phone Number   662 406 3153
   Fax Number   602 406 7176

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC-01450PTD

Page 1 of 3
10/10



**garrison.jones@outlook.com**

**From:**
**Sent:**              Friday, October 22, 2021 7:24 AM
**To:**                garrison.jones@outlook.com
**Subject:**           dude

Whatever you are doing has them shivering in their boots.  They are dropping like flies.  The CEO Steve left about a month ago too.

They say Chad is looking too. Lol  Its crazy as hell, they are dropping like flies.  None of the C-Suite execs that were here when you were her  are all gone.

I know Navisite has been having interviews with anybody that was involved in your mess and I think they have given them notice that this is not going to be tolerated
.
There is this one guy who I think is either Black or from the middle east that I think is cleaning house of all the crud that was here from Velocity.

They got some real bad feedback from customers who claim Velocity sent unqualified people to do a job and they fucked it up and they were overbilled where velocity gave them credit but did not refund any money.  Lol.  They got busted when a consultant who was a contractor told a customer Velocity told him to say he was and employee.  They did not like that.  They asked for a business card and he never gave them one.

I may be out of here soon, it's getting too toxic here.  Hope you are doing well.   I miss working with someone who knows what the hell he is doing.

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | |
| **Sent:** | Friday, October 22, 2021 7:21 AM |
| **To:** | garrison.jones@outlook.com |
| **Subject:** | dude |

Dude I know we have not talked in a while but wanted to let you know Shauna Coleman just quit and they say its directly because of you.

Whatever you are doing has them shivering in their boots.  They are dropping like flies.  The CEO Steve left about a month ago too.

They say Chad is looking too. Lol  Its crazy as hell, they are dropping like flies.  None of the C-Suite execs that were here when you were her  are all gone.

I know Navisite has been having interviews with anybody that was involved in your mess and I think they have given them notice that this is not going to be tolerated
.
There is this one guy who I think is either Black or from the middle east that I think is cleaning house of all the crud that was here from Velocity.

The got some real bad feedback from customers who claim Velocity sent unqualified people to do a job and they fucked it up and they were overbilled where velocity gave them credit but did not refund any money.  Lol.  They got busted when a consultant who was a contractor told a customer Velocity told him to say he was and employee.  They did not like that.  They asked for a business card and he never gave them one.

I may be out of here soon, it's getting too toxic here.  Hope you are doing well.   I miss working with someone who knows what the hell he is doing.