*Garrison Jones*
Plaintiff (Pro Se)

P.O. Box 188911

Sacramento, California 95818

garrison.jones@outlook.com





# U.S. DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARRISON JONES**<br><br>**Plaintiff,**<br><br>v.<br><br>**VELOCITY TECHNOLOGY SOLUTIONS LLC et al**<br><br>**Defendants.** | **Case No.: 2:19-cv-02374 KJM-EFB JDP (PS)**<br><br>**Plaintiff Notice to Court Grounds of Appeal Document 98**<br>**JURY TRIAL DEMANDED**<br><br>Judge: The Honorable Jeremy Peterson<br><br>Date Action filed:  Nov 25, 2019<br><br>Date set for trial: NONE |

**Plaintiff Second Amended Complaint per Document 98**

- 1 -

## Introduction

Plaintiff first wants to **remove all doubt that the plaintiff was not terminated by Velocity while on FMLA.**

Respectfully submits **exhibits Prime 1 thru 3**

1. In Document 35 filed by Velocity /Ogltree Deakins attorney decristoforo he clearly states "plaintiff's employment with Velocity ended August 16, 2018, not in March of 2018"

2. Even though he is lying this does not match up with all the events and documented facts. Plaintiff was terminated in March 2018.

---

26

[1] Plaintiff's employment with Velocity actually ended August 16. 2018. not in March of 2018. but Velocity recognizes

27 that at this stage of the case. the Court must presume all well-pleaded allegations in the Complaint are true. The actual date Plaintiff's employment ended is not relevant to Velocity's objections to the Order & FAR.

28 [2] Velocity's error should play no role in the ultimate resolution of this dispute because as a matter of law. Plaintiff was not entitled to the protections of the FMLA.

3                    Case No. 2:19-cv-02374-KJM-EFB

DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION

a.

## Prime 1 - Prime Offer Letter dated June 14, 2018

b. Plaintiff was a Prime Corporate employee in Ontario Californía working out of their facility in Bloomington, Indiana as Prime knew he suffered a stroke and wanted him to cut down on travel distance and cover the east coast of the country.

**Prime 2 – Prime** Healthcare Smarthire notification completion of hire process **June 18, 2018 he was not employed at Velocity.**

**Bank 1**– First payroll Direct Deposit Prime Healthcare July 19, 2018

**Fraud 1** - Fraud charges filed by Velocity after stalking plaintiff learning he is employed at another organization July 2018

**Fraud 2-** Arizona Court of Appeals – 1 Reversal of false fraud **charges Decision**

**Arizona Medicaid Card -**

Plaintiff claims and alleges that there are more than one intentional act of interference other than the unlawfully termination of plaintiff while on approved FMLA medical leave. There are multiple intentional acts of interference by the defendants Velocity and their attorneys from Ogltree Deakins. From February 20, 2018 thru August 2018. Velocity extended his FMLA medical leave on May 8, 2018 and after that date and during the "extended FMLA by Velocity they commit multiple acts of intentional interference in the extended portion of plaintiff FMLA medical leave.

Plaintiff Garrison Jones was hired by Velocity on February 20, 2017 as a Lead Supply Chain Consultant.

He was the only Lawson Supply Chain Consultant in the entire organization of over 500 employees and the only one in the entire Lawson Practice. He was considered in the to 10 percent of Lawson Supply Chain Consultants in the country and brought with him 27 years of experience where he had implemented and consultant Lawson Supply Chain software in over 300 hospitals throughout the Unites States, Canada, Australia and the United Kingdom.

1- At the time he was hired, there were no other consultants in the Lawson supply chain vertical that reported to him.

2- On November 17, 2017 he suffered a job related Hemorrhagic stroke.

3- Velocity was notified off this medical condition on November 18, 2018 and Shauna Coleman Velocity HR Director acknowledged it on Monday November 20, 2017.

4- Velocity approved plaintiff for FMLA Medical leave on February 20, 2018 and from 1 day from his approval of FMLA medical leave Velocity intentionally denied and interfered with his rights under MLA including termination of plaintiff while on FMLA.

5- In addition, one of the most heinous acts of FMLA interference was after Velocity unlawfully extended his FMLA leave on or around July 2018 they interfered with his extended FMLA leave and filed a false charge of unemployment fraud against him, in their efforts to induce AZDES to contact and weaponize law enforcement to charge him with a felony.

6- To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which he was entitled under the FMLA.

7- To state a prima facie claim for interference under the FMLA, a plaintiff must allege the following:

8- Plaintiff Garrison Jones alleges that he was an eligible employee under the FMLA.

9- Velocity was an employer he was granted and approved for FMLA medical leave by Velocity on February 20, 2018.

10-     Plaintiff gave proper notice to Velocity of his serious medical condition on November 18, 2017

11-     Velocity on February 20, 2018 thru May 15, 2018 on his one year anniversary of employment.

12-     Velocity after they had approved his FMLA on multiple occasions Velocity and their attorneys from the law firm of Ogltree Deakins interfered and denied his rights to exercise FMLA on multiple occasions while on approved FMLA and Velocity unlawfully terminated him while on approved FMLA medical leave.

13-     medical leave terminated him on March 15, 2018 and intentionally interfered in his rights under FMLA on multiple occasions in violation of Violation of FMLA , § 2615(a) (1)

14-     Rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA].

15-     In addition Velocity violated  provision, § 2615(a)(2), provides: where  "It shall be unlawful for any employer to **discharge** or in any other manner discriminate against any individual for opposing any practice made unlawful under FMLA.

16-     (2) The defendant Velocity/Navsite is an employer as defined by the FMLA; (3) the plaintiff was entitled to take leave under the FMLA; (4) he gave proper official notice on November 18, 2018 of his serious medical condition (a stroke) and Velocity intentional interfered and denied in his rights under FMLA including his termination while exercising his rights under FMLA.

17-     Velocity failed to properly administer FMLA so on documents they listed two separate dates but included the original notification date of November 18, 2017.

18-    Plaintiff made the proper notifications on two occasions gave notice to the defendant Velocity of his intention to take leave; and (5) he was denied the benefit to do so on over 9 separate occasions the right to exercise his rights under FFMLA he was entitled under the FMLA on multiple occasions between February 20, 2018 and May 15, 2018.

19-    Plaintiff claims and alleges that Velocity repeatedly committed multiple violations and interferences of his FMLA rights under FMLA while he was exercising his protected rights under FMLA medical leave including terminating the plaintiff while he was on approved leave under FMLA and violations of FMLA regulations and prohibited acts.

20-    Plaintiff claims and alleges not only did Velocity interfere with his rights under FMLA **Velocity badgered plaintiff with multiple calls and emails to his personal email accounts at all times of the day and night where none of these commutations were related to or connected to FMLA and done while on approved medical  FMLA.**

21-    They did this with calls and emails well after business hours forcing him to work and respond to their demands on non FMLA items that interfered with his recovery from a stroke even before his FMLA the revoked his access to Velocity email, systems where all this communication after January 17, 2018 was sent to his two personal email accounts without his permission or consent.

**From:** Garrison Jones <garrison.jones@outlook.com>
**Sent:** Wednesday, January 24, 2018 2:04:55 PM
**To:** Chris Heller
**Subject:** Re: Email rejection

22- Business hours only I am currently in an occupational therapy session

- 6 -

23- Get Outlook for iOS

---

**From:** Chris Heller <chris.heller@velocitycloud.com>
**Sent:** Wednesday, January 24, 2018 2:03:15 PM
**To:** Garrison Jones
**Subject:** RE: Email rejection


Garrison,

I need to be able to send you an email responsive to your prior emails regarding the matters we are investigating and additional information related to such matters.

I was working towards sending this later tonight.

Do I need to wait to send this during the day so it does not come to you at any inconvenient time after business hours?

Please advise.

Thanks,
Chris


**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**

a. 704.593.3423| m 816.678.5162 | f 703.935.4308 | velocitycloud.com


**From:** Garrison Jones [mailto:garrison.jones@outlook.com]
**Sent:** Wednesday, January 24, 2018 2:56 PM
**To:** Shauna Coleman <shauna.coleman@velocitycloud.com>; Wendy Cauthen <wendy.cauthen@velocitycloud.com>; chris.heller@velocitycloud.com
**Subject:** Email rejection

Not sure who sent the message however today I noticed that there were two email rejection messages sent to someone From blasted it as a rule I have turned on the do not disturb feature.  It automatically puts that email address on the blacklist to prevent that individual from communicating with me. I will not change it is very unprofessional and unethical to be sending emails at 9:30 PM Arizona time which means That it is at least 11:30 PM Eastern time. There is no reason why anybody from Velocity should be emailing me at that time of night unless you are emailing me As  to Informed me that one of my children have died in that case you should pick up the phone and call. When Velocity cut my email access, it does not give anyone privileges or the green light to abuse my personal email any time you want. As you folks have eloquently put I am on medical leave recovering from a major stroke. It had to be someone from Velocity as all I see is the domain name that was rejected. I consider this continued harassment and another act of retaliation. It's whatever communication that is that urgent you should put it in a letter form and send it overnight don't ever email me again after normal business hours who's ever email address it was associated with that message is permanently on the block list in my email thank you

STATEMENT OF CONFIDENTIALITY:

24-    There was communication sent after business hours and as late as 1:30 am in the morning to the plaintiff from Velocity asking and forcing him to respond claiming it was urgent and essential they contact him.  Even after they were specifically told not to contact him after business hours.

25-    They did not care about his recovery from a major stroke or anything about his medical condition.  There was nothing urgent about his work assignments that was ever relayed to him ever.

26-      After his stroke, they had to go outside the organization to find a Lawson Supply Chain consultant as there was no qualified employee within the organization that could replace him.

27-      Even after his stroke, plaintiff got multiple calls and emails from customers stating the person Velocity hired to replace him did not have a clue of what they were doing.

## COUNT ONE

*Violation of FMLA rules and regulations  2615(a) (1) where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee,  2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]*


Velocity failed to notify plaintiff of his FMLA eligibility in 5 business days after they were notified of his serious medical condition on November 18, 2017 t denied him of the benefit of FMLA medical leave and engaged in an adverse employment action resulting in damages.

28-      Plaintiff re-alleges and incorporates by reference each and every allegation

contained in the previous paragraphs of this Complaint as though fully set forth herein.

29-      The plaintiff suffered a serious major health medical condition a Hemorrhagic stroke an on November 1 7, 201 7.

FMLA Interference occurred when Velocity failed to notify plaintiff of FMLA

eligibility rights within 5 business days of when employer obtained knowledge and was notified of his serious medical condition on November 18, 2017.

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Monday, November 20, 2017 10:00 AM |
| **To:** | Garrison Jones |
| **Subject:** | Checking In |

Hi Garrison.

Michael reached out to me that your daughter called over the weekend. We hope you are well. Michael I on PTO this week so I wanted to reach out and see how you were and if you were out of the office or working.

Please give me a call if needed.

Thank you

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | velocitycloud.com

**30-      Per FMLA Eligibility and Rights and Responsibilities Notice Requirements**

a. Velocity (**the employer**) was required and must notify the employee (the

b. employee of his rights and eligibility under FMLA of eligibility notice may be

c. either oral or in writing and must: **be provided within five business days of the** when the employer acquires knowledge that an employee leave may be for an FMLA-qualifying reason;

31-     Employer must at the time the gain knowledge inform the employee of his or her eligibility status; and if the employee is determined to be eligible or not eligible for FMLA leave, and state at least one reason why.

 HR Director Shauna Coleman fails to do so.

32-     However in her first communication over 2 months later she confirms **and** she list 2 separate dates of notification of serious medical condition of February 8, 2018, 2/20/2018 and the original date of 11/18/2017.

 The actual date of notification was **11/18/2017** and Velocity at that time should

have in 5 business days notified and communicated the FMLA eligibility of the

Plaintiff and again failed to do so in violation and interference of his FMLA rights. First day  2/20/2018 date FMLA began.

Velocity failed to notify the plaintiff of any of his rights under FMLA and as by

virtue of their failure to notify him in 5 business days violated his rights under

FMLA and was the first occurrence of FMLA interference.

Velocity did not notify him of any FMLA rights or eligibility until January 23, 2018 more than 67 days later.

**33-**     Velocity even put the correct date on  federal government Notice of Eligibility and Rights and Responsibilities ( Family and Medical Leave Act form WH#381 **where she puts two dates of notification 2/20/2018 and the real original date of notification of 11/18/2017 when she was actually notified.**

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Monday, November 20, 2017 8:00 AM |
| **To:** | Garrison Jones |
| **Subject:** | Checking In |

Hi Garrison,

Michael reached out to me that your daughter called over the weekend. We hope you are well.  Michael I on PTO this week so I wanted to reach out and see how you were and if you were out of the office or working.

Please give me a call if needed.

Thank you

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | velocitycloud.com

**Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act)**

**U.S. Department of Labor**
Wage and Hour Division



OMB Control Number: 1235-0003
Expires: 5/31/2018

In general, to be eligible an employee must have worked for an employer for at least 12 months, meet the hours of service requirement in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. While use of this form by employers is optional, a fully completed Form WH-381 provides employees with the information required by 29 C.F.R. § 825.300(b), which must be provided within five business days of the employee notifying the employer of the need for FMLA leave. Part B provides employees with information regarding their rights and responsibilities for taking FMLA leave, as required by 29 C.F.R. § 825.300(b), (c).

**[Part A – NOTICE OF ELIGIBILITY]**

TO: **Garrison Jones**
_____
Employee

FROM: **Shauna Coleman**
_____
Employer Representative

DATE: **February 20, 2018**
_____

On **February 8, 2018** _____, you informed us that you needed leave beginning on 2/20/2018  Original On 11/18/2017   for:

_____ The birth of a child, or placement of a child with you for adoption or foster care;

✔ Your own serious health condition;

_____ Because you are needed to care for your _____ spouse; _____ child; _____ parent due to his/her serious health condition.

_____ Because of a qualifying exigency arising out of the fact that your _____ spouse; _____ son or daughter; _____ parent is on covered active duty or call to covered active duty status with the Armed Forces.

_____ Because you are the _____ spouse; _____ son or daughter; _____ parent; _____ next of kin of a covered servicemember with a serious injury or illness.

This Notice is to inform you that you:

✔ Are eligible for FMLA leave (See Part B below for Rights and Responsibilities)

_____ Are **not** eligible for FMLA leave, because (only one reason need be checked, although you may not be eligible for other reasons):

_____ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately ___ months towards this requirement.

34-

This is a violation of FMLA and interference because there could not be two dates of notification.

If you have any questions, contact Shauna Coleman at shauna.coleman@velocitycloud.com or view the

FMLA poster located in _____ .

**[PART B-RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]**

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period.  **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by** previously provided _____ . (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances.)  If sufficient information is not provided in a timely manner, your leave may be denied.

✔  Sufficient certification to support your request for FMLA leave. A certification form that sets forth the information necessary to support your request ____ **is/** ✔ **is not enclosed.**

____  Sufficient documentation to establish the required relationship between you and your family member.

____  Other information needed (such as documentation for military family leave): _____

_____

_____

____  No additional information requested

Page 1                                        CONTINUED ON NEXT PAGE                          Form WH-381  Revised  February 2013

# 35-    DESIGNATION NOTICE REQUIREMENTS

The employer is responsible in all circumstances for designating leave as FML qualifying and giving notice of the designation to the employee.

Failure to follow the notice requirements constitute **an interference with, restraint, or denial of the exercise of an employee's FMLA rights.**

An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement promotion, or any other relief tailored to the harm suffered. Velocity intentionally failed to notify plaintiff of his rights under FMLA whether he was eligible or not.

36-    Shauna Coleman acknowledges on November 20, 2017 the knowledge
notification of plaintiff serious medical condition

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Monday, November 20, 2017 8:00 AM |
| **To:** | Garrison Jones |
| **Subject:** | Checking In |

Hi Garrison,

Michael reached out to me that your daughter called over the weekend. We hope you are well.  Michael I on
PTO this week so I wanted to reach out and see how you were and if you were out of the office or working.

Please give me a call if needed.

Thank you

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | velocitycloud.com

## COUNT TWO

*Violation of FMLA rules and regulations  2615(a) (1) where it makes it
unlawful for an employer to "interfere with, restrain, or deny the exercise of the
FMLA rights of an employee,  2615(a) (1); to "discharge or in any other
manner discriminate against any individual for opposing any practice made
unlawful by [the FMLA].*

*Velocity intentionally failed to provide plaintiff with accurate FMLA eligibility
information after they were notified of his serious medical condition on*

*November 18, 2017.   Velocity denied him of the benefit of FMLA medical leave and engaged in an adverse employment action resulting in damages.*

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein

37-   Plaintiff Notified Velocity of his serious medical condition on November 18, 2017.

38-   Velocity first notified the plaintiff of FMLA rights on January 23, 2018 more than 67 days after plaintiff notified them of his serious medical condition and stroke on November 18, 2017.  However Velocity intentionally provided him with inaccurate information constitutes Interference of the FMLA rights of the plaintiff.

39-   In addition Velocity Shauna Coleman committed a **third occurrence of FMLA interference**

40-   Where on the same day **January 23, 2018** Velocity HR Director Shauna Coleman provided **inaccurate information as to the plaintiff eligibility and the FMLA work site of** 50 employees within 75 miles" eligibility criteria, where she **falsely/incorrectly claimed he did not report to a worksite where 50 or more employees reported to**.

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
Sent: Tuesday, January 23, 2018 7:53:58 PM
To: garrison.jones1724@outlook.com; Garrison Jones
Subject: FMLA - Garrison Jones

Good Evening Garrison,

We wanted to review your request for FMLA with you. Per the <u>Notice of Eligibility and Rights & Responsibilities (Form WH-381)</u>. You are not eligible for FMLA leave, because you do have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately <u>8</u> months toward this requirement. In addition, you do not work and/or report to a site with 50 or more employees within 75-miles.

Velocity's FMLA calculation practice for eligible employees aligns with the Federal DOL regulations; which is a maximum of 12 weeks coverage within a 12 month period. Our calculation runs concurrently with short-term disability.

41-

This would be true even if his residence was 200 or 300 miles away from the office where his assignments originated and were given.

Shauna **Coleman intentionally gave plaintiff inaccurate FMLA information.**

42-     In Addition she incorrectly applied per Federal DOL requirement where an employer is prohibited to declare delay or extend the FMLA f an employee where she claims the calculation requires his short term disability runs "concurrently with the DOL with his FMLA leave when plaintiff was not eligible to FMLA until February 20, 2018 per Velocity.

43-     Per Velocity plaintiff was not eligible in November 2017 but she is falsely claiming his disability and FMLA runs concurrently when at same time claiming he does not quality and was not eligible for FMLA both inaccurate per the rules and regulations of FMLA and is a gross act of interference.

44-     He only went on Short Term Disability in January 2018. From November 18, 2017 until January 23, 2018, there was no communication between plaintiff and Velocity of FMLA rights or eligibility of FMLA at all. There were no concurrent or parallel of his disability and FMLA medical leave.

45-     Velocity HR Director, Shauna Coleman intentional provided plaintiff with inaccurate FMLA information, from the start and continued to do this before and throughout his FMLA leave.

46-     As such this constitutes denial and interference in the rights of FMLA by Velocity against the plaintiff.

47-     If plaintiff was eligible for FMLA his leave cannot be delayed to start nor would the employer be able to extend it past the 12 week maximum.  The statement of alignment and concurrent were completely inaccurate and a clear violation of interference FMLA rights of the plaintiff.

## WORKSITE

48-     The plaintiff just like many other consultants was a remote employee assigned to the Minneapolis, Minnesota work site where he reported to and where his assignments were issued.   His business card reflects his position of Senior Lawson/Infor Supply Chain Consultant and his work site of Minneapolis, Minnesota at 1200 Washington Suite 200, Minneapolis, Minnesota 55415 where he was assigned to and where more than 50 Velocity employees report to including the plaintiff.

49-     Velocity is laying the ground work of interference by forcing/ incorrect FMLA regulations to make plaintiff ineligible for FMLA claiming plaintiff does not meet the criteria for FMLA.

50-     However, there are many hundreds of Velocity employees scatted around the country who work as remote employees under the same condition as plaintiff.

51-     There was one employee that took FMLA twice who went to China for adoptions while on FMLA and he lived further than plaintiff and Velocity approved his FMLA twice.

52-     They are/were specifically doing this for their intentional interference in the FMLA rights of the plaintiff.

- 18 -

**GARRISON JONES**
Senior Lawson/Infor Supply Chain Consultant
garrison.jones@VelocityCloud.com

Velocity Technology Solutions, Inc.
1200 Washington Avenue South, Suite 200
Minneapolis, MN 55415

w 916.870.4960
c 913.870.4960

53-

**54-**     **Exhibit 2-1 Email Shauna Coleman   January 23, 2018**

55-      Per FMLA regulations related to remote employees the plaintiff met this **eligibility criteria.**

56-      Therefore, the plaintiff just like many other consultants and employees .w He was receiving his assignments from the Minneapolis location as a worksite to which he and the other consultants all used to report, that Worksite would be considered her worksite because more than least 50 company employees are within 75 miles work at that site, the plaintiff would meet the "50 employee 75 mile criteria.  It was all a scheme and ploy even before plaintiff was unlawfully terminated.

57-      Plaintiff **was eligible** even if his residence was 200 or 300 miles away from the office where his assignments originated and were given per FMLA regulations.

**58-      Shauna Coleman intentionally gave plaintiff inaccurate FMLA eligibility information.**

### Count THREE

*Violation of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA].*

*Velocity denied him of the benefit of FMLA medical leave and engaged in an adverse employment action resulting in damages by failing to provide FMLA certification documents per FMLA rules and regulations.*

Plaintiff re-alleges and incorporates by reference each and every allegation

contained in the previous paragraphs of this Complaint as though fully set forth herein.

59-      Plaintiff alleges and claims alleges Velocity HR Director, Shauna Coleman communicated to the plaintiff on February 14, 2018 that his approved FMLA medical leave would begin on February 20, 2018 until May 15, 2018, however she failed to send plaintiff the required FMLA certification documents in violation of FMLA rules and regulations that state an employee must be sent any and all FMLA certification and designation of leave documents by the employer.

60-      She claims documents were attached to the email however, **there were no attachments.**

61-      Plaintiff gained possession of these documents prior to an appeal hearing over a year later in October 2019.  This was a procedure of the Arizona Court of Appeals where the party is sent all documents that would be used by the plaintiff and employer.

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
To: garrison jones <garrison.jones1724@outlook.com>, Garrison Jones
<garrison.jones@outlook.com>
Date: Wednesday, February 14, 2018, 10:59 AM -0700
Subject: Re: FMLA - Garrison Jones

Hello Garrison,

As you know, you have been on a medical leave of absence since November 18, 2017.  During this time, you have applied for and received short term disability benefits.  Your current medical leave of absence expired with the ending of your short term disability benefits on January 27, 2018, which is why we sent you the FMLA paperwork on January 23, 2018.  You returned that paperwork to us on February 8, 2018.

Thank you for submitting the FMLA paperwork (certification form).  We have evaluated your certification form and determined that you do not currently meet the eligibility requirements for FMLA, which require that you have been employed for 12 months.

That said, since your short-term disability and medical leave of absence ended on January 27, 2018 and in close proximity to your one year employment anniversary, Velocity, although it is not required to do so, will extend your unpaid medical leave to your one-year anniversary, February 20, 2018.  On that day, you become eligible for FMLA leave and Velocity will start you on FMLA leave for 12 weeks.

Your FMLA leave will run from February 20, 2018 to May 15, 2018.  You will be required to provide a re-certification of your medical status from your healthcare provider prior to May 15, 2018 so that we can evaluate continued eligibility and potential return to work.  Attached are the "Notice of Eligibility and Rights & Responsibilities" document.

Best,

Shauna Coleman

62-      **3-1 email dated 2,14,2018 Shauna Coleman There is no attachment**

63-    A document with attachments is shown as proof.   This attachment was from Ogltree Deakins attorney Christopher Meister on May 21, 2018 it clearly shows the attachment.

**garrison.jones@outlook.com**

**From:** Meister, Christopher J. <Christopher.Meister@ogletree.com>

**Sent:** Monday, May 21, 2018 2:15 PM

 Garrison Jones

**Attachments:** Jones Confidential Medical Records.pdf; 20180518155027747.pdf

Mr. Jones attached please find your personnel and confidential medical records files. Thank you.

**Christopher J. Meister | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**

Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax: 602-

778-3750

christopher.meister@ogletree.com | www.ogletree.com | Bio

64-    The plaintiff received these documents identified as employer exhibit #5 two days before appeal hearing on October 21, 2019 a year later from the clerk at the Arizona Court of Appeals, where they sent them as "employer exhibits" falsely claiming plaintiff was not eligible to receive employment be benefits because as Velocity was claiming he was on approved FMLA medical leave to prevent him to get benefits after he was unlawfully terminated.

65-    **3-2  USDOL FORM WH-381 received from Arizona Court of Appeals clerk on October 21, 2019 a year later after plaintiff appeal.**


**COUNT FOUR**

*Violation of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA]. Velocity not only interfered in his rights under FMLA but also denied him of the benefit of FMLA medical leave and engaged in an adverse employment action resulting in damages.*

66-      Plaintiff re-alleges and incorporates by reference each and every allegation

Contained in the previous paragraphs of this Complaint as though fully set forth herein.

67-      Where plaintiff claims and alleges Velocity committed FMLA

Interference and retaliation. 26. Prior to FMLA medical leave was approved by Velocity, in retaliation of the plaintiff submitting a complaint to HR on January 16, 2018 Velocity.  After he sent documents per the request of Velocity began to retaliate against him.

**Exhibit 4**

**68-      4-1 email Shauna Coleman "12 22, 2017 on plaintiff Velocity email account.** First before these events Velocity claiming collection of premiums when return to work - 12 22, 2017 when they did not know when the return would be.

**4-2a - email Shauna Coleman "1** 15, 2018

Looking forward to HR complaint supporting documents

After receiving documents damaging to Velocity

**4-2** Velocity revoked email access-**1 17, 2018**

**4-3** Velocity cancelling heath premiums -**1 17, 2018**

**4-4** Velocity Vison plan terminated-2 **21, 2018**

**4-5** Velocity demanding recoup of premiums 2nd time - **2 24, 2018**

*(Statement "Velocity not responsible for health premiums Shauna Coleman*)

**4-6 Plaintiff Arizona State Medicaid card (because** *cancelling of health premiums*)

**4-7 Plaintiff Access removal all Velocity systems - 1 29, 2018**

**As of January 30, 2018 plaintiff had no access to none of Velocity systems, email and had no health care coverage.**

### a. COUNT FIVE

*Violation of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA].*

> *Velocity denied him of the benefit of FMLA medical leave to them when they knew he had no access to Velocity systems and they had already deleted the information from their network and all traces of it. Then began demanding he work and provide documents Velocity denied him of the benefit of FMLA*

*medical leave and engaged in an adverse employment action resulting in damages.*

69-    Defendants demanded he work while on FMLA to provide them with investigation documents they claim need for an investigation and mail them to Velocity corporate address in Charlotte North, Carolina.

70-    **Velocity was not conducting an investigation and never did**.  What they were doing and demanding from plaintiff is copies and information that he knew or and had to point them to what evidence they needed to get rid of and or delete.  This is a small section of the 16 gigabytes of stolen intellectual property they stole from Infor their biggest revenue contributor.  After plaintiff filed a 15 pages complaint with HR every trace of evidence of all the stolen intellectual property was deleted and disappeared.



can't access the recording because it has been deleted or is no longer available. For more information, contact the

© 2018 Cisco and/or its affiliates. All rights reserved.

71-



72-

73-    However plaintiff for his protection sent 12 hours of this to the court in Document 11 so the court can see what they stole.  Plaintiff had 16 gigabytes of stolen intellectual property.

Plaintiff re-alleges and incorporates by reference each and every allegation

contained in the previous paragraphs of this Complaint as though fully set forth herein.

Velocity not only violated and interfered in plaintiff FMLA rights by forcing him to work, but Velocity **badgered him time and time again** demanding asking for more and more information and him participate in an investigation and provide those more

and Information on as many as on 9 occasions from **February 21, 2018** (the first day after he was approved for FMLA leave.

Velocity did this knowing he was on FMLA leave even though he had no access to any Velocity systems, email or any of the items and documents after they revoked all his access.

**From: Chris Heller** <chris.heller@velocitycloud.com>
**Sent:** Wednesday, February 21, 2018 3:09:13 PM
**To:** Garrison Jones; Shauna Coleman
**Subject:** RE: Updates.

Garrison,

You should forward any additional information or supporting documentation to me
If it needs to be mailed, it can be sent to the following address:

1901 Roxborough Road, Floor 4
Charlotte, NC 28211

As previously stated, the investigation is proceeding.

**Chris Heller | SVP & General Counsel |** Velocity Technology Solutions, Inc.
**o** 704.593.3423| **m** 816.678.5162 | **f** 703.935.4308 | velocitycloud.com

74-     After plaintiff reminded him he has already sent this informaito in January he continued to ask him to work on multile occassions to send more saying it was in his mind " incomplete.  He did this knowing it is **FMLA interfernce to require an emplyee to work and participate in an investigation not involving his own miscondcut while on approved FMLA Medical leave**.   Simply Velcotiy did not care  whether he was on Approved FMLA medical leave or nor did  respect the plaintiff and his rights under FMLA.  They conrined to conact him denamdeing he send more informaiton.

75-      **After two months he is still demanding more information**

# April 17, 2018

**Garrison Jones**

| | |
|---|---|
| **From:** | Chris Heller <chris.heller@velocitycloud.com> |
| **Sent:** | Tuesday, April 17, 2018 3:11 PM |
| **To:** | Garrison Jones |
| **Cc:** | Shauna Coleman |
| **Subject:** | RE: Velocity - Not Racially Motivated ? Think again |

Garrison,

We are investigating the item referenced below.

However, you continue to send incomplete information and/or purported documents (such as the below) which Velocity is unable to verify their accuracy or veracity.

Velocity has, on multiple occasions, requested accurate/complete documents so that we could thoroughly investigate any claims.

If the below email exists, we need an actual, complete/accurate copy of its existence.

We also need you to provide us documents you have related to any other complaints so we can investigate and take appropriate actions as/if necessary.

Without providing us these documents, we are unable to determine if there are any additional matters requiring further inquiry.

Chris

**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**
o 704.593.3423| m 816.678.5162 | f 703.935.4308 | velocitycloud.com

**From:** Garrison Jones <garrison.jones@outlook.com>
**Sent:** Thursday, April 12, 2018 12:07 PM

USDOL FMLA rules and regulations state, in some instances, an employer may need to contact or interview an employee on FMLA leave concerning a workplace investigation or where the employee is needed to serve as a witness.

76-    An employer has the right to contact an employee on FMLA leave for certain limited purposes, but asking or requiring an employee to perform work while on leave is considered interference.  The contact was excessive and continuous.

77-    The investigation was not for any misconduct by the plaintiff but other Velocity executives and employees.

78-    **Velocity was lying to the plaintiff. They were not investigating his claims or allegations, they were investigating him** and trying to gather/obtain as much incriminating information he had in his possession that they had not gotten rid of or deleted but they needed him to pint them to it.

79-    They were looking demanding of him any and all information, documents etc. so that they can delete or get rid of the evidence and demanded this on multiple occasions while he was approved FMLA medical leave.

80-    While an employer is allowed to contact an employee on FMLA leave on a limited basis this was not the purpose or intent of Velocity.

81-    They were covertly investigating the plaintiff.

### COUNT SIX

*Violation interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA. Velocity terminated plaintiff while on approved FMLA medical leave. Velocity denied him of the benefit and right to exercise his rights under FMLA medical leave and engaged in an adverse employment action resulting in damages.*

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Where plaintiff claims and alleges Velocity committed FMLA Interference. In addition under provision, § 2615(a) (1), provides:

82-    **"It shall be unlawful for any employer to discharge** or in any other manner discriminate against any individual for opposing any practice made unlawful by FMLA rules and regulations.

83-    Velocity did this as they wanted to know what evidence he had against them so they could get rid of it.

84-    Velocity was looking for any data in the possession of the plaintiff so they could destroy any trace of their criminal acts.

85-    They did not care if plaintiff was on approved FMLA medical leave and did not care about any violations or interference of FMLA either.  They were desperate to obtain anything they could.

86-    68. **Document 11 a CD that contains 12 hours/ 320 Meg of 16 gigabytes of** stolen intellectual property is just a sample of what they were looking for.

## COUNT SEVEN

*Violation interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "discharge or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA.  Velocity denied him of the benefit of FMLA medical leave and engaged in an adverse employment action resulting by terminating plaintiff while on FMLA Medical leave and resulted in damages.*

87-    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Where plaintiff claims and alleges Velocity committed FMLA Interference. In addition under provision, § 2615(a) (1), provides **"It shall be unlawful for any employer to discharge** or in any other manner1 11 discriminate against any individual for opposing any practice made unlawful by FMLA rules and regulations.

88-    Velocity unlawfully terminated plaintiff while on approved FMLA medical leave.

89-    On March 15, 2018 plaintiff in his personal email account received and email from Susan Haltapp to her Senior Vice President, Chance Veasay stating and confirming from a previous conversation the plaintiff was no longer an employee of Velocity.  There is no ambiguous interpretation of this email. It is looking for direction in removing plaintiff from the ADP report management module.

**From:** Garrison Jones <garrison.jones@outlook.com>
**Sent:** Thursday, May 21, 2020 2:32 PM
**To:** Garrison Jones  Court Docs
**Subject:** Fwd: Garrison Jones

Get Outlook for iOS

**From:** Susan Holtapp <susan.holtapp@velocitycloud.com>
**Sent:** Thursday, March 15, 2018 8:08:38 AM
**To:** Chance Veasey <chance.veasey@velocitycloud.com>
**Cc:** Garrison Jones <garrison.jones@velocitycloud.com>
**Subject:** Garrison Jones

Chance,

I understood from our last exchange that Garrison Jones was no longer employee of Velocity.  His record remains in ADP reporting to Michael B.  Please let us know if Michael or myself have open action item to release Garrison.

Regards,
Susan

**Susan Holtapp-Freiday  | Velocity Technology Solutions, Inc.**
Sr. Practice Director Professional Services, Infor Line of Business
o 612.333.9853 | m 612.802.6914
email susan.holtapp@velocitycloud.com  | Website velocitycloud.com

## Email Susan Haltapp March 15, 2018 - termination of plaintiff.

90-    Plaintiff contacted Velocity on multiple occasions and never received a response.

91-    Plaintiff re-alleges and incorporates by reference each and every allegation

contained in the previous paragraphs of this Complaint as though fully set forth herein. Where plaintiff claims and alleges Velocity committed FMLA Interference in violation of FMLA regulations 2615 (a) 1 by terminating plaintiff while on approved FMLA on March 15, 2018.

**92-**    Plaintiff reached out to Velocity several times **with no response** so he **applied for unemployment on April 8, 2018 based on his termination.**

**93-     74. Velocity filed an employer protest forcing him to appeal this negative adjudication. Appeal hearing was set for June 22, 2018.**

**94-     Appeals Court decision was plaintiff was unlawfully terminated and not for any misconduct.**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL  60187-4842

VELOCITY TECHNOLOGY
ENTERPRISES INC DBA
DBA VELOCITY TECHNOLOGY
SOLUTIONS
1901 ROXBOROUGH RD FL 4
CHARLOTTE, NC  28211

Arizona Appeal No. U-1595392-001        Date of Mailing:              6/22/2018

Social Security No. 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          Employer Acct. No.          7428011000

---

### DECISION OF APPEAL TRIBUNAL

## IN FAVOR OF CLAIMANT
## EMPLOYER'S ACCOUNT IS CHARGED

---



**Arizona Department of
Economic Security**          **Office Of Appeals**

1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019
Toll Free 1(877)528-3330 FAX (602)257-7056

## DISMISSAL OF APPEAL

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

VELOCITY TECHNOLOGY SOLUTIONS
Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016

Arizona Appeal No. U-1600605-001        Date of Mailing:  8/20/2018

Social Security No.                       Employer Acct. No. 7428011-000

**95-**

- 34 -

In addition to this appeal decision there were multiple decisions after this all in favor of the plaintiff that affirmed , upheld on 3 other occasions including the denied, dismissal of Velocity /Ogltree Deakins appeal on July 23, 2018 with prejudice and a special notation Velocity had no right to appeal the court's decision and a denial and dismissal of Velocity request to "reopen the hearing" **as they violated the courts appeal order and decision where instead of filing and appeal they filed a request to "reopen he hearing that was also denied and dismissed.**

Velocity had the option to appeal to the Arizona Superior Court but failed to do so.

**96-    Res Judicata and collateral estoppel preclude the defendants and this court from relitigating the issue of the termination of the plaintiff as this is and has been a final order for over 4 years.**

## COUNT EIGHT

*Violation interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "**discharge** or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA].*

97-    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

98-    Plaintiff claims and alleges Velocity committed FMLA Interference by terminating him unlawfully while on approved FMLA medical leave on March 15, 2018.

99-    In addition under provision, § 2615(a) (1), provides **"It shall be unlawful for any employer to discharge** or in any other manner1 11 discriminate against any individual for opposing any practice made unlawful by FMLA rules and regulations.

100-    Velocity before the appeal hearing scheduled for June 22, 2018 contacted AZDES on May 4, 2018 and without being asked or required to do so made a false claim/complaint that plaintiff was physically unable to work and sent from the confidential medical records files maintained by Shauna Colemen, Velocity HR Director, sent copies of confidential medical FMLA documents to AZDES in violation of FMLA regulation Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit employer acts

101-    An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.  An employer is prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.   An employer is prohibited from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA.

d. An employee who has Filed any charge, has instituted, or caused to be Instituted, any proceeding under or related to the FMLA; Given, or is about to give, any information in connection with an inquiry or proceeding relating to any right under the FMLA; or Testified, or is about to testify, in any inquiry or proceeding relating to a right under the FMLA.  **The hearing is about FMLA**

**because Velocity made and transformed it into one by their false complaint on May 4, 2018.**

102-    Violation of FMLA regulation Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit employer acts.

103-    In regards to disclosure of confidential FMLA medical documents. Under the

104-    FMLA, **an employer may not reveal confidential medical information about the employee taking the leave.** Velocity HR Director, Shauna Coleman intentionally with reckless disregard of their 3 actions and the consequences, released and sent these confidential documents To AZDES and its disclosure is a clear interference violations of the FMLA rights of the 5 plaintiff, Garrison Jones.

*105-*    Disclosure of medical confidential information can result in a Family and Medical Leave Act (FMLA) interference claim, even when the employer does not actually interfere with the employee's right to take FMLA leave. *Ho/trey v. Collier County Board of Commissioners.*

106-    FMLA regulations state FMLA documents must be maintained as confidential medical records separate from personnel files. While there is an exception for informing supervisors and managers about necessary restrictions or accommodations, that exception is limited. AZDES are it included and were not managers or supervisors of Velocity and as such they were not entitled to receive any FMLA documents from Velocity nor receive any notification/knowledge of FMLA of the plaintiff.  AZDES were not employees of Velocity.

107-   **AZDES never made a formal request for these documents** and had no right to receive these personal confidential records from Velocity.  Velocity did this to put another layer and obstacle in the path of the plaintiff in receiving justly deserved benefits after he was unlawfully terminated on March 15, 2018.

108-   The plaintiff had under FMLA a right of privacy invoked by his approval for FMLA

and this act by Velocity constituted a serious claim for FMLA interference because

109-   Confidentiality of medical information is a right provided and protected under FMLA.

110-   Velocity the court can see will use anything at their disposal or available to them hurt the plaintiff in any way they can, including violation of FMLA regulations

111-   The plaintiff as such suffered severe damages because of the release of his confidential medical and FMLA records by Velocity and as such can recover damages for this heinous intentional act.

112-   **8 -1 May 4, 2018 - AZDES - contact log May 4 Velocity HR Director** proactively contacts AZDES making false claim plaintiff physically unable to work.  She did this knowing plaintiff was certified by his physician to be able to return to work on March 22, 2018 and the document was in the possession of Velocity at the time the contacted AZDES and made this false claim of him being physically unable to work and that he had been unlawfully terminated on March 15, 2018.

### General Adjudication

**UB-098**    Claimant SSN: 

PER T/C ON 5-4-18 AT 11:59AM PHN: 704-357-7721, LEFT MESSAGE ON SHAUNA COLMAN (HEAD OF HR) ANSWERING MACHINE, TO RESPOND BY 5-8-18 BY 12:00PM AND ADVISED OF CONSEQUENCES.

SHAUNA RETURNED CALL ON 5-4-18 AT 1:35PM AND LEFT MESSAGE STATING:

CLAIMANT IS ON FMLA FOR MEDICAL REASONS. CLAIMANT IS DUE TO RETURN TO WORK ON 5-15-18 ER STATES CLMT IS STILL CURRENTLY EMPLOYED WITH THEIR COMPANY AND IS EXPECTED TO RETURN TO WORK AS SCHEDULED ON 5-15-18.

DEPUTY NOTE: DUE TO THE INFORMATION PRESENTED BY BOTH ER AND CLMT AND NOT BEING ABLE TO REBUTTLE WITH ER DUE TO CLMT REQ IT SEEMS CLMT STILL HAS A JOB TO RETURN TO ON 5/15/18 AND CLMT IS REFUSING TO DUE SO BECAUSE HE FEELS HE HAS BEEN DISCHARGED AS OF 3/15/18. WILL USE START DATE AS 3/15/18 SICE THAT IS THE ASSUMED SEPERATION DATE

IF APPLICABLE SEE SECOND UB-098 FOR ADDITIONAL INFORMATION FROM ER AND OR CLMT.

113-

114-    Velocity contact with AZDES constitutes FMLA interference as it was the intent of Velocity to use FMLA in a negative factor in his employment and act prohibited by FMLA.


115-    Section 105 of FMLA and section 825.220 of the FMLA regulations prohibit an employer from using an employee's request for or use of FMLA leave as a negative factor in employment actions but Velocity did so on May 4, 2018 and used FMLA in this manner by contacting AZDES.

116-    Unemployment is classified as an employment action and any violations of the FMLA or the Department's regulations constitute interfering with, restraining, or denying the exercise of rights provided by the FMLA.

**Plaintiff confidential medical FMLA records sent to AZDES May 4, 2018**

**117-**     Velocity sent these document to plaintiff requesting his physician complete the form and it was **returned to Lincoln financial on December 28, 2017 per their instructions and to Velocity on January 5, 2018.**

118-     The returned forms on February 8, 2018 confirms plaintiff was cleared to return to work on March 22, 2018.

**May 7, 2018**   Contact log AZDES

119-     Someone   from Velocity contacted AZDES impersonating the plaintiff and confirmed everything Shauna Coleman falsely claimed 3 days earlier.  It was not the plaintiff.

General Adjudication

UB-098       Claimant SSN: ⬛⬛⬛⬛ 0                                    ⟨8⟩

Issue: Able                                                Base Period Separation:  No

Basis:
ABILITY TO WORK

BPR:
R6-3-5223.5.A.

Reasoning and Conclusion:
SEE UB 100

Additional Text:

CLMT WRITTEN STATEMENT:
UB436 SENT ON 4/19/18 DUE BACK ON 4/24/18
SEE UB-436R IN ONBASE REC'D 5/2/18

CLMT CALL: ON 5-4-18 AT 11:22AM PHN: 916-870-4960, LEFT MESSAGE TO RESPOND BY 5-8-18 BY 11:24AM AND ADVISED OF CONSEQUENCES.

CLAIMANT RETURNED CALL ON 5-7-18 AT 1:53PM PHN: 916-870-4960, T/C WITH CLAIMANT.

CLMT STATES HE HAD A STROKE IN NOVEMBER OF 2017. CLMT IS STILL UNDER DOCTORS CARE UNTIL 5/15/18.

120-

121-    The truth of the matter is plaintiff did not know of this false complaint until a year later in July of July 2019 however the contact logs claim he called and his cellphone number is recorded in the contact log that was returned to AZDES May 7, 2018 @ 1:53 pm

122-    Plaintiff never contacted AZDES on May 7, 2018. - Contact log May 4 Velocity HR Director proactively contacts AZDES making false claim plaintiff physically unable to work.

**123-    Exhibit 8-3- FMLA Documents identified as employer exhibit #05 by Arizona Court of Appeals**

## COUNT NINE

*Violation of 29 C.F.R. § 825.220 where it is unlawful to interfere with an employee who has been granted FMLA leave or about to testify in a proceeding to a right under FMLA.*

**(i)**    Filed any charge, or has instituted (or caused to be instituted) any proceeding under or related to this Act;

**(ii)**   Given, or is about to give, any information in connection with an inquiry or proceeding relating to a right under this Act;

**(iii)**  Testified, or is about to testify, in any inquiry or proceeding relating to a right under this Act.

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff has suffered damages as a result of Defendant's unlawful actions. Plaintiff alleges Velocity interfered in his rights under FMLA by using FMLA as a negative factor and

adjudication of employment. It was Velocity who used FMLA as a reason to AZDES to deny him legally deserved unemployment benefits.

As such, Velocity turned these proceedings in to a proceeding protected under the rights under FMLA and forced plaintiff to appeal and reverse and testify against these false allegations by Velocity. The court is well aware October 23, 2019 the Arizona Court of Appeals in Arizona Appeal No. U-1639659-001 this negative adjudication

**DECISION:**

**DECISION:**

**DECISION:**

I reverse the deputy's ruling. The claimant was able to work from 4/8/2018 through 5/19/2018.

124-    FMLA prohibits an employer and their attorneys from discriminating, interference and or retaliating against an employee from exercising and or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220

Velocity gave out without the permission of plaintiff his personal contact information knowing he was on approved FMLA medical leave on the false pretense of negotiating a settlement agreement for discrimination even before plaintiff filed any litigation. At the same time on May 4, 2018 Velocity HR Director, Shauna Coleman was contacting AZDES using FMLA as the deceptive tool in obtaining a 2nd negative adjudication against plaintiff in the past 10 days. It was a ploy.

125-    Employers cannot use the taking of FMLA leave as a negative factor in employment actions as done by the defendants, such as hiring, promotions, or disciplinary actions." The defendants Velocity used FMLA as a negative

employment action by falsely claiming plaintiff was physically unable to work and on the same day claiming to **reach out a branch of resolution** as a tactic to distract the plaintiff to prevent him from the real reason their attorney reached out to him on the same day.   It is a petty scheme premeditated by both Velocity and Ogltree Deakins.

a. Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

Plaintiff claims the **fifth occurrence / violation of FMLA interference** based contact from Ogltree Deakins attorney Christopher Meister on May 1, 2018.   Now Velocity attorneys are contacting plaintiff while on approved FMLA medical leave on behalf of Velocity claiming he wanted to begin settlement discussions interfering with his ability to exercise his rights under FMLA.

Plaintiff was contacted again on his personal email account that was given to Ogltree Deakins attorney Christopher Meister **without his knowledge and consent while on FMLA.**

This was a coordinated attack of interference by Velocity and Ogltree Deakins where together they interfered in the plaintiffs' ability to exercise his rights under r FMLA.

**Plaintiff agreed to speak with him on May 4, 2018**

However, this was on the same day of Shauna Coleman was contacting AZDES and filing a false complaint against the plaintiff. This was a coordinated distraction where Ogltree attorneys was tasked with distracting plaintiff while Shauna Coleman was making the false complaint behind his back.

126-   He claims he wants to begin discussions on a settlement on behalf of Velocity even before plaintiff filed any litigation or complaint.   The **conversation last 3 minutes**. Plaintiff only listened.

127-   Meister, began to state plaintiff had no case and that the entire issue would be settled for less than $1,000.00 dollars in Small claims Court.

At that point plaintiff hung up, blocked his number from calling him again.

128-   Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

129-   Plaintiff has suffered intentional damages as a result of the interferences of Defendant and their attorney unlawful actions they totally disrespected and disregarded the rights of FMLA of plaintiff.

130-   The FMLA"s "prohibition against „interference" prohibits an employer and their attorneys from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Meister, Christopher J. <Christopher.Meister@ogletree.com> |
| **Sent:** | Friday, May 4, 2018 8:28 AM |
| **To:** | Garrison Jones |
| **Subject:** | RE: |

Mr. Jones, I am writing to follow-up on our conversation on Wednesday. It is unfortunate that you again lost your temper and hung-up because I was only trying to clarify for you what the confidential settlement negotiation process entails. Despite your recent behavior, my client is willing to try one more time to reach an amicable resolution. My client would prefer to resolve this matter in this way as opposed to taking the various legal avenues available.

If you are interested in doing so, you must understand that we will need to first agree on both monetary and non-monetary settlement terms and then reduce those terms to writing. You will then be provided the opportunity to review the settlement agreement and will need to sign it if it is agreeable to you. You will then be paid after you have signed the agreement and the period of time the law requires us to give you has expired. If you understand this process and are willing to engage in good faith settlement negotiations, please let me know.

Please understand that my client's willingness to have any further confidential settlement discussions is contingent upon you not engaging in any further misconduct. Please also understand that by engaging in further settlement discussions my client is not waiving its rights to take action against you for prior misconduct. Thank you for your time and responsible attention to this vitally important matter.

**Christopher J. Meister | Ogletree. Deakins. Nash, Smoak & Stewart, P.C.**
Esplanade Center III, 2415 East Camelback Road, Suite 800 | Phoenix, AZ 85016 | Telephone: 602-778-3720 | Fax: 602-778-3750
christopher.meister@ogletree.com | www.ogletree.com | Bio

131-

132-    Plaintiff did not loose his temper he never said more than 10 words and hung up on him.

133-    On May 8, 2018 tired of the tactics by both Velocity and their attorneys from Ogltree Deakins, plaintiff filed a **discrimination complaint** in the US District court of Northern Illinois.  It was clear Velocity had no intention to take responsibility for their actions.

134-    Plaintiff never contacted AZDES on May 7, 2018 and his detail phone records reflect that.

**135-    There is no call at 1:53 pm on May 7, 2018 in the call records**

| When | | Who | Description | Type | Min | Cost | | When | Who | Destination |
|---|---|---|---|---|---|---|---|---|---|---|
| | 3:07 PM → | (520) 770-3102 | to Tucson/AZ | - | 2 | - | | 12:58 PM → | (219) 576-3108 | to Merrillv/I |
| | 3:28 PM → | (602) 406-3000 | to Phoenix/AZ | - | 2 | - | | 12:59 PM ← | (219) 576-3108 | Incoming |
| | 3:30 PM → | (602) 406-3000 | to Phoenix/AZ | - | 11 | - | | 4:22 PM → | (520) 638-0013 | to Tucson/A |
| | 3:40 PM → | (602) 406-6304 | to Phoenix/AZ | - | 1 | - | May 07 | 7:55 AM → | (630) 437-5137 | to Downers |
| | 3:41 PM → | (602) 406-6304 | to Phoenix/AZ | - | 5 | - | | 8:00 AM → | (888) 997-9333 | 1-888 # |
| | 3:44 PM ← | (602) 406-3000 | Incoming | A | 3 | - | | 9:00 AM → | (602) 638-0012 | to Phoenix/ |
| | 4:03 PM → | (630) 920-0506 | to Hinsdale/IL | - | 2 | - | | 9:01 AM → | (520) 638-0012 | to Tucson/A |
| | 4:06 PM → | (630) 573-2666 | to Hinsdale/IL | - | 2 | - | | 10:11 AM → | (877) 600-2722 | 1-877 # |
| | 4:20 PM → | (602) 542-0000 | Incoming | - | 3 | - | | 10:12 AM → | (877) 600-2722 | 1-877 # |
| | 5:45 PM ← | (480) 735-9964 | Incoming | F | 20 | - | | 10:15 AM → | (520) 770-3102 | to Tucson/A |
| Apr 27 | 6:50 AM → | (630) 434-0490 | to Downersgrv/IL | - | 1 | - | | 10:25 AM → | (708) 338-1744 | to Maywood |
| | 6:51 AM → | (630) 857-0144 | to Naperville/IL | - | 1 | - | | 11:32 AM → | (520) 638-0012 | to Tucson/A |
| | 1:50 PM → | (623) 792-2767 | to Phoenix/AZ | - | 2 | - | | 11:34 AM → | (520) 638-0012 | to Tucson/A |
| | 5:56 PM → | (502) 562-3321 | to Louisville/KY | - | 1 | - | | 12:35 PM → | (520) 638-0012 | to Tucson/A |

**T··Mobile·**

Bill period
Apr 17, 2018 - M

. CONTINUED - (916) 870-4960 , TALK                    . CONTINUED - (916) 870-4960 , TEXT

| When | | Who | Description | Type | Min | Cost | | When | Who | Destination |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1:26 PM → | (520) 638-0012 | to Tucson/AZ | - | 1 | - | | 6:52 AM → | (224) 628-1901 | Northbrook, |
| | 1:26 PM → | (520) 638-0012 | to Tucson/AZ | - | 1 | - | | 7:12 AM ← | 2 8777 | Directtocon |
| | 3:09 PM → | (219) 576-3108 | to Merrillv/IN | - | 1 | - | | 7:12 AM → | 2 8777 | Directtocon |
| | 3:35 PM ← | (602) 542-0000 | Incoming | - | 19 | - | | 7:12 AM → | 2 8777 | Directtocon |
| | 4:42 PM → | (219) 576-3108 | to Merrillv/IN | - | 1 | - | | 7:12 AM → | 2 8777 | Directtocon |
| | 4:43 PM → | (219) 576-3108 | to Merrillv/IN | - | 1 | - | | 7:47 AM ← | (224) 628-1901 | Northbrook, |
| | 4:43 PM → | (219) 576-3108 | to Merrillv/IN | - | 1 | - | | 7:51 AM → | (224) 628-1901 | Northbrook, |
| | 5:36 PM → | (623) 547-0500 | to Phoenix/AZ | - | 1 | - | | 7:51 AM → | (224) 628-1901 | Northbrook, |
| | 5:41 PM → | (219) 576-3108 | to Merrillv/IN | - | 1 | - | | 7:51 AM → | (224) 628-1901 | Northbrook, |
| May 08 | 10:26 AM → | (219) 576-3108 | Incoming | - | 2 | - | | 7:52 AM → | (224) 628-1901 | Northbrook, |
| | 3:32 PM → | (520) 638-0012 | to Tucson/AZ | - | 1 | - | | 7:54 AM ← | (224) 628-1901 | Northbrook, |

136-

137-    **Plaintiff never made a call to AZDES on May 7, 2018 @ 1:53 pm.  It was Velocity who contacted AZDES on May 7, 201**, they were the only ones who knew off the call they made three days ago and did it to make it appear plaintiff returned the call when plaintiff did not know of this false allegation until a year later, July 2019 when he appealed and had the negative decision reversed on appeal.

**138-** It was a negative reinforcement of interference of the FMLA rights of plaintiff.



General Adjudication

UB-098     Claimant SSN: ███████

Issue: Able

Base Period Separation: No

Basis:
ABILITY TO WORK

BPR:
R6-3-52235.A.

Reasoning and Conclusion:
SEE UB 100

Additional Text:

CLMT WRITTEN STATEMENT:
UB436 SENT ON 4/19/18 DUE BACK ON 4/24/18
SEE UB-436R IN ONBASE REC'D 5/2/18

CLMT CALL: ON 5-4-18 AT 11:22AM PHN: 916-870-4960, LEFT MESSAGE TO RESPOND BY 5-8-18 BY 11:24AM AND ADVISED OF CONSEQUENCES.

CLAIMANT RETURNED CALL ON 5-7-18 AT 1:53PM PHN: 916 870-4960, T/C WITH CLAIMANT.

CLMT STATES HE HAD A STROKE IN NOVEMBER OF 2017, CLMT IS STILL UNDER DOCTORS CARE UNTIL 5/15/18.

**139-** It was impossible for plaintiff to return call when he was never aware of the complaint made by Velocity. It was premediated interference scheme by Velocity and Ogltree Deakins.

## COUNT TEN

*Violation interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "**discharge** or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the*

- 47 -

*FMLA. Plaintiff alleges and claims Velocity interfered with his rights under FMLA* **by on May 9, 2018 they contacted plaintiff and extended his FMLA leave** *in violation of FMLA rules and regulations that clearly state an employer* **cannot delay or extend the FMLA leave of an employee past the 12 week maximum set by FMLA rules and regulations.**

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff alleges and claims that Velocity violated terms of FMLA intentionally when they informed the plaintiff that his FMLA medical Leave was being extended past and after the 12 week maximum period was exhausted.

140-    On **May 9, 2018** plaintiff received out of the blue an email message from Velocity HR Director, Shauna Coleman claiming Velocity was "extending" his FMLA medical leave to accommodate a dr. appointment on May 20, 2018 he never had nor was it ever communicated to Velocity.

On Wed, May 9, 2018 at 7:45 PM, Shauna Coleman <shauna.coleman@velocitycloud.com> wrote:

Good Day Garrison,

As indicated in your Notice of Eligibility and Rights & Responsibilities dated February 14, 2018, you are on approved FMLA leave from February 20, 2018 until May 15, 2018. As you know, we recently agreed to continue your leave beyond the expiration of your 12 week entitlement to accommodate your scheduling of an appointment with your doctor on May 20, 2018.

141-    Please provide documentation from your healthcare provider addressing your ability to return to work and/or any restrictions or potential accommodations you would like to discuss. Forms are available online should your physician request a template to reference. Please let me know if you have any questions, and we look forward to continuing to work with you throughout this process. Thank you for your time and responsible attention to these important matters. Thank you,

142-    Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc.

- 704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

Employers Cannot Delay or Extend FMLA Leave

143-    Per the Department of Labor (DOL) clarified how leave under the Family and Medical Leave Act (FMLA) should be administered by employers.  Importantly, the DOL **determined that employers are prohibited from delaying** or extending the designation of FMLA-qualifying leave, even where doing so would benefit the employee.

An employer is also prohibited from designating more than 12 weeks of leave (or 26 weeks of military caregiver leave) as FMLA leave. *See, e.g., Weidner,* 606 F. Supp. 2d at 956; *cf. Ragsdale,* 535 U.S. at 93–94; *Strickland,* 239 F.3d at 1204–06. Of course, "[a]n employer must

---

[3] WHD therefore disagrees with the Ninth Circuit's holding that an employee may use non-FMLA leave for an FMLA-qualifying reason and decline to use FMLA leave in order to preserve FMLA leave for future use. *See Escriba v. Foster Poultry Farms, Inc.,* 743 F.3d 1236, 1244 (9th Cir. 2014).

2

observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700.  But providing such additional leave outside of the FMLA cannot expand the employee's 12-week (or 26-week) entitlement under the FMLA. *See, e.g. Weidner*, 606 F. Supp 2d at 956.  Therefore, if an employee substitutes paid leave for unpaid FMLA leave, the employee's paid leave counts toward his or her 12-week (or 26-week) FMLA entitlement and does not expand that entitlement.

employer may not designate more than 12 weeks of leave. Velocity violated and interferred in this FMLA re regulation

144-   The FMLA allows eligible employees to take a maximum of 12 weeks of unpaid, job-protected leave for specified reasons.

145-   Generally speaking, employers may require employees, or employees may elect, to use available paid leave to cover part of the unpaid FMLA leave period.  To increase the amount of leave available, however, certain employers permit employees to delay the start of their FMLA leave until after the employees have exhausted their available paid vacation or sick time.  In such cases, for example, if an FMLA-eligible employee needed time off for an FMLA-qualifying medical condition and had a week of vacation available, the employer would allow the employee to take the week of vacation first and not designate the time off as FMLA leave (and, thus not start or extend the 12-week "clock") after leave has been exhausted.

146-   According to the DOL, this practice is not permitted under the FMLA.  The Opinion Letter states that, once an eligible employee communicates a need to take leave for an FMLA-qualifying reason, the employer must "start and end the clock" on the 12 weeks.  If an employee uses paid leave to cover unpaid FMLA time, the paid leave must count toward the FMLA entitlement and cannot be used to expand that entitlement.

**147-**   Plaintiff had did not request nor **did he have any vacation or PTO time available to him to extend his leave on May 9, 2018.**

148-   This **"extension"** of FMLA beyond the 12 weeks by Velocity was interference in his rights under FMLA and was done in direct violation of FMLA rules and regulations specifically against him as **Velocity had no intention to allow him to return to work** under any circumstances and **"invented" their own excuse to prevent his return**.

149-   Plaintiff never communicated to anyone that he had a dr. appointment on May 20, 2018.

150-   Plaintiff had not seen his physician since February of 2018 and he replied via email to Shauna Coleman and told her so, however she refused to speak with him and told him to send any questions via email.

151-   This extending of FMLA was a scheme by Velocity HR Director Shauna Coleman.

From: Shauna Coleman <shauna.coleman@velocitycloud.com>
Date: May 15, 2018 at 6:18 PM
To: Garrison Jones <garrison.jones@outlook.com>
Subject: Re: FMLA - Garrison Jones

Hi Garrison,

I am not able to speak this evening. Please send me your questions via email.

Thank you

On Tue, May 15, 2018 at 7:04 PM Garrison Jones <garrison.jones@outlook.com> wrote:
Again this repeatedly stuff is not working Sheuna. I never said I had dr appt on May 20. That again is velocity saying that.

You guys want to have a reason.


I have tons of questions. Call me  you have my number 916 879 4960


152-   Plaintiff did so and never heard from Velocity HR Director Shauna
   Coleman again, ever on this day or any other day on this topic.

She had been caught in a lie as May 20, 2018 was a

| SUN | MON | TUE | WED | THU | FRI | SAT |
|-----|-----|-----|-----|-----|-----|-----|
| **MAY 2018** | | | | | | |
| 28 | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

Sunday.

153-    They knew he had been terminated in March.  The entire organization knew he had been terminated.

154-    Their interference consisted of false claims of a doctor appointment on May 20, 2018 that was never communicated to them by plaintiff.

155-    When plaintiff responded to this false claim Velocity Human Resource Director, Shauna Coleman refused to speak to plaintiff requesting he put his questions via email that was never responded to and plaintiff never spoke or heard from Velocity HR ever again to this day.

156-    Velocity did not have a non-discriminatory return to work policy where all employees returning from FMLA automatically were given FMLA extension before they were allowed to return to work.

This was directed to and specifically for the plaintiff and is a **gross act of blatant interference against him and confirms his termination**.

a.  Plaintiff has suffered damages as a result of Defendant's unlawful actions.

157- An employer is also prohibited from designating more than 12 weeks of leave (or 26 weeks of military caregiver leave) as FMLA leave. *See, e.g.*, *Weidner*, 606 F. Supp. 2d at 956; *cf.* *Ragsdale*, 535 U.S. at 93–94; *Strickland*, 239 F.3d at 1204–06.  Of course, "[a]n employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA."  29 C.F.R. § 825.700.  But providing such additional leave outside of the FMLA cannot expand the employee's 12-week (or 26-week) entitlement under the FMLA. *See, e.g. Weidner*, 606 F. Supp 2d at 956.  Therefore, if an employee substitutes paid leave for unpaid FMLA leave, the employee's paid leave counts toward his or her 12-week (or 26-week) FMLA entitlement and does not expand that entitlement.

158-   Velocity does not have a non-discriminatory return to work policy that automatically extends the FMLA medical leave for any emplyee returning from FMLA medicl leave.

159-   As such all the interfernerence by Velocity must be included and allow plaitiff to include additional violations and interferences of FMLA aftr May 15, 2018  in this second amended complaint as Velocity and their attorneys from Ogltree Deakins claim plaintiff emplyment ended on August 16, 2018.

**160-   Document 35 at 26  filed 8/15/2020 by Ogltree Deakins attorney decristoforo, anthony where  he claims the end  date of plaintiffs emplyment was August 16, 2018.**

161-   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA as after they extended his FMLA leave he never heard from Velocity HR again after May 15, 2018.

However, Velocity on May 22, 2018 *Velocity denied him of the benefit of FMLA medical leave and engaged in an adverse employment action resulting in damages by fabricating a false fabricated FMLA complaint to escape the financial monetary consequences of terminating plaintiff while on approved FMLA medical leave.*

Velocity also manufactured and created a false fabricated FMLA withdrawal letter with this complaint that was later sent to the USDOL by Ogltree Deakins attorney Jennifer Colvin on August 24, 2018, where they used identifying information from his employee file, cell phone number on file at Velocity and public records from the US District Court of Northern Illinois to continue the cover up and began to implicate plaintiff as the person creating and filing a complaint with the USDOL in violation and interference in his **"extended FMLA leave".**

**Velocity not only violated FMLA regulations by unlawfully extending his FMLA medical leave but** Velocity also denied him of the benefit of FMLA medical leave and engaged in another illegal prohibited FMLA prohibit act and adverse employment action resulting in damages.

162-   Velocity just extended in violation of his rights under FMLA. The FMLA "where an employer is "prohibited against „interference" prohibits an employer from discriminating, interference and or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.

163-   However, Velocity even on his extended Medical leave continued to violate FMLA regulations and proceeded to file multiple false complaints, allegations and claims against plaintiff was they knew they had unlawfully terminated him back in March 2018.

164-    As far as Velocity was concerned **he was on extended FMLA medical leave** despite the USDOL does not allow such extensions.  Plaintiff knew he had been terminated and began to look for gainful employment in April of 2018.

## COUNT ELEVEEN

*Violation interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "**discharge** or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA. Plaintiff alleges and claims Velocity interfered with his rights under FMLA.*

*On July 23, 2019 Velocity attorney from Ogltree Deakins Christopher Meister filed an appeal to the June 22, 2018 decision where it was determined Velocity unlawfully terminated plaintiff while on FMLA and by virtue of this failed appeal Velocity and their attorney from Ogltree Deakins both   denied and interfered in the FMLA rights of plaintiff and denied him   of the benefit of FMLA medical leave and engaged in an adverse employment action resulting in damages.*

*165-    He also confirms both Velocity and Ogltree Deakins attorneys had a conference call on June 21, 2018 a day before the hearing and used FMLA as the reason the court should overturn and reverse its decision claiming it would "interrupt" the negotiations".*

*166-    Meister is over exaggerating the 3 minute call of May 4, 2018 where plaintiff hung up on him as he was stating on the call, plaintiff had not case and it would be better resolved in Small Claims court.*

167-    This document was created as part of the scheme by Velocity and Ogltree to make it appear plaintiff filed a complaint with the USDOL.

168-    This entire conspiracy and documents were a direct act of interference and denial of the FMLA rights of the plaintiff beginning after Velocity "extended" his FMLA leave which was also a violation in itself.

*169-    Plaintiff was unaware of this again, until June 8, 2021 over by on May 9, 2018 they contacted plaintiff and extended his FMLA leave in violation of FMLA rules and regulations that clearly state an employer **cannot delay or extend the FMLA leave of an employee past the 12 week maximum set by FMLA rules and regulations.***

*170-    In Violation and interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "**discharge** or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA. Plaintiff alleges and claims Velocity interfered with his rights under FMLA.*

*171-    On May 22, 2018 Velocity conspired and created a false fabricated FMLA complaint document using personal identifying information of the plaintiff Garrison Jones.*

*172-    Plaintiff discovered this false fabricated FMLA complaint via a FOIA request and response from the USDOL on June 8, 2021 in addition to a "withdrawal letter "where this false fabricated FMLA complaint was attached to, sent to the USDOL by Ogltree Deakins attorney Jennifer Colvin from the Ogltree Deakins office in Chicago.*

## OUNT TWELVE

In *Violation and interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "**discharge** or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA.*

Plaintiff alleges and claims Velocity interfered with his rights under FMLA where on July 19, 2018 Velocity HR director Shauna Coleman contacted the federal government agency the USDOL and using personal identifying information from the employee file of plaintiff at Velocity and known violations only she knew Velocity had committed in the interference and violation of the FMLA rights of the plaintiff and filed a false fabricated FMLA complaint via the premediated complicit conspiracy with Ogltree Deakins attorneys and filed USDOL complaint ID number **3850645** with the Chicago office of the USDOL.

They assumed plaintiff was in Chicago and his cell phone they knew he had for over 17 years was still his number.

However, plaintiff was not in Chicago on July 19, 2018 he was in Ontario, California at the corporate office of his new employer Prime Healthcare and his cell number of over 17 years had been disconnected in June 2018 and was done so because of months of harassing calls, blocked numbers, restricted numbers and hang ups from Velocity at all times of the day and night.

173-    Finally after they put his number into a fax machine where his number was redialed for over 2 hrs. straight, plaintiff had the number disconnected and was assigned a new number.

174- Velocity was unaware of this.  Plaintiff learned of this false fabricated FMLA complaint on September 30, 2020 via a FOIA request and response from the USDOL.

175- Plaintiff immediately appealed this false FMLA complaint and after investigation the USDOL determined their records do not contain a single FMLA complaint made by plaintiff Garrison Jones against velocity Technology Solutions on October 30, 2020.

176- However, this false complaint with a federal agency still constitutes interference in the FMLA rights of the plaintiff t Velocity contends his employment ended on August 16, 2018 as Velocity  extended his FMLA medical leave that would include this act of interference whether knew it was unlawful, interference or not.

177- They considered him to be on FMLA medical leave after May 15, 2018. Defense counsel has never accepted the fact it was Velocity and Ogltree Deakins who planted this false complaint in the files of the USDOL a yet before litigation was filed and intended to use it in the event of any litigation. However, plaintiff discovered it before they could use it.  Now they claim it as an unknown claim after they have been caught once again committing fraud against a federal government agency.

178- Nor have they ever recognized that any of these documented events occurred between February 20m 2018 and August 16, 2018 but all of them are undisputable and documented.

179- They are relying on an unenforceable document they call an agreement where it is not only against public policy but it is  illegal where the defendants and their attorneys from Ogltree Deakins prior to August 15, 2018 and continues today continue to commit fraud and forgery to " get Velocity /Navisite: off the hook for not only his termination and multiple occasions of documented interference acts but also is the road map to multiple local, state and federal criminal violations of the law and any contact for an illegal purpose is unenforceable by any court or jurisdiction,

180-     The facts state and show otherwise however, if they contend he was still employed  then the i must allow the additional interferences to be included as well as the criminal federal fraud upon the USDOL which again not simply a violation and interference of FMLA rights of plaintiff but it is also a federal crime against the federal government.  The issue before the court is not simply FMLA based on the acts committed by defendants and their attorneys.

181-     The fact is, the plaintiff was employed at another organization, Prime Healthcare beginning in June 2018 and could not return to his position at Velocity because Velocity prevented him from doing so.

182-     They also came after him at this new employer, claiming he was still employed at Velocity and falsely claimed he was committing a felony of unemployment fraud when all he was attempting to do is return to his profession and be able to support himself and his family and Velocity in their vicious vindictive heinous manner interfered after they terminated him so that he could not do so.

183-     Plaintiff practically beg them to leave him and his family alone.  They no longer had his cellphone number so in October 2018 they began to harrass him via his personal email account sending invites from over a year ago to his personal account.  Plaintiff simply wanted to be left alone and get as far away

from Velocity as possible but they ignored and refused to do

**From:** Garrison Jones <garrison.jones@outlook.com>
**Sent:** Tuesday, June 26, 2019 9:12 AM
**To:** chris.heller@velocitycloud.com
**Subject:** Harassment

Message    (2 KB)

You folks just will not quite. You are not satisfied that for the past year that you have lost every single litigation. You have committed fraud on top of fraud, and still you got back an unedited illegal agreement that even though I sent modifications. Velocity has done what it has always done and completely ignored all of them.

You simply refuse to leave me alone. At every opportunity you get and use anything, you think you have available to harass me and my family. For over 9 months, in my personal email you folks have lied claiming that my email acct has been deactivated. yet I am still getting notifications and invites from Velocity with the names of individuals who got hired AFTER I left velocity over 2 years ago.

I still get messages from google saying that information in the account has been changed.

No doubt that you folks have access to that account and are accessing it and combing thru it to see what damaging information is contained in it, destroying it ASAP and also using it as a roadmap as to what type of lies and cover-up you need to create to counter it.

I simply want to be left alone, yet you folks just will not stop.

184-    They "assured these invites were not coming from Velocity but they knew they were lying as on the invites it clearly showed his personal email account and Velocity account on the invite list. They added it to th einvite as a form of harrassment.

185-    It is clear even after they revoked access to plaintiff Velocity email account they were actively breaking into his account and looking for evidence they had to delete or get rid of and went to the source they thought contained this informaiton. This at the same time claiming he was till emplyed. This questions and contradicts evry statement they made and was making in contrast to their acts.

## **COUNT THIRTEEN**

In *Violation and interference of FMLA rules and regulations where it makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of the FMLA rights of an employee, § 2615(a) (1); to "**discharge** or in any other manner discriminate against any individual for opposing any right or practice made unlawful by [the FMLA.*

Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.  Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA where  on July 23, 2018 when after Velocity /Ogltree Deakins attorney filed an appeal of the court's decision of June 22, 2018  that determined plaintiff was unlawfully terminated on July 23, 2018 making false claims that plaintiff was still employed receiving wages and health benefits from Velocity however they **never offered any evidence or exhibits of proof either in the appeal of June 22, 2018 nor did they offer any proof of health coverage or paying 100 % of premiums their portion or plaintiff portion.**

186-    The Court Denied and dismissed the appeal.  However the violation and interference of the use of FMLA in the appeal is a documented occurrence of FMLA interference by Velocity and Ogltree Deakins their attorneys.

187-    In that appeal, they also revealed both Velocity and Ogltree Deakins had ex parte communication with the Arizona Court of Appeals on June 21, 2018 via a conference call, interfering with the plaintiffs rights under FMLA by attempting to induce the court into believing he was still employed on FMLA at the time of applying for benefits and on June 22, 2018 knowing he had been terminated.

**Exhibit 13-1 – July 23, 2018 Ogltree Deakins appeal.**

The court even made a statement in the denial and dismissal of this appeal that what Velocity and Ogltree Deakins was attempting was an **"unsuccessful tactic' that failed.**

A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.

The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

**188-**    Ogltree attorney Christopher Meister goes on and states he was on FMLA and then claims the court's decision **would interrupt "the negotiations" of** separation of employment being negotiated. This expanding and exaggerating the 3 minute call when he was hung up on.

189-    127. What Ogltree is not revealing to this court is that there were actually 3 separate rulings on the termination of the plaintiff.

190-    **June 22, 2018 Arizona Appeal U-1595392-001** where ruling made confirmed the plaintiff was unlawful terminated by Velocity.

They intentionally did not appear and on June 21, 2018 they in an ex parte attempt to gain an advantage over the proceeding and had a conference call with the Judge in the Arizona Court of Appeals and submitted the same pre-printed document to the court hoping it would work a second time and deny benefits to plaintiff.  It failed but this is a pattern they would repeat multiple times.

They will make a false statement, submit documents they think will be in their favor and induce others to believe in these documents and intentionally failed to appear at the hearing.

Shauna Coleman was on this conference call with Ogltree Deakins attorneys yet she still c

| | | |
|---|---|---|
| 06/22/2018 11:18:21 AM | T/C FRM THE CLT WANTING TO KNW WHAT WAS GOING ON W/ THE HRG, CHECKED C2T THE HRG WAS IN PROGRESS. | IA |
| 06/22/2018 9:26:07 AM | T/C FRM THE CLT RE; THE REG IN C2T. PROVIDED TO THE CLT THE REG WAS ENTERED CORRECTLY. THE ALJ WILL BE PLACING THE CALL TO HIM. | IA |
| 06/21/2018 1:29:26 PM | 6/21 RECVD CALL FROM ER WHO CHOOSES NOT BE ATTENDING HEARING, SHAWNA COLEMAN 704-357-7721 | JC |
| | U-1595392-001-OA | |

193-

194-    That's exactly what the judge did in favor of the plaintiff.  Velocity the employer did not present any evidence that plaintiff had not been terminated.


195-    **July 23, 2018  Arizona Appeal U-1600605-001** where  ruling of June 22, 2018 was affirmed  where Velocity /Ogltree appeal was denied and dismissed with special notation **they had no right to appeal the 2nd decision**.

196-    **August 20, 2018, 2018 Arizona Appeal U-16000 600-001** where the court for the 3rd time denied the request to Reopen the hearing and affirmed the prior two ruling of plaintiffs termination.

## COUNT FOURTEEN

197-    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA where on August 20, 2018 Ogltree Deakins filed a third attempt to reopen the hearing on June 22, 2018 where it was ruled that Velocity unlawfully terminated the plaintiff while on FMLA.

198-    The court affirmed for the second time that he was terminated and was done not for misconduct and while on approved FMLA Medical leave by Velocity.

## COUNT FIFTEEN

199-    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein. Plaintiff alleges and claims that Velocity violated and interfered in his rights under FMLA where on September 9, 2021 Ogltree Deakins attorney Anthony Decristoforo in retroactive attempt interfered with the FMLA rights of the plaintiff Garrison Jones as he submitted a forgery of an FMLA complaint and attempted to retrofit it back to May 22, 2018 claiming the plaintiff filed and FMLA complaint with the USDOL on May 22, 2018 in retro violation of the plaintiffs rights under FMLA.

200-    The USDOL on 3 separate occasions conducted investigations and did not find a single FMLA complaint made under the name of Garrison Jones against Velocity technology Solutions.  As late as October 18, 2021 the USDOL after plaintiff sent copies of the attached Exhibit A from Document 94 stating that this document was a forgery.

201-    USDOL in their response on October 18, 2021 stated they had no record of the document sent to the court by Ogltree Deakins attorney Anthony Decristoforo and it did not come from their agency.

202-    It is a complete manufactured forgery by Ogltree Deakins attorney Anthony.

203-    However, in a retroactive manner the court must also include this as FMLA interference as he did this in his representation of Velocity as such Velocity is charged with FMLA interference in violation of the FMLA rights of the plaintiff Garrison Jones.

204-    Both Velocity and Ogltree Deakins have both failed to recognize the truth and documented events.  That occurred from February 20, 2018 thru the current date and the intentional criminal violations of Federal law and the termination of the plaintiff while on approved FMLA medical leave.

205-    It is now 4 years and they continue this conduct.  They have stooped to the level where they made the USDOL a depository of fraud of their criminal acts and a depository of false fabricated forged documents and complaints planted in the files of the USDOL.

200- The USDOL on 3 separate occasions conducted investigations and did not find a single FMLA complaint made under the name of Garrison Jones against Velocity technology Solutions. As late as October 18, 2021 the USDOL after plaintiff sent copies of the attached Exhibit A from Document 94 stating that this document was a forgery.

201- USDOL in their response on October 18, 2021 stated they had no record of the document sent to the court by Ogltree Deakins attorney Anthony Decristoforo and it did not come from their agency.

202- It is a complete manufactured forgery by Ogltree Deakins attorney Anthony.

203- However, in a retroactive manner the court must also include this as FMLA interference as he did this in his representation of Velocity as such Velocity is charged with FMLA interference in violation of the FMLA rights of the plaintiff Garrison Jones.

204- Both Velocity and Ogltree Deakins have both failed to recognize the truth and documented events. That occurred from February 20, 2018 thru the current date and the intentional criminal violations of Federal law and the termination of the plaintiff while on approved FMLA medical leave.

205- It is now 4 years and they continue this conduct. They have stooped to the level where they made the USDOL a depository of fraud of their criminal acts and a depository of false fabricated forged documents and complaints planted in the files of the USDOL.

Dated: October 29, 2021

- 66 -

# Plaintiff EXHIBITS

**Monroe Hospital**

June 14, 2018

Garrison Jones
16152 W Durango St
Goodyear, AZ 85338

Re:     Offer of Employment

Dear Mr. Jones,

We are pleased to extend this offer to you to join Monroe Hospital as IT Application Analyst – Supply Chain Management.

Your starting compensation will be ██████████ on an annualized basis, payable bi-weekly. As an employee of Monroe Hospital, you will be eligible for benefits we offer generally to our employees, which currently include: Paid Time Off, 401(k), Medical, Dental and Vision for you and your dependents. All compensation and benefits are, of course, subject to change at any time, upon appropriate notice.

By signing below, you acknowledge that you are not relying on any promises that are not set out in this offer letter in deciding to accept this offer of employment.

It is a condition of this offer that, before commencing employment, you sign a Mutual Agreement to Arbitrate that contains additional requirements for the protection of Monroe Hospital, a copy of which is enclosed.

We wish to emphasize the importance we place on the proper treatment of any confidential information with which you may have come into contact in the past. We are offering you this job based on your skills and abilities and not your possession of any trade secret, confidential or proprietary information. We require that you not obtain, keep, use for our benefit or disclose to us any confidential, proprietary or trade secret information that belongs to others, unless the party who has the rights to the information expressly consents in writing in advance. Also, by signing below you affirm that you are not a party to any agreements, such as noncompetition agreements, that would limit your ability to perform your duties for Monroe Hospital.

Your employment with Monroe Hospital in both the position for which you are being hired, and any position that you hold thereafter (e.g., due to a transfer or promotion), is at will. This means that either Monroe Hospital or you can terminate the employment relationship at any time, with or without cause, and for any reason or for no reason, at any time. Any statements which are contrary to the at-will status of your employment are not authorized, and may not be relied upon by you. No provisions set forth in any employee handbook or any other type of policy can be relied on as modifying in any way, the at-will nature of your employment with Monroe Hospital. No one except Monroe Hospital's CEO has authority to enter into an agreement for any type of employment other than at-will

PRIME 1

employment. Furthermore, to be effective, any such agreement must be in writing and signed by Monroe Hospital's CEO.

You agree that Monroe Hospital will conduct periodic checks to confirm that you are not excluded from employment, as required by the Office of the Inspector General of the U.S. Department of Health and Human Services. By signing below, you further agree to abide by the existing rules of Monroe Hospital and any rules and regulations that become effective during the course of your employment.

We look forward to working with you as part of the Monroe Hospital team. Please indicate your acceptance of these terms of employment by signing and returning to me one of the two copies of this letter.

Sincerely,

Will Conaway
Chief Information Officer and Vice President of Information Technology

Enclosure

ACCEPTED:

_____
Garrison Jones

Dated _____

2



From: noreply@smarthires.com <noreply@smarthires.com>
Sent: Monday , June  18, 2018 9:06:22 AM
To: garrison.jones@outlook.com <garrison.jones@outlook.com>
Subject: Status update : PRIME HEALTHCARE SERVICES ONTARIO -
ITapplicationanalyst18(Application Analyst (SCM))

Dear Jones Garrison ,


Your application status for postion :ITapplicationanalyst18(Application Analyst
(SCM)) has been updated to Hired.

Please sign in to www.smarthires.com. and navigate to "My Applied Positions"
from your SmartHires Jobsearch Dashboard. You have the option to view past
comments and respond online by clicking on the "Post Comment" icon under
"Actions" column on the right Any feedback or comments from or to our staffing
team can be viewed under 'Comments'.

This is an auto generated Email. Please do not reply to this mail.



| Statement Date: | 07/19/18 - 08/11/18 |
|---|---|
| Page: | 2 of 4 |

*BANK-1*

*1st PAYROLL 7/19*

## TRANSACTION ACTIVITY

| Date | Activity Description | Deposits | Withdrawals | Daily Balance* |
|---|---|---|---|---|
| 7/19 | Charged-Off Account Reactivation | 2,899.60 | | 2,899.60 |
| 7/20 | ATM WITHDRAWAL | | 302.50 | |
| | *****9247 07/20 09:40 | | | |
| 7/20 | ATM WITHDRAWAL | | 203.00 | |
| | *****9247 07/20 16:02 | | | |
| 7/20 | POS PURCHASE | | 115.04 | |
| | WAL-MART #1991 BLOOMINGTON IN 241991 | | | |
| | *****9247 07/20 16:06 | | | |
| 7/20 | Foreign ATM Fee 716120 | | 2.50 | |
| | FARMERS AND M 3535 WEST 3RD BLOOMINGTON | | | |
| 7/20 | Foreign ATM Fee 001067 | | 2.50 | |
| | Woodforest Na 3585 W State Bloomington | | | 2,274.06 |
| 7/21 | POS PURCHASE | | 186.64 | |
| | NNT T-MOBILE #5552 5720 BLOOMINGTON IN | | | |
| | 092453 *****9247 07/21 07:22 | | | |
| 7/21 | POS PURCHASE | | 31.99 | |
| | Village Pantry 5 BLOOMINGTON IN | | | |
| | 00016T *****9247 07/21 09:51 | | | |
| 7/21 | POS PURCHASE | | 191.46 | |
| | CNS K & G INDY #0400606 INDIANAPOLIS IN | | | |
| | 024008 *****9247 07/21 12:49 | | | 1,863.97 |
| 7/22 | POS PURCHASE | | 49.41 | |
| | WAL-MART #1459 INDIANAPOLIS IN | | | |
| | 241459 *****9247 07/22 08:27 | | | 1,814.56 |
| 7/24 | POS PURCHASE | | 306.69 | |
| | NST BEST BUY #105  6605 RNCH CUCAMONG C | | | |
| | 065766 *****9247 07/24 13:54 | | | |
| 7/24 | DMC EXPEDITE FEE | | 25.00 | 1,482.87 |
| 7/29 | ATM WITHDRAWAL | | 403.00 | |
| | *****9247 07/28 19:01 | | | |
| 7/29 | POS PURCHASE | | 155.52 | |
| | WAL-MART #1991 BLOOMINGTON IN 241991 | | | |
| | *****9247 07/29 10:04 | | | |
| 7/29 | Foreign ATM Fee IN0112 | | 2.50 | |
| | 7800 COL H WE 7800 COL H WE INDIANAPOLI | | | 921.85 |
| 7/31 | POS PURCHASE | | 49.37 | |
| | KROGER #091 BLOOMINGTON IN 700091 | | | |
| | *****7587 07/30 20:17 | | | 872.48 |
| 8/01 | POS PURCHASE | | 144.78 | |
| | WM SUPERCENTER # BLOOMINGTON IN | | | |
| | 199100 *****7587 08/01 17:11 | | | 727.70 |
| 8/02 | PRIME HEALTHCARE/DIRECT DEP | 3,702.69 | | |
| 8/02 | POS PURCHASE | | 32.09 | |
| | CIRCLE S # 50 CI BLOOMINGTON IN | | | |
| | 004CQS *****7587 08/02 08:15 | | | |
| 8/02 | POS PURCHASE | | 145.47 | |
| | WM SUPERCENTER # BLOOMINGTON IN | | | |
| | 199100 *****7587 08/02 08:37 | | | 4,252.83 |
| 8/03 | POS PURCHASE | | 225.11 | |
| | WAL-MART #1991 BLOOMINGTON IN 241991 | | | |
| | *****7587 08/03 15:15 | | | 4,027.72 |
| 8/04 | POS PURCHASE | | 21.00 | |
| | DSC*DOLLAR SHAVE 866-2232780 CA | | | |
| | 123456 *****7587 08/03 09:41 | | | |

78750

 *Pending transactions are not reflected in the Daily Balance.   **Indicates skip in check numbers 
Checks converted to ACH will not have an image.

**FRAUD 1**

UIB-1076AFORPD (11-17)

Unemployment Insurance Program
Benefit Payment Control, Mail Drop 5893
P.O. Box 29225, Phoenix, Arizona 85038-9225
Telephone: 602-364-4300
Fax: 602-364-1211 or 602-364-1213

ARIZONA DEPARTMENT OF ECONOMIC SECURITY
Workforce Administration

**NEW HIRE AUDIT**

*3615610082018000380801201 8*

PRIME HEALTHCARE SERVICES MONR
4011 S MONROE MEDICAL BLVD
BLOOMINGTON
BLOOMINGTON, IN 47403 - 4740

**RECEIVED**

**AUG 2 3 2018**

**IMAGING / JC**

| | |
|---|---|
| Date: | 08/01/2018 |
| Re: | GARRISON JONES |
| SSN: | |

**Employer Instructions**

This is an Unemployment Insurance (UI) Audit. Our Department received information that your agency/company recently hired/rehired the above referenced individual. The purpose of this questionnaire is to detect incorrect or fraudulent UI claims by ensuring that the worker did not claim benefits to which they were not entitled. **You now have the option to receive this notice and/or provide the response electronically. Please visit our website at www.AZUITAX.com for additional information and to sign up for these services.**

We are auditing the calendar weeks **printed on the reverse side of this form** based on information reported by you (additional weeks have been added to allow for mailing delays). If the employee was hired/rehired by you prior to the first week of the audit, please include wage and hour information for any additional days or weeks that this individual actually worked for you. Please complete and return the information requested within **5 calendar days from the date of this audit form** for your convenience, a pre-addressed envelope is enclosed.

Please review the form carefully and complete all entries as appropriate. If your payroll is different from the seven day calendar week requested on this form you may have to use your daily wage records to complete the requested information. The claim week begins on Sunday and ends on Saturday. Please complete all other entries as appropriate. If the individual did not work at any time during the weeks listed, please write "None" in each of the Gross Wages Earned columns. If payments were made to this individual other than wages for work performed, please specify the type of payment using the letter codes shown on the audit form.

**Unemployment Insurance Fraud Costs YOU $$$.**

**Unemployment Insurance fraud is a billion dollar industry which costs you, the employer, by increasing your tax rates. We perform audits of Unemployment Insurance claims in order to prevent abuse of the Unemployment Insurance Trust Fund, to which employers like you, contribute the majority of taxes to fund the program.**

Equal Opportunity Employer/Program. ◆ Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI and VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008, the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics, and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, contact your local office manager; TTY/TTD Services: 7-1-1. ◆ Free language assistance for DES services is available upon request.

 *FRAUD-2*

**Arizona Department of
Economic Security**



**Office Of Appeals**

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES

SACRAMENTO, CA

Arizona Appeal No. U-1642697-001          Date of Mailing:          10/29/2019

Social Security No.

---

### DECISION OF APPEAL TRIBUNAL



## CLAIMANT WAS OVERPAID BENEFITS
## HOWEVER, CLASSIFICATION OF OVERPAYMENT IS
## CHANGED

---

**The last day to file an appeal is __November 29, 2019__ . Instructions for filing an appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis. Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Was the Claimant overpaid benefits? If yes, what is the amount and classification of the overpayment?

If the overpayment classification in the Determination of Overpayment is fraud, what is the amount of the penalty?

## DECISION:

I affirm but modify the Determination of Overpayment dated 10/1/2019. The Claimant was overpaid benefits in the amount of $960.00. The overpayment is classified as non-fraud. No penalty is due.

## FINDINGS OF FACT:

The Claimant received benefits in the amount of $240.00 for each of the weeks ending 7/7/2018 through 7/28/2019 for a total of $960.00.

The claimant had previously been disqualified from receiving benefits based upon his separation from his last employment. Upon appeal, the Determination of Deputy that disqualified him was reversed in a Decision of Appeals Tribunal dated 6/22/2018.

Prior the Decision that found him eligible to receive benefits, the claimant had not received any benefit payments on his claim. He was advised by the Program to fill out his weekly benefit claims as he did in the past.

The claimant became reemployed on 6/27/2019. He worked and earned wages during the benefit weeks ending 7/7/2019 through 7/28/2019. When he filed his claims for each of those benefit weeks, he answered "no" to the question of whether he worked or earned any money during those benefit weeks. He answered "no" because he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible, to reflect what his situation was for those previously unpaid weeks when he was not, in fact, employed.

He did not intend to intentionally give false or incorrect information to the Program in order to receive benefits to which he was not entitled.

## REASONING AND CONCLUSIONS OF LAW:

The issues are (1) whether the Claimant has been overpaid benefits, (2) the amount and the classification of any such overpayment, and (3) if applicable, the amount of fraud penalty due.

Arizona Revised Statutes, Section 23-787, provide in pertinent part as follows:

> A.    A person who receives any amount as benefits under this chapter to which the person is not entitled is liable to repay the overpaid amount to the department. The department may deduct all or a portion of the overpayment from future benefits payable to the person under this chapter.

If the overpayment classification in the Determination of Overpayment is fraud, what is the amount of the penalty?

## DECISION:



I affirm but modify the Determination of Overpayment dated 10/1/2019.  The Claimant was overpaid benefits in the amount of $960.00. The overpayment is classified as non-fraud. No penalty is due.

*NON-FRAUD.*

## FINDINGS OF FACT:

The Claimant received benefits in the amount of $240.00 for each of the weeks ending 7/7/2018 through 7/28/2019 for a total of $960.00.

The claimant had previously been disqualified from receiving benefits based upon his separation from his last employment. Upon appeal, the Determination of Deputy that disqualified him was reversed in a Decision of Appeals Tribunal dated 6/22/2018.

Prior the Decision that found him eligible to receive benefits, the claimant had not received any benefit payments on his claim. He was advised by the Program to fill out his weekly benefit claims as he did in the past.

The claimant became reemployed on 6/27/2019. He worked and earned wages during the benefit weeks ending 7/7/2019 through 7/28/2019. When he filed his claims for each of those benefit weeks, he answered "no" to the question of whether he worked or earned any money during those benefit weeks. He answered "no" because he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible, to reflect what his situation was for those previously unpaid weeks when he was not, in fact, employed.



He did not intend to intentionally give false or incorrect information to the Program in order to receive benefits to which he was not entitled.

## REASONING AND CONCLUSIONS OF LAW:

The issues are (1) whether the Claimant has been overpaid benefits, (2) the amount and the classification of any such overpayment, and (3) if applicable, the amount of fraud penalty due.

Arizona Revised Statutes, Section 23-787, provide in pertinent part as follows:

> A.    A person who receives any amount as benefits under this chapter to which the person is not entitled is liable to repay the overpaid amount to the department.  The department may deduct all or a portion of the overpayment from future benefits payable to the person under this chapter.

Page 2—Arizona Appeal No. U-1642697-001



AZ MEDICAID CARD



**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Garrison Jones <garrison.jones@outlook.com> |
| **Sent:** | Monday, August 19, 2019 2:53 AM |
| **To:** | garrison.jones1724@outlook.com |
| **Subject:** | Fwd: LTD Transition and Payments - Garrison Jones.return to work recoup |

Sent from my iPhone

Begin forwarded message:

> **From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
> **Date:** December 22, 2017 at 11:59:52 AM PST
> **To:** Garrison Jones <garrison.jones@velocitycloud.com>
> **Cc:** Wendy Cauthen <wendy.cauthen@velocitycloud.com>
> **Subject: Re: LTD Transition and Payments - Garrison Jones.**
>
> It will not kick in after short-term disability. You did not have a long-term disability when you started short-term disability and therefore you are not eligible to roll into long-term disability immediately for this situation.
>
> So if you need us disability after a year passes from your short-term disability ending then you could file a long-term disability claim. As mentioned, you can file earlier to confirm with them the eligibility date however per their policy it will be at least one year.
>
> On Fri, Dec 22, 2017 at 2:56 PM Garrison Jones <garrison.jones@velocitycloud.com> wrote:
> In a yr to me means 2019. Please clarify
>
>> On Fri, Dec 22, 2017 at 12:55 PM Garrison Jones <garrison.jones@velocitycloud.com> wrote:
>> Not fully understanding do you mean that long-term disability will kick in in 2018 after my short-term disability is done or not
>>
>>> On Fri, Dec 22, 2017 at 12:42 PM Garrison Jones <garrison.jones@velocitycloud.com> wrote:
>>> Meaning 2018 correct
>>>
>>> Sent from my iPhone
>>>
>>>> On Dec 22, 2017, at 12:37 PM, Shauna Coleman <shauna.coleman@velocitycloud.com> wrote:
>>>>
>>>> Hello,
>>>>
>>>> Thank you Wendy. Garrison, as mentioned during open enrollment you will not be eligible to receive LTD benefits on your current disability as you did not have this coverage in place when this situation started. That said, you will be eligible for coverage in a year (with review by Lincoln Financial).
>>>>
>>>> Velocity will collect your premium once you return to work. 

1

**From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
**Sent:** Wednesday, January 17, 2018 5:26:13 PM
**To:** Garrison Jones
**Subject:** Fwd: Access Removal Notice

Good Afternoon Garrison,

It has come to our attention that you have been accessing your work email. As you may recall, we instructed you to focus on your health and well-being and not to work while you were our on medical leave.  As per the email below you acknowledged this direction and the action you took to comply.

It appears that on or around December 28, 2017 an email forwarding program was installed to forward e-mails from your Velocity work account to multiple personal accounts.  This is not permitted both because you should not be working while you are on medical leave and because company e-mails should not be forwarded to a personal e-mail address. It is because of this that we have removed your account access.  If you have any questions, please contact me directly.

Going forward, we will send all communications to your personal email that we have on file with human resources: garrison.jones@outlook.com.  A copy of this correspondence will also be mailed to your home address at 1360 N 43rd Avenue, Phoenix, AZ 85009. If you would like us to use a different email address to communicate about your leave or other issues related to your employment, please let me know.

Thank you,

**Shauna Coleman | Director, Human Resources |Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 |velocitycloud.com


---------- Forwarded message ----------
**From: Garrison Jones** <garrison.jones@velocitycloud.com>
Date: Thu, Nov 9, 2017 at 10:51 AM
Subject: return note
To: Shauna Coleman <shauna.coleman@velocitycloud.com>

I did not see a meeting invite sorry. You told me to rest and I did and have not been checking email every day as instructed

**Garrison Jones | Lawson/Infor Supply Chain Consultant | Velocity Technology Solutions, Inc.**
Mobile916-870-4960| velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

*4-3*

**garrison.jones@outlook.com**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Tuesday, January 23, 2018 7:26 PM |
| **To:** | garrison.jones1724@outlook.com; Garrison Jones |
| **Subject:** | Benefit Premium Recoup |

Good Evening Garrison,

As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

| | | Dec-17 | | Jan-18 |
|---|---|---|---|---|
| Medical | $ | 185.83 | $ | 242.15 |
| Dental | $ | 22.21 | $ | 25.77 |
| FSA | $ | 83.33 | $ | 83.33 |
| LTD | $0 (not enrolled) | | $ | 26.88 |
| | $ | 291.37 | $ | 378.13 |

In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51.  Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you

**Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

4-4

On Wed, Feb 21, 2018 at 5:00 PM Garrison Jones <garrison.jones@outlook.com> wrote:
Received message from Optometrist stating my vision coverage was cancelled in December
2017. Can you tell me how this happened before I even sent my discrimination complaint?
--
Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc. o
704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

**4-5**

**Garrison Jones**

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Saturday, February 24, 2018 12:30 AM |
| **To:** | garrison jones; Garrison Jones |
| **Subject:** | Re: Benefit Premium Recoup |

Good Evening Garrison,

On January 23, 2018 we notified you that we needed you pay for your portion of the benefit premiums that have not been paid in order to not lose coverage.  Please provide payment for the following months and amounts:

- December 2017 = $291.37
- January 2018 = $378.13
- February 2018 = $378.13

As previously mentioned, we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

This is the second request for payments. Velocity is not responsible for your benefit premium and without payment you are at risk of losing coverage.  Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you,

**Shauna Coleman │ Director, Human Resources │ Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | velocitycloud.com

On Tue, Jan 23, 2018 at 10:25 PM, Shauna Coleman <shauna.coleman@velocitycloud.com> wrote:
Good Evening Garrison,

As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

| | | Dec-17 | |
|---|---|---|---|
| **Medical** | $ | 185.83 | $ |
| **Dental** | $ | 22.21 | $ |
| **FSA** | $ | 83.33 | $ |
| **LTD** | $0 (not enrolled) | | $ |

1

In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51.  Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you

**Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc.**

o  704.357.7721 | m  845.282.6955 | f  703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please notify us immediately at counsel@velocitycloud.com and delete this copy from your system.



**Arizona Medicaid Card**



**garrison.courtdocs@outlook.com**

| | |
|---|---|
| **From:** | Garrison Jones <garrison.jones@outlook.com> |
| **Sent:** | Sunday, October 3, 2021 1:59 AM |
| **To:** | Garrison Jones; Garrison Jones -Court-Docs |
| **Subject:** | Fwd: Access Removal Notice |

Get Outlook for iOS

**From:** Chris Heller <chris.heller@velocitycloud.com>
**Sent:** Monday, January 29, 2018 3:17:35 PM
**To:** Garrison Jones <garrison.jones@outlook.com>
**Cc:** garrison.jones1724@outlook.com <garrison.jones1724@outlook.com>
**Subject:** RE: Access Removal Notice

Garrison,

The information Velocity has requested has nothing to do with your access to Velocity's systems.

Velocity needs basic factual information on the claims you have made in order to interview the appropriate people.

The following is one of the prior requests for information and I have highlighted the required information for this claim:

"With respect to your claims of sexual harassment, we again take these allegations seriously and are investigating. We require additional information from you to permit us to further this investigation. Please advise as to who witnessed this conduct, who touched/rubbed up against you, when did it happen, where did it happen, has it happened since, and are there any further details you have available to assist in Velocity's investigation. Once we receive this information, we will continue our investigation."

Once Velocity receives this information, we will conduct interviews of the individuals involved, including you. Without this information, the investigation of this claim can't continue.

Regards,
Chris

**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**
o  704.593.3423| m  816.678.5162 | f  703.935.4308 | velocitycloud.com

**From:** Garrison Jones [mailto:garrison.jones@outlook.com]
**Sent:** Saturday, January 27, 2018 9:56 AM
**To:** chris.heller@velocitycloud.com
**Cc:** garrison.jones1724@outlook.com
**Subject:** Fwd: Access Removal Notice

1

**U.S. Department of Labor**   Wage and Hour Division
Washington, DC 20210





March 14, 2019

This letter responds to your request for an opinion on whether an employer may delay designating paid leave as Family and Medical Leave Act (FMLA) leave or permit employees to expand their FMLA leave beyond the statutory 12-week entitlement. This opinion is based exclusively on the facts you have presented. You represent that you do not seek this opinion for any party that the Wage and Hour Division (WHD) is currently investigating or for use in any litigation that commenced prior to your request.

## BACKGROUND

You represent that some employers "voluntarily permit[ ] employees to exhaust some or all available paid sick (or other) leave prior to designating leave as FMLA-qualifying, even when the leave is clearly FMLA-qualifying." You state that employers justify this practice by relying on 29 C.F.R. § 825.700, which provides in relevant part that "[a]n employer must observe any employment benefit or program that provides greater family and medical leave rights to employees than the rights provided by the FMLA." You ask whether it is indeed permissible under this provision for an employer to delay the designation of FMLA-qualifying paid leave as FMLA leave or to provide additional FMLA leave beyond the 12-week FMLA entitlement.

## GENERAL LEGAL PRINCIPLES

The FMLA entitles eligible employees of covered employers to take up to 12 weeks of unpaid, job-protected leave per year for specified family and medical reasons. 29 U.S.C. § 2612(a).[1] The employer may require, or the employee may elect, to "substitute" accrued paid leave (*e.g.*, paid vacation, paid sick leave, etc.) to cover any part of the unpaid FMLA entitlement period. *Id.* at § 2612(d)(2).[2]

The employer is responsible in all circumstances for designating leave as FMLA-qualifying and giving notice of the designation to the employee. 29 C.F.R. § 825.300(d)(1). WHD's regulations require employers to provide a written "designation notice" to an employee within five business days—absent extenuating circumstances—after the employer "has enough information to determine whether the leave is being taken for a FMLA-qualifying reason." *Id.*

---

[1] Although employees are generally entitled to 12 weeks of leave, the FMLA provides that an eligible employee who is a spouse, son, daughter, parent, or next of kin of a covered servicemember with a serious illness or injury may take up to 26 weeks of leave during a single 12-month period to care for the servicemember. *See* 29 U.S.C. § 2612(a)(3). WHD refers to this type of leave as "military caregiver leave."

[2] Under the FMLA, "[t]he term substitute means that the paid leave provided by the employer … will run *concurrently* with the unpaid FMLA leave." 29 C.F.R. § 825.207(a) (emphasis added).

1

Failure to follow this notice requirement may constitute an interference with, restraint on, or denial of the exercise of an employee's FMLA rights. 29 C.F.R. §§ 825.300(e), 825.301(e).



Nothing in the FMLA prevents employers from adopting leave policies more generous than those required by the FMLA. 29 U.S.C. § 2653; *see* 29 C.F.R. § 825.700. However, an employer may not designate more than 12 weeks of leave—or more than 26 weeks of military caregiver leave—as FMLA-protected. *See, e.g., Weidner v. Unity Health Plans Ins. Corp.*, 606 F. Supp. 2d 949, 956 (W.D. Wis. 2009)





interests in the contested provision.... Courts and agencies must respect and give effect to these sorts of compromises."); *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1204–06 (11th Cir. 2001) ("Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave benefit offered by the employer.")

**OPINION**



An employer may not delay the designation of FMLA-qualifying leave or designate more than 12 weeks of leave (or 26 weeks of military caregiver leave) as FMLA leave.

First, an employer is prohibited from delaying the designation of FMLA-qualifying leave as FMLA leave. Once an eligible employee communicates a need to take leave for an FMLA-qualifying reason, neither the employee nor the employer may decline FMLA protection for that leave. *See* 29 C.F.R. § 825.220(d) ("Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA."); *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1204 (11th Cir. 2001) (noting that the employer may not "choose whether an employee's FMLA-qualifying absence" is protected or unprotected by the FMLA). Accordingly, when an employer determines that leave is for an FMLA-qualifying reason, the qualifying leave is FMLA-protected and counts toward the employee's FMLA leave entitlement. *See* 29 C.F.R. § 825.701(a) ("If leave qualifies for FMLA leave ... the leave used counts against the employee's entitlement ...."); WHD Opinion Letter FMLA2003-5, 2003 WL 25739623, at *2 (Dec. 17, 2003) ("Failure to designate a portion of FMLA-qualifying leave as FMLA would not preempt ... FMLA protections ...").[3] Once the employer has enough information to make this determination, the employer must, absent extenuating circumstances, provide notice of the designation within five business days. 29 C.F.R. § 825.300(d)(1). Accordingly, the employer may not delay designating leave as FMLA-qualifying, even if the employee would prefer that the employer delay the designation.



An employer is also prohibited from designating more than 12 weeks of leave (or 26 weeks of military caregiver leave) as FMLA leave. *See, e.g., Weidner*, 606 F. Supp. 2d at 956; *cf. Ragsdale*, 535 U.S. at 93–94; *Strickland*, 239 F.3d at 1204–06. Of course, "[a]n employer must

---

[3] WHD therefore disagrees with the Ninth Circuit's holding that an employee may use non-FMLA leave for an FMLA-qualifying reason and decline to use FMLA leave in order to preserve FMLA leave for future use. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014).

observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700.  But providing such additional leave outside of the FMLA cannot expand the employee's 12-week (or 26-week) entitlement under the FMLA. *See, e.g. Weidner*, 606 F. Supp 2d at 956.  Therefore, if an employee substitutes paid leave for unpaid FMLA leave, the employee's paid leave counts toward his or her 12-week (or 26-week) FMLA entitlement and does not expand that entitlement.

We trust that this letter is responsive to your inquiry.[4]

Sincerely,

Keith E. Sonderling
Acting Administrator

**\*Note: The actual name(s) was removed to protect privacy in accordance with 5 U.S.C. § 552(b)(7).**

---

[4] WHD rescinds any prior statements in previous opinion letters that are inconsistent with this opinion. *See* WHD Opinion Letter FMLA-67, 1995 WL 1036738, at \*3 (July 21, 1995); WHD Opinion Letter FMLA-49, 1994 WL 1016757, at \*2 (Oct. 27, 1994).

3

Thu 4/5/2018 5:05 PM

Chris Heller <chris.heller@velocitycloud.com>

RE: Settlement

To  Garrison Jones

NO Settlement
4/13/2018
While on FMIA

Garrison,

Velocity will not be making a settlement offer in this matter.

Chris

**Chris Heller | SVP & General Counsel | Velocity Technology Solutions, Inc.**

o  704.593.3423 | m 816.678.5162 | f 703.935.4308 | velocitycloud.com