



Garrison Jones
Plaintiff (Pro Se)
General Delivery
Sacramento, California 95814
garrison.jones@outlook.com

# U.S. DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

**GARRISON JONES**

**Plaintiff,**

**v.**

**VELOCITY TECHNOLOGY SOLUTIONS LLC et al**
**Defendants.**

**Case No.: 2:19-cv-02374 KJM-JDP**

**JURY TRIAL DEMANDED**

Action filed:  Nov 25, 2019

Date set for trial: NONE

Sacramento, California 95818
garrison.jones@outlook.com

## Plaintiff Motion to Vacate Oder Document 98

Plaintiff Garrison Jones does hereby move this court for an order to vacate the entire order Document 98.

Everything in said order were all a complete lie.

The exhibit the court is claiming to be an **unambiguous** statement as to the termination of plaintiff along with other statements made and contained in the order and exhibit were all a bunch off lies, untrue statements.

- 4 -

**PLEASE TAKE NOTICE** that March 24, 2022 at 10:00 am. in Courtroom 9 of the United States District Court of Eastern California Court located at 501 I Street Sacrament, California 95814, Plaintiff Garrison Jones will move this Court to grant his motion to vacate  THE ENITRE ORDER Document 98 and sanction both the defendants Velocity and their attorneys from Ogltree Deakins for filing a motion, intentional deceiving this court b gross egregious misrepresentation in addition   to an area and their false interpretation / transformation to an exhibit that was not what they claim it to be.

In addition the issue they claim as to plaintiff receiving health benefits had already been denied multiple times in prior proceedings and was a final decision had been ruled in favor of plaintiff over 4 years ago.

This Motion will in the opinion of the plaintiff finally assist this court in making crucial decisions and ruling as well as holding all parties liable and accountable for their actions against plaintiff.

**Ogltree Deakins attorneys intentionally directed the courts attention** to this section in their motion to dismiss knowing that it was false and plaintiff was not receiving health benefits paid for by Velocity.

They knew they had tried this same tactic in July 2018 and their appeal was denied and dismissed with prejudice and specifically told they had no right to appeal this decision.

- 1 -

They violated the court order.

They intentionally did not inform this court they violated this court order and on August 20, 2018 they again tried to reopen the appeal hearing and were denied to do so a third time.

However, they by using an exhibit from a dismissed complaint directed the courts attention back to this same issue,  relitigating the issue for **the fifth time** in a different jurisdiction claiming his termination "contradicted " an email they instructed velocity to send claiming he was still receiving benefits.

Now in a different court, they deceived a Chief Judge in the Eastern District of California into believing that plaintiff was not terminated and like a parrot they have now begun to use her statements and he word "unambiguous" thinking they have **gained some form of credibility** when the entire event was **nothing more than a cesspool of lies and they knew it, before they drafted the motion.**
It has been proven to be such and not from Velocity or Ogltree but from the organizations and health providers who administered health services, including Velocity's own health plan, the state of Arizona and a health provider all who verified plaintiff was receiving health services from their organization and that plaintiff paid out of pocket for health services after they were denied by Velocity health provider.

Document 117 pages 13- 25 contains 11 pages of documents from United Health care (velocity health plan administrator), the State of Arizona Medicaid and Midwest eye Clinic a health provider all confirming facts plaintiff had no insurance or that he was

covered by Medicaid when at the same time, Velocity is lying claiming they were paying his premiums when in fact they had been cancelled.

Velocity cancelled his health benefits on January 23, 2018.

Plaintiff refused to allow Velocity to dictate or be in control of his efforts to recover from the Hemorrhagic stroke he suffered on November 17, 2018.

Seeing they will never keep their word or promise on January 24, 2018 plaintiff applied for state off Arizona Medicaid to remove Velocity from all aspects of his healthcare.

**He was approved for Medicaid on February 7, 2018**.

There is no person on this planet who would pay out of pocket for health benefits if they had or was receiving health benefits from their employer.

There was nothing unambiguous about the entire email as this ploy had been tried unsuccessfully in an appeal by Velocity / Ogltree Deakins and that appeal was denied and dismissed.

The court failed to recognize any of this in other exhibits in the documents filed by plaintiff.

In addition to the escalation of lies added and made by Velocity and Ogltree Deakins that changed on a regular basis to induce AZDES and the Arizona Court of Appeals into believing plaintiff had not been fired and still receiving health benefits when he was not.

In addition, they wanted anyone to believe they were paying 100 percent of these benefits event though they knew plaintiff had returned to work for another organization, (Prime Healthcare) **yet they want this court to believe they were still allegedly paying these health benefit premiums and still claiming he is employed at Velocity without a single shred offer of or presentation of evidence.**

**It is highly illogical that any organization would pay health premiums for an employee of another organization unless that had a pretextual reason to do so.**

**Velocity is not one of those organizations.  If they are, they are the first and only organization to do so.**

In addition, two days after this communication plaintiff received notification Velocity who already had revoked his access to email, broke into the email account of plaintiff at Velocity looking for more information / communication that was damaging to them.

**May, 17, 2018**

On May 17, 2018 plaintiff received two notifications in his personal email account that Velocity had first chaged the recovery account used to access this email account and then a second one that Velocity had infact changed the password and signed into this account.

Google                                                    Garrison Jones 

 Your account garrison.jones@outlook.com is listed as the recovery email for
garrison.jones@velocitycloud.com. Don't recognize this account? Click here

## New sign-in to your linked account
## garrison.jones@velocitycloud.com

Your Google Account was just signed in to from a new Windows device. You're getting this email to
make sure it was you.

CHECK ACTIVITY

**From:** Google <no-reply@accounts.google.com>
**Sent:** Thursday, May 17, 2018 9:00:59 AM
**To:** garrison.jones@velocitycloud.com
**Subject:** Security alert

Google                                                    Garrison Jones 

## Recovery email was changed for
## garrison.jones@velocitycloud.com

The recovery email for your account was changed. If you didn't change it, you should check what
happened.

CHECK ACTIVITY

You received this email to let you know about important changes to your Google Account and services.

© 2018 Google Inc.,1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
et:2

- 6 -

Now these are not the actions of an employer who is looking forward to an employee to return to work after FMLA leave.

## May 21, 2018

Ogltree Deakins attorney Christopher Meister via email sent plaintiff the a copy of the certification document Velocity HR Director Shauna Coleman is claiming she needed in her infamous email off May 15, 2018

He had to receive this document from Velocity HR.  Yet it proves she was lying about not having it in the possession of velocity because Ogltree Deakins was building an FMLA defense and advised her to send these email messages.

Again the court can see that it is Ogltree Deakins attorneys who are advising Velocity to make these contacts, make fictitious statements just like they are doing in this case.

Velocity on their own merit are documented liars and they have hired a law firm where each attorney that has been assigned to litigation with plaintiff especially decristoforo, anthony j are all compulsive narcissistic habitual pathological liars.

Even on November 13, 2020 Ogltree Still makes this false claim about the certification to return to work.  Turning on one of their own attorneys claiming it was never provided by plaintiff.  Document 62 dated November 13, 2020

- 7 -

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff's employment would have ceased/ended for other reasons.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff never provided a health-care provider's certification of his need for leave.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each alleged (and surviving) cause of action therein, is barred on the grounds that Plaintiff did not provide a written statement from his health-care provider that he was fit to return to work.

It is an employer who is continue to deny and refuse to reinstatement an employee after FMLA leave.

The fact is that email was nothing more than the continued cover-up of the termination of plaintiff.

The fact that they broke into the email account of plaintiff shows the action of an employer who has terminated an employee and have a vindictive desire to gain access to as much information that can potentially hurt the organization.

As previously illustrated, Velocity and Ogltree Deakins have both been involved in the cover-up of plaintiff for over 4 months.

The "alleged extension of his FMLA illustrates Velocity was preventing plaintiff from returning to his position and they were not going to allow is return under any circumstances.

They did not care what laws they had to break.

The fact remains, he was terminated over 3 months ago so his return to work Velocity already decided he would not.

The attorneys from the law firm directed the courts attention to a single word **"contradicting"** because that in his delusional twisted mind and intent to deceive this court, his interpretation /intent was to **transform the exhibit into something it was not.**

**Ogltree Deakins again instructed Velocity to send this email on May 9 and May 15, 2018**

The exhibit was exactly what plaintiff described it be **"disturbing"**.

Disturbing because for over 3 months and no communication, then all of a sudden out of the blue after he has filed for unemployment they have drafted a conspiracy to cover-up his termination, beginning with these emails.

That email it is not a contradiction of his previous statement on his termination, his termination contradiction of the exhibit.

Plaintiff has proven that by contacting the health plan, the state of Arizona and a health care provider where all provided information proving velocity and Ogltree Deakins were both lying to this court.

The exhibit is part of the pretextual ploy by both Velocity and attorneys as part of the cover-up of the termination of plaintiff.

If in the year2018 they had proof Velocity was paying these premiums they could have immediately presented it to AZDES and the Arizona Court of Appeals on Multiple occasions.

Reminding this court that this was the very first appeal and it occurred over 4 ½ years ago.
Over the next year up until November 2019 there were 4 additional appeal hearing they could have offered this evidence to prove he was still employed and receiving benefits.

They have not produce a single document to prove either.

**April 24, 2018**

Velocity claimed plaintiff still employed

**May 9, 2018**

Velocity claimed still employed

**May 15, 2018**

Velocity claimed still employed but now they have added receiving benefits

**June 21, 2018**

Velocity and Ogltree Deakins attorney ex parte communication with Arizona court of Appeals where they also submitted the same document from April 24, 2018 claiming plaintiff still employed.  This was a pre-printed document returned to AZDES by a payroll clerk who was instructed to do so by Velocity General Counsel and HR Director.

Also AZES received communication from Velocity HR Director Shauna Coleman that she would not be attending the hearing the next day.

Arizona Appeal hearing where velocity HR director on June 21, 2018 @

| | | |
|---|---|---|
| 06/22/2018 11:18:21 AM | T/C FRM THE CLT WANTING TO KNW WHAT WAS GOING ON W/ THE HRG, CHECKED C2T THE HRG WAS IN PROGRESS. | IA |
| 06/22/2018 9:26:07 AM | T/C FRM THE CLT RE; THE REG IN C2T. PROVIDED TO THE CLT THE REG WAS ENTERED CORRECTLY. THE ALJ WILL BE PLACING THE CALL TO HIM. | IA |
| 06/21/2018 1:29:26 PM | 6/21 RECVD CALL FROM ER WHO CHOOSES  NOT BE ATTENDING HEARING, SHAWNA COLEMAN 704-357-7721 | JC |
| | U-1595392-001-OA | |

Now why would Velocity HR director, General Counsel and their atorneys from Ogltree Deakins, all on a conference call with the court all fail to show up for an umemploye appeal hearing if they had proof of the continued employemt ?

**June 22, 2018**

Velocity, Ogltree Deakins and Velocity General Counsel Chris Heller all fail to attend hearing where decision overturned and determined plaintiff was unlawfully terminated.

**July 23, 2018**

- 11 -

**Ogltree Appeal**

**Now in additon to claiming they had good reason not to attend appeal heaing on June 22, 2018, they now are claiming**
   **a. Plaintiff still emplyed**
   **b. Negotiation of end of emplyment**
   **c. Plaintiff still receviing helath benefits**
   **d. But now they are claiming plaintiff receiving "wages"**


**ALL LIES**

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston. Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown. Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh. Richmond ▪ St Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

126GC - APS #: 1600600 - Type: OA - Exhibit #: 09 - Claimant Last Name: JONES

Now as illustrated by the dates, each time they are adding and changing their claims to make it appear that he is still employed.

> Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh Richmond ▪ St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

- 126GC - APS #: 1600600 - Type: OA - Exhibit #: 09 - Claimant Last Name: JONES

> Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged because he was copied on an email indicating that he was no longer employed and because his job was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked Velocity's General Counsel directly about his employment status, he was unequivocally told that he was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was still employed.
>
> For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22, 2018, decision granting Mr. Jones unemployment benefits be reversed.

What is equally disturbing is the addition of wages claim.

- 13 -

Plaintiff had no income from Velocity since November 2017 over 9 months ago and received nothing from the in the form of wages.  His Short term disability was not paid by Velocity and had expired over 6 months ago, yet he quotes an ARS statue 23-621 that he claims proves wages were being paid which is **absolutely laughable/hilarious.**

## Decision Administrative Judge June 22, 2018

In addition, the courts false claim that the administrative judges' decision was "unclear: as to what they found and why is a complete mistake.

> 7   544, 570 (2007)).  It is unclear what the administrative law judge or the Arizona administrative
>
> 8   agency found and why.

**The administrative judge issued an 11 page decision based on the facts in support of her decision.**  The judge also in the middle of the hearing   alerted plaintiff about the ex-parte communication and evidence document sent to the court the day before on June 21, 2018.   A copy was sent via email to plaintiff and ruled inadmissible by the court.

In the decision, the court ruled the fact Velocity nor Ogltree Deakins, nor Velocity General Counsel all failed to attend and they did not offer or present any evidence. Now if a part does not attend a hearing after they have been provided proper notice over 3 weeks prior the court can only use the testimony and evidence at hand in making  its decision.  Thus the 11 page decision.

It is obvious that Velocity and Ogltree were both depending on the court to rule in their favor based on lies they made on June 21, 2018 and the same documents sent on April 21, 2018 without testifying on the record because it would be damaging to them in the future if there was any future litigation.

They again, was depending on other to do their dirty work for them, just as they are doing in this case.

They have no case.  They had no case four ½ years ago and they don't have one now.

They terminated plaintiff Garrison Jones while he was on approved FMLA leave, period.  They have not offered anything to prove otherwise.

**It does not take 4 ½ years to present evidence or testify on the record that he was not terminated nor does it take 4 ½ years to prove Velocity was paying 100 percent of his health premiums for over 8 months.**

**After plaintiff received the order from Document 98 it took him 2 months to reach out to Velocity Health plan, the state of Arizona Medicaid program and to a heal provider to obtain records to prove plaintiff was receiving healthcare from the state of Arizona and that Velocity health plan refused/denied to authorize health services after it was sent to them by the provider on JAN. 30, 2018.**

This proved that 7 days after Velocity sent plaintiff email on Jan. 23, 2018, they had already cancelled his health benefits and plaintiff was forced to pay out of pocket for his visit to the provider.

It also proves that after this embarrassing event on January 30, 2018, Velocity had in fact cancelled all his health coverage.

Again, plaintiff in February 2018 had received approval from state of Arizona Medicaid to move forward with his healthcare and rehabilitation from his stroke.

Velocity did not present any evidence they were paying 100 percent of these benefits in June, July or August 2018 and they will not present to this court any evidence of the same.

If they do it is a forgery.  It does not take 4 years to present evidence on your behalf to prove you are not lying.

It took plaintiff 2 months to get proof he was not covered by Velocity insurance from Velocity provider, state of Arizona and a health provider who confirm the Velocity insurance declined to authorize the insurance for the visit and plaintiff paid out of pocket over $330.00 after they tried unsuccessfully twice to get authorization

At this point Velocity /Ogltree Deakins had 4 opportunities to present evidence of still employed, receiving benefits and wages and failed to do so.

   a. June 21, 2018
   b. June 22, 2018
   c. July 23, 2018
   d. August 20, 2018

They have no case or defense and have instead used exhibits submitted by plaintiff to misdirect the courts attention elsewhere and not the facts to this case.

They again have no case or evidence to counter any of the claims and evidence/exhibits by plaintiff. Instead they intend to discredit the evidence / exhibits by transforming and altering them into something they are not or try to transform them unsuccessfully into something in their favor.

Additional, the attorneys from Ogltree Deakins, advised and instructed Velocity to send these emails to plaintiff because Velocity had terminated plaintiff and immediately reached out to Ogltree Deakins who began to advise them to send communications in the event of any future litigation.

The fact that Velocity sent two emails one on May 9 and May 15 six days later illustrates the is also part of the cover-up as after these emails plaintiff never heard or received any communication from Velocity HR again.

In days immediately after that, all the lies contained in that email began to crumble.

## Conclusion

**The court will notice that since Document 117 has been filed there has not been a single pleading filed by the defendants that mentions any of the elements or exhibits in that document as this is the pattern they have displayed from the beginning. Now that** they have again for the 40th time bee caught in a lie, they go silent, then abandon the lies they have told and move their attention to another lie or direction.

- 18 -

For these reasons and many more, their motion for the 6th time must be dismissed as if the court does not they will continue this time and time again with no end.

As long as Ogltree Deakins sees an opportunity for billable hours they will continue this dilatory tactic until Velocity is bankrupt.

Respectfully submitted,
Dated: February 22, 2022

**Garrison Jones Plaintiff** (Pro Se)

Sacramento, California 95818
garrison.jones@outlook.com

**Arizona Department of
Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL  60187-4842

VELOCITY TECHNOLOGY
ENTERPRISES INC DBA
DBA VELOCITY TECHNOLOGY
SOLUTIONS
1901 ROXBOROUGH RD FL 4
CHARLOTTE, NC  28211

Arizona Appeal No. U-1595392-001

Date of Mailing:              6/22/2018

Social Security No. 

Employer Acct. No.        7428011000

---

### DECISION OF APPEAL TRIBUNAL

## IN FAVOR OF CLAIMANT
## EMPLOYER'S ACCOUNT IS CHARGED

---

**The last day to file an appeal is   July 23, 2018   . Instructions for filing an appeal
are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM  FOR
UNEMPLOYMENT BENEFITS
The Department  of Economic Security provides language assistance  free of charge.
For assistance in your preferred language, please call our Office of Appeals (602) 771-
9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE
SEGURO DE DESEMPLEO
The Department  of Economic Security suministra ayuda  de los idiomas gratis.  Para
recibir ayuda en su idioma  preferido, por favor comunicarse con la oficina de
apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Should the claimant  be disqualified from receiving unemployment benefits because of
the reasons for separating from employment?

Should employer's account be charged for benefits paid the claimant as a result of this employment?

## DECISION:

The employer's account is subject to charges for benefits paid the claimant.

I set aside the deputy's ruling that the claimant quit this employment without good cause.

The claimant was discharged from this employment, but not for wilful or negligent misconduct. The claimant qualifies for benefits.

## FINDINGS OF FACT:

The claimant was last employed as a consultant by the employer, a client based technology firm, for approximately 13 months prior to being discharged on 3/24/2018.

The claimant had a stroke in November of 2017 and was absent from work. The employer placed the claimant on FMLA in February of 2018 which would expire in May. The claimant was scheduled for an evaluation with his doctor at the end of March to determine whether he would be released to return to work.

On March 15, 2018 the claimant was copied on an email from the Senior Director over Infor practice to the Senior Vice President indicating that the claimant's name was still showing up in the payroll system and that she understood from their last exchange that the claimant was no longer employed, and asking whether she or the claimant's supervisor could release him from the payroll.

The claimant was also contacted by 4 different individuals, including a head hunter firm, who advised him that the employer was advertising his job.

The claimant emailed the employer's general counsel on 3/24/2018 asking about his employment status. The general counsel replied that the claimant was on FMLA. The claimant responded asking why his job was posted? The general counsel did not answer the claimant's reply.

The claimant has sent 124 messages to the employer to which he has not received a reply.

In January the claimant filed a complaint with the employer's human resources department, alleging discrimination.

In February he filed charges with the EEOC. Charges were dismissed in March and the claimant was given a right to sue letter.

The claimant  filed a  claim  for unemployment  insurance  in April  and filed  a  lawsuit against the employer in May as well as another EEOC complaint.

## REASONING AND CONCLUSIONS OF LAW:

The claimant has contested a Determination of Deputy which held the claimant left work voluntarily without good cause in connection with the employment.  The issue involves the application  of Sections  23-775  and 23-727  of the Employment Security  Law  of Arizona.

Section 23-775 of the Arizona Revised Statutes provides in pertinent part as follows:

An individual shall be disqualified from benefits:

1.   For the week in which the individual has left work voluntarily without good cause in connection with the employment, and in addition to the waiting week, for the duration of the individual's unemployment and until the individual has earned wages in an amount equivalent to five times the individual's weekly benefit amount otherwise payable. ...

2.   For the week in which the individual has been discharged for wilful or negligent misconduct connected with the employment, and in addition to the waiting week, for the duration of the individual's unemployment and until the individual has earned wages in an amount equivalent to five times the individual's weekly benefit amount otherwise payable.

Arizona Revised Statutes, Section 23-727, provide in pertinent part as follows:

C.   Except as otherwise provided in subsections D, E, F and G of this section and sections 23-773 and 23-777, benefits paid to an individual shall be charged against the accounts of the individual's base-period employers.  The amount of benefits so chargeable against each base-period employer's account shall bear the same ratio to the total benefits paid to an individual as the base-period wages paid to the individual by the employer bear to the total amount of base-period wages paid to the individual by all the individual's base-period employers.

D.   Benefits paid to an individual whose separation from work with any employer occurs under conditions found by the commission to be within those prescribed by section 23-775, paragraph 1 or 2 or for compelling personal reasons not attributable to the employer and not warranting disqualification for benefits, shall not be used as a factor in determining the future contribution

> rate of the employer from whose employment the individual so separated, ...

The Arizona Administrative Code, in Section R6-3-50135, provides in pertinent part as follows:

A. Distinguishing Quits and Discharges

   1. Except as otherwise provided in this Chapter, a worker's separation from employment is either a quit or a discharge.

      a. The separation is a quit when the worker acts to end the employment and intends this result.

      b. The separation is a discharge when the employer acts to end the employment and intends this result. A discharge includes:

         i.   A layoff for lack of work; and

         ii.  A request by the employer for the worker's resignation.

   2. The Department shall determine whether a separation is a quit or discharge by considering all relevant factors, including:

      a. Both parties' remarks and actions;

      b. Who initiated the separation; and

      c. The parties' intentions.

   3. A party's expression of criticism or effort to clarify the position of the other party does not by itself constitute notice of intent to quit or to discharge.

   4. When the worker or the employer gives notice of intent to end an employment relationship, later attempts to withdraw the termination do not change the type of separation, except as otherwise provided in subsection (5).

      a. The type of separation does not change even if:

> > > i. The party who causes the separation allows the other party to choose the time or type of separation; or
> > >
> > > ii. The parties agree to delay the date of separation.
> >
> > b. A separation is a quit when the worker tells the employer the worker is quitting but agrees to work long enough to train a replacement. The separation remains a quit even if the employer later fails to temporarily keep the worker.
>
> 5. A separation is a quit when an employer who previously gave a worker notice of intent to end the employment relationship, on or before the intended termination date offers continued employment under conditions not amounting to new work, and the worker elects to leave as of the original termination date.

...

C. Leaving In Anticipation of Discharge

If a worker, based on information other than the employer's authorized notification of discharge, believes that the employer intends to discharge the worker, the worker shall take steps, prior to leaving, to find out if the worker is, in fact, to be discharged. If the worker fails to do so and was not to be discharged, the worker leaves work voluntarily without good cause in connection with the work.

Arizona Administrative Code, in Section R6-3-51190, provides in pertinent part as follows:

B. Burden of proof and presumption

> 1. The burden of proof consists of the requirement to submit evidence of such nature that, taking all other circumstances into account, the facts alleged appear to be true. When this burden has been met, the evidence becomes proof.
>
> 2. The burden of proof rests upon the individual who makes a statement.

a. If a statement is denied by another party, and not supported by other evidence, it cannot be presumed to be true.

b. When a discharge has been established, the burden of proof rests on the employer to show that it was for disqualifying reasons. This burden may be discharged by an admission by the claimant, or his failure or refusal to deny the charge when faced with it.

c. An employer who discharges a worker and charges misconduct but refuses or fails to bring forth any evidence to dispute a denial by the claimant does not discharge the burden of proof. It is important to keep in mind that mere allegations of misconduct are not sufficient to sustain such a charge.

The evidence shows that the claimant believed that he was to be discharged because he was copied on an email that indicated that he was no longer employed and because his job was posted for hire. The claimant contacted the employer's general counsel who failed to answer the claimant's question as to why his job was posted.

The employer did not appear at the hearing and presented no evidence to show that the claimant was not going to be discharged. The employer is, therefore, considered to be the moving party and I conclude that the claimant did not quit but was discharged.

The employer did not present any evidence to show that the claimant's discharge was for misconduct.

Therefore, I conclude that the claimant was discharged, but not for wilful or negligent misconduct connected with the employment.

**B. J. Cather**
Administrative Law Judge

## CASE HISTORY:

Effective Date of Initial Claim: 4/8/2018
Date of Separation: 3/24/2018
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 6/22/2018

Issue Code: 10,20

Page 6—Arizona Appeal No. U-1595392-001

Place of Hearing: Teleconferencing from Tucson, Arizona
Appearances: Claimant

**Distribution:**
Claimant
Employer
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Claimant: garrison.jones@outlook.com

File


BC/aj


# APPEAL/REOPENING DEADLINE:  JULY 23, 2018


(ESTE DOCUMENTO AFECTA SU ELIGIBILIDAD PARA SEGURO POR DESEMPLEO. SI USTED NO LEE INGLES, COMUNIQUESE CON SU OFICINA LOCAL O BUSQUE QUIEN LE TRADUZCA)

## APPEAL AND REOPENING RIGHTS

**THIS DECISION WILL BECOME FINAL UNLESS YOU FILE A SIGNED WRITTEN PETITION FOR REVIEW AND/OR A REQUEST TO REOPEN BY THE APPEAL DEADLINE DATE.**

**IF YOU WISH TO APPEAL THIS DECISION OR REQUEST REOPENING:**

1. File your Petition for Review or Request to Reopen by Internet by going to www.azui.com and then clicking "Appeal a UI Decision." (The option of filing an appeal by Internet is only available to claimants at this time.)

**OR, SUBMIT THE ENCLOSED FORM OR WRITE A LETTER USING ONE OF THE OPTIONS BELOW:**

2. Fax the Petition for Review or Request to Reopen to (602) 257-7056.

3. Mail or hand deliver the Petition for Review or Request to Reopen to:

   ARIZONA DEPARTMENT OF ECONOMIC SECURITY
        Office of Appeals

> 1951 W. Camelback Road, Suite 400
> Phoenix, AZ  85015

4. Mail, hand deliver or fax the Petition for Review or Request to Reopen to any unemployment office in the United States or Canada.

The appeal or Request to Reopen is considered filed on the date: (A) postmarked by the United States Postal Service; (B) received by fax at the above number; or (C) received via the Internet or hand delivery.

You or your authorized agent must sign the appeal.  Your appeal may be based on:

a. Irregularity on part of presiding officer or other party to proceedings;
b. Abuse of discretion on part of hearing officer whereby petitioner was deprived of a fair hearing;
c. Newly discovered evidence which could not with reasonable diligence have been discovered and produced at time of original hearing;
d. Error in admission or exclusion of evidence in Tribunal hearing;
e. Error in law in Tribunal hearing; and/or
f. Other good and sufficient grounds.

**The Appeals Board Chairman will refer your appeal to a single member for review. If you or the other party objects  in writing  to review by one member,  three members of the Appeals Board will review your appeal.**

**AUDIO RECORDING OF YOUR HEARING:**  To request an audio recording of the hearing, you may either:

1. Call (602) 771-9019, or

2. Fax your request to (602) 257-7056, or

3. Mail or hand deliver your request in writing to:

> ARIZONA DEPARTMENT OF ECONOMIC SECURITY
> Office of Appeals
> 1951 W. Camelback Road, Suite 400
> Phoenix, AZ  85015

**CLAIM FILING:**  If you are a claimant who remains unemployed, you should continue to file your weekly claims while any appeal of this case is pending.  If you have questions regarding the filing or payment of claims, you should contact the unemployment insurance claims office.

**RIGHT TO BE REPRESENTED:** You may have someone represent you. If you pay your representative, that person must be a licensed Arizona attorney or must be supervised by a licensed Arizona attorney. An employer may also use any employee of the business as its representative. The Department does not provide representatives.

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1-877-528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

# Arizona Department of Economic Security



# Office Of Appeals

**1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019**
**Toll Free 1(877)528-3330 FAX (602)257-7056**

# DISMISSAL OF APPEAL

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

Arizona Appeal No. U-1600605-001

Social Security ████████████

VELOCITY TECHNOLOGY SOLUTIONS
Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016
Date of Mailing:  8/20/2018

Employer Acct. No. 7428011-000

### IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS

The Department of Economic Security provides language assistance free of charge.  For assistance in your preferred language, please call our Office of Appeals (602)771-9019.

### IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO

The Department of Economic Security suministra ayuda de los idiomas gratis.  Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602)771-9019.

## NOTICE TO CLAIMANT

***
**YOUR APPEAL  HAS BEEN  DISMISSED BECAUSE   THE EMPLOYER  DID  NOT ESTABLISH  GOOD CAUSE FOR FAILING TO APPEAR AT THE PREVIOUS HEARING.**
***

***
Today, I made a separate decision that found the employer did not have good cause for failing to appear at the hearing scheduled for 6/22/2018  and that the hearing  would not be reopened.  I am dismissing  your appeal  because the Tribunal decision issued 6/22/2018 remains in full force and effect.

You have no right to appeal this dismissal.  However, you may request further review of my other decision that you did not have good cause for failing to appear at the scheduled hearing.
***

**Richard Ebert**
Administrative Law Judge

Case 2:19-cv-02374-KJM-JDP   Document 121   Filed 02/25/22   Page 30 of 35

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1(877)528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

**REPRESENTATION**: You may have someone represent you. If you pay the representative, then that person must be a licensed Arizona attorney or be supervised by one. An employer may also use any employee of the business as its representative. This office does not provide representatives.

**Distribution:**
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Employer: ryan.mangum@ogletreedeakins.com
File

RE/aj

**Arizona Department of
Economic Security**



**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330  FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL  60187-4842

DBA VELOCITY TECHNOLOGY
SOLUTIONS
c/o Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ  85016

Arizona Appeal No. U-1600600-001

Date of Mailing:        8/20/2018

Social Security No.

Employer Acct. No.      7428011000

### DECISION OF APPEAL TRIBUNAL

# HEARING IS NOT REOPENED

**The last day to file an appeal is   September 19, 2018   . Instructions for filing an
appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR
UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge.
For assistance in your preferred language, please call our Office of Appeals (602) 771-
9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE
SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis.  Para
recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de
apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Should the non-appearing party's request to re-open the hearing of June 22, 2018, be
granted?

## DECISION:

The applicant did not establish good cause for failure to appear at the hearing scheduled for 06/22/2018.  The Decision of Appeal Tribunal remains in effect.

## FINDINGS OF FACT:

On May 17, 2018, a determination was issued holding the claimant ineligible for benefits. Timely appeal of the determination was filed by the claimant.

A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.

The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

## REASONING AND CONCLUSIONS OF LAW:

The issue is whether the nonappearing party's request to reopen the hearing of June 22, 2018, should be granted.

The Arizona Administrative Code, in Section R6-3-1503, provides in pertinent part as follows:

B.   APPEAL TRIBUNAL HEARINGS

*          *          *

3.   Failure of Party to Appear

a.   If there is no appearance on behalf of an interested party at a scheduled hearing, the Appeal Tribunal may:

i.   Adjourn the hearing to a later date; or

ii.   Proceed to review the evidence of record and other admissible evidence as may be presented at the scheduled hearing, and make a disposition or decision on the merits of the case.

b.    If a decision is issued adverse to any interested party that failed to appear at a scheduled hearing, that party may file 1 written request for a hearing to determine whether good cause exists to reopen the hearing. The request to reopen shall be filed within 15 calendar days of the mailing date of the decision or disposition and shall list the reasons for the failure to appear.

c.    The Appeal Tribunal shall hold a hearing to determine whether there was good cause for the failure to appear and, in the discretion of the hearing officer, to review the merits of the case. Upon a finding of good cause for failure to appear at the scheduled hearing, the disposition or decision on the merits shall be vacated and the case rescheduled for hearing under R6-3-1502, unless the hearing on the merits is held concurrently with the good cause hearing.

d.    Good cause warranting reopening of a case shall be established upon proof that both the failure to appear and failure to timely notify the hearing officer were beyond the reasonable control of the nonappearing party.

e.    A party may obtain only 1 hearing to determine if good cause exists to reopen a case.

        i.    If a party does not appear at the scheduled good cause hearing, a party may file a written request for review to determine whether good cause exists for failure to appear at both the good cause hearing and the original hearing on the merits.

        ii.    If a case is reopened upon a finding of good cause, and the party fails to appear at the time and date of the new hearing, the party may file a written request for review to determine whether good cause exists for failure to appear at the new hearing.

f.    A request for review shall state the reasons for the party's failure to appear. The party shall attach

                copies of any documentation supporting the request.

g.      The Appeal Tribunal shall review the request and the evidence of record to determine whether there is good cause to reopen the hearing on the issue of good cause or on the merits and shall issue a decision accordingly.

h.      Any interested party may appeal to the Unemployment Insurance Appeals Board from the decision of a hearing officer that denies reopening for lack of good cause as defined in subsection (B)(3)(d). The appeal shall be in writing and filed within 15 calendar days from the date of mailing of the decision denying reopening. If the Unemployment Insurance Appeals Board reverses the denial to reopen, the case shall be remanded to the Appeal Tribunal and rescheduled for hearing on the merits in accordance with R6-3-1502.

i.      If an appellant fails to appear or waive appearance, the Appeal Tribunal may enter a default disposition in accordance with R6-3-1502(A)(4) without further right to appeal except as provided in this Section.

In *Maldonado v. Arizona Department of Economic Security*, 182 Ariz. 476, 897 P.2d 1362 (App., 1994), the Court of Appeals held that the language in A.A.C. R6-3-1503.B.3.d must be interpreted in such a way as to allow an "excusable neglect" standard to be considered in determining whether to reopen a hearing, similar to the test under Arizona Rule of Civil Procedure 60(c).

In interpreting the term "excusable neglect", as expressly included in Ariz. R. Civ. P. 60(c), Appellate Courts have held that such standard does not apply if the action occurred because of a party's mere neglect, inadvertence or forgetfulness without a reasonable excuse therefor, *Daou v. Harris*, 139 Ariz. 353, 678 P.2d 934 (1984). The term "excusable neglect" is not synonymous with carelessness, *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 871 P.2d 698 (App. 1993), and a party claiming excusable neglect must have promptly sought relief, *Baker Intern. Associates, Inc. v. Shanwick Intern. Corp.*, 174 Ariz. 580, 851 P.2d 1379 (App. 1993). The standard for determining whether an action constitutes "excusable neglect" is whether the neglect involves an error such as might be made by a reasonably prudent person who attempted to handle a matter in a prompt and diligent fashion. *Beal v. State Farm Mutual Automobile Insurance Co.,* 151 Ariz. 514, 729 P.2d 318 (App. 1986).

Good cause is about allowing parties who have not had the ability to present their case through accident or lack of notice to remedy that situation. In this case, employer did not appear because of a deliberate choice – a tactic to influence other negotiations. The employer had notice and the opportunity to be heard, but knowingly and deliberately declined that opportunity.

Therefore, I conclude that the employer has not established good cause for failing to appear at the hearing of June 22, 2018. I deny the request to reopen that hearing.


**Richard Ebert**
Administrative Law Judge


## CASE HISTORY:

Original Case:

Effective Date of Initial Claim: 4/8/2018          Issue Code: GC
Date of Determination: 5/17/2018
Appealed By: Claimant
Date of Hearing: 6/22/2018
Place of Hearing: Teleconferencing from Tucson, Arizona
Appearances: Claimant

First Reopening Case:

Date of Appeal Tribunal Disposition/Decision: 6/22/2018
Reopening Requested by: Employer
Date of Reopening Hearing: 8/20/2018
Place of Reopening Hearing: Teleconferencing from Phoenix, Arizona
Appearances: Employer Counsel

## Distribution:
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

## Electronic Distribution:
Employer: ryan.mangum@ogletreedeakins.com

File