

Garrison Jones
Plaintiff (Pro Se)
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

MAR 17 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK



# U.S. DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

**GARRISON JONES**

        **Plaintiff,**

   v.

**VELOCITY TECHNOLOGY
SOLUTIONS LLC et al
              Defendants.**

**Case No.: 2:19-cv-02374
KJM-JDP**

**JURY TRIAL
DEMANDED**

Action filed:  Nov 25, 2019

Date set for trial: NONE

# Notice of Motion Hearing to Vacate Court order Document 98

- 1 -

To Defendants Velocity Technology Solutions
:
NOTICE IS HEREBY GIVEN that on April 15, 2022 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 3 on the 15th floor of this court, located at 501 I Street, Sacramento, California, 95814, or as otherwise ordered by this Court, including by remote means if so ordered, Plaintiff Garrison Jones will and hereby does move for an order Vacating the entire document 98 because the decision is wrong and it was the defendants and their attorneys who directed the court to an exhibit in a dismissed complaint claiming that it "contradicted" his termination claiming he was receiving health benefits when in fact he was not as they had been cancelled and the fact plaintiff had been unlawfully terminated months earlier.

In support of this motion plaintiff is submitting
   a. Document 121 ( Original Motion to Vacate)
   b. Document 117 that contains exhibit responses after September 28, 2021 from
      1. United Healthcare (Velocity heath plan administrator
      2. State of Arizona Medicaid (letter dated November 2021) clarification of dates of service under **state of Arizona Medicaid program February 7, 2018**
      3. Midwest Eye Clinic (who verified **Velocity health plan denied authorization of services twice on the same day January 30, 2018)** and plaintiff was forced to pay out of pocket for his visit.

      4. Email from Velocity dated January 23, 2018 from Velocity HR
      5. **garrison.jones@outlook.com**
      6. **From:** Shauna Coleman <shauna.coleman@velocitycloud.com>
      7. **Sent:** Tuesday, January 23, 2018 7:26 PM
      8. **To:** garrison.jones1724@outlook.com; Garrison Jones
      9. **Subject:** Benefit Premium Recoup
      10. Good Evening Garrison,
      11. As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to

- 2 -

recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

12. In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51. Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

13. Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.
Thank you

**Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc.**

14.
15. o 704.357.7721 | m 845.282.6955 | f 703.935.1269 | velocitycloud.com

.

While it is difficult for any judge to reverse and or vacate its own order / decision in this case it is so warranted.

The court made the wrong decision based on lies they were directed to by attorneys from Ogltree Deakins.

The defendants' and specifically the attorneys from the law firm of Ogltree Deakins lied in their motion as they have done many times in pleadings to this court.

They have directed the courts attention to documents where they claim statements, claims and allegations they state exist only to later find they do not exist.

After they have been caught in a lie, they immediately go silent and move onto another false statement that it too is found to be a lie, false and or does not exist.

- 3 -

This has occurred more than 31 times throughout this proceeding alone.

Not to mention it has been uncovered more than 9 forged documents, complaints ad false fabricated evidence in the files of federal government agencies by both Velocity and Ogltree Deakins.

They have went silent on all of these discoveries as well.

They are deliberately fabricating evidence in attempting to separate the termination of plaintiff from the events of FMLA and outright lying about all of the facts.

They have always had the intent of deceiving the court, transforming, discrediting evidence via false fabricated interpretation of an exhibits submitted by plaintiff into something they were not.

The exhibit in question was deliberately transformed in this manner.

They exhibit was  to show the court that Velocity and Ogltree Deakins  was continuing the "**cover-up of his termination**" where Velocity was following the advice and instruction of attorneys from Ogltree Deakins by sending him emails claiming he was still receive medical benefits, knowing that all his medical coverage had been cancelled by Velocity beginning in December 2017.

They did this preying on one individual to believe and act/rule in their favor knowing that plaintiff had been actually terminated and he had no medical coverage.

It was simply an action of deliberate deception that in the past had failed multiple times and at no time has the defendants or their attorneys ever offered any supporting proof or documentation in support of this false claim.

They did not offer any evidence in any prior hearings and or appeals in May 2018, June 2018, July 2018 and August 2018 because they had none.

They falsely claimed this exhibit was "contradicting" of another exhibit that illustrated plaintiff was terminated.

However, the exhibit in fact illustrated that Velocity for months had been covering up his termination, then in the exhibit itself, again following the pattern of deception fraud/misconception, they created false/fictitious events claiming a doctor appoint of May 20, 2018, claiming none receipt of certification from his physician for his return to work and the false claim of still receiving health benefits.

The entire exhibit is not a declaration of Velocity looking forward to his return, it was the efforts made by Velocity to deny/block and prevent his reinstatement from FFMLA leave, making it appear he still had a position when in fact he had been terminated months ago.

There was no doctor appointment on May 20, 2018, Velocity made it up.
An employer is prohibited in extending the FMLA leave after an employee has used up the 12 week FMLA entitlement.

It is clear all these false statements were done to deny his reinstatement.

Two days after May 15, 2018, Velocity was breaking into the plaintiff email account looking for more damaging information so they could delete it.

In addition Velocity attorney Christopher Meister sent plaintiff a copy of the certification Velocity was asking for on May 15, 2018 on May 21, 2018.

Velocity had this document since January 6, 2018
So the question is, how their attorney can send him a copy off the certification 6 days later if he did not receive it from Velocity HR director, Shauna Coleman.

**It was all a lie.**

**Bothe Velocity and Ogltree Deakins would tell any lie and create any condition to prevent plaintiff from ever returning to work.**

**The fact of the matter is plaintiff's vision coverage was cancelled in December 2017** behind his back one month after sending email to Velocity HR Director that he suffered severe vison impairment as a result of his stroke on November 17, 2017.

Velocity used this confidential medical information and used what they had available to them, targeted his vision coverage as a means to hurt him then and first terminated his vision coverage behind his back.

- 6 -

Then months later, because the conditions changed by plaintiff filing for unemployment and the filing of a discrimination complaint in federal court Velocity began the cover-up of his termination.

It was never the intent of Velocity of providing any assistance plaintiff was legally entitled to in assisting him in his recovery from the Hemorrhagic stroke he suffered.

Instead, **they targeted the only thing at that time they had available to them in preventing his recovery, his medical/health coverage which they promptly cancelled after they with no input from, plaintiff claimed they would recover premiums when he returned to work not knowing when that would be.**

**Less than 30 days after they made this promise, they reneged on this in January 2018 and demanded plaintiff repay and send payment for premiums.**

**They did this knowing the cancellation of his health benefits had already begun**

The fact is intentional deceiving this court b gross egregious misrepresentation in addition   to an area and their false interpretation / transformation to an exhibit that was not what they claim it to be, as well to an issue that had been already denied multiple times and a final decision had been ruled in favor of plaintiff over 4 years ago.

This Motion will in the opinion of the plaintiff finally assist this court in making crucial decisions and ruling as well as holding all parties liable and accountable for their actions against plaintiff.

**Ogltree Deakins attorneys intentionally directed the courts attention** to this section in their motion to dismiss knowing that it was false and plaintiff was not receiving health benefits paid for by Velocity.

They knew they had tried this same tactic in July 2018 and their appeal was denied and dismissed with prejudice and specifically told they had no right to appeal this decision.

They violated the court order and on August 20, 2018 they filed a third appeal to reopen the original hearing of June 22, 2018 to induce the court again by fraud to reverse the decision.  The court denied and dismissed this motion as well.

They intentionally did not inform this court they violated this court order and that they were by deception, attempting to relitigate this issue again for the **fifth time**, knowing the decision intentionally failed to inform this court they did not follow the proper protocol and file an appeal with the Maricopa Superior Court within 45 days of the final decision which is the proper escalation procedure defined to reverse administrative decisions in the State of Arizona.

Instead, their intent was to use one **word "contradicting"** to make it appear plaintiff was still employed using the exhibit off the plaintiff to do so since they had failed attempts to induce the Arizona Court of Appeals to do so.

The exhibit in no way was contradicting the termination of plaintiff.

The termination of plaintiff and all the subsequent acts by Velocity and their attorneys from Ogltree Deakins contradict his termination.

Again all of the prior decisions were final decisions that all are still in full effect and had been final for more than 3 ½ years.

However, they by using an exhibit from a dismissed complaint directed the courts attention back to this same issue,  relitigating the issue for **the fifth time** in a different jurisdiction claiming his termination "contradicted " an email they instructed velocity to send claiming he was still receiving benefits.

Now in a different court, they deceived a Chief Judge in the Eastern District of California into believing that plaintiff was not terminated and like a parrot they have now begun to use her statements and he word "unambiguous" thinking they have **gained some form of credibility** when the entire event was **nothing more than a cesspool of lies and they knew it, before they drafted the motion.**

**That so called victory and credibility was short lived because Document 117 proved they once again were lying to this court.**

It has been proven to be a typical act by Velocity and Ogltree Deakins where other organizations can prove Velocity and Ogltree Deakins were both lying about his health benefits and his termination.

- 9 -

Plaintiff contacted received documentation that totally disputes all off their false statements with no extra effort except going back to their files and providing plaintiff with the truth.

He contacted the  end  health provider who administered health services, including Velocity's own health plan, the state of Arizona all who verified plaintiff was receiving health services from their organization and that plaintiff paid out of pocket for health services after they  were denied by Velocity health plan provider.

Document 117 pages 13- 25 contains 11 pages of documents from United Health care (velocity health plan administrator, State of Arizona Medicaid and Midwest eye Clinic a health provider all confirming facts plaintiff had no insurance or that he was covered by Medicaid when at the same time, Velocity is lying claiming they were paying his premiums when in fact they had been cancelled.
Velocity cancelled his health benefits on January 23, 2018.

Plaintiff refused to allow Velocity to dictate or be in control of his efforts to recover from the Hemorrhagic stroke he suffered on November 17, 2018.

Seeing they will never keep their word or promise on January 24, 2018 plaintiff applied for state off Arizona Medicaid to remove Velocity from all aspects of his healthcare.

**He was approved for Medicaid on February 7, 2018**.

- 10 -

There is no person on this planet who would pay out of pocket for health benefits if they had or was receiving health benefits from their employer.

Garrison Jones
Plaintiff (Pro Se)
General Delivery
Sacramento, California 95814
garrison.jones@outlook.com

# U.S. DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

**GARRISON JONES**

**Plaintiff,**

v.

**VELOCITY TECHNOLOGY
SOLUTIONS LLC et al
                Defendants.**

**Case No.: 2:19-cv-02374
KJM-JDP**

**JURY TRIAL
DEMANDED**

Action filed:  Nov 25, 2019

Date set for trial: NONE

Sacramento, California 95818
garrison.jones@outlook.com

# Plaintiff Motion to Vacate Oder Document 98

Plaintiff Garrison Jones does hereby move this court for an order to vacate the entire order Document 98.

Everything in said order were all a complete lie.

The exhibit the court is claiming to be an **unambiguous** statement as to the termination off plaintiff along with other statements made and contained in the order and exhibit were all a bunch off lies, untrue statements.

- 12 -

There was nothing unambiguous about the entire email as this ploy had been tried unsuccessfully in an appeal ploy Velocity / Ogltree Deakins.

The appeal and subsequent motion to reopen the hearing of June 22, 2018 were both and that appeal was denied and dismissed.

The court failed to recognize any of this in other exhibits in the documents filed by plaintiff.

In addition to the escalation of lies added and made by Velocity and Ogltree Deakins that changed on a regular basis to induce AZDES and the Arizona Court of Appeals into believing plaintiff had not been fired and still receiving health benefits when he was not.

In addition, they wanted anyone to believe they were paying 100 percent of these benefits event though they knew plaintiff had returned to work for another organization, (Prime Healthcare) **yet they want this court to believe they were still allegedly paying these health benefit premiums and still claiming he is employed at Velocity without a single shred offer of or presentation of evidence.**

**It is highly illogical that any organization would pay health premiums for an employee of another organization unless that had a pretextual reason to do so.**

**Velocity is not one of those organizations.  If they are, they are the first and only organization to do so.**

In addition, two days after this communication plaintiff received notification Velocity who already had revoked his access to email, broke into the email account of plaintiff at Velocity looking for more information / communication that was damaging to them.

**May, 17, 2018**

- 13 -

On May 17, 2018 plaintiff received two notifications in his personal email account that Velocity had first chaged the recovery account used to access this email account and then a second one that Velocity had infact changed the password and signed into this account.

  Garrison Jones

Your account garrison.jones@outlook.com is listed as the recovery email for
garrison.jones@velocitycloud.com. Don't recognize this account?

# New sign-in to your linked account
# garrison.jones@velocitycloud.com

Your Google Account was just signed in to from a new Windows device. You're getting this email to
make sure it was you.

**From: Google** <no-reply@accounts.google.com>
**Sent:** Thursday, May 17, 2018 9:00:59 AM
**To:** garrison.jones@velocitycloud.com
**Subject:** Security alert

 Garrison Jones

# Recovery email was changed for
# garrison.jones@velocitycloud.com

The recovery email for your account was changed. If you didn't change it, you should check what
happened.

You received this email to let you know about important changes to your Google Account and services.
© 2018 Google Inc..1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
et:2

Now these are not the actions of an employer who is looking forward to an employee
to return to work after FMLA leave.

**May 21, 2018**

Ogltree Deakins attorney Christopher Meister via email sent plaintiff the a copy of the certification document Velocity HR Director Shauna Coleman is claiming she needed in her infamous email off May 15, 2018

He had to receive this document from Velocity HR.  Yet it proves she was lying about not having it in the possession of velocity because Ogltree Deakins was building an FMLA defense and advised her to send these email messages.

Again the court can see that it is Ogltree Deakins attorneys who are advising Velocity to make these contacts, make fictitious statements just like they are doing in this case.

Velocity on their own merit are documented liars and they have hired a law firm where each attorney that has been assigned to litigation with plaintiff especially decristoforo, anthony j are all compulsive narcissistic habitual pathological liars.

Even on November 13, 2020 Ogltree Still makes this false claim about the certification to return to work.  Turning on one of their own attorneys claiming it was never provided by plaintiff.  Document 62 dated November 13, 2020

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint. and each alleged (and surviving) cause of action therein. is barred on the grounds that Plaintiff's employment would have ceased ended for other reasons.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint. and each alleged (and surviving) cause of action therein. is barred on the grounds that Plaintiff never provided a health-care provider's certification of his need for leave.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint. and each alleged (and surviving) cause of action therein. is barred on the grounds that Plaintiff did not provide a written statement from his health-care provider that he was fit to return to work.

It is the employer who is continuing to deny and refuse to reinstatement an employee after FMLA leave.

The fact is that email was nothing more than the continued cover-up of the termination of plaintiff.

The fact that they broke into the email account of plaintiff shows the action of an employer who has terminated an employee and have a vindictive desire to gain access to as much information that can potentially hurt the organization.

As previously illustrated, Velocity and Ogltree Deakins have both been involved in the cover-up of plaintiff for over 5 years.

- 17 -

The "alleged extension of his FMLA illustrates Velocity was preventing plaintiff from returning to his position and they were not going to allow is return under any circumstances.

They did not care what laws they had to break.

The fact remains, he was terminated over 3 months ago so his return to work Velocity already decided he would not.

The attorneys from the law firm directed the courts attention to a single word "**contradicting**" because that in his delusional twisted mind and intent to deceive this court, his interpretation /intent was to **transform the exhibit into something it was not.**

**Ogltree Deakins again instructed Velocity to send this email on May 9 and May 15, 2018**

The exhibit was exactly what plaintiff described it be "**disturbing**".

 Disturbing because for over 3 months and no communication, then all of a sudden out of the blue after he has filed for unemployment they have drafted a conspiracy to cover-up his termination, beginning with these emails.

**That email it is not a contradiction of his previous statement on his termination, his termination contradiction of the exhibit.**

Plaintiff has proven that by contacting the health plan, the state of Arizona and a health care provider where all provided information proving velocity and Ogltree Deakins were both lying to this court.

The exhibit is part of the pretextual ploy by both Velocity and attorneys as part of the cover-up of the termination of plaintiff.

If in the year2018 they had proof Velocity was paying these premiums they could have immediately presented it to AZDES and the Arizona Court of Appeals on Multiple occasions.

Reminding this court that this was the very first appeal and it occurred over 4 ½ years ago.
Over the next year up until November 2019 there were 4 additional appeal hearing they could have offered this evidence to prove he was still employed and receiving benefits.

They have not produce a single document to prove either.

**April 24, 2018**

Velocity claimed plaintiff still employed

**May 9, 2018**

Velocity claimed still employed

**May 15, 2018**

Velocity claimed still employed but now they have added receiving benefits

**June 21, 2018**

Velocity and Ogltree Deakins attorney ex parte communication with Arizona court of Appeals where they also submitted the same document from April 24, 2018 claiming plaintiff still employed.  This was a pre-printed document returned to AZDES by a payroll clerk who was instructed to do so by Velocity General Counsel and HR Director.

Also AZES received communication from Velocity HR Director Shauna Coleman that she would not be attending the hearing the next day.

Arizona Appeal hearing where velocity HR director on June 21, 2018 @

| 06/22/2018 11:16:21 AM | T/C FRM THE CLT WANTING TO KNW WHAT WAS GOING ON W/ THE HRG, CHECKED C2T THE HRG WAS IN PROGRESS. | IA |
| 06/22/2018 9:26:07 AM | T/C FRM THE CLT RE; THE REG IN C2T. PROVIDED TO THE CLT THE REG WAS ENTERED CORRECTLY. THE ALJ WILL BE PLACING THE CALL TO HIM. | IA |
| 06/21/2018 1:29:26 PM | 6/21 RECVD CALL FROM ER WHO CHOOSES NOT BE ATTENDING HEARING. SHAWNA COLEMAN 704-357-7721 | JC |
| | U-1595392-001-OA | |

Now why would Velocity HR director, General Counsel and their atorneys from Ogltree Deakins, all on a conference call with the court all fail to show up for an umemploye appeal hearing if they had proof of the continued employemt ?

**June 22, 2018**

Velocity HR director Shauna Coleman, Ogltree Deakins and Velocity General Counsel Chris Heller all fail to attend hearing where decision overturned and determined plaintiff was unlawfully terminated.

**July 23, 2018**

**Ogltree Appeal**

**Now in additon to claiming they had good reason not to attend appeal heaing on June 22, 2018, they now are claiming**
   a. **Plaintiff still emplyed**
   b. **Negotiation of end of emplyment**
   c. **Plaintiff still receviing helath benefits**
   d. **But now they are claiming plaintiff receiving "wages"**

**ALL LIES**

As an initial matter, Velocity should not be precluded from requesting that the Appeal Tribunal's decision be reopened because it can show excusable neglect. Velocity had good reason not to appear at the hearing before the appeal tribunal on June 22, 2018. As Velocity communicated in its June 21, 2018 call to the Appeal Tribunal, Mr. Jones and Velocity have been negotiating the terms of his separation from employment. Velocity believed that appearing before the Appeal Tribunal to contest Mr. Jones's eligibility for unemployment benefits would disturb those discussions. Velocity and Claimant have continued their negotiations, and hope to soon reach an amicable agreement but unfortunately that has yet to occur.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh Richmond ▪ St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

126GC – APS #: 1600600 – Type: OA – Exhibit #: 09 – Claimant Last Name: JONES

Now as illustrated by the dates, each time they are adding and changing their claims to make it appear that he is still employed.

Nevertheless, Mr. Jones is not eligible for unemployment benefits because he is still employed by Velocity. Under A.R.S. § 23-771, only an "unemployed individual" is eligible to receive benefits. A person is deemed "unemployed with respect to any week during which the individual performs no services and with respect to which no wages are payable to the individual..." A.R.S. § 23-621. Wages constitute "all remuneration for services from whatever sources, including commissions, bonuses,

Atlanta • Austin • Berlin (Germany) • Birmingham • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Denver • Detroit Metro • Greenville • Houston Indianapolis • Jackson • Kansas City • Las Vegas • London (England) • Los Angeles • Memphis • Mexico City (Mexico) • Miami • Milwaukee • Minneapolis • Morristown Nashville • New Orleans • New York City • Oklahoma City • Orange County • Paris (France) • Philadelphia • Phoenix • Pittsburgh • Portland, ME • Portland, OR • Raleigh Richmond • St. Louis • St. Thomas • Sacramento • San Antonio • San Diego • San Francisco • Seattle • Stamford • Tampa • Toronto (Canada) • Torrance • Tucson • Washington

- 126GC - APS #: 1600600 - Type: OA - Exhibit #: 09 - Claimant Last Name: JONES

Moreover, the Appeal Tribunal's findings of fact show that Mr. Jones was not discharged from his position. The Appeal Tribunal's decision states that Mr. Jones believed he was discharged because he was copied on an email indicating that he was no longer employed and because his job was posted for hire. However, the evidence cited in the Appeal Tribunal's decision belies its own conclusion. Mr. Jones claims he was copied on an email on March 15, 2018, in which a Senior Vice President questioned whether he was still employed. But, on March 24, 2018, when Mr. Jones asked Velocity's General Counsel directly about his employment status, he was unequivocally told that he was on FMLA leave. The fact that a similar position to the one held by Mr. Jones may have been posted is irrelevant. As stated by Velocity's General Counsel, Mr. Jones was on FMLA leave and then an unpaid leave of absence until he was able to return work. Thus, the Appeal Tribunal's own findings of fact show that the last communication from Velocity to Mr. Jones indicate that he was still employed.

For the foregoing reasons, Velocity respectfully requests that the Appeal Tribunal's June 22, 2018, decision granting Mr. Jones unemployment benefits be reversed.

- 22 -

What is equally disturbing is the addition of wages claim.

Plaintiff had no income from Velocity since November 2017 over 9 months ago and received nothing from the in the form of wages.  His Short term disability was not paid by Velocity and had expired over 6 months ago, yet he quotes an ARS statue 23-621 that he claims proves wages were being paid which is **absolutely laughable/hilarious.**

**Decision Administrative Judge June 22, 2018**
In addition, the courts false claim that the administrative judges' decision **was 'vague and "unclear: as to what they found and why is a complete mistake.**

**The truth of the matter is both Velocity and Ogltree Deakins attorneys chose not to attend the hearing.**

They again made a false claim and relied upon others to rely on it and do their dirty work for them and intentionally did not attend the hearing.

In addition, they registered for and provided a phone number for the court to call at the date/time of hearing and failed to answer the call when contacted by the court.

Plaintiff was on the line listening to the court dialing the number waiting for anyone from Velocity or Ogltree Deakins to pick up.  They intentionally failed to do so.

7   544, 570 (2007)).  It is unclear what the administrative law judge or the Arizona administrative

8   agency found and why.

**The administrative judge issued an 11 page decision based on the facts in support of her decision.** The judge also in the middle of the hearing   alerted plaintiff about the ex-parte communication and evidence document sent to the court the day before on June 21, 2018.   A copy was sent via email to plaintiff and ruled inadmissible by the court.

In the decision, the court ruled the fact Velocity nor Ogltree Deakins, nor Velocity General Counsel all failed to attend and they did not offer or present any evidence. Now if a part does not attend a hearing after they have been provided proper notice over 3 weeks prior the court can only use the testimony and evidence at hand in making  its decision.  Thus the 11 page decision.

It is obvious that Velocity and Ogltree were both depending on the court to rule in their favor based on lies they made on June 21, 2018 and the same documents sent on April 21, 2018 without testifying on the record because it would be damaging to them in the future if there was any future litigation.

They again, was depending on other to do their dirty work for them, just as they are doing in this case.

They have no case.  They had no case four ½ years ago and they don't have one now.

They terminated plaintiff Garrison Jones while he was on approved FMLA leave, period.  They have not offered anything to prove otherwise.

**It does not take 4 ½ years to present evidence or testify on the record that he was not terminated nor does it take 4 ½ years to prove Velocity was paying 100 percent of his health premiums for over 8 months.**

**After plaintiff received the order from Document 98 it took him 2 months to reach out to Velocity Health plan, the state of Arizona Medicaid program and to a heal provider to obtain records to prove plaintiff was receiving healthcare from**

**the state of Arizona and that Velocity health plan refused/denied to authorize health services after it was sent to them by the provider on JAN. 30, 2018.**

This proved that 7 days after Velocity sent plaintiff email on Jan. 23, 2018, they had already cancelled his health benefits and plaintiff was forced to pay out of pocket for his visit to the provider.

It also proves that after this embarrassing event on January 30, 2018, Velocity had in fact cancelled all his health coverage.

Again, plaintiff in February 2018 had received approval from state of Arizona Medicaid to move forward with his healthcare and rehabilitation from his stroke.

Velocity did not present any evidence they were paying 100 percent of these benefits in June, July or August 2018 and they will not present to this court any evidence of the same.

**If they do it is a forgery.  It does not take 4 years to present evidence on your behalf to prove you are not lying.**

**It took plaintiff 2 months to get proof he was not covered by Velocity insurance from Velocity provider, state of Arizona and a health provider who confirm the Velocity insurance declined to authorize the insurance for the visit and plaintiff paid out of pocket over $330.00 after they tried unsuccessfully twice to get authorization**

At this point Velocity /Ogltree Deakins had 4 opportunities to present evidence of still employed, receiving benefits and wages and failed to do so.

a. June 21, 2018
b. June 22, 2018
c. July 23, 2018
d. August 20, 2018

They have no case or defense and have instead used exhibits submitted by plaintiff to misdirect the courts attention elsewhere and not the facts to this case.

They again have no case or evidence to counter any of the claims and evidence/exhibits by plaintiff.  Instead they intend to discredit the evidence / exhibits by transforming and altering them into something they are not or try to transform them unsuccessfully into something in their favor.

Additional, the attorneys from Ogltree Deakins, advised and instructed Velocity to send these emails to plaintiff because Velocity had terminated plaintiff and immediately reached out to Ogltree Deakins who began to advise them to send communications in the event of any future litigation.

The fact that Velocity sent two emails one on May 9 and May 15 six days later illustrates the is also part of the cover-up as after these emails plaintiff never heard or received any communication from Velocity HR again.

In days immediately after that, all the lies contained in that email began to crumble.

## Conclusion

**The court will notice that since Document 117 has been filed there has not been a single pleading filed by the defendants that mentions any of the elements or exhibits in that document as this is the pattern they have displayed from the beginning.  Now that** they have again for the 40th time been caught in a lie, they go

silent, then abandon the lies they have told and move their attention to another lie or direction.

For these reasons and many more, **This court order from September 28, 2021 must be vacated in its entirety.**

They have failed to produce any evidence that illustrates plaintiff had not been terminated nor have they in 4 ½ years submitted any evidence he was receiving health benefits because they have no evidence.

They will never get a witness from Velocity to testify in open court on the record because they have refused to do so specifically because of all the fraud, forgery of documents that have been uncovered and the layer of perjury created by Velocity and Ogltree Deakins.

They both know if any testimony is offered on the record, it would be perjury and result in federal prison for them and Ogltree Deakins which is justly deserved.

As long as Ogltree Deakins sees an opportunity for billable hours they will continue this dilatory tactic until Velocity is bankrupt.

Respectfully submitted,
Dated: March 15, 2022

**Garrison Jones Plaintiff** (Pro Se)

Sacramento, California 95818
garrison.jones@outlook.com

- 29 -

Garrison Jones
Plaintiff (Pro Se)
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com



**FILED**

JAN 2 0 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



## U.S. DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

**GARRISON JONES**

           **Plaintiff,**

    V.

**VELOCITY TECHNOLOGY
SOLUTIONS LLC et al
           Defendants.**

Case 2:19-cv-02374 KJM-JDP

**JURY TRIAL
DEMANDED**

Action filed: Nov 25, 2019

Date set for trial: NONE

## Plaintiff Due diligence evidence healthcare benefit coverage
## Plaintiff was not covered or receiving health benefits

While it's hard to accept you have been lied to. The court on its own merit must change its decision of September 28, 2021 Document 98 that made the assumption plaintiff was not terminated because Velocity and Ogltree sent him an email falsely claiming he was receiving health benefits and he was not.
Thru his own due diligence he has proved the court has been lied to just like many other jurisdictions as well as local, state and federal resources.

Now they have achieved and put under their belt of fraud a Chief Judge of the US District Court of Eastern California who they by deception made her believe plaintiff was not terminated and he was receiving health benefits when he was not.

- 1 -

It is not the plaintiff but multiple health providers who responded to his request of records that prove he was not in addition to the carrier who administer the health plan from Velocity, United Healthcare.

The court has to see that the position of Velocity and Ogltree Deakins of now claiming plaintiff was still receiving healthcare benefit coverage was a lie and a ploy by the defendants and their attorneys from Ogltree Deakins.

The court made its decision based on an exhibit email intentionally sent by defendants to make it appear, he was receiving health benefits and is a complete contradiction of the truth.

Plaintiff contacted multiple organizations, including the State of Arizona Medicaid, his vision health provider and the United Healthcare plan and all sent plaintiff proof and document showing that he was not.

**Yet Velocity and Ogltree Deakins offers the court nothing, no offer of proof in support of their false allegations and have done so for over 4 ½ years.**

**They will go silent and will not offer any evidence to counter this newly received evidence by plaintiff.**

1. **Vision** – He was not covered by any insurance and paid out of pocket
2. **Medical** – State of Arizona sent letter of dates of medical coverage including date of coverage that began on Feb, 7, 2018 after he was approved
3. **Medical – United Healthcare sent 58 pages** of Explanation of benefits sent overnight express to plaintiff

The facts uncovered directly attributed to the due diligence of plaintiff proves he was not receiving nor was he covered for any Vision, Medical and Dental Benefits by Velocity as they had been cancelled.

The way he discovered this undisputable fact was **from his healthcare provider and not from Velocity.**

- 2 -

Velocity as they always have done taken the approach **"let the nigger found out on his own".**

Plaintiff detrimentally relied upon a statement made to him via email from Velocity HR Director Shauna Coleman where she claimed Velocity would collect his portion of premiums when he returned to work, not knowing when that date was.

Plaintiff suffered a

On Dec 22, 2017, at 12:37 PM, Shauna Coleman <shauna.coleman@velocitycloud.com> wrote:

> Hello,
>
> Thank you Wendy. Garrison, as mentioned during open enrollment you will not be eligible to receive LTD benefits on your current disability as you did not have this coverage in place when this situation started. That said, you will be eligible for coverage in a year (with review by Lincoln Financial).
>
> Velocity will collect your premium once you return to work.

1

Then on January 23 2018 less than a month later Velocity reneged on this statement to plaintiff and demanded he repay premiums for December and reminded him the last time he paid was in November 2017.

garrison.jones@outlook.com

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Tuesday, January 23, 2018 7:26 PM |
| **To:** | garrison.jones1724@outlook.com; Garrison Jones |
| **Subject:** | Benefit Premium Recoup |

Good Evening Garrison,

As previously discussed the last time that you paid for your benefits was November 30, 2017. We need to recoup your benefit premiums for December 2017 and January 2018 (breakdown listed below). In the past we have collected these payments via payroll deductions, but since you have been on short-term disability Lincoln Financial has been paying your directly.

| | | Dec-17 | | Jan-18 |
|---|---|---|---|---|
| **Medical** | $ | 185.83 | $ | 242.15 |
| **Dental** | $ | 22.21 | $ | 25.77 |
| **FSA** | $ | 83.33 | $ | 83.33 |
| **LTD** | $0 (not enrolled) | | $ | 26.88 |
| | $ | 291.37 | $ | 378.13 |

In order to continue your benefit coverage we need to recoup the premiums for December and January, totaling $669.51. Starting in February 2018 we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen, and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you

**Shauna Coleman** | Director, Human Resources | Velocity Technology Solutions, Inc.

They did the same on February 24, 2018 clearly stating Velocity is not responsible for your health benefit payments

- 4 -

| | |
|---|---|
| **From:** | Shauna Coleman <shauna.coleman@velocitycloud.com> |
| **Sent:** | Saturday, February 24, 2018 12:30 AM |
| **To:** | garrison jones; Garrison Jones |
| **Subject:** | Re: Benefit Premium Recoup |

Good Evening Garrison,

On January 23, 2018 we notified you that we needed you pay for your portion of the benefit premiums that have not been paid in order to not lose coverage. Please provide payment for the following months and amounts:

- December 2017 = $291.37
- January 2018 = $378.13
- February 2018 = $378.13

As previously mentioned, we will need your benefit premium of $378.13 submitted monthly to Velocity Technology Solutions, Inc. - Attn Wendy Cauthen. and mailed to 1901 Roxborough Road, Floor 4 Charlotte, NC 28211. Please make the check payable to Velocity Technology Solutions, Inc.

This is the second request for payments. Velocity is not responsible for your benefit premium and without payment you are at risk of losing coverage. Please acknowledge receipt of this email and confirm once the payments have been mailed. If you have any questions please let me know.

Thank you,

**This message was ignored because over a month ago on Jan 24, 2018 plaintiff applied for and was approved by the state of Arizona for Medicaid as illustrated below on February 7, 2018.**

**Full copies attached of this letter dated November 8, 2021**

Velocity no longer had any control over his health care and could not prevent plaintiff from receiving needed healthcare to recover from his stroke.

Plaintiff refused to allow Velocity to be in control of his healthcare with their lies and every changing positions. He did not know from one moment to the next if he had overage or not and refused to put his health in the hands of criminals like velocity.

In addition attached is an overnight ups label of all claims/explanations of benefits ( 58 pages sent to plaintiff from United Healthcare that are protected by Hippa and

- 5 -

**plaintiff is not so stupid as to voluntarily send copies of his confidential medical records so that criminals can look thru them for any reason.**

They a

Plaintiff has provided more than enough evidence that can prove the lie about his coverage being told by Velocity. All the coverage was cancelled yet now that the situation changed i.e. the filing of unemployment and lawsuit so has their version of this statement that has changed.

Now it's to their advantage to claim they are now paying for his portion as well as their portion of his health benefits and it's all a lie.

If they had proof they would have sent it to the courts on more than 10 occasions where they had the opportunity to do so.

**If they have anything you can bet assure it's a forgery.**

Knowing that Velocity would never keep their word plaintiff in order to recover from the Hemorrhagic stroke he suffered on November 27, 2017 had to remove Velocity from having any control or input into his ability to receive healthcare services and to begin and continue his rehabilitation.

On January 24, 2018 the next day, he applied for state of Arizona Medicaid.

However, his physician already had made multiple referrals.

While his application was pending, plaintiff on January 30, 2018 had a referral to a vision specialist.

Prior to this on November 20, 2017 from his cell phone and Velocity email account he informed Velocity HR Director and his manager that his vision was impaired.

They were not concerned about his health or well-being they were both concerned with capturing any billable hours of his work so they could bill customers and that was the meaning of their communication.

Based on this knowledge Velocity targeted the first thing they had available to them and that being his Vision coverage which they cancelled in December 2017.

They did not want plaintiff to recover from his stroke and set out to do this by cancelling his vision coverage behind his back.

On January 30 he had an appt at his ophthalmologist and optometrist.

As customary they ask for insurance card so they can authorize the visit for payment.

**Plaintiff presented his Velocity insurance card and it was declined**.

After the services were rendered they informed him of this issue and ran the insurance card a second time, it was declined the second time. He was forced to use another form of payment and was told to send his insurance company a copy of receipt to get reimbursed.

Copy of the receipt is below received by plaintiff JAN 2022 when he reached out to Midwestern Clinics.



```
                    Merchant Copy

              Midwestern Univ Clinic
       ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
      ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬


     *********************************************

     Date:           30-JAN-2018
     Time:           01:02:39 PM
     Card Type:      MasterCard
     Card Number:    XXX▬▬▬
     Trans ID:       ▬▬▬▬▬
     Auth Code:      0▬▬▬▬
     Approved Amt:   $280.00
```

X _~Susan Jones~_

GARRISON JONES

I AGREE TO PAY THE ABOVE TOTAL ACCORDING
TO MY CARD ISSUER AGREEMENT.

 He was forced to pay out of pocket for these services as he assumed he had vison coverage and he did not.

All of the health coverage were all from the carrier United Health care.

On February 24 he via email contacted Velocity about the cancelled vison coverage and Velocity never responded and did absolutely nothing.

He was forced to pay out of pocket for these services.

On Wed, Feb 21, 2018 at 5:00 PM Garrison Jones <garrison.jones@outlook.com> wrote:
  Received message from Optimetrist stating my vision coverage was cancelled in December 2017. Can you tell
  me how this happened before I even sent my discrimination complaint

--
Shauna Coleman | Director, Human Resources | Velocity Technology Solutions, Inc. o 704.357.7721 | m
845.282.6955 | f 703.935.1269 | velocitycloud.com

STATEMENT OF CONFIDENTIALITY:

This email may be confidential and/or protected by privilege. If you are not the intended recipient, disclosure, copying, distribution and/or use are prohibited; please
notify us immediately at counsel@velocitycloud.com and delete this copy from your system.

Insurance did not cover any of the cost of any of his visits.


On January 11, 2022 they also confirmed for plaintiff that his insurance did not cover
any of the expense of the vision services or visit.

1
2
3
4    **garrison.jones@outlook.com**
5
6    **From:**        Reynolds, Marci <mreyno@midwestern.edu>
7    **Sent:**        Tuesday, January 11, 2022 10:35 AM
8    **To:**          Garrison Jones
9    **Subject:**     RE: Midwestern University Eye Institute -- Requested Statement Information

Good Morning,

Your insurance did not cover your office on that day. We did, however, do a small balance adjustment write-off for $20, so of the out of the $120 service charges, you actually paid only $100 of the $120. As far as the glasses go, you paid the total $230 out-of-pocket.

Hope this helps,

*Marci J. D. Reynolds*

Midwestern University Eye Institute
Billing Department

Next to show this court plaintiff was not receiving benefits like the email of May 15 states,
State program

- 10 -

Plaintiff received from the state of Arizona Medic aid program dates he was enrolled and receiving benefits from the state program.

AHCCCS
Arizona Health Care Cost Containment System
P.O. Box 25520
Phoenix, AZ 85002

MD-3700

JRK-IMP    50189

Respectfully submitted,

Dated: January 14, 2022

**Garrison Jones Plaintiff** (Pro Se)

- 11 -

Sacramento, California 95818
garrison.jones@outlook.com

- 12 -

**Make Checks Payable To:**

Midwestern University Eye Institute
PO BOX 208541
Dallas, TX 75320-8541
ENCOUNTER INVOICE 3793

| IF PAYING BY CREDIT CARD, FILL OUT BELOW | | |
|---|---|---|
| Check Card Using For Payment | | |
| ☐ American Express  ☐ Discover  ☐ Mastercard  ☐ Visa | | |
| Card Number | | CVV | Amount |
| Signature | | | Exp. Date |

| STATEMENT DATE | PAY THIS AMOUNT | ACCOUNT NBR |
|---|---|---|
| 01/07/2022 | $0.00 | 420 |
| Tax Id: 363377698 | SHOW AMOUNT PAID HERE $ | |

ADDRESSEE:
Garrison Jones
1361 N 43rd Ave
Phoenix, AZ 85009

REMIT TO:
Midwestern University Eye Institute
PO BOX 208541
Dallas, TX 75320-8541
USA

☐ Please check box if above address is incorrect or insurance
information has changed and indicate change(s) on reverse side.

**PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT**

| DATE | PATIENT NAME | PROVIDER | CPT4 | DIAG | DESCRIPTION OF SERVICE | AMOUNT |
|---|---|---|---|---|---|---|
| 01/30/18 | Garrison Jones | | | | EP E & M Level 2 20' | $20.00 |
| 01/30/18 | Garrison Jones | | | | Refraction Basic | $20.00 |
| 01/30/18 | Garrison Jones | | | | Fresnel Prism | $80.00 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$50.00 |
| 02/07/18 | | | | | Patient Payment CC - MasterCard | -$30.00 |
| 02/07/18 | | | | | ZApplied Encounter/Invoice Debit | $30.00 |
| 02/07/18 | | | | | ZApplied Encounter/Invoice Credit | -$50.00 |
| 02/19/18 | | | | | Commercial Payment | $0.00 |
| 02/19/18 | | | | | Commercial Payment | $0.00 |
| 01/21/20 | | | | | Transfer Patient Payment | -$20.00 |
| 02/19/18 | | | | | Commercial Adjustment | $0.00 |
| 02/05/20 | | | | | Small Balance WO | -$20.00 |

| Account Number | Charges | Payments | Refunds Adjustments | Estimated Balance Due From Insurance | Balance Due From Patient |
|---|---|---|---|---|---|
| 420 | $120.00 | -$100.00 | -$20.00 | $0.00 | $0.00 |

**MESSAGE:**

Please Pay This
AMOUNT >>>> $0.00

** PAYMENT DUE UPON RECEIPT *THANK YOU **
ENCOUNTER INVOICE
Printed by ( 249 ) on 1/7/2022 2:40:45 PM

Page: 1 of 1

**Make Checks Payable To:**

Midwestern University Eye Institute
PO BOX 208541
Dallas, TX 75320-8541
ENCOUNTER INVOICE 3810

| IF PAYING BY CREDIT CARD, FILL OUT BELOW | | |
|---|---|---|
| Check Card Using For Payment | | |
| ☐ American Express  ☐ Discover | ☐ Mastercard | ☐ Visa |
| Card Number | CVV | Amount |
| Signature | | Exp. Date |

| STATEMENT DATE | PAY THIS AMOUNT | ACCOUNT NBR |
|---|---|---|
| 01/07/2022 | $0.00 | 420 |
| Tax id: 363377698 | SHOW AMOUNT PAID HERE $ | |

**ADDRESSEE:**
Garrison Jones
1361 N 43rd Ave
Phoenix, AZ 85009

**REMIT TO:**
Midwestern University Eye Institute
PO BOX 208541
Dallas, TX 75320-8541
USA

☐ Please check box if above address is incorrect or insurance information has changed and indicate change(s) on reverse side.

**PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT**

| DATE | PATIENT NAME | PROVIDER | CPT4 | DIAG | DESCRIPTION OF SERVICE | AMOUNT |
|---|---|---|---|---|---|---|
| 01/30/18 | Garrison Jones | | | H52.13 | | $22.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $22.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $22.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $22.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $7.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $7.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $62.50 |
| 01/30/18 | Garrison Jones | | | H52.13 | | $62.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$22.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$22.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$7.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$7.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$62.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$22.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$62.50 |
| 01/30/18 | | | | | Patient Payment CC - MasterCard | -$22.50 |

| Account Number | Charges | Payments | Refunds Adjustments | Estimated Balance Due From Insurance | Balance Due From Patient |
|---|---|---|---|---|---|
| 420 | $230.00 | -$230.00 | $0.00 | $0.00 | $0.00 |

MESSAGE:

Please Pay This
AMOUNT >>>> $0.00

** PAYMENT DUE UPON RECEIPT *THANK YOU **
ENCOUNTER INVOICE
Printed by ( 249 ) on 1/7/2022 2:40:33 PM



Account Information:

Garrison Jones
1361 N 43rd Ave
Phoenix, AZ 85009

Practice Information:

Midwestern University Eye Institute

## BRAIN INJURY

| Description | Date | Charges | Payments | Adj/ Refunds | Insurance Balance | Patient Balance | Total Balance |
|---|---|---|---|---|---|---|---|
| **Patient Name Garrison Jones** | | | | | | | |
| **Location Acquired Brain Injury...** | | | | | | | |
| V27... | 01/30/2018 | | | | $0.00 | $0.00 | $0.00 |
| | 02/07/2018 | | | $0.00 | | | |
| 992... | 01/30/2018 | | | $0.00 | $0.00 | $0.00 | $0.00 |
| Com... | 02/19/2018 | | | $0.00 | | | |
| | 01/21/2020 | | | $0.00 | | | |
| ...VE S | 01/30/2018 | | | $0.00 | $0.00 | $0.00 | $0.00 |
| C... | 02/19/2018 | $0.00 | $0.00 | $0.00 | | | |
| Sel... | 02/05/2020 | | $20.00 | $20.00 | | | |
| ... | 01/30/2018 | | | $0.00 | | | |
| ...pplied Encounter/Invoice Deb... | 02/07/2018 | | | $0.00 | | | |
| **Encounter Totals** | | | | | | | |
| **Encounter 3810** | | | | | | | |
| **Provider Esposito OD, Christin...** | | | | | | | |
| **Location Optical AZ** | | | | | | | |
| V2750... | 01/30/2018 | | | $0.00 | $0.00 | $0.00 | $0.00 |
| Patien... | 01/30/2018 | | -$62.50 | $0.00 | | | |
| V2750... | 01/30/2018 | | -$62.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| Patient P... | 01/30/2018 | | | $0.00 | | | |
| V2... | 01/30/2018 | $22.50 | -$22.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| P... | 01/30/2018 | | | | | | |
| V27... | 01/30/2018 | | -$22.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| Patien... | 01/30/2018 | | -$22.50 | $0.00 | | | |
| ... | 01/30/2018 | | -$22.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| ... | 01/30/2018 | | | | | | |
| V27... | 01/30/2018 | | -$7.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| ...Payment... | 01/30/2018 | | -$7.50 | $0.00 | | | |
| **Encounter Totals** | | $230.00 | -$230.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Totals For Garrison Jones** | | $350.00 | -$330.00 | $20.00 | $0.00 | $0.00 | $0.00 |

out of
Pocket

ITEMIZED STATEMENT

Page: 1 of 2



Account Information:
||.||.|.|||.||.||..||.||.||.||.|.||.|
Garrison  Jones
1361 N 43rd Ave
Phoenix, AZ 85009

Practice Information:
||.||.||.||.|||.||.||.||.||.||.||.||.||.||.|
Midwestern University Eye Institute
~~~~~~~~~~~~~~~~~~~~
USA

| Description | Date | Charges | Payments | Adj/ Refunds | Insurance Balance | Patient Balance | Total Balance |
|---|---|---|---|---|---|---|---|
| | Account Totals | $350.00 | -$330.00 | -$20.00 | $0.00 | $0.00 | $0.00 |

**ITEMIZED STATEMENT**

Midwestern Univ Clinic
5865 W. Utopia Road
Glendale, AZ 85308
6235376000

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date:          30-JAN-2018
Time:          01:02:39 PM
Card Type:     MasterCard
Card Number:   XXXX0538
Trans ID:      60913508790
Auth Code:     040245
Approved Amt:  $280.00

X _Julian Jones_

GARRISON JONES

I AGREE TO PAY THE ABOVE TOTAL ACCORDING
TO MY CARD ISSUER AGREEMENT.

**NO INSURANCE**

garrison.jones@outlook.com

| | |
|---|---|
| **From:** | _____@midwestern.edu> |
| **Sent:** | Tuesday, January 11, 2022 10:35 AM |
| **To:** | Garrison Jones |
| **Subject:** | RE: Midwestern University Eye Institute -- Requested Statement Information |

Good Morning,

Your insurance did not cover your office on that day. We did, however, do a small balance adjustment write-off for $20, so of the out of the $120 service charges, you actually paid only $100 of the $120. As far as the glasses go, you paid the total $230 out-of-pocket.

Hope this helps,



**Midwestern University Eye Institute
Billing Department**



**Out of pocket**



From: Garrison Jones <garrison.jones@outlook.com>
Sent: Friday, January 7, 2022 4:53 PM
To: _____
Subject: Re: Midwestern University Eye Institute -- Requested Statement Information

**[External email: Use caution with links and attachments]**

Thank you for the document but can you verify that none of these charges were not paid by any insurance as well.

I want to make sure that all these charges were paid out of pocket and was not covered by insurance.

1

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮midwestern.edu>
**Sent:** Friday, January 7, 2022 2:49 PM
**To:** garrison.jones@outlook.com <garrison.jones@outlook.com>
**Subject:** Midwestern University Eye Institute -- Requested Statement Information

Citrix Encrypted Email Service

**Marci Reynolds** has sent you an encrypted message.

**Subject:**  Midwestern University Eye Institute – Requested Statement Information
**From:**  ▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮@midwestern.edu
**Expires:**  1/14/2022

View Encrypted Message

Check your email for instructions to activate your account before logging in.

This message is protected by industry-standard AES 256 bit encryption technology.



**#MWUTOGETHER**

2

UPS CampusShip | UPS | United States
Page 1 of 1
Case 2:19-cv-02344-KJM-JDP  Document 128-7  Filed 01/20/22  Page 40 of 25
Case 2:19-cv-02344-KJM-JDP  Document 128-7  Filed 01/20/22  Page 49 of 67

Jan 13, 2022

United Healthcare

UPS CampusShip: View/Print Label

MEDICAL 1/13/2022

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | ADVANCE AUTO PARTS STORE 4152 | CVS STORE # 3852 |
| 415 PISGAH CHURCH RD | 3814 N CHURCH ST | 3000 BATTLEGROUND AVE |
| GREENSBORO ,NC 27455 | GREENSBORO ,NC 27405 | GREENSBORO ,NC 27408 |

FOLD HERE





# VISION

Account Information:
Garrison Jones
1361 N 43rd Ave
Phoenix, AZ 85009

Practice Information:
Midwestern University Eye Institute
5865 West Utopia
Glendale, AZ 85308-5261
USA

## BRAIN INJURY

| Description | Date | Charges | Payments | Adj/ Refunds | Insurance Balance | Patient Balance | Total Balance |
|---|---|---|---|---|---|---|---|
| **Patient Name Garrison Jones** | | | | | | | |
| Encounter 3793 | | | | | | | |
| Provider | | | | | | | |
| Location Acquired Brain Injury | | | | | | | |
| | 01/30/2018 | $60.00 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 02/07/2018 | | -$30.00 | $0.00 | | | |
| ZApplied Encounter/Invoice Cre... | 02/07/2018 | | -$50.00 | $0.00 | | | |
| 99212-OFFICE O/P EST SF 10-19... | 01/30/2018 | $20.00 | | | $0.00 | $0.00 | $0.00 |
| Commercial Payment | 02/19/2018 | | $0.00 | $0.00 | | | |
| Transfer Patient Payment | 01/21/2020 | | -$20.00 | $0.00 | | | |
| 92015-DETERMINE REFRACTIVE S... | 01/30/2018 | $20.00 | | | $0.00 | $0.00 | $0.00 |
| Commercial Payment | 02/19/2018 | | $0.00 | $0.00 | | | |
| Commercial Adjustment | 02/19/2018 | | $0.00 | $0.00 | | | |
| Small Balance W/O | 02/05/2020 | | $0.00 | -$20.00 | | | |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$50.00 | $0.00 | | | |
| ZApplied Encounter/Invoice Deb... | 02/07/2018 | | $50.00 | $0.00 | | | |
| **Encounter Totals** | | **$120.00** | **-$100.00** | **-$20.00** | **$0.00** | **$0.00** | **$0.00** |
| Encounter 3810 | | | | | | | |
| Provider | | | | | | | |
| Location Optical AZ | | | | | | | |
| V2750C-Anti-Reflective Coating | 01/30/2018 | $62.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$62.50 | $0.00 | | | |
| V2750C | 01/30/2018 | $62.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$62.50 | $0.00 | | | |
| V2103-Spherocylindr 4.00d/12-2... | 01/30/2018 | $22.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$22.50 | $0.00 | | | |
| V2103-Spherocylindr 4.00d/12-2... | 01/30/2018 | $22.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$22.50 | $0.00 | | | |
| V2784-Lens polycarb or equal | 01/30/2018 | $22.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$22.50 | $0.00 | | | |
| V2784-Lens polycarb or equal | 01/30/2018 | $22.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$22.50 | $0.00 | | | |
| V2799B-L | 01/30/2018 | $7.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$7.50 | $0.00 | | | |
| V2799B-L | 01/30/2018 | $7.50 | | | $0.00 | $0.00 | $0.00 |
| Patient Payment CC - MasterCar... | 01/30/2018 | | -$7.50 | $0.00 | | | |
| **Encounter Totals** | | **$230.00** | **-$230.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |
| **Totals For Garrison Jones** | | **$350.00** | **-$330.00** | **-$20.00** | **$0.00** | **$0.00** | **$0.00** |



**ITEMIZED STATEMENT**

Page: 1 of 2

## UnitedHealthcare

UnitedHealthcare Insurance Company
GREENSBORO SERVICE CENTER
P.O. BOX 740800
ATLANTA, GA 30374-0800
Phone: 1-866-633-2446

February 07, 2018

Have more questions about your claim?
Visit www.myuhc.com
for all your claim and benefit information.

## Claim Detail for GARRISON JONES

Provider: CITY OF PHOENIX E T

Claim Number: ▓▓▓▓▓▓▓

Patient Account Number: ▓▓▓▓▓▓▓

| Date(s) of Service | Type of Service | Notes* | Amount Billed | Plan Discounts (-) | Your Plan Paid (=) | Your Itemized Responsibility to Provider*** | | | | Amount You Owe |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Deductible (+) | Copay (+) | Coinsurance (+) | Non Covered (=) | |
| 11/18/2017 | AMBULANCE | ND | ▓▓▓ | $0.00 | ▓▓▓ | $0.00 | $0.00 | $0.00 | $0.00 | ▓▓▓ |
| 11/18/2017 | AMBULANCE | ND | ▓▓▓ | $0.00 | ▓▓▓ | $0.00 | $0.00 | $0.00 | $0.00 | ▓▓▓ |
| 11/18/2017 | AMBULANCE | ND | ▓▓▓ | $0.00 | ▓▓▓ | $0.00 | $0.00 | $0.00 | $0.00 | ▓▓▓ |
| Claim Total: | | | | $0.00 | ▓▓▓ | $0.00 | $0.00 | $0.00 | $0.00 | |

***This total does not reflect any payments / copays you made at the time of service. Please wait for a provider bill before making a payment.

## Notes*

**D1 -** THE PLAN DISCOUNT SHOWN IS YOUR SAVINGS FOR USING A NETWORK PROVIDER. THE AMOUNT YOU OWE MAY INCLUDE YOUR COPAY, COINSURANCE, DEDUCTIBLE, PLUS ANY AMOUNT DUE IF YOU'VE REACHED YOUR BENEFIT LIMIT ON A COVERED SERVICE.

**ND -** THIS OUT-OF-NETWORK SERVICE WAS PAID BASED ON MEDICARE ALLOWED AMOUNTS OR OTHER SOURCES IF NO MEDICARE AMOUNT IS AVAILABLE. THESE AMOUNTS ARE USED EVEN IF THE PATIENT DOESN'T HAVE MEDICARE.

You have a right to request an appeal of the claim determination outlined in this statement. This appeal must be submitted within 2 years from the date you receive this statement.

You may submit a written appeal, along with the copies of any relevant documents, to:

UnitedHealthcare Appeals, P.O. Box 30573, Salt Lake City, UT 84130-0573.

If you request a review of your claim determination, we will complete our review no later than 30 days after we receive your appeal.

If your plan is governed by ERISA, you may have the right to file a civil action under ERISA if all required reviews of your claim have been completed.

You or your authorized representative, such as a family member or physician, may appeal the decision by submitting comments, documents or other relevant information to the appeal address referenced above.

Use this EOB statement as a reference or retain as needed

STD-EOB
0000014708275608

Case 2:19-cv-02374-KJM-JDP   Document 117   Filed 01/20/22   Page 23 of 25

🛡 UnitedHealthcare®

UnitedHealthcare Insurance Company
GREENSBORO SERVICE CENTER
P.O. BOX 740800
ATLANTA, GA 30374-0800
Phone: 1-866-633-2446

February 07, 2018

Have more questions about your claim?
Visit **www.myuhc.com**
for all your claim and benefit information.

You may request copies (free of charge) of information relevant to your claim by contacting us at the above address.

**Availability of Consumer Assistance/Ombudsman Services**

There may be other resources available to help you understand the appeals process. If your plan is governed by ERISA, you can contact the Employee Benefits Security Administration at 1-866-444-EBSA (3272). If your plan is not governed by ERISA, you can contact the Department of Health and Human Services Health Insurance Assistance Team at 1-888-393-2789.

If we continue to deny the payment, coverage, or service requested or you do not receive a timely decision, you may be able to request an external review of your claim by an independent third party, who will review the denial and issue a final decision.

Insurance fraud adds millions to the cost of health care. If services are listed which you did not receive or service you were told would be free, call 1-866-633-2446.

**Rather view this online?**

Sign up for **myuhc.com** to easily view claims and account balances, see where you're at against your deductible, locate a network doctor, compare costs, select paperless delivery of your important plan documents and more.

**Rather view this on your mobile device?**

Download the free UnitedHealthcare Health4Me app, then sign up to easily find and map care, compare costs, view claims and account balances and more. Get access to the same personalized health plan information ▓▓▓▓ on the go.

Maintaining the privacy and security of individuals' personal information is very important ▓▓▓▓▓ at UnitedHealthcare. To protect your privacy, we implement ▓▓▓▓ confidentiality practices. These practices include the ability to use a unique individual identifier. You may see the unique individual identifier on UnitedHealthcare correspondence, including medical ID cards (if applicable), letters, explanation of benefits (EOBs), and provider remittance advices (PRAs). If you have any questions about the unique individual identifier or its use, please contact your customer care professional at the number shown at the top of this Statement.

Please call the number included in this document or on the back of your ID card if you need diagnosis and/or treatment code information regarding the services referenced in this communication.

Para obtener asistencia en español, llame al número de teléfono que se incluye en este documento o al dorso de su tarjeta de identificación.

We do not treat members differently because of sex, age, race, color, disability or national origin. If you think you weren't treated fairly you can send a complaint to: Civil Rights Coordinator, United HealthCare Civil Rights Grievance, P.O. Box 30608, Salt Lake City, UTAH 84130, UHC_Civil_Rights@uhc.com. You must send the complaint

STD-EOB
000014708275G6

Use this EOB statement as a reference or retain as needed

Nov 11, 2021

**AHCCCS**
Arizona Health Care Cost Containment System

MD-3700

P.O. Box 25520
Phoenix, AZ 85002

JRK—IMP

AZ 1009

**MEDICAL / MEDIAID**   **NOV 8, 2021**
**AZ**



**AHCCCS**
Arizona Health Care Cost Containment System
*Our first care is your health care*

501 East Jefferson, Phoenix, AZ, 85034
PO Box 25520, Phoenix, AZ, 85002
**Phone:** (602) 417-4230
www.azahcccs.gov

Monday, November 18, 2021



GARRISON JONES

Re: Garrison Jones    AHCCSID # A98990168  AHCCCS DOB 1

This letter is to answer your request for AHCCS health insurance for the person (s) listed above.

Our records show the following eligibility and enrollment for:

Enrollment for GARRISON JONES:

12/01/2016 – 12/31/2016   FFS PRIOR QUARTER /

02/01/2017 – 02/01/2017 AZ COMPLETE HEALTHCARE /ACC PRIOR PERIOD COVERAGE

02/07/2018  - 02/28/2019 AZ COMPLETE HEALTHCARE / ACC PRIOR CAPITATED

07/01/2019 – 07/11/2019 UNITEDHEALTHCARE / ACC PRIOR PERIOD COVERAGE

07/12/2019 – 01/16/2020 UNITEDHEALTHCARE / ACC CAPITATED

If you have any questions or need more information, please call (602 417-4230 or 1-855-842-7619, and

ask to speak to a representative of client advocacy. or you can visit website

www.HealthArizonaPlus.gov for this information.

Sincerely,

Office of Client Advocacy
Division of Member Services



**Arizona Department of Economic Security**

**Office Of Appeals**

1951 W. Camelback Road, Suite 400, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

DBA VELOCITY TECHNOLOGY
SOLUTIONS
c/o Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016

Arizona Appeal No. U-1600600-001

Date of Mailing:                 8/20/2018

Social Security No.

Employer Acct. No.          7428011000

## DECISION OF APPEAL TRIBUNAL

# HEARING IS NOT REOPENED



**The last day to file an appeal is ___September 19, 2018___. Instructions for filing an appeal are at the end of this decision.**

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis. Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

## ISSUE:

Should the non-appearing party's request to re-open the hearing of June 22, 2018, be granted?

## DECISION:

The applicant did not establish good cause for failure to appear at the hearing scheduled for 06/22/2018. The Decision of Appeal Tribunal remains in effect.

## FINDINGS OF FACT:

On May 17, 2018, a determination was issued holding the claimant ineligible for benefits. Timely appeal of the determination was filed by the claimant.

A Notice of Hearing was mailed to the parties on June 7, 2018. The employer did not appear at the hearing. A Decision of Appeal Tribunal was issued on June 22, 2018.

The employer knew of the time and date for the hearing. The employer chose not to appeal in order to try and maintain a favorable attitude with the claimant in other negotiations regarding the claimant's separation from employment. The tactic was unsuccessful.

## REASONING AND CONCLUSIONS OF LAW:

The issue is whether the nonappearing party's request to reopen the hearing of June 22, 2018, should be granted.

The Arizona Administrative Code, in Section R6-3-1503, provides in pertinent part as follows:

B.     APPEAL TRIBUNAL HEARINGS

        *               *               *

    3.     Failure of Party to Appear

        a.     If there is no appearance on behalf of an interested party at a scheduled hearing, the Appeal Tribunal may:

            i.     Adjourn the hearing to a later date; or

            ii.    Proceed to review the evidence of record and other admissible evidence as may be presented at the scheduled hearing, and make a disposition or decision on the merits of the case.

b.    If a decision is issued adverse to any interested party that failed to appear at a scheduled hearing, that party may file 1 written request for a hearing to determine whether good cause exists to reopen the hearing.    The request to reopen shall be filed within 15 calendar days of the mailing date of the decision or disposition and shall list the reasons for the failure to appear.

c.    The Appeal Tribunal shall hold a hearing to determine whether there was good cause for the failure to appear and, in the discretion of the hearing officer, to review the merits of the case. Upon a finding of good cause for failure to appear at the scheduled hearing, the disposition or decision on the merits shall be vacated and the case rescheduled for hearing under R6-3-1502, unless the hearing on the merits is held concurrently with the good cause hearing.

d.    Good cause warranting reopening of a case shall be established upon proof that both the failure to appear and failure to timely notify the hearing officer were beyond the reasonable control of the nonappearing party.

e.    A party may obtain only 1 hearing to determine if good cause exists to reopen a case.

    i.    If a party does not appear at the scheduled good cause hearing, a party may file a written request for review to determine whether good cause exists for failure to appear at both the good cause hearing and the original hearing on the merits.

    ii.    If a case is reopened upon a finding of good cause, and the party fails to appear at the time and date of the new hearing, the party may file a written request for review to determine whether good cause exists for failure to appear at the new hearing.

f.    A request for review shall state the reasons for the party's failure to appear.    The party shall attach

copies of any documentation supporting the request.

g.  The Appeal Tribunal shall review the request and the evidence of record to determine whether there is good cause to reopen the hearing on the issue of good cause or on the merits and shall issue a decision accordingly.

h.  Any interested party may appeal to the Unemployment Insurance Appeals Board from the decision of a hearing officer that denies reopening for lack of good cause as defined in subsection (B)(3)(d). The appeal shall be in writing and filed within 15 calendar days from the date of mailing of the decision denying reopening. If the Unemployment Insurance Appeals Board reverses the denial to reopen, the case shall be remanded to the Appeal Tribunal and rescheduled for hearing on the merits in accordance with R6-3-1502.

i.  If an appellant fails to appear or waive appearance, the Appeal Tribunal may enter a default disposition in accordance with R6-3-1502(A)(4) without further right to appeal except as provided in this Section.

In *Maldonado v. Arizona Department of Economic Security*, 182 Ariz. 476, 897 P.2d 1362 (App., 1994), the Court of Appeals held that the language in A.A.C. R6-3-1503.B.3.d must be interpreted in such a way as to allow an "excusable neglect" standard to be considered in determining whether to reopen a hearing, similar to the test under Arizona Rule of Civil Procedure 60(c).

In interpreting the term "excusable neglect", as expressly included in Ariz. R. Civ. P. 60(c), Appellate Courts have held that such standard does not apply if the action occurred because of a party's mere neglect, inadvertence or forgetfulness without a reasonable excuse therefor, *Daou v. Harris*, 139 Ariz. 353, 678 P.2d 934 (1984). The term "excusable neglect" is not synonymous with carelessness, *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 871 P.2d 698 (App. 1993), and a party claiming excusable neglect must have promptly sought relief, *Baker Intern. Associates, Inc. v. Shanwick Intern. Corp.*, 174 Ariz. 580, 851 P.2d 1379 (App. 1993). The standard for determining whether an action constitutes "excusable neglect" is whether the neglect involves an error such as might be made by a reasonably prudent person who attempted to handle a matter in a prompt and diligent fashion. *Beal v. State Farm Mutual Automobile Insurance Co.,* 151 Ariz. 514, 729 P.2d 318 (App. 1986).

Good cause is about allowing parties who have not had the ability to present their case through accident or lack of notice to remedy that situation. In this case, employer did not appear because of a deliberate choice – a tactic to influence other negotiations. The employer had notice and the opportunity to be heard, but knowingly and deliberately declined that opportunity.

Therefore, I conclude that the employer has not established good cause for failing to appear at the hearing of June 22, 2018. I deny the request to reopen that hearing.


**Richard Ebert**
Administrative Law Judge


## CASE HISTORY:

Original Case:

    Effective Date of Initial Claim: 4/8/2018       Issue Code: GC
    Date of Determination: 5/17/2018
    Appealed By: Claimant
    Date of Hearing: 6/22/2018
    Place of Hearing: Teleconferencing from Tucson, Arizona
    Appearances: Claimant

First Reopening Case:

    Date of Appeal Tribunal Disposition/Decision: 6/22/2018
    Reopening Requested by: Employer
    Date of Reopening Hearing: 8/20/2018
    Place of Reopening Hearing: Teleconferencing from Phoenix, Arizona
    Appearances: Employer Counsel

## Distribution:
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

## Electronic Distribution:
Employer: ryan.mangum@ogletreedeakins.com

File





# Arizona Department of Economic Security

**Office Of Appeals**

1951 W. Camelback Road, Ste 400, Phoenix, AZ, 85015 (602)771-9019
Toll Free 1(877)528-3330 FAX (602)257-7056

# DISMISSAL OF APPEAL

GARRISON JONES
705 W LIBERTY DR
WHEATON, IL 60187-4842

VELOCITY TECHNOLOGY SOLUTIONS
Appeal Staff
OGLETREE DEAKINS NASH SMOAK &
STEWART
ESPLADE CENTER III
2415 E CAMELBACK RD STE #800
PHOENIX, AZ 85016

Arizona Appeal No. U-1600605-001

Date of Mailing:  8/20/2018

Social Security No. 3~~~~~~~~

Employer Acct. No. 7428011-000

### IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS

The Department of Economic Security provides language assistance free of charge.  For assistance in your preferred language, please call our Office of Appeals (602)771-9019.

### IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO

The Department of Economic Security suministra ayuda de los idiomas gratis.  Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602)771-9019.

## NOTICE TO CLAIMANT

\*\*\*
**YOUR APPEAL  HAS BEEN  DISMISSED BECAUSE  THE EMPLOYER  DID  NOT ESTABLISH  GOOD
CAUSE FOR FAILING TO APPEAR AT THE PREVIOUS HEARING.**
\*\*\*

\*\*\*
Today, I made a separate decision that found the employer did not have good cause for failing to appear at the hearing scheduled for 6/22/2018  and that the hearing  would not  be reopened.  I  am dismissing  your appeal  because the Tribunal decision issued 6/22/2018 remains in full force and effect.

You have no right to appeal this dismissal.  However, you may request further review of my other decision that you did not have good cause for failing to appear at the scheduled hearing.
\*\*\*

**Richard Ebert**
Administrative Law Judge

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, please contact the Presiding Administrative Law Judge at (602)771-9019 or toll-free at 1(877)528-3330; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request.

**REPRESENTATION**: You may have someone represent you. If you pay the representative, then that person must be a licensed Arizona attorney or be supervised by one. An employer may also use any employee of the business as its representative. This office does not provide representatives.

**Distribution:**
Claimant
Employer Representative
BPC PHOENIX Site Code 918-B2

**Electronic Distribution:**
Employer: ryan.mangum@ogletreedeakins.com
File

RE/aj

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Garrison Jones,                              No. 2:19-cv-02374-KJM-JDP

12                        Plaintiff,              ORDER

13         v.

14   Velocity Technology Solutions, et al.,

15                        Defendants.

16

17         Garrison Jones alleges his former employer, Velocity Technology Solutions, interfered

18   with his rights under the Family Medical Leave Act (FMLA). He is not represented by counsel in

19   this action. The matter has thus been referred to the assigned Magistrate Judge under this

20   District's Local Rules. *See* E.D. Cal. L.R. 302(c)(21). Velocity moves to dismiss the complaint

21   under Rule 41(b) and 12(b)(6), and the Magistrate Judge recommends granting the motion in part

22   and denying it in part. Mr. Jones objects to the findings and recommendations. ECF No. 93.

23   Velocity has not filed objections. The court has reviewed the matter de novo.

24         First, the Magistrate Judge recommends denying Velocity's motion to dismiss under Rule

25   41(b). F&Rs at 3. The court adopts that recommendation, but for different reasons than those in

26   the findings and recommendations. A defendant may move to dismiss under Rule 41(b) if a

27   plaintiff "fails . . . to comply with . . . a court order." Fed. R. Civ. P. 41(b). Mr. Jones violated

28   the Magistrate Judge's order to choose whether he would amend his original complaint or

1

1    proceed with his FMLA interference claim: he first elected to proceed on the interference claim,

2    but he later also amended his complaint to reassert several other claims. *See* Order (July 31,

3    2020), ECF No. 29; Notice of Election, ECF No. 30; First Am. Compl., ECF No. 41. Before

4    dismissing a case under Rule 41(b), a district court must consider several factors, including "the

5    availability of less drastic alternatives" to dismissal. *Applied Underwriters, Inc. v. Lichtenegger*,

6    913 F.3d 884, 890 (9th Cir. 2019) (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir.

7    1999)). Dismissal would be an unduly harsh sanction. It is more appropriate to hold Mr. Jones to

8    his original election and dismiss all claims but the FMLA interference claim. This court's

9    previous order effectively imposes that sanction. *See* Order (Oct. 6, 2020), ECF No. 49. No

10   further sanction is necessary.

11          Second, the Magistrate Judge recommends granting Velocity's motion to dismiss the

12   claim that it wrongly delayed approval of Mr. Jones's FMLA leave until February 2018. F&Rs

13   at 4. The Magistrate Judge accurately summarized the legal standard that applies to that motion

14   under Rule 12(b)(6) rule and the elements of a claim for FMLA interference, and the court agrees

15   with the Magistrate Judge's conclusion that Mr. Jones cannot prevail on this claim. *See* F&Rs at

16   2–4. By his own allegations, he was not eligible for FMLA leave until February 2018. *See id.*

17   at 4. The court adopts the Magistrate Judge's recommendation to dismiss this claim with

18   prejudice.

19          Third, the Magistrate Judge recommends denying Velocity's motion to dismiss Mr.

20   Jones's remaining interference claim. *See id.* at 4–5. Mr. Jones alleges Velocity interfered with

21   his FMLA rights by firing him while he was on FMLA leave. *See, e.g.*, First Am. Compl. at 26–

22   27. That claim is not plausible. In an email Mr. Jones reproduced in his complaint, Velocity

23   confirmed unambiguously that Mr. Jones had not been fired, that he had remained an employee

24   throughout his FMLA leave, and that he continued to receive medical, vision, dental, and other

25   benefits as well. *Id.* at 24. The court need not assume an allegation is true if it contradicts a

26   document attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

27   Cir. 2001). The court therefore does not assume Velocity terminated Mr. Jones during his FMLA

28   leave.

2

1    The Magistrate Judge recommends denying the motion because Mr. Jones alleges an

2    administrative law judge in Arizona found that his employment had indeed been terminated. *See*

3    F&Rs at 5 (citing First Am. Compl. at 16). In the face of Velocity's unambiguous email—which

4    Mr. Jones reproduced in his complaint—his allegations about the administrative law judge's

5    decision are too vague and too confusing to make out a "claim to relief that is plausible on its

6    face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

7    544, 570 (2007)). It is unclear what the administrative law judge or the Arizona administrative

8    agency found and why.

9    Although federal courts interpret pro se pleadings liberally, "[v]ague and conclusory

10   allegations . . . are not sufficient to withstand a motion to dismiss," and a court may not "supply

11   essential elements" when they have not been pleaded. *Ivey v. Bd. of Regents of Univ. of Alaska*,

12   673 F.2d 266, 268 (9th Cir. 1982). Pro se litigants are "not entitled to the benefit of every

13   conceivable doubt; the court is obligated to draw only reasonable factual inferences" in the

14   plaintiff's favor. *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). The court therefore

15   dismisses the First Amended Complaint.

16   The court cannot exclude the possibility that Mr. Jones could clarify his allegations about

17   his termination and his correspondence with Velocity such that an interference claim would be

18   plausible. The First Amended Complaint is therefore dismissed with leave to amend. *See*

19   *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). The

20   court has considered the prejudice Velocity may suffer if Mr. Jones continues to make vague,

21   disorganized, inflammatory, and confusing allegations. That potential prejudice does not outstrip

22   the liberal policy of amendment embodied in Federal Rule of Civil Procedure 15. The court

23   cautions Mr. Jones, however, that any further amended complaint may be subject to dismissal

24   under Rule 41(b) if it does not contain a "short and plain statement" of his claims, as required by

25   Federal Rule of Civil Procedure 8(a), or if he reasserts claims this court has dismissed with

26   prejudice or without leave to amend. Nor does the court anticipate permitting any further

27   amendments.

28   /////

3

1    In conclusion, (1) the findings and recommendations at ECF No. 87 are **adopted in part**,

2    (2) the motion to dismiss at ECF No. 43 is **granted**, (3) the First Amended Complaint is

3    **dismissed with leave to amend**, and (4) Mr. Jones may file a Second Amended Complaint

4    **within thirty days** after receiving a copy of this order.

5    IT IS SO ORDERED.

6    DATED: September 27, 2021.

7

CHIEF UNITED STATES DISTRICT JUDGE

4

Garrison Jones
P.O. Box 188911
Sacramento, California 95818
Garrison.jones@ouylook.com
PLAINTIFF

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

GARRISON JONES
Plaintiff,

v.

VELOCITY TECHNOLOGY SOLUTIONS,
INC.; Case No. 2:19-cv-02374-KJM-EFB

September 29, 2020
## CERTIFICATE OF SERVICE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

GARRISON JONES
Plaintiff,

v.

VELOCITY TECHNOLOGY SOLUTIONS,
INC

## Plaintiff Notice to Court Fabrication of Fmla Evidence Fraud by Defendants /Ogltree Deakins

Complaint Filed: November 25, 2019
Trial Date: None Set
Judge: Hon. Jeremy D Peterson

, I mailed first class USPS to Defendants Velocity Technology Solutions /Navisite 400 Minuteman Rd Andover, MA 01810

## Motion for Vacate of order Document 98

Date February 25, 2021

I am the plaintiff in the above case appearing Pro Se.
I do hereby affirm that I am the plaintiff in the above-mentioned case appearing Pro Se and that on March 16, 2022 I sent via USPS first class mail l a copy of said motion to defendants Velocity Technology Velocity Technology Solutions ?Navisite  400 Minuteman Rd Andover, MA 01810na 28211

**March 16, 2022**