Garrison Jones
Plaintiff (Pro Se)
P.O. Box 188911
Sacramento, California 95818
garrison.jones@outlook.com

FILED

MAY - 5 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

if

Case No.: 2:19-cv-02374 KJM-JDP

**JURY TRIAL DEMANDED**

Action filed: Nov 25, 2019

Date set for trial: NONE

**Plaintiff Reply to Defendants Document 131
Falsely accusing plaintiff of Felony unemployment fraud**

# Introduction

The most crucial piece of evidence and fact is that it is inconceivable that an employer (Velocity) who has repeatedly claimed plaintiff was not terminated and was still employed at Velocity they would **falsely accused an active employee currently employed, whether he was on approved FMLA medical leave or not of felony unemployment fraud.**

**It is clear Velocity and Ogltree Deakins did this behind the back of plaintiff and they knew the law governing unemployment fraud in the state of Arizona.**

**Again, if plaintiff had not appealed he could have walked out the door of the offices of Ogltree Deakins not knowing there was a felony warrant out for his arrest in the state of Arizona based on the false allegation made by Velocity.**

This is exactly what Velocity did, after they lost the appeal hearing of June 22, 2018 and their appeal of July 23, 2018 was denied and dismissed with prejudice.

After stalking plaintiff looking for anything they had available to them, they found plaintiff had in fact returned to work for Prime Healthcare.

They somehow stalked him and learned he was a corporate employee working out of one of the healthcare facilities in Bloomington, Indiana.

Plaintiff was very open with Prime Healthcare and informed them this was his first position after suffering a stroke.

Thus the additional testing, where he passed and was approved.

Three weeks after he began his new employment, he began to receive hang up calls at his extension.

He first thought it was a recycled extension but later learned it was a new extension just added upon his arrival.

After the 9th call in a week, he knew it was Velocity as in June 2018 he had just disconnected his cellphone number he had for 17 years because of 6 months of harassing phone calls from Velocity.

He reported the harassing calls to HR and to Security.

**They implemented security measures**.

First, since he was a corporate employee and not an employee of the facility, he was provided with e corporate phone number in California.

Calls to that number were forwarded to his new extension at the facility.

The calls originated from the dial by name and via the hospital operator who then transferred the call to his extension.

**His name was removed from the Dial by name feature** and all calls made to the hospital operator were transferred to Human Resources.

After these changes were made, if a call was received asking for plaintiff by name the call was transferred to Human Resources.
Human Resources received 4 additional calls, each time they announced "Human Resources" the caller hung up.

They now knew they had been caught.

Frustrated they could no longer harrass plaintiff at his new employer, Velocity then went back to the state of Arizona, contacted AZDES and falsely accused plaintiff of Felony unemployment fraud, falsely claiming he was working and collecting unemployment at the same time.

Who else knew of the litigation in the state of Arizona except Velocity and their attorneys from Ogltree Deakins attorneys.

Who else except Velocity was motivated to make such a false felony claim against plaintiff.

Plaintiff did not know anyone in the state of Indiana.

Velocity was not satisfied they lost the appeal hearings and the termination of plaintiff while on FMLA.
They did everything they could to harrass, intimidate and put plaintiff in imminent danger of his safety with the threat of serious bodily harm by harassing him and destroying his employment relationship with his new employer.
Now that they had stalked him and found out his actual work location, they had the ability to park outside the facility, follow him home and locate his physical residence.

This is exactly what they wanted. They wanted to do anything to him physically to prevent him from moving forward in the litigation against them, even if it meant destroying his employment relationship with another organization, prevent him from being able to support him and his family, gainfully employed and enjoying a profession he has been successful in for over 28 years.

They intended to induce AZDES to weaponize law enforcement to officially charge plaintiff with a felony and send him to prison.

In DKT 35 Velocity attorney confirms the stalking of plaintiff when he was attempting to in his mind disqualify plaintiff for FMLA protection where he makes the mistake of adding the state of **Indiana** to his lies where he states plaintiff claims he worked in home offices of Arizona, Illinois, Indiana and California.

Plaintiff worked out of one home office and only **one state for Velocity with that being the state or Arizona stating**

> Case 2:19-cv-02374-KJM-JDP   Document 35   Filed 08/14/20   Page 4 of 5
>
> 1  Plaintiff alleges that approximately 70% of Velocity's workforce works remotely from home
> 2  offices across the country. *Id.* at ¶ 8. Third, Plaintiff alleges that he worked at various home
> 3  offices in Arizona, Illinois, Indiana, and California, none of which is near Velocity's alleged
> 4  corporate locations. And finally, Plaintiff fails to include any allegation that Velocity employed at
> 5  least fifty employees within seventy-five miles of any of his home office "worksites." Because the
> 6  Complaint does not allege that Plaintiff worked at a worksite with at least fifty employees within a
> 7  seventy-five mile radius, Plaintiff does not state sufficient facts to allege that he qualifies for the
> 8  protections of the FMLA.

He proves that it was Velocity who were making the harassing calls to plaintiff at this work place just by **including Indiana**.

Plaintiff never lived or worked in the state of Indiana except for Prime Healthcare.

Then in DKT 91, he attempts to give Velocity an alibi by mentioning the fraud appeal that was overturned in favor of plaintiff by stating the appeal was because plaintiff answered no to a question on the weekly certification, which is a lie.

**DKT 91 PG 6 AT 22**

- AZDES determined that Plaintiff was overpaid benefits because Plaintiff answered "no" to the question of whether he worked or earned money during certain benefit weeks, and while Plaintiff's answer was not accurate, Plaintiff "did not intend to intentionally give false or inaccurate information to the Program." [ECF 82, Document 5, at 64.]

It was velocity who contacted AZES and specifically told AZDES plaintiff was committing Felony unemployment fraud.

AZDES, without investigating, filed a charge of **FRAUD** against plaintiff in July 2018. Plaintiff had no knowledge of this until July 2019 a year later.

Plaintiff appealed and the fraud charge was overturned and velocity still had to pay plaintiff unemployment benefits in 2019 that were halted because of this false claim/charge against him.

Case 2:19-cv-02374-KJM-JDP   Document 134   Filed 05/05/22   Page 7 of 19

> Case 2:19-cv-02374-KJM-JDP   Document 35   Filed 08/14/20   Page 4 of 5
>
> 1  Plaintiff alleges that approximately 70% of Velocity's workforce works remotely from home
> 2  offices across the country. *Id.* at ¶ 8. Third, Plaintiff alleges that he worked at various home
> 3  offices in Arizona, Illinois, Indiana, and California, none of which is near Velocity's alleged
> 4  corporate locations. And finally, Plaintiff fails to include any allegation that Velocity employed at
> 5  least fifty employees within seventy-five miles of any of his home office "worksites." Because the
> 6  Complaint does not allege that Plaintiff worked at a worksite with at least fifty employees within a
> 7  seventy-five mile radius, Plaintiff does not state sufficient facts to allege that he qualifies for the
> 8  protections of the FMLA.

Furthermore, it was not Prime Healthcare who provided the fraud information to AZDES, nor was the information of fraud made by AZDES or an internal procedure. It was Velocity.

Per AZDES policy and procedures, if they were the agency that discovered a claimant was committing unemployment fraud, they would report it and by law, they would be the party after an appeal was filed, they would have to appear at the appeal hearing with evidence of the fraud.

In this case, they did not, because the determination/adjudication by AZDES was fraud and it clearly stated, AZDES received this information and it was received from another source, Velocity.

No one except the plaintiff appeared at the appeal hearing on **October 29, 2019 over a year after this false felony charge was made by Velocity that was overturned as non-fraud.**

## DECISION OF APPEAL TRIBUNAL

## CLAIMANT WAS OVERPAID BENEFITS HOWEVER, CLASSIFICATION OF OVERPAYMENT IS CHANGED

Prior the Decision that found him eligible to receive benefits, the claimant had not received any benefit payments on his claim. He was advised by the Program to fill out his weekly benefit claims as he did in the past.

The claimant became reemployed on 6/27/2019. He worked and earned wages during the benefit weeks ending 7/7/2019 through 7/28/2019. When he filed his claims for each of those benefit weeks, he answered "no" to the question of whether he worked or earned any money during those benefit weeks. He answered "no" because he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible, to reflect what his situation was for those previously unpaid weeks when he was not, in fact, employed.

He did not intend to intentionally give false or incorrect information to the Program in order to receive benefits to which he was not entitled.

Plaintiff did not simply answered "no" to these questions, he was advised by AZDES to continue to file certifications, which he did, to receive the benefits he was entitled to that he did not receive after he had won his appeal in June 2018.

Velocity made sure he did not collect any unemployment benefits as they filed multiple false allegations and clams against him with AZDES to prevent him from doing so.

All of them were appealed, overturned and or reversed upon appeal.

It is also important to note to this court that on August 16, 2018 both Velocity and Ogltree Deakins attorneys knew Velocity had filed multiple false claims/allegations AZDES, including where they falsely accused plaintiff of Felony unemployment fraud with AZDES in the state of Arizona.
Neither of the said a word about it. Plaintiff if he had not on his own due diligence found out about it on his own, per AZDES, he had less than 30 days before they would have referred it over to law enforcement for prosecution.

Section F of the decision clearly states prosecution **by the appropriate county attorney for Felony criminal charges against plaintiff, which is exactly what Velocity intended by doing this behind the back of plaintiff.**

    E.    The department shall adopt rules to implement subsection D of this section.

    F.    The attorney general or the appropriate county attorney may institute appropriate court proceedings to recover in the name of the department any amount for which a person is liable to the department.

**Despite the efforts by Velocity to send plaintiff who they claim was still employed to prison, they still lost the fraud appeal and was forced to pay plaintiff benefits he legally was entitled to more than one year after they falsely accused plaintiff of felony unemployment fraud.**

So any day after August 16 after he left the Ogltree Office building he could have been stopped by any law enforcement, arrested on a Felony warrant from the state of

- 9 -

Arizona, extradited to Arizona on a felony warrant as a result of the false claim made by Velocity which is what they intended.

*They knew he no longer lived in Arizona, they knew he was working for another organization in Indiana and they knew if he was arrested, he would lose his job at Prime Healthcare and have a felony on his record that would prevent him for obtaining gainful employment for the next 7 to 8 years, effectively ending his career.*

*This is a fact, and illustrates the vindictive, heinous nature of who Velocity really is.*

They said absolutely nothing about these false charges they made against him, let him walk right out the door and relied upon others to do their dirty work for them.

I would not be surprised if they contacted local law enforcement in Indiana, Illinois and Arizona alerting them as well, then providing them with any information they had to locate plaintiff at work in order to arrest him.

## Attached Exhibits

A. Overpayment classification is F for FRAUD.
B. Decision Arizona Court of Appeals after plaintiff filed appeal-reversing adjudication by AZDES from **Fraud to Non-fraud**.
C. Felony fraud adjudication by AZDES
D. Letter Prime Healthcare corporate HR Human Resources where they confirm it was not Prime Healthcare that released plaintiff employment information or any other employment information to AZDES. It was Velocity.

They are making the false allegation that an they terminated, but still claim he is actively / currently employed of committing Felony unemployment fraud in the state

of Arizona, a state he no longer lives in of, felony unemployment fraud to send him prison.

Respectfully submitted,
Dated: April 29, 2022

                                                                              _____
                                                                              **Garrison Jones Plaintiff** (Pro Se)
                                                                              General Delivery
                                                                              Sacramento, California 95814
                                                                              garrison.jones@outlook.com

Case 2:19-cv-02374-KJM-JDP   Document 134   Filed 05/05/22   Page 12 of 19
Page: 1 Document Name: untitled

**A**

```
DATE: 10/16/2019              ARIZONA GUIDE SYSTEM
TIME: 09:51:58                  OVERPAYMENT DATA                                  09

SSN: 361 56 1008 0   NAME: JONES, GARRISON                  BYE: 08/22/2020
NO. OF OVERPAYMENTS:   01                    NUMBER OF REPAYMENTS     00
ARICS NUMBER:    1        OVERPAYMENT NO: 01
PROGRAM: 01         ESTABLISHED DATE:   10262018 OVERPAYMENT CLASS:    F    X
BYB:     04082018 ARICS SENT DATE:      10262018 METHOD OF DETECTION:  H
BYE:     04062019 AMENDED UB272 DATE:   00000000 CAUSE OF OVERPAYMENT: 14
LIAB ST: 04       FIRST OVERPAID BWE:   07072018 CATEGORY:
DEP ID:  648      LAST OVERPAID BWE:    07282018 DISPOSITION DATE:     11012018
ER PEN:                              REG      FAC OVERPAYMENT DISP CODE:   A
  OVERPAID AMOUNT:               960.00      .00 BANKRUPTCY FILE DATE: 00000000
  PENALTY:                       144.00          LEGAL STATUS:
  INTEREST:                        8.00          LEGAL STATUS EFF DATE: 00000000
  OFFSET AMOUNT:                    .00          INT RT-EFF DATE: 10.00/10262018
  RECOUP AMOUNT:                    .00          REPAY PLAN EFF DATE:  00000000
  WAIVED-WRITEOFF:                  .00          MONTHLY REPAY AMOUNT:      .00
  PRINCIPAL BALANCE:             960.00      .00 AGREEMENT DUE DATE:   00
  PRINCIPAL+INTEREST BAL:        968.00          OFFSET REDUCT IND:    100 %
  TOTAL OUTSTANDING BAL:        1112.00          OFFSET REDUCT EFF DTE: 00000000

FOR MORE THAN 1 OVERPAYMENT DEPRESS PF2                 TRANSACTION OPTION:
THERE ARE NO MORE OVERPAYMENTS
```

X OVERPAYMENT Classified AS FRAUD
SEE OVERPAYMENT CLASS MARKED WITH X ABOVE

Date: 10/16/2019 Time: 9:54:17 AM
ASA - Guide Screen - #: 09 - APS #: 1642697 - Type: OA - Exhibit #: 03 - Last Name: JONES


**Arizona Department of Economic Security**




**Office Of Appeals**

1990 W. Camelback Road, Suite 200, Phoenix, AZ 85015, (602) 771-9019
Toll-Free 1-877-528-3330   FAX (602) 257-7056

GARRISON JONES

SACRAMENTO, CA 95812

Arizona Appeal No. U-1642697-001        Date of Mailing:        10/29/2019

Social Security No.

---

## DECISION OF APPEAL TRIBUNAL



## CLAIMANT WAS OVERPAID BENEFITS HOWEVER, CLASSIFICATION OF OVERPAYMENT IS CHANGED

---

The last day to file an appeal is ____November 29, 2019____. Instructions for filing an appeal are at the end of this decision.

IMPORTANT---THIS IS THE JUDGE'S DECISION REGARDING YOUR CLAIM FOR UNEMPLOYMENT BENEFITS
The Department of Economic Security provides language assistance free of charge. For assistance in your preferred language, please call our Office of Appeals (602) 771-9019 or Toll-Free at 1-877-528-3330.

IMPORTANTE --- ESTA ES LA DECISIÓN DEL JUEZ SOBRE SUS BENEFICIOS DE SEGURO DE DESEMPLEO
The Department of Economic Security suministra ayuda de los idiomas gratis. Para recibir ayuda en su idioma preferido, por favor comunicarse con la oficina de apelaciones (602) 771-9019 o al número gratuito 1-877-528-3330.

### ISSUE:

Was the Claimant overpaid benefits? If yes, what is the amount and classification of the overpayment?

If the overpayment classification in the Determination of Overpayment is fraud, what is the amount of the penalty?

## DECISION:

I affirm but modify the Determination of Overpayment dated 10/1/2019. The Claimant was overpaid benefits in the amount of $960.00. The overpayment is classified as non-fraud. No penalty is due.

## FINDINGS OF FACT:

The Claimant received benefits in the amount of $240.00 for each of the weeks ending 7/7/2018 through 7/28/2019 for a total of $960.00.

The claimant had previously been disqualified from receiving benefits based upon his separation from his last employment. Upon appeal, the Determination of Deputy that disqualified him was reversed in a Decision of Appeals Tribunal dated 6/22/2018.

Prior the Decision that found him eligible to receive benefits, the claimant had not received any benefit payments on his claim. He was advised by the Program to fill out his weekly benefit claims as he did in the past.

The claimant became reemployed on 6/27/2019. He worked and earned wages during the benefit weeks ending 7/7/2019 through 7/28/2019. When he filed his claims for each of those benefit weeks, he answered "no" to the question of whether he worked or earned any money during those benefit weeks. He answered "no" because he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible, to reflect what his situation was for those previously unpaid weeks when he was not, in fact, employed.

He did not intend to intentionally give false or incorrect information to the Program in order to receive benefits to which he was not entitled.

## REASONING AND CONCLUSIONS OF LAW:



The issues are (1) whether the Claimant has been overpaid benefits, (2) the amount and the classification of any such overpayment, and (3) if applicable, the amount of fraud penalty due.

Arizona Revised Statutes, Section 23-787, provide in pertinent part as follows:

> A. A person who receives any amount as benefits under this chapter to which the person is not entitled is liable to repay the overpaid amount to the department. The department may deduct all or a portion of the overpayment from future benefits payable to the person under this chapter.

Page 2—Arizona Appeal No. U-1642697-001

B.  If benefits to which a person is not entitled are received by reason of fraud committed by the person as determined by the department, the department shall assess a penalty on the person equal to fifteen per cent of the amount of the erroneous payment and the person is not eligible to receive any benefits under this chapter until the total amount of the overpayment and all penalties and interest have been recovered or otherwise satisfied in compliance with a civil judgment. The department shall immediately deposit all assessments paid pursuant to this subsection in the unemployment compensation fund established by section 23-701.

C.  If benefits to which a person is not entitled are received without any fault on the person's part and if repayment or deduction from future benefits would be against equity and good conscience, the department may waive all or a portion of the amount overpaid.

D.  If benefits to which a person is not entitled are received without any fault on the person's part, deductions made by the department pursuant to subsection A of this section from benefits payable to an individual for any week shall not exceed twenty-five per cent of the individual's weekly benefit amount unless required by federal law, except that the amount recouped from benefits payable may be fifty per cent of the weekly benefit amount if the individual has previously received benefits but has not received benefits for at least twelve consecutive months before the most recent receipt of benefits and there has been no reasonable attempt to repay the indebtedness during that period. The fifty per cent recoupment rate may not be put in effect before one year after the establishment of the overpayment.

E.  The department shall adopt rules to implement subsection D of this section.



F.  The attorney general or the appropriate county attorney may institute appropriate court proceedings to recover in the name of the department any amount for which a person is liable to the department.

The Arizona Administrative Code, in Section R6-3-1301, provides in pertinent part as follows:

5.  "Benefit overpayment caused by Department error" means an overpayment which resulted from an error committed by Department personnel.

Page 3—Arizona Appeal No. U-1642697-001

> 6. "Benefit overpayment classified administrative" means an overpayment which occurred without fault on the part of the claimant.
>
> 7. "Benefit overpayment classified fraud" means an overpayment occurred because a claimant knowingly misrepresented or concealed material facts in order to obtain benefits to which the claimant was not entitled.
>
> 8. "Benefit overpayment classified non-fraud" means an overpayment created because the claimant unintentionally gave incorrect or incomplete information.

Although the claimant testified that he was not sure whether he received benefits for each of the four weeks in issue here, he did not present any evidence to contradict the Program's record (Exhibit "2") that reflect that payments were made to him for each of the benefit weeks ending 7/7/2018 through 7/28/2018, nor did he deny that he did, in fact, work and earn money during those weeks.

Accordingly, I find that the claimant received benefits in the total amount of $960.00 for the weeks in question



Although the claimant had indicated that he did not work or earn any money during the weeks in question when he filed claims during those benefit weeks, he answered "no" because he was under the misapprehension that he had to file those claims in order to receive benefits for the weeks for which he was previously declared ineligible, to reflect what his situation was for those previously unpaid weeks when he was not, in fact, employed.

Although the claimant argues that the classification of the overpayment should be administrative because the Program created the overpayment due to its failure to timely resolve an eligibility issue based upon a question concerning his ability to work, it was the *claimant,* and not the Program who filed each of the weekly benefit claims in question, and it was the *claimant,* and not the Program who supplied the answers to the questions on the claim forms. Accordingly, I cannot hold that the overpayment occurred without fault on the part of the claimant.

Due to the circumstances of this case, however and the claimant's explanation as to why he filed the claims the way he did, I find that the claimant did not intentionally give incorrect or incomplete information to the Program. Accordingly, I find the overpayment to be non-fraud.

Therefore, I conclude that the claimant was overpaid benefits, but that the overpayment must be modified with regard to classification. The claimant was overpaid benefits in the amount of $960.00 and the overpayment is classified non-fraud.

Page 4—Arizona Appeal No. U-1642697-001

Unemployment Insurance Program
Benefit Payment Control, Mail Drop 5893
P.O. Box 29225, Phoenix, Arizona 85038-9225
Telephone: 602-364-4300
Fax: 602-364-1211 or 602-364-1213

UIB-1088AFORPD (12-18)

602

ARIZONA DEPARTMENT OF ECONOMIC SECURITY
Workforce Administration

## DETERMINATION OF OVERPAYMENT
## FRAUDULENT

Esto es un documento importante relacionado a sus beneficios de Seguro por Desempleo. Si no los usted tiene, llame al número a la cabeza del formulario.

*0014164237*00120019*

**APPEAL REQUEST**
**Not Fraud**

GARRISON JONES
PO BOX 1751
Attn: BIRTE
SACRAMENTO, CA 95812-1751

Date: 10/01/2019
Claimant ID: 0014164237

Our records show that you have been overpaid benefits (or had benefit entitlements applied as offsets to a prior overpayment reduced or totally voided) as shown on the reverse of this Determination. This overpayment is a result of unreported or underreported earnings and is classified as fraudulent. The amount of the overpayment is $960.00 (this amount may include money withheld for child support and/or federal and state income tax withholding) and the total offset amount voided is $0.00.

Re-mailed determination of overpayment to updated address.

The evidence indicates that you received benefits as a result of a false statement or representation of a material fact in an effort to obtain benefits you were not entitled to receive.

Under Section 23-787, D and F of the Employment Security Law. This applies to any fraud overpayments
- A fifteen percent penalty will be assessed to the amount of the erroneous payment. This applies to any fraud overpayments established on or after October 21, 2013. You are not eligible to receive any benefits until all overpayment principal, penalties, and interest have been paid.
- Appropriate court proceedings may be instituted by the attorney general or the appropriate county attorney to recover in the name of the department any amount for which an individual is liable to the department.

In addition, your case will be considered under Section 23-778 of the Employment Security Law:
An individual may, within twenty-four calendar months immediately preceding a week in which a valid claim for benefits has been filed, be disqualified for the week the claim was filed and for not more than fifty-one weeks when the individual made a false statement or misrepresentation of a material fact knowing it to be false, or knowingly failed to disclose a material fact with intent to obtain benefits.

Interest will be computed on the unpaid principal balance, at the annual rate of 10%, beginning the month following the overpayment establishment date. Interest will accrue on overpayments even though they may be under appeal.

Your check or money order for this amount should be made payable to: The Arizona Department of Economic Security Office of Accounts Receivable and Collections, P.O. Box 504097, St. Louis, MO 63150-4097. For payment arrangements, contact the Office of Accounts Receivable and Collections at (602) 252-0024. For proper credit if you are paying by check or money order, please write your Social Security Number on your payment. Online payments can be made at https://atlas.gov/ecn/desops/index.xhtml.

APPEAL RIGHTS: This determination becomes final 15 calendar days after the mailing date shown at the top of this determination, unless you file an appeal. You can file by fax, mail, or in person. The address and fax number are listed above. Your nearest Employment Service office will accept in person appeals and have fax machines available. For the appeal to be timely, you must file it within 15 calendar days of the mailing date shown at the top of this determination. If the last day of the appeal period falls on a Saturday, Sunday, or holiday the appeal period will be extended to the next working day. This 15 day appeal period may also be extended if you can establish that failure to file within the specified period was due to delay or other action by the U.S. Postal service, or was due to misinformation or error on the part of the Department of Economic Security. Your appeal must include the reason(s) you believe the determination is in error, your Social Security number, and your signature (if filed by mail). If an appeal is filed by mail, the postmark date is considered the date of the appeal. Offset amounts that were reduced or totally voided as a result of under or unreported earnings will be restored to your prior overpayment balance(s). Any appeal filed to this Determination of Overpayment will relate only to the issue of the earnings reported by the employer(s) shown on the reverse of this determination and not to the previous overpayment.

You may have someone represent you. If you pay your representative, that person must be a licensed Arizona attorney or must be supervised by a licensed Arizona attorney. An employer may also use any employee of the business as its representative. The Department does not provide representatives. If you want the Administrative Law Judge (ALJ) to consider documents not already in the file in deciding your case, you must bring a legible copy of them to the hearing. If your evidence is not paper, call the number at the top of the Notice of Hearing to make arrangements to have it considered at the hearing. If your hearing is by telephone, you must immediately mail or fax copies of any documents you want considered to the ALJ and the other party. In addition to attending the hearing yourself, you should bring with you any witnesses whose testimony you want the ALJ to hear. You can make a written request for a subpoena to require someone to bring something to the hearing or a subpoena for a witness. You must make a written request at least five calendar days before the hearing. The request must describe the item, identify the owner or custodian, list that person's address, and describe why the ALJ must consider that item in order to make a proper decision.

If you are the party who filed the appeal and do not attend, the ALJ will decide the matter without you. If you are not the party who appealed and you do not attend, the hearing will proceed without you and you may be required to repay to the Department any benefits you have received. If you miss the hearing, the ALJ's decision will explain how to request a reopening of that hearing.

Garrison Jones
P.O Box 1751 C/O Birite
Sacramento, CA 95812

Arizona Department of Economic Security
1990 Camelback Rd
Phoenix, AZ 85814

Re: **APPEAL FRAUD DETERMINATION GARRISON JONES – 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**
I am hereby making official appeal of fraud determination made by Arizona Department of Economic Security

Arizona Department of Economic Security is the reason for the fraud determination as they have mis managed the process of administration of benefits to Garrison Jones based on restrictions and determinations that they made and entered into the system. Those determinations/restrictions were entered by Arizona Department of Economic Security in order to prevent the processing of any and all benefits to Garrison Jones until they were resolved by appeal and decision of an administrative judge, this did not occur.

Garrison Jones appealed the decision made by Arizona Department of Economic Security that he was unlawfully terminated by Velocity Technology Solutions

**Arizona Appeal No. U-1595392-001**

On March 15, 2018 see exhibit 1 – Decision
The claimant was discharged from this employment, but not for willful or negligent misconduct. The claimant qualifies for benefits.

**Exhibit 1 Decision June 22, 2018**

# ✚ Prime Healthcare Management, Inc.

D

September 20, 2019

~~[redacted]~~
Sacramento, CA 95812

Garrison Jones,

We received your September 16, 2019 email regarding your personnel information and/or records being released to the Arizona Department of Economic Security (AZDES) without your authorization. We have investigated this allegation and are writing to inform you that Monroe Hospital has not provided AZDES personnel information or records relating to your employment with Monroe Hospital to AZDES, or any other state agency. We have also confirmed that Prime Healthcare Services, Inc. ("Corporate") did not provide AZDES or the Indiana State Department of Work Force Development with your personnel information or records.

On or about September 12, 2019 Monroe Hospital received a call from the Indiana State Department of Work Force Development to request a report on your 2018 quarter 2 earnings with Monroe Hospital. State unemployment agencies are entitled to and frequently do request earnings information from current employers. However, you had no 2018 quarter 2 earnings to report and, such, no earnings information was released.

If you have any questions or concerns regarding the aforementioned information, please feel free to reach out to me at ~~[redacted]~~

Respectfully,

~~[signature]~~

~~[redacted]~~
Corporate HR Manager
Prime Healthcare Management, Inc.